IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOSÉ ESCOBAR MOLINA, *et al.*, *individually and on behalf of all others similarly situated*,

    *Plaintiffs*,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,

    *Defendants*.

No. 25-cv-3417

**DECLARATION OF CAMILO DOE**

I, Camilo Doe, pursuant to 28 U.S.C. § 1746, declare as follows:

1. My name is Camilo Doe. I am 40 years old, and I am working in home improvement and renovation. I have lived in the Washington D.C. area since 2003 when I was 17 years old. I am a Latino from Guatemala. I have a pending 601-A unlawful presence waiver and an I-130 application that was approved in 2021. My wife is a U.S. citizen, and we each have one child. My stepdaughter is 11 years old, and my son is 17 years old. Both are U.S. citizens. I am a member of San Gabriel Catholic Church.

2. On September 9, 2025, at around 12:00 PM, I was driving in my work van on the way home from work on Rock Creek Parkway in D.C. The van is registered under my name, had current license plates and registration, and I was driving within the speed limit. After I pulled off of Rock Creek Parkway, I noticed a Park Police car following me for about 10 blocks, but it never put on its lights. I stopped my van to get water at Kansas St. and Taylor St. NW in the Petworth neighborhood in D.C. The Park Police car stopped behind me and

an agent got out of the car and walked up to my van.

3. The Park Police agent said that I was not allowed to drive my van on Rock Creek Parkway because it was a commercial vehicle. He said the problem was that it had a ladder on top. I have driven on this road nearly every day and previously had no problems. The agent asked for my license, registration, and insurance, which I handed over. After a few minutes, more cars arrived with agents from ICE or DHS.

4. They asked me to step out of the car, they told me I was under arrest, and they asked me if I had any weapons on me. I did not make any attempt to resist or run away. They handcuffed me. After they handcuffed me, I told them I had an approved I-130, and that I was in the process of having my 630-A approved. They told me that that doesn't give me any status here.

5. None of the agents at any point ever identified themselves, presented a warrant, or indicated that they knew me/knew my name prior to stopping me. They did not ask me any questions about my ties to the community, how long I've been living/working in DC, my family here, or anything else about my circumstances.

6. They put me quickly in the car and we drove away because there were many bystanders who were confronting them about my arrest. We parked in a parking lot about a three-minute drive away by a school, and I called my wife to let her know what had happened.

7. After, they drove me to a jail in Reston, Virginia, to take my fingerprints. I was there for 2 to 3 hours. I was taken after to Chantilly, where I was for about 6 hours. While I was there, I was put in a room made for 4 people with about 15 people in it. After leaving Chantilly, I went to a jail called Riverside for a day. It was not an immigration detention facility, but a normal jail. Over the course of these two days, all they gave me to eat was a

cold bean burrito and two ham sandwiches.

8. They brought me next to Caroline Detention Center. I was there for eight days. At Caroline, they took all of my belongings (keys, money, etc.) and still haven't returned them to my wife. They took me next to Louisiana, where I was for a night, and from there they took me to Ft. Isabel in Texas.

9. Since 2003 when I entered this country, I have never been convicted of any crime/offense, and I have not had any issues with meeting deadlines or appearing in court in relation to my immigration case.

10. I have difficulty even expressing how this has affected me personally. Being away from family has been a traumatic experience, and my arrest has been devastating for my family. I understand that my stepdaughter was very upset when she learned I had been arrested and cried for a long time. My son is anxious because he does not know where I am being held because I keep being moved around to new facilities. This prevents him from focusing on his schoolwork. I bring my stepdaughter to school so that my wife can get to work on time, and I am the economic provider for my son and only want to provide him with a good life.

11. I am deeply concerned and scared by this arrest. I believe I was stopped and arrested solely because of the color of my skin and my appearance, as it was clear that the arresting officer did not know who I was and did not present any warrant. I live in D.C. and have driven on this same route many times before and am very scared that I may be arrested and detained again if released.

12. This declaration was read to me in full in Spanish on October 1, 2025, by Alexis Gorfine. I completely understand the content of this declaration.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 1, 2025.

*CAMILO DOE*
Camilo Doe

I, Alexis Gorfine, a Law Clerk at Covington & Burling LLP, affirm Camilo Doe gave me permission to sign this declaration on his behalf because he is currently detained. At 9:45 AM on October 1, 2025, I read the above Declaration back to Camilo Doe word for word to confirm its accuracy, and he stated that it was accurate.

Executed on October 1, 2025.

*Alexis R. Gorfine*
Alexis Gorfine