IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSÉ ESCOBAR MOLINA, *et al., individually and on behalf of all others similarly situated,*<br><br>*Plaintiffs,*<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, et al.,<br><br>*Defendants.* | No. 25-cv-3417 |

### DECLARATION OF LUZ DOE

I, Luz Doe, pursuant to 28 U.S.C. § 1746, declare as follows:

1. My name is Luz Doe. I am 34 years old and I live in Hyattsville, Maryland. I am a CASA member. I make this declaration on my own personal knowledge, except as to facts relayed to me by my partner concerning his arrest and detention by federal agents in a telephone call and except as to matters expressly stated to be upon information and belief, and as to these, I believe them to be true.

2. My partner's name is Daniel. He is 32 years old. Daniel and I are originally from Venezuela but currently live in Hyattsville, MD. Daniel and I both work in DoorDash food delivery in Washington, D.C. We both entered the country legally through the CBP One process in December 2024. We also both have pending asylum applications.

3. On August 15 at approximately 10:15 AM, Daniel and I were pulled over and arrested in Washington, D.C. on 14th Street NW while making a food delivery on our motor bike.

Our motorbike is registered under my name and has current license plates and registration.

4. After we picked up the food, we were riding our bike to our destination when we were pulled over on 14th Street by a Washington, D.C. Metropolitan Police car. After we were stopped, we remained on our bike and did not make any attempt to drive away. The officer asked for the bike registration and our identification. We provided the registration for the motorbike and my Venezuelan passport. We also both gave the officer our Venezuelan IDs. After looking at our documents and my passport, the officer didn't say anything, but proceeded to send a text on his phone.

5. Approximately five minutes later, two unmarked SUVs pulled up. Three agents emerged from the vehicles and announced they were from Immigration and Customs Enforcement (ICE). They claimed that we had entered the country illegally and that they were there to detain us. At no point did we try to flee or resist arrest.

6. We tried to explain that we had pending asylum applications. However, the ICE officials dismissed this information and said that we were illegal. They threatened to handcuff me first, but after Daniel stood up for me, they handcuffed him instead. They handcuffed me shortly after.

7. Although they said they were from ICE, the officers did not present a warrant, explain why they stopped us, or indicate that they knew our names prior to stopping us. Nor did any of them ask us any questions about our ties to the community, how long we have been living or working in D.C., our family here, or anything else about our circumstances.

8. After the agents arrested us, they placed us inside two separate vehicles and drove us to the ICE Detention Center in Chantilly, Virginia. I was placed in a vehicle with two ICE officers, and Daniel was placed in a vehicle with three officers. During this initial car ride, the agents did not provide us with any additional information, a warrant, or other documentation related to our arrest. I tried to explain that we didn't enter illegally and had the correct documents to get into the country, but the officers did not respond.

9. When we arrived at the Chantilly, VA facility at approximately 12:00 PM, we were further restrained by being handcuffed at our hands, feet, and waists. No one talked to us, or provided any explanation as to why we were there or how long we would be there. Shortly after we arrived, they took everything from us, including our personal items and shoelaces. They put me in a cell by myself because I was the only female there at the time. They placed Daniel in a cell with several other men.

10. At approximately 10:00 PM, I was released from my cell and led to an office to talk with four immigration officers. I saw Daniel in his cell as I was walking to the office, and it appeared someone else had already spoken to him. Once in the office, I was again asked how I entered the country. I said I came with a CBP One document that President Biden provided, but they said that was not valid anymore. One officer spoke to another officer in English for a few minutes. They then decided to let me go, saying: "Thanks to God, it is your lucky day." Prior to releasing me, they took my fingerprints. They also told me that I would receive an immigration court date in December. But they did not provide me with any documents or the location of the court date.

11. Before I was released, I asked the officers about Daniel and whether they were going to let him go. The officers said that was not their responsibility and did not provide me with

3

any other information. I was told to make a phone call to have someone pick me up, so I called my nephew. After this, I was put back in my cell to wait until my nephew arrived. He arrived to pick me up around 11:30 PM.

12. Sadly, Daniel was not released. He was moved to Caroline Detention Center in Virginia the next day. It felt unfair what they were doing. We were working. We are not criminals, and that is how they treated us. It was a very traumatic experience.

13. Since December 2024 when Daniel and I entered this country, this is the first and only time he was arrested by law enforcement. He has not had any other interactions with law enforcement, he has never been convicted of any crime/offense, and he has not had any issues with meeting deadlines or appearing in court in relation to his immigration case.

14. While detained at Caroline Detention Center, Daniel has been suffering from severe anxiety and has had difficulty sleeping. He has had to see a psychologist multiple times because of his anxiety. He has also been to the doctor at the detention center multiple times because he has a rash over his body, which he thinks may be a fungus. During his detention, Daniel has been held in a small cell with five other people. The mattresses are not comfortable and the food is not good. He says it feels like a jail.

15. He has an upcoming court date on October 17 to defend his asylum case and seek to remain in the country.

16. As a result of Daniel's detention, I have been struggling as the main breadwinner. I have gone multiple times without eating because I could not afford to. I have also been struggling mentally because we have always been together. I only have one other family member here, my nephew, but he has his own family, so I feel alone.

17. Due to me and Daniel's pending asylum applications, I fear we will face retaliation and grave danger if our persecutors in Venezuela were to learn of our asylum claims through this lawsuit. I am also afraid of retaliation that my family and I may face if my identity were to become public as a result of my participation in this lawsuit. I am particularly afraid that my family members and I will be retaliated against and harassed by members of the public on social media given recent reports about people harassing noncitizens and asylum seekers online.

18. This declaration was read to me in full in Spanish on Tuesday, September 30, 2025, by Patricia Zapata. I completely understand the content of this declaration.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 30, 2025.

I, Patricia Zapata of CASA, Inc., affirm Luz Doe gave me permission to sign this declaration on her behalf. At 4:45 pm on September 30, 2025, I read the above declaration back to Luz word for word to confirm its accuracy and she stated that it was accurate.

Executed on September 30, 2025.

Signature