IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSÉ ESCOBAR MOLINA, *et al.*, *individually and on behalf of all others similarly situated*,<br><br>*Plaintiffs*,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, et al.,<br><br>*Defendants*. | No. 25-cv-3417 |

**DECLARATION OF M.P.**

I, M.P., pursuant to 28 U.S.C. § 1746, declare as follows:

1. My name is M.P. I am 41 years old and I live in Millersburg, Ohio. I make this declaration on my own personal knowledge, except as to facts relayed to me by my brother concerning his arrest and detention by federal agents in a telephone call and except as to matters expressly stated to be upon information and belief, and as to these, I believe them to be true.

2. My brother's name is M.A.P. He is 40 years old and has lived in the United States since 2007. M.A.P. is originally from Nicaragua, but currently lives in Laurel, Maryland. He owns a house and lives with his girlfriend and five-year-old son, who is a U.S. citizen. M.A.P. works in construction and operates his own construction company, which often involves work in Washington, D.C. He has a work permit authorization, a social security number, and a valid driver's license. He also has a pending asylum application.

3. On August 25, 2025, at approximately 10:30 AM, M.A.P. was departing a Lowes in Northeast D.C on his way to a construction site on 16th Street in Northeast D.C. where he was to work that day. His car is registered under his name and had current license plates and registration.

4. Two blocks before he reached his destination, M.A.P. noticed that multiple cars were following him. Suddenly, a car pulled in front of him and blocked his path, and he pulled over. Approximately 16 agents then surrounded his vehicle. The agents were plain clothed and were not wearing anything to indicate that they were law enforcement. The agents did not identify who they were or what agency they were with.

5. M.A.P. remained in his car and did not make any attempt to drive away. He was instructed to step out of his car but was not asked anything about his immigration status or for any form of identification. He told the agents that he would comply with their instructions, but implored them not to hurt him as he stepped out of his vehicle.

6. Upon exiting his vehicle, M.A.P. explained to the agents that he has a work permit authorization, a social security number, a valid driver's license, and an open asylum case. However, he was immediately handcuffed, and an agent told him that his documentation did not matter and was not valid to them.

7. None of the agents at any point ever identified themselves, presented a warrant, explained why they stopped M.A.P., or indicated that they knew his name prior to stopping him. Nor did any of them ask him any questions about his ties to the community, how long he has been living or working in D.C., his family here, or anything else about his circumstances. At no point did M.A.P. try to flee or resist arrest.

8. After arresting M.A.P. and placing him in a vehicle, he was taken to an area near the Pentagon in Virginia and held to wait in the car for approximately 45 minutes. Then he was taken to another unidentified location where he was also held in the car for approximately an hour. Because he was not allowed to use a restroom, he became highly uncomfortable and was forced to hold his bladder. During this time, the agents did not provide him with any additional information, a warrant, or other documentation related to his arrest.

9. M.A.P. was then taken to the ICE Washington, D.C. field office and detained for approximately 24 hours alongside other people who had been similarly detained. He was allowed to make a phone call to me early the following morning, August 26, around 4:00 AM, where he told me he was being transferred to Virginia.

10. That day, he was transferred to an ICE facility in Farmville, Virginia. During his detention in Farmville, he described that the detainees were held in cramped quarters with several other people. While M.A.P. was at Farmville, the officers refused to turn off the lights in his cell, forcing him and his cellmates to sleep with the lights on. He was provided with food, but was not allowed to bathe during this time.

11. After being detained at Farmville for approximately six days, M.A.P. was transferred to the Moshannon Valley Processing Center in Pennsylvania. He was finally able to shower at the Moshannon Valley Processing Center and was given new clothes and shoes. However, his shoes are not the proper size, causing pain and discomfort in his feet. He has been held at the Moshannon Valley Processing Center for about a month.

12. Since 2007 when M.A.P. entered this country, this is the first and only time he was arrested by law enforcement. He has not had any other interactions with law enforcement,

he has never been convicted of any crime or offense, and he has not had any issues with meeting deadlines or appearing in court in relation to his immigration case.

13. As a result of his detention, M.A.P. and his family have been deeply traumatized. He remains detained at the Moshannon Valley Processing Center in Pennsylvania. His son, who is a U.S. citizen, constantly asks where his father has been taken and when he will return. He waits every day by the window in hopes of M.A.P. returning. His girlfriend is struggling to make ends meet and pay their bills without his support, including their monthly car and house payments. I have been left to try and support his family, while also supporting my own family.

14. I believe M.A.P. was stopped and arrested solely because of the color of his skin and his appearance, as it was clear that the arresting officer did not know who he was, did not present any warrant, and did not say why he was stopped and/or why he was being arrested.

15. Due to M.A.P.'s pending asylum application, I fear he would face retaliation and grave danger if his persecutors in El Salvador were to learn of his asylum claims through this lawsuit. I am also afraid of retaliation me and my family may face if my identity were to become public as a result of my participation in this lawsuit. Although I have a green card through my marriage, I am particularly afraid that me and my family members will be retaliated against and harassed by members of the public on social media given recent reports about people harassing noncitizens and asylum seekers online.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 1, 2025.

_____
10/1/2025