# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

JOSÉ ESCOBAR MOLINA, *et al.*, *on behalf of themselves and others similarly situated*,

*Plaintiffs*,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,

*Defendants*.

No. 25-cv-3417-PLF

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. ii

TABLE OF AUTHORITIES ......................................................................................... iii

INTRODUCTION .......................................................................................................... 1

BACKGROUND ............................................................................................................. 2

    A.    The Trump Administration Issues Executive Orders to Increase
Immigration-Related Arrests in the District of Columbia. ..................................... 2

    B.    Since President Trump's August 11 "Emergency" Declaration in the
District of Columbia, Defendants Have Been Conducting Mass
Immigration Arrests in the District. ........................................................................ 3

    C.    Defendants Have a Policy and Practice of Making Warrantless
Immigration Arrests Without an Individualized Assessment of Probable
Cause to Believe That an Individual is Unlawfully Present and a Flight
Risk. ......................................................................................................................... 5

LEGAL STANDARD ..................................................................................................... 8

ARGUMENT .................................................................................................................. 9

I.    The Proposed Class Satisfies the Requirements of Rule 23(a). ............................. 9

    A.    The Proposed Class Satisfies the Numerosity Requirement. .................................. 9

    B.    The Proposed Class Satisfies the Commonality Requirement. .............................. 11

    C.    The Proposed Class Satisfies the Typicality Requirement. ................................... 13

    D.    The Proposed Class Representatives Satisfy the Adequacy Requirement. ............ 15

II.    Class Certification is Appropriate Under Rule 23(b)(2). ...................................... 16

III.    The Court Should Designate Plaintiffs' Counsel as Class Counsel. ..................... 18

CONCLUSION ............................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.B. v. Haw. State Dep't of Educ.,*
  30 F.4th 828 (9th Cir. 2022) ...................................................................10

*Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Pompeo,*
  334 F.R.D. 449 (D.D.C. 2020)...............................................................18

*Brown v. District of Columbia,*
  928 F.3d 1070 (D.C. Cir. 2019) .............................................................11

*Coleman ex rel. Bunn v. District of Columbia,*
  306 F.R.D. 68 (D.D.C. 2015) ...................................................................9

*\*Bynum v. District of Columbia,*
  214 F.R.D. 27 (D.D.C. 2003)...............................................12, 14, 16

*DL v. District of Columbia,*
  302 F.R.D. 1 (D.D.C. 2013).......................................................................9

*DL v. District of Columbia,*
  860 F.3d 713 (D.C. Cir. 2017) ...............................................................12

*Encinas v. J.J. Drywall Corp.,*
  265 F.R.D. 3 (D.D.C. 2010).....................................................................19

*Garnett v. Zeilinger,*
  301 F. Supp. 3d 199 (D.D.C. 2018) .......................................................16

*Gen. Tel. Co. of Sw. v. Falcon,*
  457 U.S. 147 (1982)..................................................................................13

*Gonzalez v. ICE,*
  975 F.3d 788 (9th Cir. 2020) ..................................................................18

*Howard v. Liquidity Servs. Inc.,*
  322 F.R.D. 103 (D.D.C. 2017)..................................................................9

*\*J.D. v. Azar,*
  925 F.3d 1291 (D.C. Cir. 2019) ...................................................... *passim*

*In re Lorazepam & Clorazepate Antitrust Litig.,*
  202 F.R.D. 12 (D.D.C. 2001)..................................................................14

*Ortega-Melendres v. Arpaio,*
  836 F. Supp. 2d 959 (D. Ariz. 2011) ..............................................13, 14, 17

*Pappas v. District of Columbia*,
No. 19-cv-2800, 2024 WL 1111298 (D.D.C. Mar. 14, 2024) ................................................12

*Pigford v. Glickman*,
182 F.R.D. 341 (D.D.C. 1998) ......................................................................................13, 14

*R.I.L-R v. Johnson*,
80 F. Supp. 3d 164 (D.D.C. 2015) .................................................................................16, 17

*Radosti v. Envision EMI, LLC*,
717 F. Supp. 2d 37 (D.D.C. 2010) ........................................................................................9

*Ramirez v. ICE*,
338 F. Supp. 3d 1 (D.D.C. 2018) ........................................................................................18

*Steele v. United States*,
159 F. Supp. 3d 73 (D.D.C.) .................................................................................12, 16, 17

*Stephens v. Farmers Rest. Grp.*,
329 F.R.D. 476 (D.D.C. 2019) ...........................................................................................12

*Thorpe v. District of Columbia*,
303 F.R.D. 120 (D.D.C. 2014) ...................................................................................11, 13, 15

*United Farm Workers v. Noem*,
785 F. Supp. 3d 672 (E.D. Cal. 2025) ................................................................................17

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .....................................................................................8, 11, 12, 16

**Statutes, Regulations, & Rules**

8 U.S.C. § 1357 ...........................................................................................1, 5, 10, 12

8 C.F.R. § 287.8 ................................................................................................................12

Fed. R. Civ. P. 23 ..................................................................................................*passim*

Local Civ. R. 7 ......................................................................................................................1

Local Civ. R. 23.1 ................................................................................................................1

**Other Authorities**

Exec. Order No. 14,252 (Mar. 27, 2025) .............................................................................3

Exec. Order No. 14,333 (Aug. 11, 2025) .............................................................................3

Exec. Order No. 14,339 (Aug. 25., 2025) ............................................................................4

Pursuant to Federal Rule of Civil Procedure 23 and Local Civil Rule 23.1, Plaintiffs José

Escobar Molina, B.S.R., N.S., and R.S.M. respectfully move for certification of a plaintiff class,

the Warrantless Arrests Class, in this action.[1]

## INTRODUCTION

Plaintiffs José Escobar Molina, B.S.R., N.S., and R.S.M. ("Proposed Class

Representatives") bring this lawsuit as a putative class action to challenge Defendants' policy and

practice of making warrantless immigration arrests without probable cause in Washington, D.C.

