# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSE ESCOBAR MOLINA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY, et al., <br><br> Defendants. | Civil Action No. 25-CV-3417-PLF |

## DECLARATION OF JOSEPH SIMON

Pursuant to the provisions of 28 U.S.C. § 1746, I, Joseph Simon, Deputy Field Office Director for the Enforcement and Removal Operations (ERO) Washington Field Office, U.S. Immigration Customs Enforcement (ICE), of the Department of Homeland Security (DHS), hereby declare under penalty of perjury that the following statements are true and correct to the best of my knowledge, information, and belief:

1. I am employed as Deputy Field Office Director (DFOD) within the ERO Washington Field Office. I have held this position since October 20, 2022. In this position, I am responsible for the management of the field office's detained and non-detained portfolios and intake and removal operations. From August 10, 2025, until October 18, 2025, I served as the acting Field Office Director (a)FOD) of the ERO Washington Field Office and then returned to my position of DFOD.

2. I have been employed by ICE since September 2009. Prior to my position as DFOD, I served as an Immigration Enforcement Agent from 2009 to 2011 with the ERO Baltimore Field Office. From 2011 to September 2012, I worked in the Newark Field Office as an Immigration

Enforcement Agent. In September 2012 until October 2015, I served as a Deportation Officer in the Newark Field Office. I relocated to Washington, DC, ICE Headquarters as a Detention and Deportation Officer within the ERO Removal Division and worked in the role from October 2015 until January 2017. From January 2017 until January 2019, I served as Deputy Chief of Staff in the ICE Office of the Director. From January 2019 until March 2020, I served as ERO Chief of Staff. From March of 2020 until October of 2022, I served as an Assistant Field Office Director for the ERO Washington Field Office.

3. ICE is the principal investigative arm of the United States Department of Homeland Security (DHS). ICE's primary mission is to promote homeland security and public safety through the criminal and civil enforcement of federal laws governing border control, customs, trade, and immigration. A critical ICE mandate is the enhancement of public safety and the security of the American public through the enforcement of our immigration laws.

4. ERO is one of the two principal operational components in ICE, the other being Homeland Security Investigations (HSI). ERO oversees programs and conducts operations to identify and apprehend removable aliens, to detain these individuals when necessary, and to remove aliens illegally in the United States or otherwise removable from the United States. ERO manages all logistical aspects of the removal process, including domestic transportation, detention, alternatives to detention programs, bond management, and supervised release. In addition, ERO repatriates aliens ordered removed from the United States to more than 170 countries around the world.

5. As one of two DFODs, I am responsible for supervising all ERO personnel in the Washington area of responsibility, which includes Washington, DC, and Virginia. My duties include oversight of subordinate supervisory staff and Deportation Officers who manage the

complete process of immigration proceedings and detention, including but not limited to, arrest, processing and detention of aliens present in the United States in violation of federal law.

6. I am providing this declaration in support of the government's response to Plaintiff's Motion for a Preliminary Injunction, to Stay Agency Action, and for Provisional Class Certification (ECF No. 17) and Plaintiffs' Motion for Class Certification (ECF No. 19) in *Escobar Molina v. U.S. Dep't of Homeland Sec.*, Civil A. No. 25-3417 (BAH) (D.D.C. filed Oct. 3, 2025).

7. I make this declaration in my official capacity. The statements contained in this declaration are based upon my personal knowledge of ERO policies and procedures, my review of administrative files, my review of the electronic databases kept by ICE in the ordinary course of business, and information provided to me by other ICE employees in the course of my official duties.

8. Beginning August 11, 2025, DHS components ICE ERO and ICE HSI, along with various other federal law enforcement agencies, engaged in "Operation Make DC Safe and Beautiful" to apprehend removable aliens in Washington, DC.

9. Under Executive Order 14252, "Make DC Safe and Beautiful," ERO deployed resources to address the crime surge in Washington, DC. ERO officers conducted targeted enforcement operations under Title 8 (T8) authorities. These efforts focused on at large cases within DC. Additionally, ERO officers collaborated with the Metropolitan Police Department to assist with afternoon and evening traffic checkpoint operations, aiming to enhance public safety and criminal enforcement. ERO officers also collaborated with officers and agents in federal law enforcement agencies throughout the operation.

