# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

JOSÉ ESCOBAR MOLINA, *et al.*, *individually and on behalf of all others similarly situated*,

     *Plaintiffs*,

    v.

U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,

     *Defendants*.

Civil Action No. 25-3417 (BAH)

---

**PLAINTIFFS' COMBINED REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION, TO STAY AGENCY ACTION, AND FOR PROVISIONAL CLASS CERTIFICATION AND MOTION FOR CLASS CERTIFICATION**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 2

I.      Plaintiffs Are Likely to Succeed on the Merits of their Claims .......................................... 2

        A.      Plaintiffs Have Standing to Bring Their Claims ....................................................... 2

        B.      The INA Does Not Strip this Court of Jurisdiction Over Plaintiffs' Claims ........ 12

        C.      Defendants' Agents Arrested Plaintiffs Without a Warrant and Without
                Making Individualized Determinations of Flight Risk ........................................ 15

        D.      Plaintiffs Are Likely to Succeed in Establishing Final Agency Action ............... 20

        E.      Plaintiffs Are Likely to Succeed on Their *Accardi* Claims .................................. 23

        F.      Plaintiffs Do Not Seek an Impermissible "Follow the Law" Injunction ............. 24

        G.      Plaintiffs State a Claim Against the DEA ............................................................ 25

        H.      Defendants' Argument Regarding a "Mandatory Injunction" Is Incorrect ......... 26

II.     Plaintiffs Will Suffer Irreparable Harm Absent Injunctive Relief. .................................. 26

III.    The Balance of Equities and the Public Interest Strongly Favor Plaintiffs. .................... 27

IV.     The Court Should Certify the Proposed Class. ............................................................ 28

        A.      The Individual Plaintiffs Have Standing to Represent the Class .......................... 28

        B.      Section 1252(f)(1) Does Not Bar Classwide Injunctive Relief ........................... 28

        C.      Plaintiffs Meet All the Requirements of Rule 23 ................................................ 32

        D.      Plaintiffs Satisfy the Requirements of Rule 23(b)(2) as They Seek Relief
                That Is Appropriate for the Class as a Whole ..................................................... 40

CONCLUSION ................................................................................................................ 41

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguilar v. Immigr. & Customs Enf't Div. of the U.S. Dep't of Homeland Sec.*,
811 F. Supp. 2d 803 (S.D.N.Y. 2011).......................................................................................7

*Ahmed v. Noem*,
2025 WL 2299447 (D.D.C. Aug. 8, 2025) ......................................................................13, 14

*Aracely, R. v. Nielsen*,
319 F. Supp. 3d 110 (D.D.C. 2018).....................................................................................22, 26

*Barham v. Ramsey*,
434 F.3d 565 (D.C. Cir. 2006).............................................................................................16, 19

*Bark v. U.S. Forest Service*,
37 F. Supp. 3d 41 (D.D.C. 2014).............................................................................................22

*Blake v. Fed. Bureau of Investigation*,
298 F. Supp. 3d 77 (D.D.C. 2018)............................................................................................26

*Bogomazov v. U.S. Dep't of Homeland Sec.*,
2022 WL 769801 (S.D. Fla. Feb. 27, 2022) ..........................................................................15

*Coleman ex rel. Bunn v. District of Columbia*,
306 F.R.D. 68 (D.D.C. 2015)..................................................................................................33

*Bynum v. District of Columbia*,
214 F.R.D. 27 (D.D.C. 2003)...........................................................................36, 38, 40, 41

*Canal A Media Holding, LLC v. United States Citizenship & Immigr. Servs.*,
964 F.3d 1250 (11th Cir. 2020) ................................................................................................14

*Castañon Nava v. Dep't of Homeland Sec.*,
2025 WL 2842146 (N.D. Ill. Oct. 7, 2025)..............................................................................16

*Church v. City of Huntsville*,
30 F.3d 1332 (11th Cir. 1994) ..............................................................................................5, 7

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983).......................................................................................................*passim*

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)...............................................................................................................7, 8

*Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*,
603 U.S. 799 (2024)............................................................................................20, 22

*CropLife Am. v. E.P.A.*,
329 F.3d 876 (D.C. Cir. 2003) ...................................................................................22

*D.L. v. District of Columbia*,
860 F.3d 713 (D.C. Cir. 2017) ...................................................................................34

*Damus v. Nielsen*,
313 F. Supp. 3d 317 (D.D.C. 2018) ................................................................. *passim*

*Davila v. United States*,
247 F. Supp. 3d 650 (W.D. Pa. 2017)........................................................................19

*Davis v. U.S. Parole Comm'n*,
2025 WL 457779 (D.D.C. Feb. 11, 2025) .................................................................36

*Dep't of Com. v. New York*,
588 U.S. 752 (2019).....................................................................................................3

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
591 U.S. 1 (2020).................................................................................................13, 14

*Diamond Alternative Energy, LLC v. Env't Prot. Agency*,
606 U.S. 100 (2025)...................................................................................................11

*Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*,
878 F.3d 371 (D.C. Cir. 2017) .....................................................................................2

*Equal Rts. Ctr. v. Post Properties, Inc.*,
633 F.3d 1136 (D.C. Cir. 2011) .................................................................................10

*Food and Drug Admin. v. All. for Hippocratic Med.*,
602 U.S. 367 (2024)..............................................................................................10, 11

*Garland v. Aleman Gonzalez*,
596 U.S. 543 (2022).................................................................................30, 31, 32, 39

*General Telephone Company of Southwest v. Falcon*,
457 U.S. 147 (1982)...................................................................................................35

*Gerstein v. Pugh*,
420 U.S. 103 ..............................................................................................................36

*Gonzales v. FedEx Ground Package Sys., Inc*,
2013 WL 12080223 (S.D. Fla. Aug. 1, 2013)............................................................15

*Gonzalez v. DHS*,
 508 F.3d 1227 (9th Cir. 2007) ...................................................................31

*Gonzalez v. U.S. Immigr. Customs Enf't*,
 975 F.3d 788 (9th Cir. 2020) ....................................................................36

*Haaland v. Brackeen*,
 599 U.S. 255 (2023)....................................................................................3

*Haase v. Sessions*,
 835 F.2d 902 (D.C. Cir. 1987) ....................................................................3

*Hall v. District of Columbia*,
 867 F.3d 138 (D.C. Cir. 2017)....................................................................21

*Hardy v. District of Columbia*,
 283 F.R.D. 20 (D.D.C. 2012)......................................................................36

*Havens Realty Corp. v. Coleman*,
 455 U.S. 363 (1982)....................................................................................11

*Hinton v. District of Columbia*,
 567 F. Supp. 3d 30 (D.D.C. 2021) ...........................................................3, 5

*Howard v. Liquidity Servs. Inc.*,
 322 F.R.D. 103 (D.D.C. 2017)....................................................................33

*Immigrant Defs. L. Ctr. v. Noem*,
 781 F. Supp. 3d 1011 (C.D. Cal. 2025) ....................................................32

*J.D. v. Azar*,
 925 F.3d 1291 (D.C. Cir. 2019)...................................................33, 38, 39

*Jennings v. Rodriguez*,
 583 U.S. 281 (2018)....................................................................................13

*Jones v. Goord*,
 190 F.R.D. 103 (S.D.N.Y. 1999) ...............................................................41

*Karem v. Trump*,
 404 F. Supp. 3d 203 (D.D.C. 2019) .............................................................4

*Kidd v. Mayorkas*,
 734 F. Supp. 3d 967 (C.D. Cal. 2024) ..................................................30, 39

*Kingdom v. Trump*,
 2025 WL 1568238 (D.D.C. June 3, 2025) .................................................36

iv

*League of United Latin Am. Citizens v. Exec. Off. of the President,
    780 F. Supp. 3d 135 (D.D.C. 2025) ................................................................11, 12

League of Women Voters of U.S. v. Newby,
    838 F.3d 1 (D.C. Cir. 2016) .....................................................................26, 27, 28

Lujan v. National Wildlife Federation,
    497 U.S. 871 (1990) .............................................................................................22

M.G.U. v. Nielsen,
    325 F. Supp. 3d 111 (D.D.C. 2018) ....................................................................26

Mahdawi v. Trump,
    136 F.4th 443 (2d Cir. 2025) ...............................................................................13

Maryland v. Wilson,
    519 U.S. 408 (1997) ...............................................................................................9

Massachusetts v. EPA,
    549 U.S. 497 (2007) .............................................................................................12

McComb v. Jacksonville Paper Co.,
    336 U.S. 187 (1949) .............................................................................................25

Melendres v. Arpaio,
    695 F.3d 990 (9th Cir. 2012) .................................................................................5

*Moreno v. Napolitano,
    213 F. Supp. 3d 999 (N.D. Ill. 2016) ..................................................................16

Moreno v. Napolitano,
    2014 WL 4911938 (N.D. Ill. Sept. 30, 2014) .....................................................37

N.S. v. Dixon,
    141 F.4th 279 (D.C. Cir. 2025) ................................................................29, 30, 32

N.S. v. Hughes,
    335 F.R.D. 337 (D.D.C. 2020) ............................................................................33

Nat'l Sec. Couns. v. CIA,
    898 F. Supp. 2d 233 (D.D.C. 2012) ......................................................................5

Nat'l Treasury Emps. Union v. Vought,
    149 F.4th 762 (D.C. Cir. 2025) .....................................................................10, 21

*Nava v. Dep't of Homeland Sec.,
    435 F. Supp. 3d 880 (N.D. Ill. 2020) ............................................................15, 22

*In re Navy Chaplaincy*,
   697 F.3d 1171 (D.C. Cir. 2012) ........................................................................3

*Nielsen v. Preap*,
   586 U.S. 392 (2019) ........................................................................................13

*Nken v. Holder*,
   556 U.S. 418 (2009) ........................................................................................32

*Noem v. Vasquez Perdomo*,
   2025 WL 2585637 (Sept. 8, 2025) ..................................................................7, 8

*Nw. Immigrant Rts. Project v. United States Citizenship & Immigr. Servs.*,
   496 F. Supp. 3d 31 (D.D.C. 2020) ..................................................................10

*Orellana v. Nobles Cnty.*,
   230 F. Supp. 3d 934 (D. Minn. 2017) ............................................................16

*Parsons v. Ryan*,
   289 F.R.D. 513 (D. Ariz. 2013) ......................................................................35

*Philadelphia Yearly Meeting of Religious Soc'y of Friends v. U.S. Dep't of Homeland Sec.*,
   767 F. Supp. 3d 293 (D. Md. 2025) ................................................................29

*Planned Parenthood of Greater N.Y. v. U.S. Dep't of Health & Hum. Servs.*,
   2025 WL 2840318 (D.D.C. Oct. 7, 2025) .................................................21, 23, 29, 30

*POET Biorefining, LLC v. Env't Prot. Agency*,
   970 F.3d 392 (D.C. Cir. 2020) ..................................................................20, 22

*R.I.L.-R v. Johnson*,
   80 F. Supp. 3d 164 (D.D.C. 2015) ......................................................... *passim*

*Ramirez v. U.S. Immig. & Customs Enf't*,
   568 F. Supp. 3d (D.C. Cir. 2021) ....................................................................25

*Ramirez v. U.S. Immigr. & Customs Enf't*,
   310 F. Supp. 3d 7 (D.D.C. 2018) ....................................................................22

*Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Noem*,
   2025 WL 1825431 (D.D.C. July 2, 2025) ................................................30, 31

*\*Reno v. Am.-Arab Anti-Discrimination Comm.*,
   525 U.S. 471 (1999) ....................................................................................14, 31

*Riggs v. City of Albuquerque*,
   916 F.2d 582 (10th Cir. 1990) ..........................................................................6

*Robertson v. District of Columbia*,
762 F. Supp. 3d 34 (D.D.C. 2025) ............................................................9

*Schmidt v. Lessard*,
414 U.S. 473 (1974)...............................................................................25

*Sibron v. New York*,
392 U.S. 40 (1968).........................................................................20, 36

*Sierra Club v. Env't Prot. Agency*,
873 F.3d 946 (D.C. Cir. 2017)..............................................................23

*Steele v. United States*,
159 F. Supp. 3d 73 (D.D.C. 2016) .................................................40, 41

*Students for Fair Admissions, Inc. v. President and Fellows of Harvard Coll.*,
600 U.S. 181 (2023).................................................................................9

*Tazu v. Attorney General*,
975 F.3d 292 (3d Cir. 2020)..................................................................15

*Texas v. Holder*,
2012 WL 13070059 (D.D.C. May 21, 2012) ........................................29

*Texas v. United States Dep't of Homeland Sec.*,
123 F.4th 186 (5th Cir. 2024) .........................................................29, 31

