UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSE ESCOBAR MOLINA, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>DEPARTMENT OF HOMELAND SECURITY, et al.,<br><br>  Defendants. | Civil Action No. 25-3417 (BAH) |

**DEFENDANTS' SUPPLEMENTAL OPPOSITION TO PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION AND CLASS CERTIFICATION**

Pursuant to the Court's invitation, Hearing Tr. at 101 (ECF No. 61), Defendants respectfully submit the following supplemental information and arguments for the Court's consideration.

Defendants maintain that Plaintiffs' revised proposed order (ECF No. 62-1) does not address the Court's concerns about micromanaging immigration arrests in Washington, D.C. Moreover, the revised proposal allows Plaintiff to obtain rolling discovery in a case where no discovery is necessary. Defendants also further supplement their reasoning for why 8 U.S.C. § 1252 (f)(1) prevents the Court from issuing class wide relief and, accordingly, the Court should reject Plaintiffs' revised proposed order on the class certification (ECF No. 62-2). Finally, Defendants respectfully refer the Court to the attached declarations which address the Fourth Amendment and 8 U.S.C. § 1357 training provided to Immigration and Customs Enforcement ("ICE") and U.S. Customs and Border Protection ("CBP") officers and agents and additional background information about the arrests at issue in this lawsuit.

## I. Plaintiffs' Revised Proposed Order in Support of Their Preliminary Injunction Motion is Overbroad.

Plaintiffs' revised proposed order presupposes the existence of a policy and practice permitting unlawful warrantless arrests not based on probable cause. However, as Defendants' opposition brief and argument advanced during the November 19, 2025, hearing made clear, there is no such policy and practice. Those arguments remain in full force to support the Court's rejection of Plaintiffs' requested injunctive relief and thus the revised proposed order. With that said, if the Court were inclined to issue an injunction in this case, Plaintiffs' revisions to their initial proposed order do not address the Court's deep concerns and therefore should be rejected.

During the November 19, 2025, hearing on Plaintiffs' motion for a preliminary injunction, the Court shared Defendants' concern that the broad injunction Plaintiffs seek would force the Court to micromanage immigration arrests in Washington, D.C. Hearing Tr. at 46-49 (ECF No. 61). The Court explained,

> The defendants making very strong arguments about this Court, me, this specific Court being subject to becoming an immigration-related court and supervising arrests and stops, even potentially for civil immigration arrests in the country brought to the Court's attention by the plaintiffs when they think the documentation for that arrest is insufficient to show individualized consideration of the two prongs. That's a significant involvement of this Court in immigration enforcement here that gives me pause.

*Id.* at 50. Plaintiffs' revised proposal (ECF No. 62-1) does not resolve this concern. The revised proposed order enjoins Defendants from "enforcing their policy and practice of making warrantless civil immigration arrests in this District without a pre-arrest individualized determination by the arresting agent of probable cause that the person being arrested is likely to escape before a warrant can be obtained, as required by 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii)." Revised Prop. Order ¶ 1. To seek enforcement of this injunction, Plaintiffs suggest that, if the parties are unable to resolve any purported noncompliance after the parties'

"meet and confer," they would bring to the Court's attention incidents where they "believe that the Defendants are in substantial noncompliance" and the Court would need to make an independent finding that Defendants are not in compliance. *Id.* ¶¶ 6, 7. These proposals are untenable for two reasons. First, the "meet and confer" requirement proposed by Plaintiffs is essentially imbedded in Local Civil Rule 7(m), which requires the parties to engage in "good faith" conference to narrow any disputed issues before the movant can raise nondispositive issues with the court. LCvR 7(m). Thus, this proposal is simply redundant of the Local Rule and thus unnecessary.

Second, Plaintiffs' revised proposal would still require the Court to review the circumstances behind individual arrests and adjudicate whether a given arrest was lawful; the same level of micromanagement that the Court sought to avoid. Hearing Tr. at 50. Plaintiffs argue that by adding the phrase "enforcing their policy and practice" to the revised proposed order they have prevented a "*de minimis* or isolated instances of agents failing to make a pre-arrest individualized determination of probable cause for [escape] risk" sufficient "to constitute a violation of the order." Pl. Not. at 2 (ECF No. 62). But the revised proposal does not describe what constitutes a "de minimis" or "isolated" violation and it is likely that the parties will have differing views on whether a given violation is "di minimis" or "isolated." At base, Plaintiffs' revised proposal does nothing to prevent this Court from transforming itself into an "immigration-related court" that polices instances in which Plaintiffs believe the Government has violated the revised proposed order.