In violation of the Immigration and Nationality Act ("INA") and the Department of Homeland

Security's ("DHS") own regulations, Defendants' agents have been arresting individuals without

a warrant and without an individualized assessment of probable cause.  Defendants' policy and

practice of *arrest first, ask questions later* violates Plaintiffs' and all putative class members'

statutory rights under 8 U.S.C. § 1357(a)(2).

Plaintiffs seek a declaration that Defendants' policy and practice of conducting warrantless

arrests without probable cause is unlawful, injunctive relief to prohibit further violations of

Plaintiffs' and putative class members' rights and to require Defendants to expunge records and

information relating to or deriving from their unlawful arrests, and vacatur of the unlawful policy.

Plaintiffs thereby seek to certify the following proposed class:

> **Warrantless Arrests Class:**  All persons who, since August 11, 2025, have been or will
> be arrested in this District for alleged immigration violations without a warrant and without
> a pre-arrest, individualized assessment of probable cause that the person is in the United
> States unlawfully and that the person poses a flight risk.

Plaintiffs' proposed class satisfies the requirements of Federal Rule of Civil Procedure

23(a).  First, the class is numerous, consisting of hundreds of individuals, many of whom are now

---

[1] Pursuant to Local Civil Rule 7(m), Plaintiffs' counsel conferred with Defendants' counsel about
this motion, and Defendants' counsel stated that Defendants oppose the motion.

in immigration detention throughout the country, making joinder impracticable. Second, the putative class members' claims share common questions of fact and law that are capable of classwide resolution. Third, Plaintiffs' claims are typical of the class as a whole because, like all putative members, each Plaintiff was arrested without a warrant and without the required probable cause findings. Each of their claims arises from Defendants' policy and practice of conducting such warrantless arrests without probable cause. Fourth, Proposed Class Representatives are adequate class representatives who meet all of the requirements of Rule 23(a)(4). Furthermore, undersigned counsel for Plaintiffs satisfy the requirements of Rule 23(g) as they will vigorously advance the interests of the class and include attorneys with extensive relevant experience.

Lastly, certification of Plaintiffs' proposed class is appropriate under Rule 23(b)(2) because, with their policy and practice, Defendants "ha[ve] acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Courts have regularly certified similar classes in cases in the immigration context, including cases involving unlawful arrests for immigration reasons.

## BACKGROUND

### A.    The Trump Administration Issues Executive Orders to Increase Immigration-Related Arrests in the District of Columbia.

Earlier this year, Defendants began laying the groundwork for their policy and practice of making mass warrantless immigration arrests in Washington, D.C. without the probable cause findings required by federal law. Starting in January 2025, the Trump Administration imposed on each Immigration and Customs Enforcement ("ICE") field office—including the Washington,

D.C. field office—a quota of 75 arrests per day, totaling more than 1,800 daily arrests nationwide.[2]

That quota quickly increased to a new goal of 3,000 arrests nationally per day in May.[3]

The Trump Administration has instituted numerous policies to increase federal control of law enforcement in Washington, D.C. so that it can maximize civil immigration arrests without regard for whether those arrests are legal.  On March 27, 2025, President Trump issued Executive Order 14,252, titled "Making the District of Columbia Safe and Beautiful," which "direct[ed] maximum enforcement of Federal immigration law and redirect[ed] available Federal, State, or local law enforcement resources to apprehend and deport illegal aliens in the Washington, D.C. metropolitan area."  Exec. Order No. 14,252 (Mar. 27, 2025).

**B.    Since President Trump's August 11 "Emergency" Declaration in the District of Columbia, Defendants Have Been Conducting Mass Immigration Arrests in the District.**

On August 11, 2025, the Administration declared an emergency in the District of Columbia, *see* Exec. Order No. 14,333 (Aug. 11, 2025), delegating to the Attorney General the President's authority under Section 740(a) of the D.C. Home Rule Act to request services of the Metropolitan Police Department.  In announcing the August 11 emergency, President Trump repeatedly referenced the topic of immigration, declaring that the federal government was going to put things "in control very quickly, like we did in the southern border,"[4] and that "[t]his city will no longer be a sanctuary for illegal alien criminals."[5]  Just a few days later, Defendant Attorney General Pamela J. Bondi issued an order purporting to direct the Mayor of D.C. to use local

---

[2] Declaration of Alexandra Widas ("Widas Decl."), Ex. 3.  The declarations of Plaintiffs and other putative class members cited herein were filed as exhibits to Plaintiffs' Motion for a Preliminary Injunction, to Stay Agency Action, and for Provisional Class Certification.  ECF No. 17.
[3] Widas Decl., Ex. 4.
[4] Widas Decl., Ex. 5.
[5] Widas Decl., Ex. 6.

resources to assist with "enforcement of federal immigration law," including with "locating, apprehending, and detaining aliens unlawfully present in the United States."[6]

Two weeks later, on August 25, 2025, the Administration issued another Executive Order directing the Secretary of Defense to "immediately create and begin training, manning, hiring, and equipping a specialized unit within the District of Columbia National Guard, subject to activation under Title 32 of the United States Code, that is dedicated to ensuring public safety and order in the Nation's capital." Exec. Order No. 14,339 (Aug. 25., 2025). The numbers illustrate this story: "from early August until mid-September, ICE made around 1,200 arrests, according to officials with knowledge of the data."[7]

Defendants' agents have driven this sharp increase by systemically making immigration arrests without a warrant and without an assessment of a person's immigration status and flight risk. ICE and other federal agents have arrested people while driving,[8] walking,[9] at work,[10] on the way to medical appointments,[11] and walking out of a grocery store.[12] They have used untargeted traffic stops to make immigration arrests.[13] They have also arrested people on their way to

---

[6] Widas Decl., Ex. 7.

[7] Widas Decl., Ex. 10.