10. Throughout this surge operation in Washington, DC, ERO Washington has had approximately 70–120 ICE officers from other field offices detailed to our office at any given time.

Other law enforcement agencies also made T8 civil immigration arrests throughout the operation. When the other non-ICE agencies made arrests, they transported arrestees to the ERO Washington Field Office. Officers then fingerprinted, ran systems-checks, and processed the arrestees. ICE then determined what, if any, further enforcement action or appropriate next step would take in the case.

**Arrests and Warrants**

11. I and other supervisory immigration officials, including Supervisory Detention and Deportation Officers (SDDOs), have the authority to issue arrest warrants for immigration violations.

12. Throughout the operation, ICE ERO Deportation Officers (DOs) identified targets amenable to immigration enforcement and submitted this information to an SDDO for review. If the SDDO approved apprehending the removable alien, the SDDO would issue a Warrant for Arrest of Alien (Form I-200) or Warrant of Removal/Deportation (Form I-205).

13. During the operation, all ICE ERO officers were divided into teams performing different functions, including arrest, transport, and/or processing.

14. When ICE ERO officers encounter a target, they inform the alien there is a warrant for their arrest and serve them with a copy of the document either on scene or upon arrival at an ERO processing center.

15. When ERO officers encounter a removable alien other than the target during an arrest operation, if an SDDO or other supervisor is on scene, he may fill out and sign an I-200 by hand in his government vehicle. Officers then inform the alien of the I-200 and serve the alien a copy of that document either on scene or when they arrive at an ERO processing center.

16. After each arrest during Operation Make DC Safe and Beautiful, the alien was immediately transported to the ERO processing center in Chantilly, Virginia.

17. During processing, ERO officers fingerprint, interview, and create a record of individuals in their custody in the appropriate database.

**Probable Cause and Flight Risk**

18. ERO officers are trained to evaluate whether probable cause exists to arrest an alien and whether that alien is likely to escape before a warrant can be obtained. ERO officers receive refresher training on arrests twice a year, which includes training on the Fourth Amendment, 8 U.S.C. § 1357, and 8 C.F.R. § 287.8. The most recent trainings were held on August 13, 19, and 21, 2025 in the Washington Field Office.

19. ICE officers and agents are encouraged to document the basis for determining that an alien was likely to escape before a warrant could be obtained in the I-213.

**Individual Allegations**

20. Jose Escobar Molina was arrested on August 21, 2025, by U.S. Customs and Border Protection (CBP) and transferred to ICE ERO custody. ERO learned that his Temporary Protected Status was expired but not affirmatively withdrawn by U.S. Citizenship and Immigration Service. Based on this, ERO released Mr. Molina from custody.

21. B.S.R. was arrested on August 18, 2025, by CBP. B.S.R was transported to ICE ERO custody, where ERO released B.S.R from custody and placed him back on an ICE Alternatives to Detention (ATD) program he was previously enrolled in. He is required to follow certain terms as a condition of his enrollment. Based upon ICE records, B.S.R. had been served with a Notice to Appear (NTA) on January 29, 2025, and is currently in removal proceedings.

22. N.S. was arrested on August 12, 2025, by ICE ERO. N.S. was issued an NTA on August 13, 2025, and is currently in removal proceedings. ICE records indicate that ICE officers identified themselves as police with immigration, displayed badges and had marked law enforcement gear, established positive identification and placed N.S. under arrest. On or about August 27, 2025, N.S. was transferred to a detention facility outside the ERO Washington area of responsibility. ICE records indicate that N.S. was released from ICE custody and enrolled in ATD on or about September 9, 2025.

23. R.S.M. was arrested on August 26, 2025, by ICE ERO. According to ICE records, this arrest occurred after a consensual encounter and pedigree questions where an immigration officer determined that R.S.M. illegally entered the United States without inspection and was amenable to an enforcement action. ICE records indicate that on that same day, R.S.M. was served with a NTA and released on an Order of Recognizance with enrollment in ATD as a condition of release. R.S.M is currently in removal proceedings.

Signed this 31st day of October 2025.

_____
Joseph Simon
Deputy Field Office Director