*U.S. Conf. of Mayors v. Great-West Life & Annuity Ins. Co.*,
2018 WL 659409 (D.D.C. Jan. 25, 2018) ...............................................4

*\*United Farm Workers v. Noem*,
785 F. Supp. 3d 672 (E.D. Cal. 2025)............................................ *passim*

*United States v. Abdi*,
2005 WL 6119695 (S.D. Ohio Sept. 12, 2005) ....................................17

*United States v. Cantu*,
519 F.2d 494 (7th Cir. 1975) ................................................................16

*United States v. Green*,
670 F.2d 1148 (D.C. Cir. 1981)........................................................1, 21

*United States v. Khan*,
324 F. Supp. 2d 1177 (D. Colo. 2004)..................................................17

*United States v. Philip Morris USA, Inc.*,
566 F.3d 1095 (D.C. Cir. 2009)............................................................25

*United States v. Quintanilla-Chavez,*
2025 WL 2982191 (W.D. Tex. Oct. 20, 2025) ...................................................................17

*United States v. Texas,*
599 U.S. 670 (2023) ....................................................................................................7, 8

*United States v. Van Griffin,*
874 F.2d 634 (9th Cir. 1989) ..............................................................................................4

*Urb. Sustainability Dirs. Network v. U.S. Dep't of Agric.,*
2025 WL 2374528 (D.D.C. Aug. 14, 2025) .....................................................................42

*Wagner v. Taylor,*
836 F.2d 578 (D.C. Cir. 1987) ........................................................................................38

*Widakuswara v. Lake,*
779 F. Supp. 3d 10 (D.D.C. 2025) ...................................................................................42

*Williams v. City of Chicago,*
2023 WL 6388891 (N.D. Ill. Sept. 29, 2023) .....................................................................7

## Statutes

5 U.S.C. § 705 ...........................................................................................................28, 31

8 U.S.C. § 1226 ...............................................................................................................16

8 U.S.C. § 1252 ...............................................................................................12, 13, 14, 15

8 U.S.C. § 1254a ...............................................................................................................18

8 U.S.C. § 1357 ............................................................................................................. *passim*

## Other Authorities

8 C.F.R. § 244.14 .............................................................................................................18

8 C.F.R. § 287.8 .....................................................................................................1, 16, 24

90 Fed. Reg. 5953 .............................................................................................................18

Fed. R. Civ. P. 23 .............................................................................................................32

Fed. R. Civ. P. 65 .............................................................................................................24

Fed. R. Evid. 801 ...............................................................................................................4

# INTRODUCTION

The key facts underlying Plaintiffs' motions for a preliminary injunction, to stay agency action, and for provisional class certification (ECF 17) and class certification (ECF 19) are undisputed. Defendants do not dispute that agents arrested Plaintiffs without a warrant and without obtaining any information about Plaintiffs' ties to the community. They also do not dispute that agents arrested more than two dozen other individuals, as documented in sworn declarations, without a warrant and without any individualized determination of flight risk. With respect to the legal standard, Defendants do not contest that 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii) require *probable cause* for both unlawful presence in the United States and for flight risk.[1] And, although they profess to comply with the law and their own regulations, they do not dispute Defendants U.S. Department of Homeland Security's ("DHS") and U.S. Border Patrol's public statements that agents use *reasonable suspicion* to make immigration arrests—a lower standard than probable cause. *See United States v. Green*, 670 F.2d 1148, 1151 (D.C. Cir. 1981).

Instead, Defendants chiefly focus on threshold issues such as standing for injunctive relief and the jurisdictional bars in the Immigration and Nationality Act ("INA"). These arguments fail. Plaintiffs have presented sufficient evidence to show that Defendants have an ongoing policy and practice of making unlawful warrantless immigration arrests in Washington, D.C., placing Plaintiffs at substantial risk of unlawful arrest. The jurisdictional bars in the INA plainly do not apply here because Plaintiffs are not seeking relief related to any removal proceedings or challenging any removal order; instead, they seek relief from a policy of unlawful conduct related to their arrests and independent of any removal proceedings. Indeed, Plaintiff Escobar Molina is not even in removal proceedings.

---

[1] Unless otherwise noted, all statute references herein are to Title 8 of the United States Code.

Defendants' other arguments are equally unconvincing. Their efforts to justify the individual Plaintiffs' arrests are based on conjecture; they do not set forth any facts regarding what the agents who arrested Plaintiffs knew prior to arresting them—indeed, they do not submit any evidence from the agents involved in the arrests. Defendants' assertion that they have taken no final agency action is belied by Defendants' own public statements confirming their policy of using reasonable suspicion, rather than probable cause, to make immigration arrests. Their arguments on irreparable harm simply reiterate their erroneous standing arguments, and their claims on the equities rest on unsupported assumptions regarding the effects the requested relief would have.

Defendants fare no better in opposing class certification. The bar on classwide injunctive relief in § 1252(f)(1) does not apply where, as here, the requested classwide injunction is limited to a policy of making warrantless arrests in violation of § 1357(a)(2), a provision to which § 1252(f)(1) does not apply. In any case, § 1252(f)(1) does not bar a stay or vacatur of agency action under the Administrative Procedure Act ("APA"), nor does it bar declaratory relief. The proposed Warrantless Arrests class satisfies all the requirements of Rule 23(a) and 23(b)(2), as Plaintiffs seek to represent other individuals who have suffered or will suffer the *same* injuries (being unlawfully arrested), arising from the *same* cause (Defendants' policy of failing to make individualized determinations of probable cause as required by § 1357(a)(2)), and remediable by the *same* injunctive and declaratory relief (enjoining, staying, vacating, and declaring unlawful Defendants' policy and expunging all records maintained from the unlawful arrests).

This Court should grant Plaintiffs' motions.

## ARGUMENT

I.    **Plaintiffs Are Likely to Succeed on the Merits of their Claims.**

A.    **Plaintiffs Have Standing to Bring Their Claims.**

Plaintiffs have demonstrated a "substantial likelihood," *Elec. Priv. Info. Ctr. v. Presidential*

*Advisory Comm'n on Election Integrity*, 878 F.3d 371, 377 (D.C. Cir. 2017), that they have "suffered an injury in fact that is fairly traceable to [Defendants'] allegedly unlawful conduct and likely to be redressed by the requested relief," *Haaland v. Brackeen*, 599 U.S. 255, 291–92 (2023). In arguing otherwise, Defendants fail to rebut Plaintiffs' evidence demonstrating that they face a substantial risk of being unlawfully rearrested. Defendants' argument that CASA lacks associational standing likewise fails. And Defendants do not even dispute CASA's organizational standing; they only briefly contest that CASA experienced irreparable harm.

> **1.    Defendants' unlawful policy and practice realistically threaten the individual Plaintiffs with repeated injury.**

Plaintiffs have standing to challenge Defendants' policy and practice because they have shown a "substantial risk" of harm, *Dep't of Com. v. New York*, 588 U.S. 752, 767 (2019), here "a repetition of [their] experience[s]," *Haase v. Sessions*, 835 F.2d 902, 910–11 (D.C. Cir. 1987) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)). Showing that "the threatened acts . . . are authorized or part of a policy" helps demonstrate that the risk is substantial. *Hinton v. District of Columbia*, 567 F. Supp. 3d 30, 49 (D.D.C. 2021) (citation omitted). This is because "courts generally agree that" injuries arising from policies are "significantly more likely [to] occur again, and it is consequently more likely that plaintiffs have standing to pursue equitable relief." *Id.* (cleaned up); *cf. Lyons*, 461 U.S. at 106 (plaintiff would have standing if "the [government] ordered or authorized police officers to act in such a manner"); *In re Navy Chaplaincy*, 697 F.3d 1171, 1176–77 (D.C. Cir. 2012) ("The prospect of future injury becomes significantly less speculative where, as here, plaintiffs have identified concrete and consistently-implemented policies claimed to produce such injury.").

Plaintiffs face a substantial risk of being unlawfully arrested again due to Defendants' policy and practice of making warrantless arrests in D.C. without individualized determinations of

flight risk. Defendants' policy and practice is illustrated by their public statements that they are using reasonable suspicion, rather than probable cause, to make immigration arrests and by the circumstances of the warrantless arrests—more than two dozen of them—documented by Plaintiffs and the non-Plaintiff declarants.

Defendants have repeatedly made clear that their official policy and practice is to make arrests without probable cause. For example, in response to this lawsuit, DHS confirmed that its "law enforcement uses 'reasonable suspicion' to make arrests"—a lower standard than the statutorily-mandated standard of probable cause. ECF 17.1 ("Widas Decl."), Ex. 19; *id.*, Ex. 17. DHS subsequently confirmed in a press release that "DHS law enforcement uses 'reasonable suspicion' to make arrests." ECF 34.1 ("Second Widas Decl."), Ex. 1. Chief Border Patrol Agent Gregory Bovino further confirmed that:

> We need **reasonable suspicion** to make an immigration arrest, . . . **You notice I did not say probable cause**, nor did I say I need a warrant.

*Id.*, Ex. 2 (emphasis added).[2] While these statements were made by DHS leadership, they implicate U.S. Department of Justice (DOJ) and Drug Enforcement Administration (DEA) as well. *See, e.g.*, Widas Decl., Ex. 8 (describing DHS directive "authori[zing]" DOJ "law enforcement officials in," *inter alia*, the DEA, to "investigate and apprehend illegal aliens"); ECF 50.1 ("Simon Decl.") ¶ 10 ("Other law enforcement agencies also made [Title 8] civil immigration arrests throughout the operation."). Notably, Defendants do not disavow these statements or dispute that they constitute

---

[2] Courts are not bound by the rules of evidence in deciding preliminary injunction motions. *E.g.*, *Karem v. Trump*, 404 F. Supp. 3d 203, 215 n.3 (D.D.C. 2019). Regardless, Defendants' public statements are admissible under the Federal Rules of Evidence as party admissions regarding Defendants' policy and practice. *See generally U.S. Conf. of Mayors v. Great-West Life & Annuity Ins. Co.*, 2018 WL 659409 (D.D.C. Jan. 25, 2018) (discussing circumstances under which statements constitute admissions by party opponents under Federal Rule of Evidence 801(d)(2)(D)); *see also United States v. Van Griffin*, 874 F.2d 634, 638 (9th Cir. 1989) (admitting statement made by "the relevant and competent section of the government" as party admission).

the government's view.

Additionally, Plaintiffs' and declarants' sworn testimony demonstrates that Defendants are engaging in a systemic policy and practice of making warrantless arrests without individualized determinations of flight risk. *See Nat'l Sec. Couns. v. CIA*, 898 F. Supp. 2d 233, 260–61 (D.D.C. 2012) (finding the "existence of an ongoing pattern or practice" supported by "specific instances of conduct by the CIA that the plaintiff claims are manifestations of the alleged policies and practices at issue"), *aff'd*, 969 F.3d 406 (D.C. Cir. 2020). Here, Plaintiffs have provided examples of more than *two dozen* arrests—21 described in sworn declarations from those who were arrested and at least 10 others of which the declarants had personal knowledge—where Defendants' agents failed to elicit any facts as to flight risk and where there were otherwise no circumstances to support probable cause for flight risk. ECF 17 ("PI Mot.") at 5–14.[3] This evidence clearly demonstrates an ongoing policy, making it "significantly more likely that [Plaintiffs'] injur[ies] will occur again." *Hinton*, 567 F. Supp. 3d at 49 (cleaned up). Defendants' contention that Plaintiffs "have no basis beyond mere speculation" to believe they will be subject to unlawful arrest, ECF 50 ("Opp.") at 10, ignores Plaintiffs' evidence.

Two specific factors enhance the "real and immediate threat" that Plaintiffs will be arrested again under Defendants' policy. First, each individual Plaintiff was arrested while going about unavoidable—and lawful—activities of daily life. *See Melendres v. Arpaio*, 695 F.3d 990, 998 (9th Cir. 2012) (standing to challenge policy and practice of traffic stops while Latino plaintiffs were "going about . . . daily life"); *Church v. City of Huntsville*, 30 F.3d 1332, 1339 (11th Cir.

---

[3] *See, e.g.*, ECF 17.2 ("Escobar Molina Decl.") ¶ 8; ECF 17.3 ("B.S.R. Decl.") ¶ 7; ECF 17.4 ("N.S. Decl.") ¶ 7; ECF 17.5 ("R.S.M. Decl.") ¶ 6; ECF 17.6 ("CASA Decl.") ¶¶ 24-28, 30-33; ECF 34.2 ("Carlos Peña Decl.") ¶¶ 2–8; ECF 34.3 ("Lopez Funez Decl.") ¶¶ 2–12; ECF 34.4 ("Reyes Solis Decl.") ¶¶ 2–7.