Additionally, Plaintiffs' revised proposal requires the Government to "document the facts and circumstances surrounding the warrantless civil immigration arrest in narrative form" and "release to Plaintiffs' counsel the documentation describing Defendants' and their agents' warrantless civil immigration arrests within this District, or if requested by Plaintiffs' counsel concerning specific individual warrantless arrests[.]" Revised Prop. Order ¶¶ 3-5. These

provisions subject the Government to on-going and rolling discovery even though Plaintiffs brought claims solely under the Administrative Procedure Act ("APA"), and in an APA case, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973); *see also Hill Dermaceuticals, Inc. v. Food & Drug Admin.,* 709 F.3d 44, 47, (D.C. Cir. 2013) ("[I]t is black-letter administrative law that in an APA case, a reviewing court should have before it neither more nor less information than did the agency when it made its decision."). Indeed, Section 706 of the APA reflects "Congress's judgment that the civil discovery rules are incompatible with the APA, and their application to federal agencies would likely hinder the workings of another branch of government." *Univ. of Cal. Student Ass'n v. McMahon*, Civ. A. No. 25-354 (RDM), 2025 U.S. Dist. LEXIS 132740, at *5 (D.D.C. Mar. 18, 2025). Thus, discovery in the form of document production proposed by Plaintiffs should be prohibited. *Id*.

    Finally, Plaintiffs' revised proposal will likely convert the Court into one that constantly supervises mini-discovery disputes. The revised proposed order would allow Plaintiffs to seek court intervention if they are dissatisfied with Defendants' arrest documentation and productions of those arrest records and make the Court the arbiter of whether each arrest documentation contains a satisfactory "individualized assessment" of probable cause and escape risk. The Court has expressed deep concerns that Plaintiffs' proposal would unduly burden it with arrests "brought to the Court's attention by the plaintiffs when they think the documentation for that arrest is insufficient to show individualized consideration of the two prongs [of 8 U.S.C. § 1357(a)(2)]." Hearing Tr. at 50. In short, the revised proposed order would put the Court in the untenable position of not only supervising civil immigration arrests in Washington, DC, to include the quality

of documentation of those arrests, but also to settle discovery disputes among the parties in a case where discovery would ordinarily be unwarranted.

Accordingly, if the Court were inclined to issue any injunction here, that order should be as narrowed as possible. *See Trump v. CASA*, 606 U.S. 831, 852 (2025) (noting that in fashioning an injunction, "the question is not whether an injunction offers complete relief to everyone potentially affected by an allegedly unlawful act; it is whether an injunction will offer complete relief *to the plaintiffs before the court*.") (italics in original). Thus, under *CASA*, the Court should do no more than enjoin Defendants from rearresting the four individually named Plaintiffs in this case without making individualized assessment of probable cause as required under 8 U.S.C. § 1357(a)(2). The order should not apply to the anonymous declarants or unidentified members of Plaintiff CASA as those individuals are not named plaintiffs in this case.[1]

## II.     8 U.S.C. § 1252(f)(1) Prohibits the Class Wide Injunctive Relief Plaintiff Seeks.

8 U.S.C. § 1252(f)(1) provides: "Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of [provisions including 8 U.S.C. §§ 1221–1231] other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated." By its terms, this provision bars the lower federal courts from issuing any order that commands "federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the specific statutory provisions," except in regard to "individual cases." *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022). Section 1252(f)(1)'s text extends beyond injunctions, to expressly include any order that "restrain[s]" the operation of a covered statute. And as the Supreme Court held, those terms

---

[1]     Defendants have attached a proposed narrowed order for the Court's consideration.

- 5 -

have independent meaning and cut broadly to prevent orders that prohibit the Government from "carry[ing] out" any of the covered provisions. *Aleman Gonzalez*, 596 U.S. at 549-50.