[8] Declaration of Mateo Doe ("Mateo Doe Decl.") ¶ 6; Declaration of Y.R.M. ("Y.R.M. Decl.") ¶ 2; Declaration. of B.R.G. ("B.R.G. Decl.") ¶¶ 2–3; Declaration of Julio Doe ("Julio Doe Decl.") ¶¶ 2–3; Declaration of Camilo Doe ("Camilo Doe Decl.") ¶¶ 2–3; Declaration of M.P. ("M.P. Decl.") ¶¶ 3–6 (describing a sibling's experience); Declaration of Cristina Doe ("Cristina Doe Decl.") ¶¶ 3–5 (describing her son's experience); Declaration of Paola Flores Roman ("Flores Roman Decl.") ¶¶ 5, 7 (describing a client's experience); Declaration of Ana Gracia ("Ana Gracia Decl.") ¶ 6 (describing a client's experience).

[9] Declaration of Javier Doe ("Javier Doe Decl.") ¶¶ 4–5; Declaration of Franco Doe ("Franco Doe Decl.") ¶¶ 2–3; Flores Roman Decl. ¶ 6 (describing her client's experience).

[10] Declaration of Anamaria Doe ("Anamaria Doe Decl.") ¶¶ 1–4.

[11] Declaration of Elias Doe ("Elias Doe Decl.") ¶ 2; Declaration of CASA ("CASA Decl.") ¶ 25.

[12] CASA Decl. ¶ 34.

[13] *See, e.g.*, Widas Decl., Ex. 25.

church,[14] arrested parents outside children's schools,[15] and arrested food delivery drivers without prior knowledge of their immigration status.[16]

### C. Defendants Have a Policy and Practice of Making Warrantless Immigration Arrests Without an Individualized Assessment of Probable Cause to Believe That an Individual is Unlawfully Present and a Flight Risk.

Defendants have implemented a policy and practice in the District of Columbia meant to maximize immigration-related arrests without regard for their legality. As an illustration of Defendants' *arrest-first-ask-questions-later* approach, Defendants no longer require immigration officers to fill out basic paperwork about the person they arrest, nor do officers need to obtain supervisor approval prior to making an arrest.[17] *See also* Flores Roman Decl. ¶¶ 2, 4 (immigration attorney describing the detail she typically saw in the I-213, a form that includes circumstances of immigration arrest, before August 2025, contrasted to the lack of detail and individualized information included for arrests occurring after early August). Defendants have also made clear, in this District and elsewhere, that they have no intention of complying with Section 1357(a)(2). In July 2025, for example, the Department of Justice fired the acting U.S. Attorney for the Eastern District of California after she told a high-ranking Border Patrol official that he could not arrest individuals without probable cause.[18] And DHS admitted in a September 25, 2025 public statement that DHS "uses [a] 'reasonable suspicion'" standard to make immigration arrests— admitting that DHS continues to fall short of the probable cause requirements imposed by law.[19] DHS further stated that "law enforcement is trained to ask a series of well-determined questions

---

[14] Widas Decl., Ex. 27; *see also id.*, Ex. 26.
[15] Widas Decl., Ex. 28; *see also id.*, Ex. 29.
[16] Widas Decl., Ex. 30; *id.*, Ex. 31.
[17] Widas Decl., Ex. 32.
[18] Widas Decl., Ex. 16.
[19] Widas Decl., Ex. 17.

to determine status and removability," without saying anything about flight risk.[20]  Similarly, DHS stated in a post in response to this lawsuit on the social media platform X that "[u]nder the [F]ourth [A]mendment of the U.S. Constitution, DHS law enforcement uses 'reasonable suspicion' to make arrests."[21]

Since "early August," D.C. community members "have sent hundreds of videos, photos and tips," illustrating "a dramatic surge in dragnet-style arrest tactics" that sweep in large numbers of residents and "roving patrols arresting anybody that looked brown, basically."[22]  Plaintiffs' and declarants' experiences illustrate that Defendants employ a policy and practice of conducting mass immigration arrests without warrants and without probable cause that a person is both unlawfully in the United States and a flight risk.

Defendants' agents have arrested Plaintiffs and declarants under strikingly similar, chilling circumstances, without first attempting to identify them, determine their immigration status, or assess their flight risk.  In neighborhoods across D.C., federal agents have made warrantless arrests of Latino residents engaged in routine activities such as picking up supplies for their jobs or otherwise working, taking out the trash, or delivering food, without any indication that Defendants knew who they were, let alone their immigration status.  For example, Plaintiff Escobar Molina has Temporary Protected Status, a form of humanitarian relief providing lawful immigration status to eligible foreign nationals who cannot safely return home to war-torn or disaster-stricken countries.  Declaration of José Escobar Molina ("Escobar Molina Decl.") ¶ 1.  Nevertheless, at about 6:00 am on August 21, 2025, ICE agents in plain clothes without badges or other insignia handcuffed Mr. Escobar Molina, grabbed him by his arms and legs, and pushed him into their

---

[20] Widas Decl., Ex. 18.
[21] Widas Decl., Ex. 19.
[22] Widas Decl., Ex. 10.

vehicle without asking for his name or identification and without asking him any questions about his immigration status or personal circumstances. *Id.* ¶ 5. As Mr. Escobar Molina described, "[n]one of the agents at any point ever identified themselves, presented a warrant, explained why they stopped me, or indicated that they knew my name prior to stopping me." *Id.* ¶ 8. Mr. Escobar Molina tried to explain that he had "papers", but one of the agents responded, "Shut up bitch! You're illegal." *Id.* ¶ 7. Mr. Escobar Molina was held overnight at ICE facilities in Virginia. *Id.* ¶ 13; *see also*; Declaration of Gordon ("Gordon Decl.") ¶ 3 (arrested without being shown any document or a warrant while waiting on his motorbike in a Denny's parking lot to pick up a food delivery).[23]