1994) (plaintiffs had standing where there was a "custom, practice and policy of arresting, harassing and otherwise interfering with homeless people for engaging in the ordinary and essential activities of daily life"); *Riggs v. City of Albuquerque*, 916 F.2d 582, 583–84, 586 (10th Cir. 1990) (standing where police targeted lawful activities of individuals). B.S.R. has now been arrested by Defendants *twice* this year while performing work-related activities, most recently in August while getting into his car with his father outside of his home to go to work. ECF 17.3 ("B.S.R. Decl.") ¶¶ 3–7, 12–16. Escobar Molina likewise was arrested outside his home on his way to work. ECF 17.2 ("Escobar Molina Decl.") ¶ 5. N.S. had just finished shopping at Home Depot at the time of his arrest, ECF 17.4 ("N.S. Decl.") ¶ 5, and R.S.M.'s arrest occurred on her way to work with her husband who was driving them, ECF 17.5 ("R.S.M. Decl.") ¶ 2. Non-Plaintiff declarants have also been unlawfully arrested under similarly quotidian circumstances. *See, e.g.*, PI Mot. 13–14; ECF 17.24 ("Mateo Doe Decl.") ¶ 5 (waiting for food delivery in parking lot); ECF 17.26 ("W.G.M. Decl.") ¶ 2 (walking toward girlfriend's apartment); ECF 17.20 ("Javier Doe Decl.") ¶ 5 (at Fort Totten Metro stop); ECF 17.8 ("Anamaria Doe Decl.") ¶¶ 1–3 (at work); ECF 17.21 ("Julio Doe Decl.") ¶ 2 (passenger of car on the way to work); ECF 17.27 ("Y.R.M. Decl.") ¶ 2 (passenger of work truck on the way to work); ECF 17.9 ("Andrés Doe Decl.") ¶ 2 (parking car after work); ECF 34.3 ("Funez Decl.") ¶¶ 2–4 (driving to work).

Second, Defendants have confirmed that Plaintiffs are among the group of individuals Defendants target, rendering the likelihood of another arrest "real and immediate." *Lyons*, 461 U.S. at 102 (citations omitted); *e.g.*, Second Widas Decl., Ex. 2 (Chief Border Patrol Agent stating that Defendants consider "how [the arrestee] look[s]"). Plaintiffs appear Latino, work in low-wage jobs, and live in or frequent neighborhoods with large numbers of Latino residents. Escobar Molina Decl. ¶ 5; B.S.R. Decl. ¶¶ 3, 12; N.S. Decl. ¶ 5; R.S.M. Decl. ¶ 2. These similarities underscore

that the arrests of Plaintiffs and non-Plaintiff declarants are no coincidence. PI Mot. at 7–14, 22–23.[4] Courts have held that plaintiffs establish a threat of future injury where they demonstrate they are among the group of individuals targeted by a defendant's policy. *See, e.g.*, *Church*, 30 F.3d at 1337–39 (11th Cir. 1994) (plaintiffs who were homeless were "far more likely to have future encounters with the police" under policy of adverse law enforcement against homeless individuals); *Williams v. City of Chicago*, 2023 WL 6388891, at *5 (N.D. Ill. Sept. 29, 2023) (finding standing where city's policy was to target individuals for stop and frisks in neighborhoods with "high rates of ShotSpotter activations"); *Aguilar v. Immigr. & Customs Enf't Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 827 (S.D.N.Y. 2011) (Latino plaintiffs had standing where agency targeted Latino homes for involuntary searches). Defendants' reliance on *Lyons*, where the Court observed no such policy focused on a group that included the plaintiff, is therefore misplaced, Opp. at 10, as is Defendants' attempt to minimize Plaintiffs' risk of rearrest as nothing more than "subjective apprehensions," Opp. at 11.

Defendants rely on three inapposite cases: *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013), *United States v. Texas*, 599 U.S. 670, 673 (2023), and *Noem v. Vasquez Perdomo*, 2025 WL 2585637 (Sept. 8, 2025). Opp. at 11, 13–14. Unlike the plaintiffs in *Clapper* and *Texas*, Plaintiffs and declarants here were subject to Defendants' policy and practice. *Clapper*, 568 U.S.

---

[4] *See also* Reyes Solis Decl. ¶ 7 ("The officers then said they could 'make a lot of money off of Latinos' and that it is 'good business' to detain us, that they could make thousands of dollars from each of us."); ECF 17.8 ("Anamaria Doe Decl.") ¶¶ 2–3 (Latina arrested while working in kitchen); ECF 17.9 ("Andrés Doe Decl.") ¶¶ 1–2 (Latino arrested on the way home from demolition job); ECF 17.10 ("Antony Doe Decl.") ¶¶ 1, 3 (Latino arrested in Mt. Pleasant neighborhood); B.R.G. Decl. ¶¶ 1–2 (Latino arrested from construction van on Rock Creek Parkway); ECF 17.13 ("Camilo Doe Decl.") ¶¶ 1–2 (Latino arrested while driving work van near Rock Creek Park); ECF 17.12 ("C. Decl.") ¶¶ 1–2, 4 (Latinos in work van pulled over to make sure they were "all right"); Carlos Peña Decl. ¶¶ 2–4 (Latino who was pulled over in a work truck observed that agents were only pulling over Latinos in "trucks that appeared to be for work purposes"); ECF 17.27 ("Y.R.M. Decl.") ¶ 2 (Latino pulled over as a passenger in a company truck).

at 411 (plaintiffs "fail[ed] to offer any evidence that" they had *ever* been subjected to the challenged policy); *Texas*, 599 U.S. at 673–74 ("[A] citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution." (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973))). Further, the *Clapper* plaintiffs' theory of standing "rest[ed] on their highly speculative fear" that the existence of an allegedly unlawful program—which they could not show had ever been applied to them—meant that *they* would be subject to surveillance under that authority. 568 U.S. at 410. Here, by contrast, Defendants have publicly stated they effect arrests without probable cause, *supra* at p. 4, and have asserted their intention to continue targeting for immigration arrests a group that includes Plaintiffs as they go about daily unavoidable activities, Second Widas Decl., Ex. 2 (Chief Border Patrol Agent Gregory Bovino told reporter that agents making immigration stops consider, among other things, "how [people] look").

Defendants' reliance on Justice Kavanaugh's concurring opinion in *Vasquez Perdomo*, Opp. at 13–14, fares no better. Justice Kavanaugh concluded that under *Lyons*, "plaintiffs likely lack standing" to challenge stops they alleged were made without reasonable suspicion because defendants there "stop[ped] suspected illegal immigrants based on a variety of factors" not limited to those that the plaintiffs claimed were unlawful, 2025 WL 2585637, at *3, and "plaintiffs ha[d] no good basis to believe that law enforcement will unlawfully stop *them* in the future based on the prohibited factors," *id.* at *2. Unlike in *Vasquez Perdomo*, Plaintiffs are not challenging reliance on particular factors in the purported application of the relevant legal standard, but a policy and practice of ignoring—indeed, disavowing—the relevant legal standard entirely. Based on the evidence, including Defendants' own public statements that they use reasonable suspicion to make arrests, Plaintiffs have the type of "good basis" for future harm that Justice Kavanaugh found

lacking in *Vasquez Perdomo*. *Id.* at *2. Additionally, neither "dictum" nor "concurrence" "constitutes binding precedent," *Maryland v. Wilson*, 519 U.S. 408, 412–13 (1997)—a cautionary note particularly apt for a concurrence issued without the benefit of merits briefing or argument in connection with a one-paragraph order granting a stay.

The individual Plaintiffs have therefore shown a substantial risk of future harm due to Defendants' policy and practice.

### 2.    Plaintiff CASA has associational and organizational standing.

To establish associational standing, CASA must show that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Students for Fair Admissions, Inc. v. President and Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023) (quoting *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977)). Defendants contend only that CASA has not satisfied the first prong; they do not dispute the second and third prongs. Opp. at 14–15. In any event, the interests for which CASA advocates in this litigation are germane to its mission "to create a more just society by building power and improving the quality of life in . . . immigrant communities" and to do so by providing a range of "social, health, job training, employment, and legal services," which has been impeded due to Defendants' unlawful policy and practice. ECF 17.6 ("CASA Decl.") ¶¶ 7–8. Likewise, CASA's members will not need to participate in the lawsuit because the claims and relief in this case center on a systemic policy and practice that does not require analyzing individual members' facts. *See Robertson v. District of Columbia*, 762 F. Supp. 3d 34, 62 (D.D.C. 2025) ("Generally, individual member participation is not required when an organization seeks prospective or injunctive relief.").

The question of CASA's members' standing dovetails with the individual Plaintiffs'

standing analysis here. A membership organization has associational standing even where only one member has standing to sue in her own right. *See Nat'l Treasury Emps. Union v. Vought*, 149 F.4th 762, 776 (D.C. Cir. 2025). Plaintiffs have already refuted Defendants' *Lyons* standing arguments as to the individual Plaintiffs. *See supra* at pp. 3–9. CASA's members have the same likelihood of unlawful warrantless arrests as the individual Plaintiffs, because CASA members already have been unlawfully arrested under circumstances that makes the threat of rearrest "real and immediate"—like during travel to and from work, leaving and returning to one's home, and going to medical appointments. *See supra* at pp. 5–7; *see also* PI Mot. 23, 30; CASA Decl. ¶¶ 23–36; ECF 17.22 ("Luz Doe Decl.") ¶¶ 5, 7–10; ECF 17.17 ("Elias Doe Decl.") ¶¶ 2–6. Accordingly, CASA's members have standing to sue in their own right.

CASA has also shown a substantial likelihood of organizational standing by demonstrating that Defendants' policy and practice has "directly affected and interfered with" its "core business activities," and that CASA has had to divert resources to counteract the injury. *Food and Drug Admin. v. All. for Hippocratic Med.* ("*AHM*"), 602 U.S. 367, 395 (2024); *see also Equal Rts. Ctr. v. Post Properties, Inc.*, 633 F.3d 1136, 1141–42 & n.4 (D.C. Cir. 2011) (analyzing standing by focusing on the "diversion of resources to programs designed to counteract the injury," including by providing additional direct services programs like "increased educational and counseling efforts"); *Nw. Immigrant Rts. Project v. United States Citizenship & Immigr. Servs.,* 496 F. Supp. 3d 31, 47–50 (D.D.C. 2020) (finding organizational standing for CASA where an agency rule "directly conflicts with its mission . . . and is likely to impose new burdens and costs on the organization"); PI Mot. at 16–17, 31; CASA Decl. ¶¶ 9–11, 15–18.

Defendants do not challenge CASA's organizational standing. To the extent, however, that Defendants' argument that CASA's injuries are "self-inflicted" may be construed as an attack on

its organizational standing, Opp. at 31, it fails. The D.C. Circuit focuses on whether a "*defendant's conduct* prompted a plaintiff organization to divert resources toward providing *additional direct services* designed to offset the harmful effects of the challenged conduct." *League of United Latin Am. Citizens* (*"LULAC"*) *v. Exec. Off. of the President*, 780 F. Supp. 3d 135, 180 (D.D.C. 2025) (emphases added) (collecting cases). "[O]rganizations can have standing to challenge practices that directly interfere with their core activities, such as direct services programs." *Id.* Like in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79 (1982)—and unlike in *AHM*, where the plaintiffs asserted injury by "expending money to gather information and advocate against the defendant's action," 602 U.S. at 394—CASA has expended resources out of necessity to continue providing existing services and to "offset the harmful effects of the challenged conduct." *LULAC*, 780 F. Supp. 3d at 180; *see* CASA Decl. ¶¶ 9–11, 15–18.

### 3.    Plaintiffs have established a substantial likelihood of the other standing prongs.

Defendants do not challenge the traceability or redressability requirements of standing. In any event, Plaintiffs have demonstrated that their injuries are traceable to Defendants' policy and practice and can be redressed by the preliminary relief they seek.

"Causation requires the plaintiff to show that the injury was likely caused by the defendant, and redressability requires the plaintiff to demonstrate that the injury would likely be redressed by judicial relief." *Diamond Alt. Energy, LLC v. Env't Prot. Agency*, 606 U.S. 100, 111 (2025) (cleaned up). Here, Defendants' policy has resulted in Plaintiffs' and declarants' arrests without warrants and without individualized determinations of flight risk. Escobar Molina Decl. ¶ 8, 17; B.S.R. Decl. ¶ 7; N.S. Decl. ¶ 7; R.S.M. Decl. ¶ 6; CASA Decl. ¶¶ 24–28, 30–33. Defendants' policy and practice also caused CASA's harms, as unlawful warrantless arrests have contributed to the surge in D.C. arrest- and detention-related calls to CASA's ICE tip hotline and have caused

CASA to divert resources to address those needs. CASA Decl. ¶¶ 19–21. Enjoining and/or staying Defendants' unlawful policy would redress Plaintiffs' injuries. *Massachusetts v. EPA*, 549 U.S. 497, 525 (2007) ("[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself." (quoting *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982))); *see also LULAC*, 780 F. Supp. 3d at 188–89, 203 (preliminary relief is appropriate to redress organization's injury).