Here, the proposed order runs to "an entire class of aliens," *id*. at 550-51 (i.e., all persons who, since August 11, 2025, have been or will be arrested in this District for alleged immigration violations without a warrant and without a pre-arrest, individualized assessment of probable cause that the person is in the United States unlawfully and that the person is an escape risk) rather than any "individual alien." 8 U.S.C. §1252(f)(1). Moreover, the proposed injunction regarding warrantless arrests under section 1357 "restrain[s] the operation" of one of the covered provisions. *Aleman Gonzalez*, 596 U.S. at 550-51. Specifically, enjoining warrantless arrests would necessarily restrain the operation of sections 1225, 1226, 1231 because, arrested by warrant or without, it restrains actions that are allowed by sections (1) 1225(b) – arrest and detention of arriving aliens; (2) 1226(a) – arrest and detention pending a decision to remove an alien from the United States; (3) 1226(c) – arrest and mandated detention of individuals with certain criminal backgrounds pending a decision on removal; (4) 1231(a)(2) – arrest and mandated detention of aliens pending removal; and (5) 1231(a)(6) – arrest and detention of aliens deemed to be dangers to the community or flight risks pending removal. A warrantless arrest under section 1357(a)(2) is simply a threshold exception to arrest by warrant due to exigent circumstances, and after the arrest, detention may proceed under sections 1225, 1226, and 1231 no differently. *See* 8 C.F.R. § 287.3(d) (custody procedures following a warrantless arrest are "as prescribed in 8 CFR parts 236 and 239"). In other words, enjoining section 1357(a)(2) "directly and substantially restricts the ability of . . . federal officials to 'carry out' the arrest and detention of deportable aliens pursuant to 8 U.S.C. § 1226, which is located in part IV of the INA." *N.S. v. Dixon*, 141 F.4th 279, 289-90 (D.C. Cir. 2025).

Meanwhile, *N.S.* ultimately did not address whether enjoining section 1357 would restrain operation of section 1226.  Rather, the D.C. Circuit held that Plaintiffs sought to enjoin arrests by warrant, despite citing some instances of warrantless arrests, so whether enjoining warrantless arrests would restrain operation of 1226 was "beside the point."  *N.S.*, 141 F.4th at 290.  That said, the D.C. Circuit found it critical that enjoining an arrest by warrant would restrain a regulation that "claims its authority in part from 8 U.S.C. §§ 1226 and 1231, both of which are covered by section 1252(f)(1)."  *Id.*  8 C.F.R. § 287.3, which implements 8 U.S.C. § 1357, likewise claims its detention authority in part from 8 U.S.C. § 1226 (*see* 8 C.F.R § 287.3(c)), a covered by section 1252(f)(1).

Both *Aleman Gonzalez* and *N.S.* confirm that this Court lacks authority under § 1252(f)(1) to enjoin warrantless immigration arrests.  That is not to say that Plaintiffs cannot obtain final relief in the form of a proper declaratory judgment.  Rather, Plaintiffs cannot avail themselves of an order that preliminarily enjoins the government from arresting individuals presently in the United States in violation of the immigration laws.  *See United States v. Texas*, 599 U.S. 670, 691-92 (2023) (Gorsuch, J., concurring) (opining that courts must look to final judgment to determine the effect on the government).  Because there is no such thing as "preliminary declaratory relief," this Court lacks the authority to issue a preliminary injunctive order.  *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975) ("But prior to final judgment there is no established declaratory remedy comparable to a preliminary injunction; unless preliminary relief is available upon a proper showing, plaintiffs in some situations may suffer unnecessary and substantial irreparable harm.  Moreover, neither declaratory nor injunctive relief can directly interfere with enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs, and the State is free to prosecute others who may violate the statute."); *Gayle v. Warden Monmouth Cnty. Corr. Inst.*, 12 F.4th 321, 336–37 (3d Cir. 2021) (finding "that § 1252(f)(1) prohibits class-wide

injunctions even where the class is composed entirely of individuals who are already in removal proceedings" and "vacat[ing] that order and remand[ing] for the entry of the appropriate declaratory relief.").

The restriction on granting injunctive relief also prohibits this Court from certifying Plaintiffs' proposed class, including one set forth in the revised proposal (ECF No. 62-2_. Rule 23(b)(2) only permits a class action if the court could issue final injunctive relief or corresponding declaratory relief that is appropriate respecting the class as a whole. Fed. R. Civ. P. 23(b)(2). Since the Court cannot enter that form of relief, certifying this class would be an exercise in futility. It matters not that Plaintiffs argue Defendants' actions are unlawful, because 1252(f)'s remedial bar is not limited to the enumerated provisions "as *properly* interpreted." *N.S.*, 141 F.4th at 289 (emphasis in original)(citing *Aleman Gonzalez*, 596 U.S. at 552-54). Any other reading would "make the effect of § 1252(f)(1) contingent upon the merits of the claim that the Government acted unlawfully." *Id.* Put another way, even if this Court ultimately were to find that Defendants' actions were contrary to law, section 1252(f)(1) precludes the Court from enjoining on a classwide basis Defendants' operation of immigration arrests under section 1226. *See id.* ("§ 1252(f)(1) has the same force even when the National Government allegedly enforces the relevant statutes unlawfully." (quoting *Arizona v. Biden*, 40 F.4th 375, 394 (6th Cir. 2022) (Sutton, C.J., concurring))).