Defendants' agents also do not make assessments of flight risk. Agents systematically fail to ask Plaintiffs and declarants questions about where or with whom they lived or worked, how long they have lived here, or any other questions about their ties to the community. *See, e.g.*, Escobar Molina Decl. ¶ 8 (explaining that the agents who arrested him did not ask him "any questions about [his] ties to the community, how long [he has] been living and working in D.C., [his] family here, or anything else about [his] circumstances"); Declaration of B.S.R. ("B.S.R. Decl.") ¶ 7 (arresting agents did not ask "any questions about [his] ties to the community, how long [he has] been living or working in the area, or anything else about [his] circumstances"); Declaration of N.S. ("N.S. Decl.") ¶ 7 (similar); B.R.G. Decl. ¶ 4 (similar); Declaration of C. ("C. Decl.") ¶ 5 (similar); Declaration of Darwin Lopez Castanon ("Darwin Lopez Castanon Decl.") ¶ 11 (similar); Cristina Doe Decl. ¶ 6 (similar, describing her son's experience); Declaration of

---

[23] *See also* Javier Doe Decl. ¶ 7; Mateo Doe Decl. ¶ 7; Y.R.M. Decl. ¶¶ 3–4; Franco Doe Decl. ¶¶ 3–4; B.R.G. Decl. ¶ 4; Julio Doe Decl. ¶ 4; Camilo Doe Decl. ¶ 4; M.P. Decl. ¶ 7 (describing a sibling's experience); Cristina Doe Decl. ¶¶ 3–5 (describing her son's experience); Anamaria Doe Decl. ¶¶ 4–5; Flores Roman Decl. ¶¶ 6–7 (describing a client's experience); Gracia Decl. ¶ 6 (describing her client's experience).

W.G.M. ("W.G.M. Decl.") ¶ 6 (similar).[24]  Even more egregiously, officers have not only failed to establish facts and circumstances giving rise to probable cause as to flight risk, but have repeatedly ignored clear showings that declarants do not pose a flight risk.  *See, e.g.*, B.S.R. Decl. ¶¶ 10–14 (arrested outside of his home in the Fort Lincoln neighborhood of D.C. despite showing officers ankle monitor from previous immigration arrest in January); N.S. Decl. ¶ 6 (arrested in his vehicle despite providing the officer with his driver's license, work permit, and copy of his asylum application receipt).

## LEGAL STANDARD

Federal Rule of Civil Procedure 23 authorizes federal courts to determine, "[a]t an early practicable time after a person sues" as a class representative, "whether to certify the action as a class action."  Fed. R. Civ. P. 23(c)(1)(A).  To obtain class certification, plaintiffs must first satisfy the four Rule 23(a) requirements:  numerosity, commonality, typicality, and adequacy.  Fed. R. Civ. P. 23(a)(1)–(4); *see Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011).  Plaintiffs must then show that the case meets the requirements of one of Rule 23(b)'s subsections.  Specifically, Rule 23(b)(2) provides that class certification is proper if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2); *see Wal-Mart*, 564 U.S. at 360.

Upon certifying a class, the Court must also appoint class counsel.  Fed. R. Civ. P. 23(g).  To do so, the Court must consider:  "(i) the work counsel has done in identifying or investigating

---

[24] *See also* Javier Doe Decl. ¶ 7; Mateo Doe Decl. ¶ 7; Y.R.M. Decl. ¶¶ 3–4; Franco Doe Decl. ¶¶ 3–4; Julio Doe Decl. ¶ 4; Camilo Doe Decl. ¶ 5; M.P. Decl. ¶ 7 (describing a sibling's experience); Cristina Doe Decl. ¶¶ 3–5 (describing her son's experience); Anamaria Doe Decl. ¶¶ 4–5; Flores Roman Decl. ¶¶ 6–7 (describing a client's experience); Gracia Decl. ¶ 6 (describing her client's experience).

potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv).  The Court "may [also] consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).

## ARGUMENT

### I.    The Proposed Class Satisfies the Requirements of Rule 23(a).

#### A.    The Proposed Class Satisfies the Numerosity Requirement.

The Proposed Class satisfies Rule 23's requirement that it be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Although Rule 23(a)(1) does not impose any specific numerical threshold, courts in this District have generally concluded that "numerosity is satisfied when a proposed class has at least forty members."  *Howard v. Liquidity Servs. Inc.*, 322 F.R.D. 103, 117 (D.D.C. 2017) (quoting *Coleman ex rel. Bunn v. District of Columbia*, 306 F.R.D. 68, 76 (D.D.C. 2015)); *accord Radosti v. Envision EMI, LLC*, 717 F. Supp. 2d 37, 51 (D.D.C. 2010).  In considering "the number of potential class members, the Court need only find an approximation of the size of the class, not 'an exact number of putative class members.'"  *Coleman*, 306 F.R.D. at 76 (citation omitted).  In addition, "classes including future claimants generally meet the numerosity requirement due to the impracticality of counting such class members, much less joining them."  *J.D. v. Azar*, 925 F.3d 1291, 1322 (D.C. Cir. 2019) (cleaned up).  Moreover, "[d]emonstrating impracticability of joinder does not mandate that joinder of all parties be impossible—only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate."  *DL v. District of Columbia*, 302 F.R.D. 1, 11 (D.D.C. 2013) (cleaned up), *aff'd*, 860 F.3d 713, 732 (D.C. Cir. 2017).

Here, the Proposed Class members number in the hundreds.  While precise ICE arrest

9

statistics in the District of Columbia are unavailable, officials with knowledge of the data have claimed that the Executive Orders transferring law enforcement in the District of Columbia to federal control led to "around 1,200 arrests" by ICE between early August and mid-September.[25] Plaintiffs' and declarants' experiences demonstrate that federal agents are prioritizing the number of arrests—and meeting their quotas—over whether those arrests are legal.  *Supra* at 5–8. Plaintiffs have provided information as to at least 31 putative class members whom agents arrested without a warrant and without making an individualized determination of probable cause as required under 8 U.S.C. § 1357(a)(2).[26]  *See also* Flores Roman Decl. ¶¶ 2–4 (an immigration practitioner describing the stark difference before and after August 2025, where prior to August, federal agents would perform targeted arrests with warrants and often release individuals encountered without a warrant, whereas today agents are indiscriminately arresting and detaining everyone encountered, typically targeting Latino individuals); Ana Gracia Decl. ¶¶ 2–3 (same).