### B.    The INA Does Not Strip This Court of Jurisdiction Over Plaintiffs' Claims.

Defendants are wrong that § 1252(b)(9), 1252(a)(5), or 1252(g) defeat jurisdiction here. Opp. at 1. Sections 1252(b) and 1252(b)(9) state that *"[w]ith respect to review of an order of removal* . . . [j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove a[] [noncitizen] from the United States under this subchapter shall be available only in judicial review of a final order under this section," 8 U.S.C. § 1252(b)(9) (emphasis added), and § 1252(a)(5) provides that "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of *an order of removal* entered or issued under any provision of this chapter," 8 U.S.C. § 1252(a)(5) (emphasis added). Section 1252(g) states that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any [noncitizen] arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen] under this chapter" except through a petition for review of a final order of removal.

None of these sections precludes review of Plaintiffs' claims. First, as a threshold matter, Plaintiffs' claims plainly are not "[w]ith respect to review of an order of removal," a limiting clause in § 1252(b) that Defendants entirely ignore. Nor do Plaintiffs seek review "of an order of removal entered or issued under any provision of [the Immigration and Nationality Act]." § 1252(a)(5).

Moreover, the Supreme Court has rejected the expansive reading of § 1252(b)(9) Defendants urge here. *See Jennings v. Rodriguez*, 583 U.S. 281, 285 (2018). In *Jennings*, Justice Alito, writing for three justices, made clear that "§ 1252(b)(9) does not present a jurisdictional bar" where plaintiffs "are not asking for review of an order of removal; they are not challenging the decision to detain them in the first place or to seek removal; and they are not even challenging any part of the process by which their removability will be determined." *Id.* at 294–95; *see also Nielsen v. Preap*, 586 U.S. 392, 402 (2019) (three-Justice plurality echoing this principle from *Jennings*). The Court reiterated two years later that § 1252(b)(9) "certainly [is] not a bar where . . . the parties are not challenging any removal proceedings." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020). Just so here: Plaintiffs challenge the unlawful nature of their arrests; they are not challenging the commencement, result, or any part of the process by which their removability will be determined. Indeed, as Defendants recognize, Escobar Molina is not even in removal proceedings. *See* Opp. at 40; *Mahdawi v. Trump*, 136 F.4th 443, 453 (2d Cir. 2025) ("Section 1252(a)(5) bars district court review 'of an order of removal,' but no order of removal is at issue here.").

Defendants argue that §§ 1252(b)(9) and (a)(5) preclude jurisdiction because "Plaintiffs challenge questions of law and fact arising from the[] actions taken to remove them"—here, their arrests. Opp. at 16. A plurality of the Supreme Court, however, has warned against interpreting § 1252(b)(9) to cover all events that "would never have occurred if" the individual challenging the event were not in removal proceedings, holding that doing so would lead to "absurd" results and make certain claims "effectively unreviewable." *Jennings*, 583 U.S. at 293. Indeed, for N.S. and R.S.M., the "legal questions" here "arise from an action taken *prior to* [their] receipt of a notice to appear for removal proceedings," and the relief all Plaintiffs seek has nothing to do with (and will

have no bearing on) any removal proceedings. *Ahmed v. Noem*, 2025 WL 2299447, at *14 (D.D.C. Aug. 8, 2025). That three of the Plaintiffs *could* theoretically challenge the lawfulness of their arrests in petitions for review once their removal proceedings conclude, Opp. at 16, is irrelevant— "the substance of the relief" Plaintiffs seek here is not to invalidate removal proceedings, but rather to prevent further unlawful arrests like the ones they experienced. *See Ahmed*, 2025 WL 2299447, at *13 ("[W]hether the district court has jurisdiction will turn on the substance of the relief that a plaintiff is seeking." (quoting *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011))); *United Farm Workers v. Noem*, 785 F. Supp. 3d 672, 704 (E.D. Cal. 2025) (concluding that §§ 1252(a)(5) and 1252(b)(9) donvot bar jurisdiction over plaintiffs' claims challenging warrantless immigration arrests without individualized determinations of flight risk).

Defendants' arguments under § 1252(g) are equally meritless. As Defendants admit, Opp. at 17–18, "only a narrow reading of § 1252(g) is appropriate," *Ahmed*, 2025 WL 2299447, at *13 (citing *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 487 (1999)). Specifically, "Section 1252(g) . . . limits review of cases 'arising from' decisions 'to commence proceedings, adjudicate cases, or execute removal orders.'" *Regents of the Univ. of Cal.*, 591 U.S. at 19 (quoting 8 U.S.C. § 1252(g)). Section 1252(g) is inapplicable here for essentially the same reasons that §§ 1252(b)(9) and (a)(5) are: Plaintiffs do not challenge their removal proceedings or actions that "aris[e] from" decisions to "commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g); *see also Reno*, 525 U.S. at 482 (noting that there are "many [] decisions or actions that may be part of the deportation process" and it would be "implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings"); *Canal A Media Holding, LLC v. U.S. Citizenship & Immigr. Servs.*, 964 F.3d 1250, 1257–58 (11th Cir. 2020) (holding that because the challenged

action "is not a decision to commence proceedings, much less to adjudicate a case or execute a removal order, the Plaintiffs' challenge to it is not barred" under § 1252(g)) (cleaned up).

Moreover, here, the challenged conduct "occurred well before the government decided to initiate removal proceedings against [at least two] Plaintiffs" and "does not arise from the prosecutorial decisions listed in Section 1252(g)." *Nava v. Dep't of Homeland Sec.*, 435 F. Supp. 3d 880, 895 (N.D. Ill. 2020). Defendants' analogy to *Tazu v. Attorney General*, 975 F.3d 292 (3d Cir. 2020), fails for the foundational reason that Plaintiffs, unlike the appellant in *Tazu*, are not "challenging [their] removal[s]." *Id.* at 294. The Third Circuit understood appellant's challenge to his re-detention for the execution of an existing removal order absent procedural protections such as notice and an interview to be "directly about removal"—a far cry from the general policy of arrests of individuals absent requisite probable cause at issue here. *Id.* at 296, 298. It therefore is unsurprising that courts that have considered whether § 1252(g) bars jurisdiction over actions challenging unlawful warrantless immigration arrests have held it does not. *See Nava*, 435 F. Supp. 3d at 895; *Bogomazov v. U.S. Dep't of Homeland Sec.*, 2022 WL 769801, at *10 (S.D. Fla. Feb. 27, 2022), *report and recommendation adopted*, 2022 WL 767104 (S.D. Fla. Mar. 14, 2022); *Gonzales v. FedEx Ground Package Sys., Inc*, 2013 WL 12080223, at *10 (S.D. Fla. Aug. 1, 2013).

## C. Defendants' Agents Arrested Plaintiffs Without a Warrant and Without Making Individualized Determinations of Flight Risk.

Defendants do not contest that Plaintiffs' arrests were made without a warrant. They argue instead that the circumstances of Plaintiffs' arrests "demonstrate that agents approached each of the named Plaintiffs with probable cause that they had committed an immigration violation and were a flight risk." Opp. at 27. They are incorrect both on the law and the relevance of the facts.

Although Defendants agree that probable cause is required for *both prongs* of 8 U.S.C. § 1357(a)(2), *see* Opp. at 25, *see also* PI Mot. at 20 (collecting cases confirming that unlawful

presence and flight risk are independently required under 8 U.S.C. § 1357(a)(2)) and 8 C.F.R. § 287.8(c)(2)(ii), Defendants nevertheless seek to impermissibly collapse those two requirements, Opp. 26–27. But it cannot be that "simply by being potentially removable, an [individual] must be deemed to be likely to evade detention by ICE. Such a reading would render the limitations on warrantless arrests created by 8 U.S.C. §§ 1226(a) and 1357(a)(2) meaningless." *Moreno v. Napolitano*, 213 F. Supp. 3d 999, 1007 (N.D. Ill. 2016); *accord Orellana v. Nobles Cnty.*, 230 F. Supp. 3d 934, 945 (D. Minn. 2017). It would also contravene the well-settled principle that the likelihood of escape prong of § 1357(a)(2) "is always seriously applied." *United States v. Cantu*, 519 F.2d 494, 496–97 (7th Cir. 1975). Indeed, Defendant Immigration and Customs Enforcement's ("ICE") Broadcast Statement of Policy—which ICE's Principal Legal Advisor made clear in a June 11, 2025 dictate to all ICE employees "remains terminated," *Castañon Nava v. Dep't of Homeland Sec.*, 2025 WL 2842146, at *22 (N.D. Ill. Oct. 7, 2025)—adopts this view and provides that "mere presence within the United States in violation of U.S. immigration law is not, by itself, sufficient to conclude that [a noncitizen] is likely to escape before a warrant for arrest can be obtained." Widas Decl., Ex. 1 (emphasis omitted).[5]

An individualized determination of probable cause that a person is likely to escape requires knowledge of facts "particularized with respect to that person." *Barham v. Ramsey*, 434 F.3d 565,

---

[5] Defendants identify the Broadcast Statement of Policy as a "directive[]" issued by ICE "to its officers directing them to comply with section 1357(a)(2)," Opp. at 23, and attempt to use the Broadcast Statement of Policy as evidence that Defendants' policy of making warrantless arrests without probable cause is "unsanctioned," *id.* at 35. Yet they neglect to mention ICE's Principal Legal Advisor's "unequivocal" June 11, 2025 "dictate" that "the Agreement and the Broadcast were terminated and rescinded, period." *Nava*, 2025 WL 2842146, at *22. The court in that case ordered ICE "to reissue the Broadcast to all ICE officers nationwide . . . with the instruction that the Broadcast shall remain in effect through February 2, 2026." *Id.* at *24. Defendants do not address this ruling or attempt to reconcile it with their statements that they use reasonable suspicion to make immigration arrests.

573 (D.C. Cir. 2006) (quoting *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979)). Courts have consistently held that a person's ties to his or her community militate against finding probable cause of flight risk. *United States v. Abdi*, 2005 WL 6119695, at *6 (S.D. Ohio Sept. 12, 2005), *rev'd on other grounds*, 463 F.3d 547 (6th Cir. 2006) (no probable cause for flight risk where defendant, *inter alia*, owned business and lived with his then-pregnant wife and two children); *United States v. Pacheco-Alvarez*, 227 F. Supp. 3d 863, 890 (S.D. Ohio 2016) (no probable cause of flight risk where defendant had a stable job, lived with his fiancée, and helped her raise her two kids); *United States v. Khan*, 324 F. Supp. 2d 1177, 1187 (D. Colo. 2004) (that defendant "worked two jobs" and paid rent for his shared apartment made flight risk unlikely even though he lacked specific familial ties in the United States). ICE's own Broadcast Statement of Policy acknowledges specific factors including, *inter alia*, "ties to the community (such as a family, home, or employment) or lack thereof" as relevant to the flight risk determinations. Widas Decl., Ex. 1 (emphasis omitted).

Defendants' attempts to create post hoc bases for probable cause of flight risk for Plaintiffs' arrests not only fail on their own terms but also underscore that the arresting agents *lacked* probable cause for flight risk. *See United States v. Quintanilla-Chavez*, 2025 WL 2982191, at *16 (W.D. Tex. Oct. 20, 2025) ("'Reason to believe'—or 'probable cause'—is judged based on the circumstances *at the moment of arrest*, not on hypothetical counterfactuals.").

Defendants state that U.S. Customs and Border Protection ("CBP") agents "targeted" Escobar Molina because they "had information that Escobar Molina's temporary protected status had expired five months earlier." Opp. at 27. But to the extent that the arresting CBP agents indeed had this information *before* making the arrest—a claim for which Defendants offer no evidence— they would have also known that Escobar Molina had timely applied to renew his temporary protected status ("TPS") application before it expired, Escobar Molina Decl. ¶ 1, that this

application remained pending before DHS, and that his TPS therefore remains valid and legally bars his detention.[6] Independently fatal to the validity of the arrest, there are no facts to suggest that the agents made any individualized determination that Escobar Molina was likely to escape before a warrant could be obtained. The fact that Escobar Molina was about to get into his "work truck," Escobar Molina Decl. ¶ 5, does not suggest flight risk. Indeed, the fact that he was headed to the job he has held for many years and was outside of the home in which he has lived for many years, *id.* ¶¶ 3–4—points that Defendants omit—shows that he has ties to the community and is unlikely to flee. There also is no evidence that the agents knew that Escobar Molina had been charged with simple assault six years ago, and Defendants do not provide any basis that such a charge, even if the agents knew of it, supports probable cause for flight risk.