The statutory text supports a reading that section 1252(f)(1) bars APA stays or vacatur. *See N.S.*, 141 F.4th at 290 n.7.[2] The provision's prefatory clause is clear: "Regardless of the nature

---

[2]     Although two D.C. Circuit Judges recently determined that the Government's arguments that section 1252(f)(1) bars APA stays or vacatur are unlikely to succeed on the merits, this determination came in an order partially denying a stay of a district court's order pending appeal. *Make the Road N.Y. v. Noem*, No. 25-5320, Stmt. of J. Millett and J. Childs, at *35 (D.C. Cir. Nov. 22, 2025) (Dkt. No. 2146745). The Supreme Court has explained that "interim orders are not

of the action or claim." 8 U.S.C. § 1252(f)(1). To deem APA vacatur to somehow not be covered by the reach of § 1252(f)(1) would render the provision's prefatory clause a "paper tiger" or "toothless," allowing parties to circumvent clear jurisdictional bars by creative pleading. *See E.F.L. v. Prim*, 986 F.3d 959, 965 (7th Cir. 2021) (applying principle when affirming a neighboring jurisdictional bar); *see also Tazu v. Att'y Gen.*, 975 F.3d 292, 298 (3d Cir. 2020) (same). As vacatur "restrict[s] or stop[s] official action," *Direct Mktg. Ass'n v. Brohl*, 575 U.S. 1, 13 (2015), Congress plainly foreclosed any such order by this Court by declaring in § 1252(f)(1) that "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of" the covered provisions." *See also Make the Road N.Y.*, No. 25-5320, dissenting Stmt. of J. Rao at *93 (finding 1252(f)(1) prevents a court from issuing a stay because "the plain meaning of 'enjoin or restrain' encompasses more than just injunctions[.]").

Finally, that Plaintiffs seek separate declaratory relief is of no moment. The Declaratory Judgment Act only permits a court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Courts can enter declaratory judgment if it will either (1) "serve a useful purpose in clarifying the legal relations in issue" or (2) "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *President v. Vance*, 627 F.2d 353, 364 n.76 (D.C. Cir. 1980). Here, Plaintiffs' proposed declaration would "interdict[]" "the operation at large of" section 1226 thereby prohibiting Defendants from continuing to apply it. *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 155 (1963). Defendants

---

conclusive as to the merits" but only "inform how a court should exercise its equitable discretion in like cases." *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025). A "stay order is not a ruling on the merits, but instead simply stays [a lower-court] injunction pending a ruling on the merits." *Merrill v. Milligan*, 142 S. Ct. 879, 879 (2022) (Kavanaugh, J., concurring in grant of applications for stays).

would face the threat of contempt if there were a violation of the Court's order.  Thus, as a practical matter, such an order would fail to differentiate "between injunctive and declaratory relief." *California v. Grace Brethren Church*, 457 U.S. 393, 408 (1982).  This is especially true given that "every single member of the class can, and will, immediately seek an injunction grounded on the authority of the declaratory judgment."  *Alli v. Decker*, 650 F.3d 1007, 1020 n.2 (3d Cir. 2011) (Fuentes, J., dissenting); *see also Hamama v. Adducci*, 912 F.3d 869, 880 n.8 (6th Cir. 2018) (while "declaratory relief will not always be the functional equivalent of injunctive relief . . . in this case it is the functional equivalent").

Defendants acknowledge that the D.C. Circuit has indicated that section 1252(f)(1) does not bar the granting of declaratory relief.  *See Make the Rd. N.Y. v. Wolf*, 962 F.3d 612, 635 (D.C. Cir. 2020).  But that holding contemplates a properly crafted declaratory judgment.  And Defendants do not dispute that an ordinary declaratory judgment pronouncing an agency action unlawful does not, by itself, "enjoin or restrain" the operation of the statute that authorized the agency action.  8 U.S.C. § 1252(f)(1).  But that is because such remedy is "totally noncoercive." *Kennedy*, 372 U.S. at 155; *see also Steffel v. Thompson*, 415 U.S. 452, 471 (1974) ("Though [a declaratory judgment] may be persuasive, it is not ultimately coercive." (citation omitted)).  This is precisely why declaratory judgments and injunctions are two different remedies requiring "different considerations" and why there are times when a declaratory judgment may be appropriate even if an injunction is not.  *Steffel*, 415 U.S. at 469.