Indeed, these numbers almost certainly underestimate the size of the Proposed Class because the class also includes unnamed future claimants.  Such classes "generally meet the numerosity requirement," *J.D.*, 925 F.3d at 1322, because of the "impracticality of counting such class members, much less joining them." 1 Newberg and Rubenstein on Class Actions § 3:15 (6th ed., 2025); *accord A.B. v. Haw. State Dep't of Educ.*, 30 F.4th 828, 838 (9th Cir. 2022) (explaining that when a "class's membership changes continually over time, that factor weighs in favor of

---

[25] Widas Decl., Ex. 10.

[26] *See generally* Escobar Molina Decl.; B.S.R. Decl.; N.S. Decl.; R.S.M.; CASA Decl. ¶¶ 28 (Angel), 33 (Carlos), 34 (Miguel), 35 (Gordon), 36 (Nerwin); Ana Gracia Decl.; Anamaria Doe Decl.; Declaration of Andres Doe ("Andres Doe Decl."); Declaration of Antony Doe ("Antony Doe Decl."); B.R.G. Decl.; C. Decl.; Camilo Doe Decl.; Cristina Doe Decl.; Darwin Lopez Castanon Decl.; Declaration of Daniela Anello ("Anello Decl."); Elias Doe Decl.; Declaration of Fiona Lewis ("Fiona Lewis Decl."); Franco Doe Decl.; Javier Doe Decl.; Julio Doe Decl.; Declaration of Luz Doe ("Luz Doe Decl."); M.P. Decl.; Mateo Doe Decl.; Flores Roman Decl.; W.G.M. Decl.; Y.R.M. Decl.

concluding that joinder of all members is impracticable" and that the class is sufficiently numerous). There are sure to be unnamed future claimants as mass immigration arrests in D.C. remain ongoing. Marcos Charles, the Acting Executive Associate Director of Enforcement and Removal Operations ("ERO") at ICE, announced in an interview that "[w]e're going to continue our operations in the D.C. metro area."[27] And social media posts by Defendant U.S. Customs and Border Protection ("CBP") confirm that immigration arrests are continuing in Washington, D.C.[28]

The Proposed Class therefore meets the numerosity requirement of Rule 23(a)(1).

**B.      The Proposed Class Satisfies the Commonality Requirement.**

The Proposed Class satisfies the commonality requirement, because it presents "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A common question is one that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350; *see also Brown v. District of Columbia*, 928 F.3d 1070, 1081 (D.C. Cir. 2019) ("Rule 23(a)(2) is satisfied if *resolution of each plaintiff's claim* turns on a common *question* (or questions) and if common *proof* leads to a common *answer* (or answers) to that question for each plaintiff." (footnote omitted)). "The presence of a single such common question [susceptible to classwide proof and resolution] can suffice to satisfy Rule 23(a)(2)." *J.D.*, 925 F.3d at 1321.

Commonality is satisfied here because this lawsuit challenges "a system-wide practice or policy that affects all of the putative class members." *Thorpe v. District of Columbia*, 303 F.R.D. 120, 147 (D.D.C. 2014) (quoting *Lane v. Kitzhaber*, 283 F.R.D. 587, 597 (D. Or. 2012)). Here,

---

[27] *Id.*
[28] Widas Decl., Ex. 13.

Defendants have a policy and practice of conducting warrantless arrests without the required probable cause findings:  violation of the immigration laws *and* flight risk.  Each putative class member has been or will be subject to the same policy and practice by Defendants of unlawful warrantless arrests.  It is not "merely that they have all suffered a violation of the same provision of law," but also that putative class members' claims "depend upon a common contention"—here, that Defendants are executing a *specific* unlawful policy and practice.  *Wal-Mart*, 564 U.S. at 350; *see also DL v. District of Columbia*, 713 F.3d 120, 128 (D.C. Cir. 2013) (a holding that defendants "ha[ve] violated [a specific law] as to each class" is only sufficient to find commonality where there is "a uniform policy or practice that affects all class members").

The common questions of law and fact include, but are not limited to:

- Whether Defendants have a policy and practice of conducting warrantless arrests without making an individualized determination of probable cause that an individual is in the United States unlawfully *and* is likely to escape before a warrant can be obtained for the arrest;

- Whether Defendants' policy and practice of conducting warrantless arrests without making an individualized determination of probable cause that an individual is in the United States unlawfully *and* is likely to escape before a warrant can be obtained for the arrests violates the INA, specifically 8 U.S.C. § 1357(a)(2); and

- Whether Defendants' policy and practice of conducting warrantless arrests without making an individualized determination of probable cause that an individual is in the United States unlawfully *and* is likely to escape before a warrant can be obtained for the arrests violates DHS regulations, specifically 8 C.F.R. § 287.8(c)(2)(i)–(ii).

"The ways in which these questions are answered will be common to and dispositive of each and every proposed class member's individual underlying claims.  Stated differently, because the government's polic[y] appl[ies] equally and generally to the entire class, the truth or falsity of these questions would 'resolve an issue that is central to the validity of each one of the claims in one stroke.'"  *Steele v. United States*, 159 F. Supp. 3d 73, 80 (D.D.C.), *on reconsideration in part*, 200 F. Supp. 3d 217 (D.D.C. 2016) (quoting *Wal-Mart*, 564 U.S. at 349–50) (footnote omitted).