As for B.S.R., Defendants allege that he at some point failed to properly charge his ankle monitor, but the declaration Defendants cite for this allegation does not support it. Opp. at 27. Even assuming, *arguendo*, that B.S.R.'s ankle monitor was not charged or malfunctioned nine days before the arrest, there is no evidence that the CBP agents who arrested him knew that information prior to the arrest.[7] Indeed, the circumstances of B.S.R.'s arrest show that it was an

---

[6] The designation of El Salvador for TPS was set to expire on March 9, 2025, but was extended for an additional 18 months. 90 Fed. Reg. 5953, 5953 (Jan 17, 2025). Per the TPS regulations, a TPS beneficiary must re-register for benefits each time a designation is extended, during a specified registration period. *See* 8 U.S.C. § 1254a(c)(1)(A)(iv). In fact, an individual's TPS may be withdrawn by the government if the individual *fails* to re-register for TPS, 8 U.S.C. § 1254a(c)(3)(C); 8 C.F.R. § 244.14, but otherwise remains in place as the country's designation continues, so long as the individual timely re-registers. And TPS documentation remains valid not only during the initial period of designation, but "any extension of such period." 8 U.S.C. § 1254a(d)(2). The re-registration period for El Salvador TPS was January 17, 2025, through March 18, 2025. 90 Fed. Reg. 5953. To be clear, with the extension of the TPS designation for El Salvador past March 9, 2025, nothing expired on that date, including for Escobar Molina.

[7] Ankle monitors are placed on non-citizens through ICE's Alternatives to Detention Program, which is managed by BI Incorporated, an ICE contractor. There is no plausible way that CBP would have known about the intricacies of a supervision system managed by a different agency's private contractor, with respect to an individual they had never before encountered.

impermissible propinquity arrest. *See Barham*, 434 F.3d at 573 (D.C. Cir. 2006) (probable cause does not arise from "an individual's 'mere propinquity to others independently suspected of criminal activity'" (quoting *Ybarra*, 444 U.S. at 91)). B.S.R. was arrested alongside his father merely because they were together—even after B.S.R. tried to show the agents his ankle monitor. B.S.R. Decl. ¶¶ 14, 16 (agents said they "came for two people, so we have to arrest two people").

For N.S. and R.S.M., Defendants rely on irrelevant facts. With regard to N.S., they note only that "[w]hen agents encountered N.S., he was sitting in the driver's seat of his car with the engine running." Opp. at 27. But traveling in a vehicle (or on foot) does not suffice for an individualized determination of probable cause as to flight risk—which, again, hinges on factors such as ties to the community. *See Davila v. United States*, 247 F. Supp. 3d 650, 669 (W.D. Pa. 2017) (concluding that plaintiff driving a vehicle when agent approached and informing the agent she was born in Mexico did not suffice to establish probable cause of flight risk). For R.S.M., Defendants focus on the fact that R.S.M.'s husband "only lowered his window 'a little bit'" and that the agents "asked the couple for the identifications three times before they complied," *id.* at 28, ignoring the facts that (1) the agents asked for IDs in English rather than R.S.M.'s native Spanish, and (2) R.S.M. and her husband asked for clarification the first time the agents asked for identification. R.S.M. Decl. ¶ 3. None of these facts is relevant to flight risk, let alone *sufficient* to demonstrate an individualized determination of probable cause for flight risk.

Furthermore, the arguments Defendants do *not* make are telling: Defendants do not contest that the agents did not ask Plaintiffs any questions about their ties to the community or *anything* about their personal circumstances to elicit facts relevant to flight risk. *See Sibron v. New York*, 392 U.S. 40, 62 (1968) (mere fact that officer saw defendant "talking to a number of known narcotics addicts over a period of eight hours" did not suffice for probable cause where officer

"was not acquainted with [defendant] and had no information concerning him"). Nor do they rebut Plaintiffs' authorities construing probable cause for flight risk as requiring such particularized knowledge or, as noted above, provide any evidence of what the agents who arrested Plaintiffs actually knew about Plaintiffs before they arrested them. Accepting the facts Defendants rely on as sufficient for individualized determinations of flight risk would render the likelihood of escape prong of § 1357(a)(2) meaningless.

### D.    Plaintiffs Are Likely to Succeed in Establishing Final Agency Action.

Defendants' only argument directly addressing Plaintiffs' APA claim—that there is no final agency action, Opp. at 21—is unavailing. Defendants' policy of making warrantless immigration arrests without individualized determinations of flight risk both "mark[s] the consummation of the agency's decision-making process and . . . [is] one by which rights or obligations have been determined, or from which legal consequences will flow." *Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 603 U.S. 799, 808 (2024) (citation omitted).

"The consummation prong of the finality inquiry requires [this Court] to determine 'whether an action is properly attributable to the agency itself and represents the culmination of that agency's consideration of an issue,' or is, instead, 'only the ruling of a subordinate official, or tentative.'" *POET Biorefining, LLC v. Env't Prot. Agency*, 970 F.3d 392, 404 (D.C. Cir. 2020) (quoting *NRDC v. Wheeler*, 955 F.3d 68, 78 (D.C. Cir. 2020)). Here, Defendants' policy of making warrantless immigration arrests without probable cause comes from the top down. DHS leadership has asserted in multiple public statements that it "uses [the] 'reasonable suspicion'" standard to make immigration arrests. *See supra* at p. 4. Critically, probable cause and reasonable suspicion are different standards: "[P]robable cause, of course, requires more than mere suspicion." *Green*, 670 F.2d at 1151; *see also Hall v. District of Columbia*, 867 F.3d 138, 152 (D.C. Cir. 2017) (reasonable suspicion "is a 'less demanding standard than probable cause' in terms of both the

reliability and the extensiveness of the information required" (quoting *Alabama v. White*, 496 U.S. 325, 330 (1990))). Defendants' own statements confirm that "the action is official and presently in effect," *Planned Parenthood of Greater N.Y. v. U.S. Dep't of Health & Hum. Servs.*, 2025 WL 2840318, at *17 (D.D.C. Oct. 7, 2025), and applies to all Defendants, *see supra* at p. 4. Defendants do not even address these statements in their opposition.

In this respect, Plaintiffs' APA claims are materially different from those in the cases upon which Defendants principally rely. *See* Opp. at 21–24. Critically, an agency action may "be final despite taking a more informal form," *Planned Parenthood of Greater N.Y.*, 2025 WL 2840318, at *17; courts have found even agency actions that are "not . . . in writing to be final and judicially reviewable," *R.I.L.-R v. Johnson*, 80 F. Supp. 3d 164, 184 (D.D.C. 2015). Defendants rely on *National Treasury Employees Union v. Vought*, 149 F.4th 762 (D.C. Cir. 2025), where plaintiffs could not point to any "regulation, order, document, email, or other statement, written or oral," indicating that the government was doing what plaintiffs challenged. *Id.* at 782. Here, by contrast, Plaintiffs cite several such statements, including a DHS press release in response to this lawsuit that states clearly and unequivocally that its agents apply reasonable suspicion, rather than probable cause, to make immigration arrests. Widas Decl., Ex. 19; *see also* Second Widas Decl., Ex. 1. The D.C. Circuit previously found an agency's press release with "clear and unequivocal language" that the agency "will not consider or rely on any [third-party] human studies in its regulatory decision making" to "create[] a 'binding norm.'" *CropLife Am. v. E.P.A.*, 329 F.3d 876, 881 (D.C. Cir. 2003).

Plaintiffs' claims are also unlike those in *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990), where plaintiffs challenged "continuing (and thus constantly changing) operations" unconnected to any "identifiable 'agency action,'" *id.* at 890, or in *Bark v. U.S. Forest Service*, 37

F. Supp. 3d 41 (D.D.C. 2014), where plaintiffs presented a "generalized complaint about agency behavior," *id.* at 51 (cleaned up). Here, Plaintiffs challenge a discrete agency action: Defendants' policy of making warrantless immigration arrests using a lesser standard than what the statute requires.

Nor is there any merit to Defendants' argument that Plaintiffs have not satisfied the second requirement, that the action is "one by which rights or obligations have been determined, or from which legal consequences will flow." *Corner Post*, 603 U.S. at 808. To determine "whether an agency action has direct and appreciable legal consequences, [this Court] pragmatic[ally] focus[es] on the concrete consequences [the] action has or does not have as a result of the specific statutes and regulations that govern it." *POET Biorefining, LLC*, 970 F.3d at 405 (second and fourth alterations in original) (cleaned up). Defendants do not dispute that a policy of making warrantless arrests without probable cause "ha[s] actual or immediately threatened effects," *Ramirez v. U.S. Immigr. & Customs Enf't*, 310 F. Supp. 3d 7, 21 (D.D.C. 2018), namely, subjecting individuals to arrest and detention without a warrant. *See id.* ("The placements of Plaintiffs . . . in ICE adult detention facilities—purportedly without mandated consideration of less restrictive placements— are agency actions that have actual or immediately threatened effects."); *see also Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 138–39 (D.D.C. 2018) (concluding that ICE's alleged unwritten policy directing ICE officials to consider immigration deterrence as a factor in evaluating parole requests, in violation of Parole Directive, was final agency action); *cf. Nava*, 435 F. Supp. 3d at 902–03 (concluding that plaintiffs sufficiently pleaded policy of making warrantless arrests without probable cause was final agency action).

Instead, Defendants contend that Plaintiffs have failed to show a final agency action because they have not pointed to any "binding" agency action. *See* Opp. at 24. To determine

whether an agency action is binding, courts "consider (1) the actual legal effect (or lack thereof) of the agency action in question on regulated entities; (2) the agency's characterization of the guidance; and (3) whether the agency has applied the guidance as if it were binding on regulated parties." *Sierra Club v. Env't Prot. Agency*, 873 F.3d 946, 951 (D.C. Cir. 2017) (cleaned up). Here, all three elements favor Plaintiffs. First, the actual legal effect of Defendants' statement that they use reasonable suspicion to make immigration arrests is that federal agents apply a specific legal standard different from that required under the statute. This is "the 'most important'" factor. *Planned Parenthood of Greater New York*, 2025 WL 2840318, at *19. Second, Defendants have unequivocally stated that they apply reasonable suspicion rather than probable cause. Third, Defendants' agents have applied this clear instruction from Defendants to Plaintiffs' warrantless arrests and the other arrests Plaintiffs have documented. As demonstrated, Plaintiffs and putative class members have in fact been subject to warrantless arrests pursuant to Defendants' policy. *See supra* at pp. 3–7. Defendants' argument that Plaintiffs "have not shown . . . that Defendants required that all warrantless arrests in Washington, DC be made without assessing the statutory factors," Opp. at 24, is belied by Defendants' own public statements, which, again, Defendants do not address.

Plaintiffs therefore have established final agency action, and Defendants do not dispute that, assuming Plaintiffs have done so, Defendants' policy violates § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii).

### E.    Plaintiffs Are Likely to Succeed on Their *Accardi* Claims.

Defendants' only dispute regarding Plaintiffs' *Accardi* claims is that because "the evidence shows that agents made individualized flight risk determinations prior to making warrantless arrests, Plaintiffs' claim that Defendants violated the *Accardi* doctrine is inaccurate." Opp. at 28. As Plaintiffs have shown, *supra* at pp. 15–20, Defendants' claim is unsubstantiated; in addition to

§ 1357(a)(2), Plaintiffs have shown a likelihood of success on their *Accardi* claims that Defendants' policy violates 8 C.F.R. § 287.8(c)(2)(ii). *See* PI Mot. at 26–27.

F.    **Plaintiffs Do Not Seek an Impermissible "Follow the Law" Injunction.**

Contrary to Defendants' characterization, Plaintiffs do not "seek an impermissibly vague 'follow the law' injunction." Opp. at 28. Rather, they seek specific preliminary relief "describe[d] in reasonable detail," Fed. R. Civ. P. 65(d), in their proposed order, ECF 17.28. Plaintiffs request that the Court order Defendants to "comply with all requirements set forth in DHS's 'Broadcast Statement of Policy' on compliance with [] § 1357(a)(2)" and require agents to "document the facts and circumstances surrounding a warrantless immigration arrest," with such documentation including "the specific, particularized facts that supported the agent's pre-arrest probable cause to believe that the person is likely to escape before a warrant can be obtained, including . . . that the alien was arrested without a warrant; the location of the arrest and whether this location was a place of business, residence, vehicle, or a public area; the alien's ties to the community, if known at the time of arrest, including family, home, or employment . . . ; and the specific, particularized facts supporting the conclusion that the alien was likely to escape before a warrant could be obtained." ECF 17.28 at 2–3 (cleaned up). Accordingly, Defendants' objections to the requested relief are meritless.