Under *Make the Road*, this Court could issue a declaratory judgment, but "the Government [remains] free to continue to apply" the challenged action pending further proceedings, including appellate review.  *Kennedy*, 372 U.S. at 155.  That would follow Congress's plan for § 1252(f)(1), which was enacted not to entirely "preclude challenges" to covered immigration procedures, but

to ensure that "the procedures will remain in force while such lawsuits are pending. H.R. Rep. No. 469, 104th Cong., 2d Sess. Pt. 1 at 161 (1996). The relief that Plaintiffs seek goes beyond this contemplation, and they would likely seek to have Defendants held in contempt if Defendants continued the allegedly unlawful arrests following Plaintiffs' requested declaratory judgment. Any such classwide relief would go beyond the permissible reach of § 1252(f)(1). *Cf. Calderon Jimenez v. McAleenan*, No. Civ. A. No. 18-10225, (ECF No. 295, at 1) (D. Mass. June 28, 2019) ("any violation of" the court's construction of the law "could constitute civil and/or criminal contempt").

*Grace Brethren Church,* 457 U.S. at 408, is particularly instructive. There, the Supreme Court held that the Tax Injunction Act, 28 U.S.C. § 1341, which barred orders that "suspend or restrain" tax collection, stripped courts of jurisdiction to enter not just injunctive relief, but also declaratory relief. The Court should extend the same reasoning here, even though Plaintiffs seek a declaration and accompanying vacatur under § 706. *See Texas*, 599 U.S. at 690-701(Gorsuch, J., concurring) (agreeing that a district court cannot use vacatur under 5 U.S.C. § 706 to "sidestep" § 1252(f)(1)).

Thus, even if standalone declaratory relief is not barred by § 1252(f)(1) in this instance, the putative class cannot be sustained based solely upon the request for declaratory relief because class certification is permitted only where a court can grant "corresponding declaratory relief." Fed. R. Civ. P. 23(b)(2). The Advisory Committee defines "corresponding declaratory relief" as any remedy that "as a practical matter . . . affords injunctive relief or serves as a basis for later injunctive relief." Fed. R. Civ. P. 23(b)(2) Advisory Committee Note to 1996 Amendment; *see also* 7AA Fed. Prac. & Proc. Civ. § 1775 (3d ed.). This definition makes clear that the purpose of the Rule 23(b)(2) class was to enjoin certain action or inaction on a classwide basis and that any

anticipated declaratory relief issued under this provision should be equivalent to an injunction to satisfy the requirements of class certification.  *See id.*; *see also Coca-Cola Bottling Co. of Elizabethtown v. Coca-Cola Co.*, 98 F.R.D. 254, 271 (D. Del. 1983) (refusing to certify a Rule 23(b)(2) class where "[d]etermination of the [] issues would not result in corresponding declaratory relief that would have the effect of enjoining the defendant from acting in the future"); *Sibley v. Diversified Collection Servs., Inc.*, Civ. A. No. 396-cv-0816, 1998 WL 355492, at *4 (N.D. Tex. June 30, 1998) (opining that, under Rule 23(b)(2), "the declaratory judgment should be the equivalent of an injunction").

Accordingly, Rule 23(b)(2) allows only declaratory relief that has the same practical effect as an injunction, but § 1252(f)(1) prevents Plaintiffs from obtaining any relief that has the same effect as an injunction.  The Supreme Court echoed this point when it suggested that if § 1252(f)(1) prohibits class wide injunctive relief, then it may equally prohibit corresponding declaratory relief. *See Jennings v. Rodriguez* 583 U.S. 281, 313 (2018) ("[I]f the Court of Appeals concludes that it may issue only declaratory relief, then the Court of Appeals should decide whether that remedy can sustain the class on its own" in light of Rule 23(b)(2)'s language concerning "corresponding" relief).  Thus, any declaratory judgment here would be limited to stand-alone declaratory relief, which is not contemplated by Rule 23(b)(2).

In short, Plaintiffs cannot meet the requirements for certification under Rule 23(b)(2).  That alone warrants denial of Plaintiffs' class certification motion before the Court even reaches the Rule 23(a) considerations.

\*   \*   \*

## CONCLUSION

For the aforementioned reasons, including arguments made in Defendants' opposition and at the hearing, the Court should deny Plaintiffs' motions for preliminary injunction and class certification.

Dated: November 24, 2025
       Washington, DC

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:     /s/ John J. Bardo
JOHN J. BARDO, D.C. Bar #1655534
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2539

*Attorneys for the United States of America*