Individual factual differences among class members pose no obstacle to commonality here. "[F]actual variations among the class members will not defeat the commonality requirement, so long as a single aspect or feature of the claim is common to all proposed class members." *Bynum v. District of Columbia*, 214 F.R.D. 27, 33 (D.D.C. 2003)*; see also Stephens v. Farmers Rest. Grp.*, 329 F.R.D. 476, 483 (D.D.C. 2019); *Pappas v. District of Columbia*, No. 19-cv-2800, 2024 WL 1111298, at *6 (D.D.C. Mar. 14, 2024) (explaining that an "overarching policy failure [in *Thorpe*] generated a common question" notwithstanding individual variation among class members concerning disabilities under the Americans with Disabilities Act); *Ortega-Melendres v. Arpaio*, 836 F. Supp. 2d 959, 989 (D. Ariz. 2011) (explaining that "[a]lthough the factual circumstances of the individual stops involving the named Plaintiffs differ," the asserted general policy causing violations of civil rights was sufficient for commonality because "[i]n a civil rights suit, commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members" (citation omitted)).  Here, that single feature of the claim common to all proposed class members is Defendants' agents' failure to make a pre-arrest individualized assessment of probable cause as to all members of the class.  The factual differences among proposed class members—such as the specific circumstances of each Plaintiff's and proposed class member's arrest—are immaterial to the claims at issue because their arrests are unlawful regardless of those variations, as they share in common the features that make those arrests unlawful:  lack of an individualized determination of probable cause as to immigration status and/or flight risk.

Accordingly, the Proposed Class satisfies the commonality requirement of Rule 23(a)(2).

### C.    The Proposed Class Satisfies the Typicality Requirement.

Third, Plaintiffs' claims are "typical of the claims . . . of the class."  Fed. R. Civ. P. 23(a)(3). Typicality and commonality overlap because "[b]oth serve as guideposts for determining whether

13

under the particular circumstances maintenance of a class action is economical." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). To that end, the two inquiries "tend to merge." *Id.* For its part, typicality "is satisfied if each class member's claim arises from the same course of events that led to the claims of the representative parties and each class member makes similar legal arguments to prove the defendant's liability." *Pigford v. Glickman*, 182 F.R.D. 341, 349 (D.D.C. 1998) (citing *Baby Neal for and by Kanter v. Casey,* 43 F.3d 48, 57 (3d Cir. 1994)). The typicality requirement "has been liberally construed." *Bynum*, 214 F.R.D. at 34. Importantly, the underlying facts need not be exactly the same for typicality; so long as "the claims or defenses of the representatives and the members of the class stem from a single event or a unitary course of conduct, or if they are based on the same legal or remedial theory," "typicality is ordinarily met." *J.D.*, 925 F.3d at 1322 (citation omitted). *See also In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 27 (D.D.C. 2001) ("[T]he existence of varying fact patterns to support the claims of individual class members does not mandate a finding of a lack of typicality, as long as the claims arise out of the same legal or remedial theory." (citation omitted)); *Ortega-Melendres*, 836 F. Supp. 2d at 989–90.

Here, the claims of the individual plaintiffs are typical of those of the members of the Proposed Class. Each Plaintiff was arrested without a warrant and without the required probable cause findings. *See* Escobar Molina Decl. ¶¶ 5–8 (describing arrest without a warrant, without arresting agents asking Mr. Escobar Molina any questions about his immigration status or ties to the community); B.S.R. Decl. ¶¶ 14–16 (same); Declaration of R.S.M. ("R.S.M. Decl.") ¶¶ 3–6 (describing arrest without a warrant, without arresting agents asking R.S.M. any questions about her ties to the community); N.S. Decl. ¶¶ 5–7 (same), 11 (failing to provide a warrant). Each Plaintiff's claims arise from Defendants' policy and practice of unlawful warrantless arrests—

therefore, "the same course of events." *Pigford*, 182 F.R.D. at 349. These "claims arise out of the same legal or remedial theory" as the claims of the entire classes. *In re Lorazepam & Clorazepate*, 202 F.R.D. at 27 (internal quotations and citation omitted); *J.D.*, 925 F.3d at 1322. And, it is "[t]he overarching" policy and practice that "is the linchpin of [the] plaintiffs'" complaint. *In re Lorazepam & Clorazepate*, 202 F.R.D. at 28 (internal quotations and citation omitted).

Accordingly, Plaintiffs' claims satisfy the typicality requirement of Rule 23(a)(3).

### D.    The Proposed Class Representatives Satisfy the Adequacy Requirement.

Finally, Proposed Class Representatives will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement "embraces two components: the class representative (i) 'must not have antagonistic or conflicting interests with the unnamed members of the class' and (ii) 'must appear able to vigorously prosecute the interests of the class through qualified counsel.'" *J.D.*, 925 F.3d at 1312 (quoting *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997)).

 Both elements are met here. First, Proposed Class Representatives do not have antagonistic or competing interests with the unnamed members of the class. As discussed above, Plaintiffs and putative class members are all subject to Defendants' unlawful policy and practice of making warrantless arrests without individualized determinations of probable cause, and are suffering the same injuries, including detention and separation from their families, as a result of being unlawfully arrested under Defendants' policy and practice. Accordingly, Plaintiffs and putative class members share a common interest in ensuring the protection of their rights. Plaintiffs are motivated to pursue this action on behalf of themselves and others who have been or will be subject to the same unlawful policy and practice. *See* Escobar Molina Decl. ¶¶ 22–28; B.S.R. Decl. ¶¶ 26–33; N.S. Decl. ¶¶ 27–33; R.S.M. Decl. ¶¶ 18–24. Therefore, there is no current or potential conflict of interest between Plaintiffs and putative class members, who seek the same

declaratory and injunctive relief for the same unlawful policy and practice.