Indeed, Plaintiffs' proposed injunction is consistent with that entered by the court in *United Farm Workers v. Noem*, where the court enjoined Border Patrol agents "from effecting warrantless arrests in this District unless, pre-arrest, the arresting agent has probable cause to believe that the noncitizen being arrested is likely to escape before a warrant can be obtained, as required by 8 U.S.C. § 1357(a)(2)" and requiring "[a]ny Border Patrol agent who conducts a warrantless arrest in this District" to "comply with all requirements set forth in DHS's 'Broadcast Statement of Policy' on compliance with 8 U.S.C. § 1357(a)(2), including but not limited to . . . document[ing]

in writing 'the facts and circumstances surrounding the warrantless arrest' and the 'specific, particularized facts supporting the conclusion that the [individual] was likely to escape before a warrant could be obtained.'" 785 F. Supp. 3d at 743.

Additionally, Plaintiffs' requested injunction would not create any "uncertainty and confusion on the part of those faced with injunctive orders." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974). "Even if it tracks statutory language, a general injunction is not too vague if it relates the enjoined violations to the context of the case." *United States v. Philip Morris USA, Inc.*, 566 F.3d 1095, 1137 (D.C. Cir. 2009) (citing *Sec. and Exch. Comm'n v. Savoy Indus., Inc.*, 665 F. 2d 1310, 1316–17 (D.C. Cir. 1981)). When a "record" exists, demonstrating "continuing and persistent violations of [a statute],"—as there is here—decrees "enjoin[ing] any practices which were violations of those statutory provisions" are "wholly warranted." *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192 (1949). Given that Defendants have publicly spurned the requirements specified in § 1357(a)(2), an injunction requiring the agencies "to comply with the explicit dictates of the statute" is not only "proper" but crucial. *Ramirez v. U.S. Immig. & Customs Enf't*, 568 F. Supp. 3d at 25 (D.C. Cir. 2021) (citing *Cobell v. Norton*, 240 F. 3d 1081, 1102–04 (D.C. Cir. 2001)).

### G.    Plaintiffs State a Claim Against the DEA.

Defendants' argument that Plaintiffs fail to state a plausible claim against the DEA is misplaced. It is blackletter law that "[a]ny ambiguities [in a complaint] must be viewed in a light most favorable to the Plaintiff, giving him the benefit of every reasonable inference drawn from the facts and allegations in the complaint." *Blake v. Fed. Bureau of Investigation*, 298 F. Supp. 3d 77, 78 (D.D.C. 2018), *aff'd*, 2018 WL 3520407 (D.C. Cir. July 9, 2018). Given that one of the agents involved in N.S.'s arrest was wearing a vest that said "DEA," N.S. Decl. ¶¶ 6–8, Plaintiff's claim against the DEA is plausible.

**H.** **Defendants' Argument Regarding a "Mandatory Injunction" Is Incorrect.**

Lastly, Defendants are wrong that plaintiffs face a heightened burden in seeking a so-called "mandatory" injunction. Opp. at 7–8. In fact, "this [Circuit] has rejected any distinction between a mandatory and prohibitory injunction." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 7 (D.C. Cir. 2016). In any event, Plaintiffs do not seek a "mandatory" injunction, but a traditional prohibitory injunction to preserve the status quo that existed before Defendants began making warrantless immigration arrests without probable cause.

**II.** **Plaintiffs Will Suffer Irreparable Harm Absent Injunctive Relief.**

As Plaintiffs previously detailed, Defendants' policy of making warrantless arrests without an individualized determination of flight risk inflicts grave and irreparable harm upon Plaintiffs and the proposed class. PI Mot. at 27–31. Defendants do not dispute that these harms are indeed irreparable. Nor could they, as "deprivations of physical liberty" resulting from Plaintiffs' warrantless arrests and subsequent detentions constitute the exact "sort of actual and imminent injuries that constitute irreparable harm." *Aracely, R.*, 319 F. Supp. 3d at 155 (collecting cases); *R.I.L.-R*, 80 F. Supp. 3d at 191 ("[T]he harm from detention pursuant to an unlawful policy cannot be remediated after the fact."). Defendants also fail to address the irreparable harm Plaintiffs and putative class members are suffering and will suffer due to actual or feared family separations. *E.g.*, *M.G.U. v. Nielsen*, 325 F. Supp. 3d 111, 122–23 (D.D.C. 2018) ("Keeping [plaintiff] separated from her son, in a facility where she has little or no direct access to basic information about her son's health or general well-being, plainly causes irreparable harm."). They similarly ignore the ongoing psychological harm inflicted on Plaintiffs and putative class members by Defendants' continuing policy of unlawful warrantless arrests. *See* PI Mot. at 28–30.

Instead of disputing that the injuries Plaintiffs and putative class members face are indeed irreparable, Defendants merely rehash their arguments that Plaintiffs lack standing. Opp. at 30–

31. The Court should reject those arguments for the same reasons detailed above. *Supra* at pp. 3–9. The Court should also reject Defendants' arguments with respect to CASA's irreparable harm for the reasons explained above, *supra* at pp. 9–12—CASA's sworn testimony plainly contradicts Defendants' arguments that the harms are in any way "self-inflicted," Opp. at 31.

## III.    The Balance of Equities and the Public Interest Strongly Favor Plaintiffs.

Defendants' assertion that an injunction would "usurp[]" executive authority over immigration enforcement and thus inflict "substantial governmental harm," Opp. at 32, misstates both the law and Plaintiffs' requested relief. The Government has no "public interest in the perpetuation of [their] unlawful" policy of warrantless arrests without probable cause of flight risk, *League of Women Voters of the U.S.*, 838 F.3d at 12, and so it "'cannot suffer harm from an injunction that merely ends an unlawful practice,'" *R.I.L.-R.*, 80 F. Supp. 3d at 191 (quoting *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013)). Here, the public interest is squarely in Plaintiffs' favor: diverse parties ranging from educators and local businesses to legal services providers and religious institutions all have submitted amicus briefs in support of Plaintiffs' motion for a classwide preliminary injunction or stay due to the harmful effects Defendants' policy and practice has had on the public. ECF 46 ("Washington Teachers' Union"); ECF 47 ("Legal Aid DC"); ECF 48 ("Busboys and Poets"); ECF 49 ("8th Day Faith Community").

Defendants also have no basis for claiming that the requested relief is "untenable" judicial "micromanaging." Opp. at 32. Plaintiffs, whose myriad harms are described at length in the Motion and above, PI Mot. at 14–17, 27–32; *supra* at pp. 3–12, principally seek only narrow relief—to enjoin or stay Defendants' *unlawful* policy of warrantless arrests and ensure compliance with § 1357(a)(2) and Defendants' own regulations. This is firmly in the public interest, *see League of Women Voters of the U.S.*, 838 F.3d at 12, and would not impede Defendants' efforts to pursue "lawful, effective enforcement within constitutional [and statutory] limits," Opp. at 32. Moreover,

27

the specific injunction Plaintiffs propose would merely require Defendants to follow the same requirements to which they previously agreed under the Broadcast Statement of Policy, making Defendants' claims that an injunction would be untenable all the more implausible.

This Court should grant Plaintiffs' motion for a preliminary injunction and/or to stay agency action under 5 U.S.C. § 705 and provisionally certify the proposed Warrantless Arrests class for purposes of issuing the preliminary injunction on a classwide basis.

## IV.    The Court Should Certify the Proposed Class.

The proposed Warrantless Arrests class satisfies Rule 23(a) and 23(b)(2), and none of Defendants' arguments to the contrary withstands scrutiny.

### A.    The Individual Plaintiffs Have Standing to Represent the Class.

Defendants' argument as to standing for class certification relates to the requested injunction alone. Opp. at 34. As discussed above, *supra* at pp. 3–12, individual Plaintiffs have standing to seek injunctive relief, as they face a substantial risk of repeated injury due to Defendants' policy and practice of making warrantless immigration arrests in this District without the probable cause findings required under the statute.

### B.    Section 1252(f)(1) Does Not Bar Classwide Injunctive Relief.

Defendants raise § 1252(f)(1) as a defense against class certification with respect to only one of the remedies Plaintiffs seek: the "class-wide injunction[.]" Opp. at 37 (citation omitted). Yet Plaintiffs also seek a stay and vacatur of agency action, a declaratory judgment, and expungement of records maintained from their arrests. In failing to address these other requested forms of relief, Defendants concede that § 1252(f)(1) does not wholesale bar class certification here. *See, e.g.*, *Texas v. Holder*, 2012 WL 13070059, at *3 (D.D.C. May 21, 2012) ("if a party fails to rebut an argument in opposition, the Court may deem it waived") (citing *Hopkins v. Women's Div., Bd. of Glob. Ministries*, 238 F.Supp.2d 174, 178 (D.D.C. 2002)). In any event, contrary to

28

Defendants' argument, the classwide injunction Plaintiffs seek is consonant with § 1252(f)(1).

Section 1252(f)(1) only restricts injunctions that directly "enjoin or restrain" the "operation of" §§ 1221–1231. The only statutory provision relevant to the requested relief in this case is § 1357(a)(2), which expressly is not covered by § 1252(f)(1). *See Texas v. United States Dep't of Homeland Sec.*, 123 F.4th 186, 210 (5th Cir. 2024) (finding § 1252(f)(1) was inapplicable where statutory provision at issue—§ 1357(a)(3)—did not come within the scope of § 1252(f)(1)); *United Farm Workers*, 785 F. Supp. 3d at 705 ("As Defendants acknowledge, the provision of the INA at issue—Section 1357(a)(2), which is contained in Part IX—is not one of the specified provisions in Section 1252(f)(1)."); *Philadelphia Yearly Meeting of Religious Soc'y of Friends v. U.S. Dep't of Homeland Sec.*, 767 F. Supp. 3d 293, 320 (D. Md. 2025) ("The parties agree that § 1357 falls outside of the scope of § 1252(f)(1)."). This point suffices to end the inquiry.

The D.C. Circuit's decision in *N.S. v. Dixon*, 141 F.4th 279 (D.C. Cir. 2025), does not change this analysis. In *N.S.*, the D.C. Circuit vacated a classwide injunction of the practice of United States Marshals Service officers detaining certain individuals for suspected civil immigration violations. *Id.* at 282. The *N.S.* court held that § 1252(f)(1) barred such relief, where "the district court enjoined the Marshals from arresting and detaining any criminal defendant suspected of a civil immigration violation, *which includes arrests made with a warrant* pursuant to § 1226(a) and the detention of any [noncitizen] charged with any crimes listed in § 1226(c)." *Id.* at 290 (emphasis added). N.S.'s argument that he had been arrested without a warrant, such that the injunction only implicated § 1357, was therefore "beside the point" due to the injunction's effects related to § 1226(a) and (c). *Id.* at 290.

Here, unlike in *N.S.*, the proposed classwide preliminary injunction does not include the covered provisions or bear on arrests with a warrant, nor does it prevent any federal agency from

effectuating civil immigration arrests (whether with a warrant or otherwise). *See Refugee & Immig. Ctr. for Educ. & Legal Servs. v. Noem*, 2025 WL 1825431, at *53 (D.D.C. July 2, 2025) (describing "the injunction at issue" in *N.S.* as having "directly and substantially restricted the ability of . . . federal officials to 'carry out' the arrest and detention of deportable [noncitizens] pursuant to § 1226, which is located in part IV of the INA" (quoting *N.S.*, 141 F.4th at 289)). Because the classwide injunctive relief sought here is limited to enjoining Defendants' policy and practice of making warrantless immigration arrests in violation of § 1357(a)(2), the injunction plainly does not "enjoin or restrain the operation" of any covered provision, *Garland v. Aleman Gonzalez*, 596 U.S. 543, 544 (2022) (citation omitted), including, contrary to Defendants' arguments, § 1226 (describing arrests *with* warrants and detention of certain noncitizens with criminal convictions) and § 1229 (initiation of removal proceedings in immigration court). As another court has held, "[t]here is a clear distinction between the authority to issue warrants under § 1226(a) and the one to execute arrests under § 1357." *Kidd v. Mayorkas*, 734 F. Supp. 3d 967, 986 (C.D. Cal. 2024).