Second, Proposed Class Representatives are able to vigorously prosecute the interests of the class through qualified counsel. Adequacy "does not require either that the proposed class representatives have legal knowledge or a complete understanding of the representative's role in class litigation." *Thorpe*, 303 F.R.D. at 151. "Instead, courts typically decline certification only in 'flagrant cases, where the putative class representatives display an alarming unfamiliarity with the suit, display an unwillingness to learn about the facts underlying their claims, or are so lacking in credibility that they are likely to harm their case.'" *Garnett v. Zeilinger*, 301 F. Supp. 3d 199, 210–11 (D.D.C. 2018) (quoting *Howard*, 322 F.R.D. at 135). Here, Plaintiffs understand the responsibility of being a class representative. *See* Escobar Molina Decl. ¶¶ 22–28; B.S.R. Decl. ¶¶ 26–33; N.S. Decl. ¶¶ 27–33; R.S.M. Decl. ¶¶ 18–24. They are all willing to protect the class's interests. Escobar Molina Decl. ¶¶ 22–28; B.S.R. Decl. ¶¶ 26–33; N.S. Decl. ¶¶ 27–33; R.S.M. Decl. ¶¶ 18–24. Generally, their declarations "demonstrate an awareness of the facts of this case." *Garnett*, 301 F. Supp. at 211. This is "sufficient to make them adequate representatives." *Id.*

Accordingly, Plaintiffs satisfy the adequacy requirement of Rule 23(a)(4).

## II.    Class Certification is Appropriate Under Rule 23(b)(2).

Certification of Plaintiffs' proposed class is appropriate under Rule 23(b)(2). Through their policy and practice, Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The key to this requirement is "the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 360 (citation omitted).

Courts in this District have interpreted Rule 23(b)(2) to impose two requirements: "(1) the defendant's action or refusal to act must be generally applicable to the class, and (2) plaintiff must

seek final injunctive relief or corresponding declaratory relief on behalf of the class." *Steele*, 159 F. Supp. 3d at 81 (citation omitted); *Bynum*, 214 F.R.D. at 37–38; *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 182 (D.D.C. 2015). Both are satisfied here. First, Plaintiffs, on behalf of all putative class members, challenge a policy and practice of Defendants that impacts all members of the putative class: The policy and practice of effectuating an arrest without a warrant and without a pre-arrest, individualized assessment of probable cause that the person both (1) is in the United States unlawfully *and* (2) poses a flight risk. The class is centered around an action by Defendants that is "generally applicable to the class." *Steele*, 159 F. Supp. 3d at 81 (internal quotations and citations omitted). Second, Plaintiffs, on behalf of all putative class members, seek declaratory and injunctive relief that would benefit the whole class, including a single injunction prohibiting Defendants from conducting warrantless arrests without individualized determinations of probable cause that the person is in the United States unlawfully and is a flight risk. *See* Compl., ECF 1, Prayer for Relief E–J. This is precisely the type of case for which Rule 23(b)(2) is designed, as "Rule 23(b)(2) exists so that parties and courts, especially in civil rights cases like this, can avoid piecemeal litigation when common claims arise from systemic harms that demand injunctive relief." *DL*, 860 F.3d at 726.

This Court and courts across the country have regularly certified classes in the immigration context, including those raising concerns around unlawful immigration arrests. *See, e.g.*, *J.D.*, 925 F.3d at 1312 (upholding certification of a class of pregnant noncitizen unaccompanied children in Office of Refugee Resettlement custody); *R.I.L-R*, 80 F. Supp. 3d at 182 (certifying a class of noncitizen plaintiffs subject to a DHS release policy and seeking to enjoin ICE from applying that policy to deny release); *United Farm Workers v. Noem*, 785 F. Supp. 3d 672, 731 (E.D. Cal. 2025) (certifying two provisional classes, one challenging unlawful detentive stops without reasonable

suspicion and another challenging warrantless arrests without a flight risk assessment), *appeal docketed*, No. 25-4047 (9th Cir.); *Ortega-Melendres*, 836 F. Supp. 2d at 992–93 (certifying a class of all Latino individuals who had been or would be in future "stopped, detained, questioned or searched" by sheriff's office "while driving or sitting in a vehicle on a public roadway or parking area" in the county where plaintiffs brought Fourth Amendment and equal protection claims).[29]

Accordingly, Plaintiffs' Proposed Class satisfies the requirement of Rule 23(b)(2).

### III. The Court Should Designate Plaintiffs' Counsel as Class Counsel.

Upon certifying a class, the Court must also appoint class counsel. Fed. R. Civ. P. 23(g)(1). To do so, the Court must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The court "may [also] consider any other matter pertinent to counsel's ability to fairly and adequately represent the interest of the class." Fed. R. Civ. P. 23(g)(1)(B).

Plaintiffs' counsel satisfy all four criteria. Plaintiffs are jointly represented by attorneys from several experienced organizations: Amica Center for Immigrant Rights ("Amica Center"), the National Immigration Project, the American Civil Liberties Union of the District of Columbia ("ACLU-DC"), the American Civil Liberties Union Immigrants' Rights Project ("ACLU IRP"), the Washington Lawyers' Committee for Civil Rights and Urban Affairs ("Committee"), and

---

[29] *See also, e.g.*, *Ramirez v. ICE*, 338 F. Supp. 3d 1, 50 (D.D.C. 2018) (certifying a class of noncitizen plaintiffs, previously deemed unaccompanied children, whose statutory right to the least restrictive detention setting available was violated); *Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Pompeo*, 334 F.R.D. 449, 465 (D.D.C. 2020) (certifying a class of noncitizen plaintiffs seeking injunctive relief ordering a plan for prompt adjudication of their visas); *Gonzalez v. ICE*, 975 F.3d 788, 808, 812 (9th Cir. 2020) (upholding certification of class of noncitizens subject to immigration detainers based on ICE's unlawful practice of making probable cause determinations based on "only a check of an online database").

Covington & Burling LLP ("Covington").  *See generally* Declaration of Adina Appelbaum ("Amica Center Decl."); Declaration of Sirine Shebaya ("National Immigration Project Decl."); Declaration of Aditi Shah ("ACLU-DC Decl."); Declaration of Kathryn Huddleston ("ACLU-IRP Decl."); Declaration of Madeleine Gates ("Committee Decl."); Declaration of Jehan A. Patterson ("Covington Decl.").