Notably, the injunction in N.S. *entirely* barred the U.S. Marshals from arresting certain individuals for civil immigration violations. *N.S.*, 141 F.4th at 281. The classwide relief sought here would not bar any agency engaged in immigration enforcement from making civil immigration arrests, including those within § 1226(a). It merely would implement measures to require those agencies to comply with federal law in effectuating arrests, and only with respect to warrantless arrests under § 1357(a)(2). Nor does the proposed injunction even bear on § 1229 in any way, as the government may initiate removal proceedings against noncitizens regardless of whether the noncitizen has been arrested, with or without a warrant, or is detained.

Courts that have examined this issue have further held that injunctions that collaterally impact § 1252(f)(1)'s covered provisions are permissible. *See Aleman Gonzalez*, 596 U.S. at 553

n.4 ("[A] court may enjoin the unlawful operation of a provision that is not specified in § 1252(f)(1) even if that injunction has some collateral effect on the operation of a covered provision[.]"); *Texas*, 123 F.4th at 210 ("In *Aleman Gonzalez*, there was no question that the enjoined statute, § 1231(a)(6), fell within the bar. Here, there is no question that the enjoined statute, § 1357(a)(3), does not."); *Gonzalez v. DHS,* 508 F.3d 1227, 1233 (9th Cir. 2007) (holding injunction was not barred by § 1252(f)(1) because the injunction "directly implicate[d]" a non-covered provision even though it had a "collateral" effect on a covered provision."); *Refugee & Immig. Ctr.*, 2025 WL 1825431, at *53 ("To the extent the relief that Plaintiffs seek . . . might have downstream effects on removal proceedings, those effects are merely incidental to Plaintiffs' permissible challenges to the Proclamation and guidance, and such 'collateral effect[s]' do not trigger § 1252(f)(1)."). Any impact here from an injunction could similarly be at most collateral, and therefore would not suffice to trigger § 1252(f)(1).

In any event, Plaintiffs do not seek only a classwide injunction. Defendants do not contend that § 1252(f)(1) bars Plaintiffs' request for a stay of agency action under 5 U.S.C. § 705, vacatur of Defendants' policy and practice, and declaratory relief. Nor could they: As every court to address the issue has concluded, § 1252(f)(1) does not apply to stays and vacatur of agency action under the APA. Section 1252(f)(1) is "nothing more or less than a limit on injunctive relief." *Reno*, 525 U.S. at 481. Courts have "distinguished injunctive relief" from stays generally, *Immigrant Defs. L. Ctr. v. Noem*, 781 F. Supp. 3d 1011, 1040 (C.D. Cal. 2025), given that "enjoin" means "to 'require a person . . . to abstain or desist from[] some act,'" and "restrain" means to "prevent [someone] from doing something" or "some course of action," *Aleman Gonzalez*, 596 U.S. at 548–49 (citation omitted), whereas a stay "temporarily suspend[s] the source of authority to act"; unlike an injunction, it does not "direct[] an actor's conduct," *Nken v. Holder*, 556 U.S. 418, 428–29

(2009). Nor do Defendants, as noted above, contend that it prohibits Plaintiffs' other requested relief in their complaint, such as classwide declaratory relief. *See also N.S.*, 141 F.4th at 290 n.7 ("This court has stated . . . that § 1252(f)(1) 'does not proscribe issuance of a declaratory judgment[.]'" (quoting *Make the Rd. New York v. Wolf*, 962 F.3d 612, 635 (D.C. Cir. 2020))).

## C.    Plaintiffs Meet All the Requirements of Rule 23.

Defendants' opposition to class certification rests on two main contentions: that Plaintiffs have not adequately demonstrated an unlawful policy and practice of conducting warrantless arrests, and that factual differences among Plaintiffs and putative class members defeat the commonality, typicality, and adequacy requirements of Rule 23(a) and the requirements of Rule 23(b)(2). Opp. at 2. Yet as this Court has held numerous times in other similar civil rights and immigrants' rights cases, factual differences between the named plaintiffs and putative class members do not defeat class certification when there are common questions and an overarching policy being challenged. *See, e.g.*, *Damus v. Nielsen*, 313 F. Supp. 3d 317, 332–33 (D.D.C. 2018).

### 1.    The proposed class satisfies the numerosity requirement.

Defendants do not meaningfully challenge Plaintiffs' evidence demonstrating that the Proposed Class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Their assertion that "Plaintiffs heavily rely on speculation that a sufficiently numerous group[] of individuals make up the 'warrantless arrest class' based on assumed future unnamed claimants" and "estimations," Opp. at 37–38, ignores the record before the Court.

Courts in this District generally conclude that "numerosity is satisfied when a proposed class has at least forty members," *Howard v. Liquidity Servs. Inc.*, 322 F.R.D. 103, 117 (D.D.C. 2017) (quoting *Coleman ex rel. Bunn v. District of Columbia*, 306 F.R.D. 68, 76 (D.D.C. 2015), and even a class with as few as twenty can satisfy this requirement, *see Coleman*, 306 F.R.D. 68 at 76. The Proposed Class here easily surpasses these numbers. Rather than rely heavily on

"speculation," Plaintiffs submitted evidence detailing the experiences of more than two dozen class members whom agents arrested without a warrant and without making the determinations of probable cause that § 1357(a)(2) requires. PI Mot. at 5–14; ECF 19 ("Class Cert. Mot.") at 10–12. That alone is enough to satisfy the numerosity requirement. Indeed, Defendants themselves acknowledge that Plaintiffs have identified "roughly forty alleged instances." Opp. at 38.

Moreover, it is not only those who have been arrested but also those who will be arrested in the future who count toward numerosity. Unable to respond to this evidence, Defendants retreat to an incomplete analysis of the numerosity requirement, arguing that "Plaintiffs provide no further substantive analysis to support the extrapolation that there are or will be sufficiently numerous individuals[.]" Opp. at 38. But "numerosity is about much more than just the total number of class members. In many cases, it is difficult to ascertain how many class members there will be, and the question simply becomes whether the existence of unknown and unnamed future class members would make joinder difficult." *N.S. v. Hughes*, 335 F.R.D. 337, 352 (D.D.C. 2020). That is why classes—like the proposed class here—that include unnamed future claimants "generally meet the numerosity requirement." *J.D. v. Azar*, 925 F.3d 1291, 1322 (D.C. Cir. 2019). "This is especially true when plaintiff seeks injunctive relief." *Hughes*, 335 F.R.D. at 352.

It is not speculative that the proposed class includes future unknown members who will be victims of Defendants' illegal warrantless immigration arrests policy in this District. Social media posts by Defendant Michael W. Banks, Chief of Border Patrol, confirm that immigration arrests are continuing in Washington, D.C, Widas Decl., Ex. 13, and Defendants concede that Enforcement and Removal Operations ("ERO") officers engaged in "afternoon and evening checkpoint operations" without any mention of having warrants for arrests or probable cause for making arrests, Declaration of Joseph Simon ¶ 9. Further, the Acting Executive Associate Director

for ERO at ICE stated in an interview that "[w]e're going to continue our operations in the D.C. metro area." Widas Decl., Ex. 10. Plaintiffs' and Non-Plaintiff declarants' experiences demonstrate these operations regularly result in the warrantless arrest of individuals without the required individualized determinations that the individual is in the United States unlawfully and is likely to escape before a warrant can be obtained for the arrest. The class is therefore sufficiently numerous.

> ### 2.    The proposed class satisfies the commonality requirement despite any factual variations among putative class members.

Defendants' arguments against commonality—that Plaintiffs have made "unsupported allegations" of the policy and that there are differences among putative class members, Opp. at 39–41—are unavailing.

First, Plaintiffs have provided sufficient evidence to support the existence of a policy and practice of making warrantless immigration arrests without individualized determinations of unlawful presence in the United States and of flight risk. *See* PI Mot. at 5–14 (more than two dozen arrests documented in sworn declarations following the same pattern, as well as Defendants' own public statements that they use reasonable suspicion rather than probable cause to make immigration arrests); *see also D.L. v. District of Columbia* ("*D.L. II*"), 860 F.3d 713, 724–26 (D.C. Cir. 2017) (commonality satisfied where evidence suggested a policy of failure to follow statutory provisions); *Parsons v. Ryan*, 289 F.R.D. 513, 521 (D. Ariz. 2013), *aff'd*, 754 F.3d 657 (9th Cir. 2014) (policies "may be inferred from widespread practices or evidence of repeated constitutional violations"). Defendants' comparison to *General Telephone Company of Southwest v. Falcon*, 457 U.S. 147 (1982), Opp. at 39–40, is inapposite. In *Falcon*, the Supreme Court noted the plaintiff failed to meet commonality where he provided evidence only for his own claim of discrimination, and the Court noted that his allegation that there was a company-wide policy of discrimination was

"otherwise *unsupported*." *Falcon*, 457 U.S. at 157–58 (emphasis added). There is a world of difference between the "unsupported allegation[s]" of a policy in *Falcon* and the evidence Plaintiffs have mounted in support of the existence of a classwide policy and practice here. *Id*. at 156.

Second, Defendants contend that Plaintiffs have not shown that there is a policy or practice "because whether immigration agents have probable cause to effectuate arrests is an inherently fact-specific and individualized inquiry." Opp. at 40. Their argument fundamentally mischaracterizes Plaintiffs' claims, the crux of which is that Defendants are not making pre-arrest individualized assessments for unlawful presence and flight risk *at all*, across the entire class. The court in *United Farm Workers* rejected the same argument Defendants make here, holding that "the determination[s] of whether an alien is a flight risk . . . are inherently individualized determinations" "misses the mark" because "[p]laintiffs do not contend Border Patrol erred in assessing flight risks; they contend that the probable cause determinations were not performed *at all*." 785 F. Supp. 3d at 725 (alteration in original). Although the "validity of a warrantless [arrest] is pre-eminently the sort of question which can only be decided in the concrete factual context of the individual case," that is "quite different from the question of the adequacy [and lawfulness] of the procedures" upon which Defendants rely to arrest putative class members. *Sibron*, 392 U.S. at 59 (1968); *see also Gerstein v. Pugh*, 420 U.S. 103, 116–19 (considering other legal issues in a case on behalf of a certified Rule 23(b)(2) class consisting of individuals subject to pretrial detention challenging state probable cause determinations). Moreover, the allegation of the policy and practice here is itself a "common question of law and fact [that] unites the class members' claims[.]" *Damus*, 313 F. Supp. 3d at 332.

Nor are any factual differences among Plaintiffs and putative class members detrimental

to a finding of commonality. "[F]actual variations among the class members will not defeat the commonality requirement, so long as a single aspect or feature of the claim is common to all proposed class members." *Bynum v. District of Columbia*, 214 F.R.D. 27, 33 (D.D.C. 2003); *see also Hardy v. District of Columbia*, 283 F.R.D. 20, 24 (D.D.C. 2012) (same). In civil rights suits such as this one, "[t]he existence of shared legal issues with divergent factual predicates is sufficient" for commonality and class certification. *Gonzalez v. U.S. Immigr. Customs Enf't*, 975 F.3d 788, 807 (9th Cir. 2020); *see also, e.g.*, *Davis v. U.S. Parole Comm'n*, 2025 WL 457779, at *8 (D.D.C. Feb. 11, 2025) (certifying class where plaintiff challenged defendants' systemic failure to provide accommodations in violation of the Rehabilitation Act even though each class member might require a different accommodation for their specific disability); *Kingdom v. Trump*, 2025 WL 1568238, at *14 (D.D.C. June 3, 2025) (commonality satisfied because "the questions that the plaintiffs do present—i.e. whether a uniform policy prohibiting people with a given medical condition from receiving a certain treatment for that condition violates the Eighth Amendment or the Administrative Procedure Act—are amenable to judicial consideration without the Court wading into a thousand personalized medical assessments"); *Damus*, 313 F. Supp. 3d at 332 (that "the circumstances of [putative class members'] detention may vary" did not undermine commonality where plaintiffs "sufficiently identified a common cause and injury as a result of the [challenged policy,] the current parole regime").

That is precisely the case here: as noted above, Plaintiffs do "not challenge whether [the agents] actually had probable cause" to arrest each putative class member, but rather the legality of the *procedures* used to evaluate the existence of probable cause. *See, e.g.*, *Moreno v. Napolitano*, 2014 WL 4911938, at *8 (N.D. Ill. Sept. 30, 2014) ("Defendants, however, misunderstand the nature of Plaintiffs' claims. Rather than challenge the reasonableness or constitutionality of each

36

individual decision to issue a detainer, Plaintiffs are challenging the general policies and procedures used by Defendants."). Nor must the court engage in an analysis of whether each warrantless arrest was lawful or unlawful. Indeed, the relevant factual predicates that make each Plaintiff's and putative class member's arrest unlawful here are the same: each Plaintiff and putative class member was arrested without a warrant and without any individualized determination of probable cause that he or she was likely to escape before a warrant could be obtained. The differences in putative class members' arrests on which Defendants rely—such as that some individuals presented identification and others did not; some were detained for a shorter or longer period of time; some were removed, some remain detained, and others were released; and the locations of the arrests varied, Opp. at 40–41—are all irrelevant to class certification because they do not undermine Plaintiffs' showing of Defendants' policy and practice of making warrantless arrests without pre-arrest individualized probable cause determinations.