As the Complaint demonstrates, counsel have already devoted "substantial time and resources to identifying and investigating potential claims in the action," and will continue to do so. *Encinas v. J.J. Drywall Corp.*, 265 F.R.D. 3, 9 (D.D.C. 2010) (conditionally certifying a class where "[c]ounsel have already committed substantial time and resources to identifying and investigating potential claims in the action").  Counsel at each organization has significant experience litigating class actions, litigating complex litigation in federal court, litigating immigration matters, working alongside noncitizens, and working alongside civil rights plaintiffs. *See* Amica Center Decl. ¶¶ 3, 6–7; National Immigration Project Decl. ¶¶ 4–6,8–9, 12; ACLU-DC Decl. ¶¶ 4–6, 10–12; ACLU-IRP Decl. ¶¶ 2–4; Committee Decl. ¶¶ 4–5; Covington Decl. ¶¶ 5–12.  Counsel at the organizations are well-versed in the intricacies of immigration law, federal law governing immigration enforcement, civil rights law, and law governing class proceedings generally.  *See* Amica Center Decl. ¶¶ 3, 5–8; National Immigration Project Decl. ¶¶ 4–6, 8–12; ACLU-DC Decl. ¶¶ 3–6, 10–14; ACLU-IRP Decl. ¶¶ 2–4; Committee Decl. ¶¶ 4–5; Covington Decl. ¶¶ 5–13, 16–17.  And, together, these seven organizations have ample resources that they are prepared to commit to representing the class.  *See* Amica Center Decl. ¶ 9; National Immigration Project Decl. ¶ 13; ACLU-DC Decl. ¶ 15; ACLU-IRP Decl. ¶ 5; Committee Decl. ¶¶ 7–9; Covington Decl. ¶ 21.

Accordingly, the Court should appoint Plaintiffs' counsel as class counsel in this case.

## CONCLUSION

For the foregoing reasons, the Court should grant the motion for class certification, appoint Plaintiffs Escobar Molina, B.S.R., N.S., and R.S.M. as class representatives for the Warrantless Arrest Class, and appoint the undersigned as class counsel.

October 3, 2025

*s/ Adina Appelbaum*
Adina Appelbaum (D.C. Bar No. 1026331)
Ian Austin Rose (Md. Bar No. 2112140043)
Samantha Hsieh (Va. Bar No. 90800)[**]
**AMICA CENTER FOR IMMIGRANT RIGHTS**
1025 Connecticut Avenue NW, Suite 701
Washington, D.C. 20036
(202) 331-3320
adina@amicacenter.org
austin.rose@amicacenter.org
sam@amicacenter.org

*s/ Aditi Shah*
Aditi Shah (D.C. Bar No. 90033136)
Scott Michelman (D.C. Bar No. 1006945)
**AMERICAN CIVIL LIBERTIES UNION**
**FOUNDATION OF THE DISTRICT OF COLUMBIA**
529 14th Street NW, Suite 722
Washington, D.C. 20045
(202) 457-0800
ashah@acludc.org
smichelman@acludc.org

Kathryn Huddleston (Tex. Bar No.
24121679)[*++]
**AMERICAN CIVIL LIBERTIES UNION**
**FOUNDATION**
915 15th Street NW, 7th Floor
Washington, D.C. 20005
(212) 549-2500
khuddleston@aclu.org

*s/ Sirine Shebaya*
Sirine Shebaya (D.C. Bar No. 1019748)
Yulie Landan (Cal. Bar No. 348958)[*+]
Bridget Pranzatelli (D.C. Bar No. 90029726)
**NATIONAL IMMIGRATION PROJECT**
1763 Columbia Road NW, Suite 175
Washington, D.C. 20009
(213) 430-5521
sirine@niplg.org
yulie@nipnlg.org
bridget@nipnlg.org

Respectfully submitted,

*s/ Jehan A. Patterson*
Jehan A. Patterson (D.C. Bar No. 1012119)
Chris Kimmel (D.C. Bar No. 1047680)[***]
Alexandra Widas (D.C. Bar No. 1645372)[***]
Hassan Ahmad (D.C. Bar No. 1030682)[***]
Sean Berman (D.C. Bar No. 90026899)
Austin Riddick (D.C. Bar No. 90018117)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, D.C. 20001
(202) 662-6000
jpatterson@cov.com
ckimmel@cov.com
awidas@cov.com
hahmad@cov.com
sberman@cov.com
ariddick@cov.com

Eva H. Lilienfeld (N.Y. Bar No. 6143085)[**]
Graham Glusman (N.Y. Bar No. 6099535)[**]
**COVINGTON & BURLING LLP**
620 Eighth Avenue
New York, NY 10018
(212) 841-1000
elilienfeld@cov.com
gglusman@cov.com

*s/ Madeleine Gates*
Madeleine Gates (D.C. Bar No. 90024645)
**WASHINGTON LAWYERS' COMMITTEE FOR**
**CIVIL RIGHTS AND URBAN AFFAIRS**
700 14th Street NW, #400
Washington, D.C. 20005
(202) 319-1000
madeleine_gates@washlaw.org

*Attorneys for Plaintiffs*

[*]*Motion for Admission* pro hac vice
*forthcoming.*
[**]*Motion for Admission* pro hac vice *pending.*
[***]*Petition for Admission pending.*

[+]*Not Admitted in D.C.; working remotely from N.Y. and admitted in Cal. only*
[++]*Not Admitted in D.C.; working remotely under supervision of D.C. Bar member, practice limited to federal courts in D.C., and admitted in Ariz. and Tex. only.*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 3, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system. I certify that this motion will also be served on counsel for Defendants via e-mail, in accordance with Federal Rule of Civil Procedure 5(b).

Dated: October 3, 2025                    Respectfully submitted,

                                      *s/ Jehan A. Patterson*
                                      Jehan A. Patterson (D.C. Bar No. 1012119)
                                      COVINGTON & BURLING LLP
                                      One CityCenter
                                      850 Tenth Street NW
                                      Washington, D.C. 20001
                                      (202) 662-6000
                                      jpatterson@cov.com

                                      *Attorney for Plaintiffs*

23