Plaintiffs therefore satisfy the commonality requirement.

### 3. The individual Plaintiffs' claims are typical of the putative class.

Defendants repeat their refrain about factual differences when it comes to typicality, arguing that because there are factual differences among Plaintiffs' arrests and immigration statuses, their claims are not typical of those of the proposed class. Opp. at 42–43.

Defendants misapply the typicality standard. "[T]o destroy typicality, a distinction must differentiate the '*claims or defenses*' of the representatives from those of the class." *J.D.*, 925 F.3d at 1322 (quoting Fed. R. Civ. P. 23(a)(3)). "While commonality requires a showing that the *members* of the class suffered an injury resulting from the defendant's conduct, the typicality requirement focuses on whether the *representatives* of the class suffered a similar injury from the same course of conduct." *Bynum*, 214 F.R.D. at 34 (emphasis added). Typicality is therefore generally met where "the claims or defenses of the representatives and the members of the class

stem from a single event or a unitary course of conduct, or if they are based on the same legal or remedial theory." 7A Wright & Miller, *Fed. Prac. & P.* § 1764 (4th ed. 2019) (footnote omitted). And "[f]actual variations between the claims of class representatives and the claims of other class members claims do not negate typicality." *Bynum*, 214 F.R.D. at 34; *see also Wagner v. Taylor*, 836 F.2d 578, 591 (D.C. Cir. 1987) ("typicality is not destroyed merely by factual variations").

The class representatives here are typical of the putative class because they were subjected to the same injury (unlawful arrest) from the same unlawful practice (the alleged policy and practice) as other class members; how that unlawful practice played out in their individual stops or arrests is immaterial to class certification. As with commonality, the Plaintiffs here do not seek an injunction, stay, or declaration directed at their individual warrantless arrests, but rather seek to challenge Defendants' policy and practice on a systemwide basis. The Court therefore need not concern itself with all the potential variables and individualized determinations that accompany the probable cause determination but instead examine whether Defendants' policy of conducting warrantless arrests without a pre-arrest probable cause determination of flight risk and immigration violates the INA and DHS's regulations. *See J.D.*, 925 F.3d at 1322 (finding typicality despite government's argument that the named plaintiffs, who sought to terminate their pregnancies, differ from most putative class members who would not seek to terminate their pregnancies, because the "claims or defenses" against the alleged policy remained the same); *Damus*, 313 F. Supp. 3d at 334 (finding typicality despite defendants' argument about differing factual variations); *Gonzalez*, 975 F.3d at 810–12 (rejecting defendants' typicality argument because despite any "unique" circumstances around the plaintiff's probable cause determination, his legal claim was "no different than [that of] any other class member"); *Kidd*, 343 F.R.D. at 439 (finding typicality despite "factual differences across various ICE encounters").

Plaintiffs' claims are therefore typical of the putative class.

### 4. The individual Plaintiffs are adequate class representatives.

Again, Defendants solely rely on factual differences in Plaintiffs' arrests to claim that they are not adequate representatives of the class. Opp. at 43. But that is not the adequacy analysis. The adequacy requirement instead focuses on two issues: the class representative "(i) 'must not have antagonistic or conflicting interests with the unnamed members of the class' and (ii) 'must appear able to vigorously prosecute the interests of the class through qualified counsel.'" *J.D.*, 925 F.3d at 1312 (quoting *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997)).[8]

Defendants push back against the first requirement, suggesting that the named representatives may have "antagonistic or conflicting interests with the unnamed members of the class," but then never describe precisely *how* any alleged factual variations between putative class members make it so that Plaintiffs have a conflict of interest with the class they seek to represent. Opp. at 43–44. Plaintiffs have already described how their interests do not conflict with the class they seek to represent, as all putative class members are subject to the same unlawful policy and practice of making warrantless arrests without individualized determinations of probable cause, and are suffering the same injuries, even if there are factual variations among the length of detention or circumstances of their arrests. *See* Class Cert. Mot. at 15–16. They seek the same relief as the rest of the class, and they understand the responsibilities of serving as a class representative and are willing to do so. *See* Escobar Molina Decl. ¶¶ 22–28 (describing Plaintiff is prepared to represent the class, understands the responsibility of doing so, and is ready to protect the class's interests); B.S.R. Decl. ¶¶ 27–33 (same); N.S. Decl. ¶¶ 27–33 (same); R.S.M. Decl. ¶¶ 18–24 (same). Plaintiffs therefore have no conflict with the putative class and are adequate

---

[8] Defendants do not object to the appointment of Plaintiffs' counsel as class counsel. Opp. at 43.

representatives.

**D.    Plaintiffs Satisfy the Requirements of Rule 23(b)(2) as They Seek Relief That Is Appropriate for the Class as a Whole.**

Defendants also argue that Plaintiffs fail to meet the Rule 23(b)(2) requirements because of the "unique set of circumstances" each individual and arrest presents. Opp. at 44. These individual differences do not affect the (b)(2) analysis. What matters instead is that "(1) the defendant's action or refusal to act must be generally applicable to the class, and (2) plaintiff must seek final injunctive relief or corresponding declaratory relief on behalf of the class." *Steele v. United States*, 159 F. Supp. 3d 73, 81 (D.D.C. 2016), *on reconsideration in part*, 200 F. Supp. 3d 217 (D.D.C. 2016) (citation omitted); *Bynum*, 214 F.R.D. at 37–38; *R.I.L-R*, 80 F. Supp. 3d at 182. Defendants do not explain why any factual differences among putative class members changes the argument that Defendants have one policy and practice that is generally applicable to the class— conducting warrantless arrests without a pre-arrest individualized probable cause determination. Nor could they: "[I]t is enough to show that a defendant 'has acted in a consistent manner toward members of the class so that his actions may be viewed as part of a pattern of activity.'" *Bynum*, 214 F.R.D. at 37 (quoting 7A Wright & Miller, *Fed. Prac. & P.* § 1775 (2d ed. 1986)); *see also Jones v. Goord*, 190 F.R.D. 103, 112 (S.D.N.Y. 1999) (certifying a Rule 23(b)(2) class "notwithstanding defendants' argument that matters such as inmate screening is done on a case-by-case basis by different prison officials at different facilities").

The putative class members here "are not asking for this Court to remedy discrete errors" in their warrantless arrests, but rather they "ask only that the Court address an alleged systematic harm," the policy of conducting warrantless arrests without pre-arrest individualized determinations of probable cause. *Damus*, 313 F. Supp. 3d at 334. The existence of this policy is one that is "'generally applicable' to all class members, and a determination of whether that

practice is unlawful would therefore resolve all members' claims 'in one stroke.'" *Id.* at 334–35 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)); *see also R.I.L-R*, 80 F. Supp. 3d at 182 (finding Rule 23(b)(2) requirements met when the class challenged an action or policy "generally applicable to all class members"). "[T]he fact remains that, on the facts alleged by plaintiffs," the warrantless arrests in Washington, D.C. since August 11, 2025, "represent part of a consistent pattern of activity on the part of defendant[s]," and "[b]ased on these representations, the Court is satisfied," as it should be here, that it "constitutes conduct that is generally applicable to the members of the class." *Bynum*, 214 F.R.D. at 38. *See also* Class Cert. Mot. at 17–18 and 18 n.29 (collecting cases).

Finally, the relief Plaintiffs seek is precisely "final injunctive relief or corresponding declaratory relief on behalf of the class," *Steele*, 159 F. Supp. 3d at 81 (citation omitted), including an order enjoining the government from conducting warrantless arrests without a pre-arrest, individualized determination of probable cause that the individual is both in the United States unlawfully *and* poses a flight risk; a stay and vacatur of Defendants' policy; declaratory relief that Defendants' policy is unlawful; and expungement of all records collected and maintained about putative class members from the unlawful arrests.

Plaintiffs therefore meet all the requirements for class certification, and this Court should certify the Warrantless Arrest Class.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motions for a preliminary injunction, to stay agency action, and for provisional class certification and for class certification.[9]

---

[9] The Court should exercise its discretion to require Plaintiffs to post at most a nominal bond. *See, e.g.*, *Urb. Sustainability Dirs. Network v. U.S. Dep't of Agric.*, 2025 WL 2374528, at *39 (D.D.C. Aug. 14, 2025); *Widakuswara v. Lake*, 779 F. Supp. 3d 10, 39 (D.D.C. 2025).

November 7, 2025

Respectfully submitted,

*s/ Adina Appelbaum*
Adina Appelbaum (D.C. Bar No. 1026331)
Ian Austin Rose (Md. Bar No. 2112140043)
Samantha Hsieh (Va. Bar No. 90800)[*]
**AMICA CENTER FOR IMMIGRANT RIGHTS**
1025 Connecticut Avenue NW, Suite 701
Washington, D.C. 20036
(202) 331-3320
adina@amicacenter.org
austin.rose@amicacenter.org
sam@amicacenter.org

*s/ Aditi Shah*
Aditi Shah (D.C. Bar No. 90033136)
Scott Michelman (D.C. Bar No. 1006945)
**AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF THE DISTRICT OF COLUMBIA**
529 14th Street NW, Suite 722
Washington, D.C. 20045
(202) 457-0800
ashah@acludc.org
smichelman@acludc.org

Kathryn Huddleston (Tex. Bar No.
24121679)[**++]
**AMERICAN CIVIL LIBERTIES UNION
FOUNDATION**
915 15th Street NW, 7th Floor
Washington, D.C. 20005
(212) 549-2500
khuddleston@aclu.org

*s/ Sirine Shebaya*
Sirine Shebaya (D.C. Bar No. 1019748)
Yulie Landan (Cal. Bar No. 348958)[***+]
Bridget Pranzatelli (D.C. Bar No. 90029726)
**NATIONAL IMMIGRATION PROJECT**
1763 Columbia Road NW, Suite 175
Washington, D.C. 20009
(213) 430-5521
sirine@niplg.org
yulie@nipnlg.org
bridget@nipnlg.org

*s/ Jehan A. Patterson*
Jehan A. Patterson (D.C. Bar No. 1012119)
Chris Kimmel (D.C. Bar No. 1047680)
Alexandra Widas (D.C. Bar No. 1645372)
Hassan Ahmad (D.C. Bar No. 1030682)
Sean Berman (D.C. Bar No. 90026899)
Austin Riddick (D.C. Bar No. 90018117)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, D.C. 20001
(202) 662-6000
jpatterson@cov.com
ckimmel@cov.com
awidas@cov.com
hahmad@cov.com
sberman@cov.com
ariddick@cov.com

Eva H. Lilienfeld (N.Y. Bar No. 6143085)[*]
Graham Glusman (N.Y. Bar No. 6099535)[*]
**COVINGTON & BURLING LLP**
30 Hudson Yards
New York, NY 10001
(212) 841-1000
elilienfeld@cov.com
gglusman@cov.com

*s/ Madeleine Gates*
Madeleine Gates (D.C. Bar No. 90024645)
**WASHINGTON LAWYERS' COMMITTEE FOR
CIVIL RIGHTS AND URBAN AFFAIRS**
700 14th Street NW, #400
Washington, D.C. 20005
(202) 319-1000
madeleine_gates@washlaw.org

*s/ Ama Frimpong*
Ama Frimpong (D.C. Bar No. 1602444)[**]
**CASA, INC.**
8151 15th Avenue
Hyattsville, MD 20783
(240) 485-8844
afrimpong@wearecasa.org

*Attorneys for Plaintiffs*

[*]*Admitted* pro hac vice.
[**]*Motion for Admission* pro hac vice *forthcoming.*
[***]*Motion for Admission* pro hac vice *pending.*

[+]*Not Admitted in D.C.; working remotely from N.Y. and admitted in Cal. only*
[++]*Not Admitted in D.C.; working remotely under supervision of D.C. Bar member, practice limited to federal courts in D.C., and admitted in Ariz. and Tex. only.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 7, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

Dated: November 7, 2025                  Respectfully submitted,

                                        */s/ Jehan A. Patterson*
                                        Jehan A. Patterson (D.C. Bar No. 1012119)
                                        Covington & Burling LLP
                                        One CityCenter
                                        850 Tenth Street NW
                                        Washington, D.C. 20001
                                        (202) 662-6000
                                        jpatterson@cov.com

                                        *Attorney for Plaintiffs*

44