IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSÉ ESCOBAR MOLINA, *et al.*, *individually and on behalf of all others similarly situated,*<br><br>*Plaintiffs,*<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>*Defendants.* | Civil Action No. 25-3417 (BAH) |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' SUPPLEMENTAL OPPOSITION TO PLAINTIFFS' MOTIONS FOR A PRELIMINARY INJUNCTION AND CLASS CERTIFICATION**

Defendants' supplemental filings fail to cure the legal and evidentiary deficiencies the Court identified at the November 19 hearing. Defendants' silence on their policy and practice of effecting unlawful warrantless civil immigration arrests speaks volumes. Once more, Defendants entirely fail to address the public statements made by DHS that it does not use the required legal standard to make these arrests. Defendants' new arguments as to 8 U.S.C. § 1252(f)(1) fail for the same reasons as before: The requested classwide injunction here does not implicate *any* provision covered by § 1252(f)(1). And Defendants' supplemental declarations do not fill any of the gaps highlighted by Plaintiffs or the Court; they do not include statements from any arresting officers or establish their knowledge of facts supporting probable cause for flight risk *before making the arrests*, and do not otherwise demonstrate that the officers made the statutorily required individualized determinations of probable cause for flight risk before arresting Plaintiffs and more than two dozen other individuals.

1

I.      **Plaintiffs' Revised Proposed Preliminary Injunction Order Is Properly Tailored.**

As Plaintiffs have explained, *see* ECF 62 ("Notice"), the revised proposed order resolves any administrability concerns. Defendants' arguments to the contrary lack merit.

First, Defendants ignore the effect of Plaintiffs' narrowing the scope of their requested relief to an injunction prohibiting Defendants from "enforcing their *policy and practice* of making warrantless civil immigration arrests in this District" without probable cause for flight risk. ECF 62-1 ("Revised Proposed Order") at 2 (emphasis added). Should Defendants violate the proposed injunction, it would be Plaintiffs' burden to demonstrate that the Court should enforce the order or hold Defendants in civil contempt. *See Potter v. District of Columbia*, 126 F.4th 720, 723 (D.C. Cir. 2025) (quoting *Armstrong v. Exec. Off. of the President*, 1 F.3d 1274, 1289 (D.C. Cir. 1993)) (setting forth "clear and convincing" standard of proof for party to prevail on contempt motion). With the order revised to enjoin conduct "at a policy level" rather than "an individual arrest level," ECF 61 (Nov. 19, 2025, Hrg. Tr. ("Tr.")) at 49:11–12, the risk that this Court will be required to adjudicate the lawfulness of individual immigration arrests is substantially mitigated. This is because, as a practical matter, it would be difficult to show "clear and convincing" evidence that Defendants are continuing to engage in the enjoined policy based on isolated examples, and so Plaintiffs would have no reason to seek the Court's intervention for every arrest or to "micromanage" enforcement. For these same reasons, Defendants' complaint that Plaintiffs' revised proposed order "does not describe what constitutes a 'de minimis' or 'isolated' violation,'" ECF 63 ("Supp. Opp.") at 3, is misplaced. The point is not that the order itself contains a "de minimis" carveout, but that, practically speaking, "de minimis" violations would not provide a basis for Plaintiffs to seek this Court's intervention under the "clear and convincing" standard.

Second, Defendants' contention that the documentation requirements in the proposed order "subject the Government to on-going and rolling discovery" inconsistent with the APA and "will

likely convert the Court into one that constantly supervises mini-discovery disputes," Supp. Opp. at 4, is entirely without merit. First, Plaintiffs' proposed documentation requirements are focused on monitoring compliance with preliminary injunctions, rather than the need for broader discovery; the latter question need not be resolved at this stage. Indeed, this Court has imposed similar reporting requirements on the government to ensure plaintiffs can monitor compliance with preliminary injunctions in cases where plaintiffs brought administrative law claims. *See Heredia Mons v. Wolf*, 2020 WL 4201596, at *1 (D.D.C. July 22, 2020); Min. Order, *Heredia Mons v. Wolf*, 1:19-cv-01593 (D.D.C. July 23, 2020) (ordering ICE to produce "parole advisals, parole worksheets, and parole determinations" to Plaintiffs to monitor compliance with preliminary injunction); *Damus v. Nielsen*, 328 F.R.D. 1, 5 (D.D.C. 2018) (ordering ICE to produce a random sample of "parole-determination documentation" to Plaintiffs to monitor compliance with preliminary injunction); *see also Ramirez Ovando v. Noem*, No. 25-cv-03183, ECF 49 (D. Colo. Nov. 25, 2025) at 62–63 (in unlawful warrantless immigration arrests class action raising APA claims, ordering defendants to document the "facts and circumstances surrounding that arrest" and to provide documentation to plaintiffs "at regular intervals to be agreed upon by the parties"). Although in *Damus* and *Heredia Mons*, the Court ordered production of such documents after the plaintiffs moved for limited discovery to investigate non-compliance with the preliminary injunctions, ordering Defendants to provide the documentation in the preliminary injunction order would enable the parties to discuss thoroughly any potential noncompliance and potentially resolve such issues, obviating the need to bring such disputes to the Court. *See Ramirez Ovando*, ECF 49 at 60 (scope of preliminary injunctive relief issued was intended in part to "ensure compliance with [the Court's] Order").

      Defendants do not address the cases Plaintiffs cited in which courts included

3

documentation and reporting requirements as part of preliminary injunction orders. Notice at 3. In any event, Plaintiffs' revised proposed order does not impose any discovery obligations on Defendants—rather, the documentation requirements are exactly what the Broadcast Statement of Policy requires Defendants to do.[1] And Defendants' premise with respect to the availability of discovery in APA cases is wrong: It is well established that courts may "depart from the default APA no-discovery rule" if a key question is the "contours of the precise policy at issue," among other reasons. *AFL-CIO v. Dep't of Lab.*, 349 F.R.D. 243, 249 (D.D.C. 2025) (quoting *Hispanic Affairs Project v. Acosta*, 901 F.3d 378, 388 (D.C. Cir. 2018)); *see also Venetian Casino Resort, LLC v. EEOC*, 409 F.3d 359, 360 (D.C. Cir. 2005).

Third, Defendants are wrong that Plaintiffs' proposed meet-and-confer process is both "redundant" of Local Civil Rule 7(m) and "untenable." Supp. Opp. at 3. Unlike Rule 7(m), Plaintiffs' proposed process requires Plaintiffs to provide written notice to Defendants that "identif[ies], with particularity, the basis of" any claim that Defendants are not complying with the injunction to facilitate a good-faith resolution without Court intervention. Revised Proposed Order at 4. Also unlike the local rule, Plaintiffs' process imposes a specific timeline for the parties to achieve a non-judicial resolution. *Id.* Further, Defendants fail entirely to address Plaintiffs' argument that a similar meet-and-confer process in the settlement agreement in *Castañon Nava v. Dep't of Homeland Sec.*, No. 1:18-cv-03757 (N.D. Ill. Dec. 18, 2018), ECF 155-1 at 28–29, proved effective in mitigating judicial manageability concerns there. Notice at 3.

Finally, *Trump v. CASA*, 606 U.S. 831 (2025), is inapposite. Unlike in *CASA*, Plaintiffs here have sought class certification, including on a provisional basis, so that they can obtain

---

[1] This is not to say that Plaintiffs could not seek discovery if Defendants fail to comply with any preliminary injunction entered by the Court. *See, e.g., Heredia Mons*, 2020 WL 4201596, at *2 (collecting cases ordering limited discovery into noncompliance).

4

classwide relief, and have separately sought to vacate Defendants' policy and practice under the APA. *CASA* recognized that class actions remain valid vehicles for obtaining relief that applies to individuals beyond the plaintiffs, *see id.* at 849–50, and expressly left open whether federal courts may vacate agency action under the APA, *see id.* at 847 n.10.

**II.     Defendants' Supplemental 8 U.S.C. § 1252(f)(1) Arguments Are Unavailing.**

Defendants' supplemental arguments regarding 8 U.S.C. § 1252(f)(1)—all of which were available to them at the time of their original opposition to class certification—provide no basis to apply § 1252(f)(1) here. To start, Defendants repeat their argument that although § 1357(a)(2) is not itself a provision covered by § 1252(f)(1), any injunction enjoining its operation "directly and substantially restricts the ability of . . . federal officials to 'carry out' the arrest and detention" of certain noncitizens. Supp. Opp. at 6 (quoting *N.S. v. Dixon*, 141 F.4th 279, 289–90 (D.C. Cir. 2025)). But, as explained in Plaintiffs' reply brief, § 1252(f)(1) only restricts classwide injunctive relief that *directly* "enjoin[s] or restrain[s] the operation of" specified statutes. ECF 54 ("Reply") at 29. A narrow injunction limited to § 1357—like the preliminary injunction sought here—would *at most* have "downstream effects" on the covered provisions; such incidental, "collateral effects do not trigger § 1252(f)(1)." *Refugee & Immig. Ctr. for Educ. & Legal Servs. v. Noem*, 793 F. Supp. 3d 19, 107 (D.D.C. 2025). In any case, Defendants' contention that there would be any such downstream effects here is unsupported. As the Court recognized, Plaintiffs' requested preliminary injunction would enjoin only civil immigration arrests made without a warrant and without probable cause for flight risk as required under § 1357(a)(2). *See* Tr. 6:21–7:5 ("THE COURT: So to be absolutely specific about what we're talking about here today, plaintiffs' challenge is only to warrantless civil arrests being carried out in DC in a manner that plaintiffs allege fails to meet the legal requirements under the INA Section 1357(a)(2), which requires that civil immigration arrests – remember, not criminal, must be based on probable cause to believe the non-citizen is in the

5

United States unlawfully and is likely to escape before a warrant may be obtained. Is that correct? MS SHAH: That's correct."). It would not prevent Defendants from carrying out arrests and detention of individuals under any covered provision such as §§ 1225, 1226, and 1231, two of which (§§ 1225 and 1231) Defendants assert would be implicated for the first time in their supplemental opposition, *see* Supp. Opp. at 6. And Plaintiffs' requested preliminary injunction would not wholly bar an agency "from arresting and detaining any [individual] suspected of a civil immigration violation," as the D.C. Circuit disapproved in *N.S.* 141 F.4th at 290.

Defendants' argument that a classwide injunction would enjoin or restrain implementing regulations rather than § 1357(a)(2) fares no better. As a threshold matter, that argument finds no textual support: Section 1252(f)(1) bars injunctive relief as to the "operation of the [statutory] *provisions of part IV of this subchapter*, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996" (emphasis added), not the operation of implementing regulations. It also ignores that 8 C.F.R. 287.8(c)(2)(i)–(ii), the portion of the regulation that Plaintiffs' requested injunction seeks to enforce, is not a regulatory provision that § 1252(f)(1) might purport to cover. *See* Supp. Opp. at 6–7 (discussing 8 C.F.R. § 287.3(c)–(d)). In *N.S.*, the D.C. Circuit analyzed how the injunction restrained the operation of covered INA provisions by analyzing how the relevant regulations acted to directly effectuate those statutory provisions. Specifically, the *N.S.* court analyzed how the injunction restrained the government's actions directly under §§ 1226(a) and 1226(c). Again, the court held that the injunction was unlawful because it was overbroad. Plaintiffs' requested injunction here does not suffer from the same defect, and nothing in 8 C.F.R. § 287.8 references a covered provision. Courts have repeatedly recognized the distinction between § 1357(a)(2) and covered provisions and, accordingly, provided injunctive relief in the § 1357(a)(2) context. *See United Farm Workers v. Noem*, 785 F.

Supp. 3d 672, 704 (E.D. Cal. 2025) (holding § 1252(f)(1) did not bar an injunction of unlawful warrantless arrests under § 1357); *Kidd v. Mayorkas*, 734 F. Supp. 3d 967, 986 (C.D. Cal. 2024) ("There is a clear distinction between the authority to issue warrants under § 1226(a) and the one to execute arrests under § 1357.").

Defendants' argument that § 1252(f)(1)'s "remedial bar is not limited to the enumerated provisions 'as *properly* interpreted'" is similarly unavailing. Supp. Opp. at 8 (citing *N.S.*, 141 F.4th at 289 (in turn citing *Garland v. Aleman Gonzalez*, 596 U.S. 543, 552–54 (2022)). This is an argument made in cases where plaintiffs sought specifically to enjoin *covered* provisions. *See, e.g.*, *Aleman Gonzalez*, 596 U.S. at 551 (seeking to enjoin § 1231(a)(6), a covered provision); *N.S.*, 141 F.4th at 289 (injunction applied to § 1226, a covered provision). Defendants' reliance on these cases therefore is inapposite.

Defendants' next argument that § 1252(f)(1) also bars an APA stay under 5 U.S.C. § 705 and vacatur under 5 U.S.C. § 706 contravenes the D.C. Circuit's recent decision that the government is unlikely to prevail on its argument that § 1252(f)(1) restricts APA relief for provisions covered by § 1252(f)(1)—as Defendants acknowledge. *Make the Rd. N.Y. v. Noem*, No. 25-5320 (D.C. Cir. Nov. 22, 2025) at 31–36; Supp. Opp. at 8 n.2. It is also at odds with every court that has examined this issue, which has held the same. *See, e.g.*, *Immigrant Defs. Law Ctr. v. Noem*, 145 F.4th 972, 989–90 (9th Cir. 2025) (holding that § 1252(f)(1) does not apply to 705 stays); *Texas v. United States*, 40 F.4th 205, 220 (5th Cir. 2022) (holding that because "vacatur neither compels nor restrains further agency decision-making" and instead only "re-establishe[s] the status quo," § 1252(f)(1) does not bar 706 vacaturs); *Coal. for Humane Immig. Rights v. Noem*, 2025 WL 2192986, *13 (D.D.C. Aug. 1, 2025)) (holding that 1252(f)(1) does not bar the court from issuing a 706 vacatur); *Haitian Evangelical Clergy Ass'n v. Trump*, 789 F.Supp.3d 255, 270–73

(E.D.N.Y. 2025) (holding that 1252(f)(1) does not bar the court from setting aside unlawful agency action). The D.C. Circuit's analysis in *Make the Road* applies in full force here for the same reasons Plaintiffs described in their reply. Reply at 31–32. This is because § 1252(f)(1) "does not deprive the lower courts of all subject matter jurisdiction over claims brought under sections 1221 through 1232 of the INA." *Biden v. Texas*, 597 U.S. 785, 798 (2022); *see also* Reply at 31–32 (discussing the difference between injunctive relief and stays).

As to declaratory relief, it is true that Plaintiffs do not seek any "preliminary declaratory relief." But that is no bar to class certification especially where, as relevant here, the D.C. Circuit has held "[§ 1252(f)] does not proscribe issuance of a declaratory judgment[.]" *Make the Rd. N.Y. v. Wolf*, 962 F.3d 612, 635 (D.C. Cir. 2020). The D.C. Circuit has *already* held there is no bar to issuing declaratory relief under § 1252(f)(1), *id.*, and Defendants offer no compelling reason to extend the Supreme Court's reasoning in *California v. Grace Brethren Church*, 457 U.S. 393, 409 (1982), to § 1252(f)(1) in light of controlling D.C. Circuit precedent.[2] *Grace Brethren Church* construed different language—"enjoin, suspend or restrain"—in a different statute, the Tax Injunction Act. Section 1252(f)(1), on the other hand, restricts only a court's ability to "enjoin or restrain the operation of" the covered provisions. Indeed, in discussing the bar on "*declaratory*, injunctive, or other equitable relief in any action pertaining to an order to exclude'" a noncitizen in "[a] closely adjacent provision, § 1252(e)(1)(A)," the Third Circuit has held that "Congress

---

[2] Defendants' citation to *Gayle v. Warden Monmouth Cnty. Corr. Inst.*, 12 F.4th 321, 336–37 (3d Cir. 2021) is inapposite. Supp. Opp. at 7–8. *Gayle* concerns the detention of individuals under § 1226(c), where there was no question that the enjoined statute was a covered provision. Even still, the court remanded for "entry of the appropriate declaratory relief[.]" *Id.* at 337. Defendants' reliance on *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 155 (1963) is likewise unavailing as that decision concerns a completely unrelated statute and issue: whether the single judge ruling violated 28 U.S.C. § 2282, which required a three-judge panel. Supp. Opp. at 9.

8

knew how to preclude declaratory relief, but chose not to in § 1252(f)(1)." *Alli v. Decker*, 650 F.3d 1007, 1012 (3d Cir. 2011).[3]

Defendants next attempt to read a limitation into the D.C. Circuit's *Make the Road I* decision that is nowhere to be found: that the court's holding "contemplates a properly crafted declaratory judgment." Supp. Opp. at 10. Yet Defendants do not explain what a "properly crafted declaratory judgment" would look like, or provide any basis for reading such a requirement into the D.C. Circuit's plain holding that § 1252(f)(1) does not bar classwide declaratory relief over covered provisions.

The last of Defendants' new arguments, that even if declaratory relief is viable under § 1252(f)(1), the Court cannot certify the class under Rule 23(b)(2) because corresponding declaratory relief is akin to requested injunctive relief, is similarly unavailing. The Supreme Court has long described declaratory relief as different from and "milder" than injunctive relief. *Steffel v. Thompson*, 415 U.S. 452, 466–67 (1974). Defendants' claim that Plaintiffs "would likely seek to have Defendants held in contempt if Defendants continued the allegedly unlawful arrests following Plaintiffs' requested declaratory judgment," Supp. Opp. at 11, is pure conjecture and not contemplated under the Declaratory Judgment Act. *See Steffel*, 415 U.S. at 471 ("[N]oncompliance with [a declaratory judgment] may be inappropriate, but it is not contempt.") (citation omitted). And Rule 23(b)(2) states that a class action is appropriate where "final injunctive relief *or*

---

[3] Indeed, Defendants are unable to cite binding or persuasive authority for their proposition that declaratory relief is unavailable under § 1252(f)(1). *See, e.g.*, Supp. Opp. at 10. The citation to *Alli*, 650 F.3d at 1020 n.2, is the dissenting opinion. The citation to *Hamama v. Adducci*, 912 F.3d 869, 880 n.8 (6th Cir. 2018) was dicta: the issue of declaratory relief was not before the *Hamama* court, as that court itself observed. *See also id.* at 878 ("But there is a big difference between barring the certification of a class under Rule 23 and barring all injunctive relief [under § 1252(f)(1)]. The former bars a class action regarding anything; the latter only bars injunctive relief for anyone other than individuals.").

corresponding declaratory relief is appropriate respecting the class as a whole[.]" (emphasis added). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997) ("Rule 23(b)(2) permits class actions for declaratory or injunctive relief[.]"); *see also Rodriguez v. Bostock*, 349 F.R.D. 333, 363–64 (W.D. Wash. 2025) (rejecting the argument that a class certified for only declaratory relief of covered provisions could not be certified under Rule 23(b)(2)).

Finally, Defendants continue to ignore the full scope of the remedies Plaintiffs seek in final relief from the Court, which includes expungement of records collected and maintained by Defendants of Plaintiffs and putative class members' from their unlawful arrests. ECF 1 ("Compl.") at Prayer for Relief, K; *Sullivan v. Murphy*, 478 F.2d 938, 966–67, 971 (D.C. Cir. 1973) (describing expungement as part of the court's "broad and flexible equitable powers" and finding that a class action challenging the validity of mass arrests due to a common unlawful policy was appropriate).

### III. Defendants' Supplemental Declarations Fail to Cure the Deficiencies Identified by the Court at the November 19 Hearing and Fail to Rebut Plaintiffs' Evidence.

The supplemental declarations of Joseph Simon, ECF 63-1 (Supp. Simon Decl.), and Kenneth Blanchard Jr., ECF 63-2 (Supp. Blanchard Decl.) do not cure the deficiencies in their original declarations or fill the glaring gaps in Defendants' evidence. Neither supplemental declaration addresses Defendants' public statements about using a standard other than probable cause to make immigration arrests. *See* Tr. 65:3–4 ("THE COURT: You could have witnesses. Call them on over. I can hear them to testify to [to whether Defendants use probable cause]."). Nor have Defendants submitted any declarations from the agents who were involved in Plaintiffs' arrests. Tr. 55:1–2 ("THE COURT: Because I did expect to see declarations from the arresting officers and I didn't get those."). To be clear: Defendants have submitted *no* evidence to refute Plaintiffs' extensive evidence—more than two dozen warrantless immigration arrests without

10

probable cause for flight risk documented in sworn declarations and Defendants' own public statements—demonstrating Defendants' unlawful policy and practice.*no* evidence to refute Plaintiffs' extensive evidence—more than two dozen warrantless immigration arrests without probable cause for flight risk documented in sworn declarations and Defendants' own public statements—demonstrating Defendants' unlawful policy and practice.

What Simon's and Blanchard's supplemental declarations do say is of minimal significance. Indeed, Simon's supplemental declaration is virtually irrelevant. That declaration discusses training Enforcement and Removal Operations ("ERO") officers receive, but all of the trainings discussed in Simon's supplemental declaration occurred *before August 11, 2025—i.e.*, before Defendants instituted their unlawful policy and practice of making warrantless immigration arrests without probable cause for flight risk in Washington, D.C. (and before Defendants' public statements asserting their policy). *See generally* Supp. Simon Decl. Indeed, the ERO Baltimore Field Office, whose agents Defendants contend arrested N.S., had its most recent "refresher training on or about February 2, 2025," ECF 63-1 (Supp. Simon Decl.) at ¶ 7, and the ERO Boston Field Office, whose agents Defendants contend arrested R.S.M., had its most recent "refresher training on March 7, 2024 and March 15, 2024," *id.* ¶ 8—*more than a year* before R.S.M.'s unlawful arrest. Further, Simon's supplemental declaration provides no evidence whatsoever as to when the agents who arrested the other Plaintiffs last received any Fourth Amendment refresher training, and, critically, whether any of the arresting agents for any of the Plaintiffs actually believed they had, or even needed, probable cause to make the arrests. *See generally id.*

The supplemental Blanchard declaration fares no better. Blanchard denies "see[ing]" or "aware[ness] of" a DHS or CBP "policy to the contrary" of requiring probable cause for immigration status and flight risk for warrantless arrests, Supp. Blanchard Decl. ¶ 7, but again fails

to address the specific, recent, and explicit public statements made by Defendants—including in a DHS press release and by Chief Border Patrol Agent Gregory Bovino—that Defendants use a standard other than probable cause to make immigration arrests.[4] Blanchard's conclusory statement that "CBP law enforcement personnel who arrested Mr. Molina and BSR intended to arrest them before encountering them," *id.* at ¶ 8, lacks any support: Blanchard does not state anywhere in his declaration that he consulted the arresting agents, much less that he has personal knowledge as to the issue of what the agents knew before making the arrests; he also fails to explain why the arresting agents did not have a warrant if they indeed "intended to arrest them before encountering them." *See* Tr. 58:17–22 ("THE COURT: And you have no explanation for why, if they were specifically targeting somebody, why they didn't see that there had been a request for an extension of TPS on Mr. Molina's part, and for both Mr. Molina and B.S.R. why they didn't issue a warrant. There is no explanation for that in the operation and you don't know?"). Further, like Simon, Blanchard discusses a refresher training that took place *before* Defendants' August 11 institution of their unlawful policy and practice and fails to state if or when the agents who arrested Escobar Molina and B.S.R. last received training.

Finally, the points in paragraphs 9 and 10 of Blanchard's supplemental declaration—that Escobar Molina and B.S.R. "had been criminally charged with offenses," that Escobar Molina's TPS had expired, and that B.S.R. overstayed his B-2 visa—fail for three reasons: (1) they are factually incorrect, as Escobar Molina had timely applied to renew his TPS status, making his status valid at the time of his arrest, as officers acknowledged when they released him the day after he was arrested, ECF 17-2 (Escobar Molina Decl.) ¶¶ 1, 14; (2) Blanchard's statement that this

---

[4] Indeed, in light of these public statements, Blanchard's contention that he is not "aware of" a DHS or CBP policy to apply standards lower than probable case to warrantless civil immigration arrests is not credible. Supp. Blanchard Decl. ¶ 7.

12

information was "provided . . . to the enforcement teams in Washington D.C. . . . who ultimately arrested Mr. Molina and B.S.R.," is of little value, because it fails to specify *when* it was provided, what the specific "information" was that they purportedly provided, or that the information was specifically transmitted to the agents who arrested Escobar Molina and B.S.R.; and (3) the paragraphs are irrelevant to the probable cause requirement for flight risk. Defendants have not provided a single case in which a court held that criminal charges sufficed for an individualized determination of probable cause that the person is a flight risk, and the case law makes clear that knowledge of facts supporting probable cause as to unlawful presence does not suffice to establish probable cause for flight risk. *See* Reply at 15–20..[5]

\*\*\*

For the foregoing reasons and reasons in Plaintiffs' briefing to date, this Court should grant Plaintiffs' motions for a preliminary injunction, to stay agency action, and for provisional class certification (ECF 17) and class certification (ECF 19), and enter the revised proposed orders submitted by Plaintiffs at ECF 62-1 and 62-2.

---

[5] Notably, neither supplemental declaration includes any information to support Defendants' baseless allegation in their opposition brief that Plaintiff B.S.R. "fail[ed] to charge his ankle monitor" prior to his arrest, ECF 50 at 27, despite this Court pointing out this omission to Defendants' counsel at the November 19 hearing. Tr. at 67–68. As such, that allegation should be stricken from the record and not considered by this Court.

November 25, 2025

*s/ Adina Appelbaum*
Adina Appelbaum (D.C. Bar No. 1026331)
Ian Austin Rose (Md. Bar No. 2112140043)
Samantha Hsieh (Va. Bar No. 90800)[*]
**AMICA CENTER FOR IMMIGRANT RIGHTS**
1025 Connecticut Avenue NW, Suite 701
Washington, D.C. 20036
(202) 331-3320
adina@amicacenter.org
austin.rose@amicacenter.org
sam@amicacenter.org

*s/ Aditi Shah*
Aditi Shah (D.C. Bar No. 90033136)
Scott Michelman (D.C. Bar No. 1006945)
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF THE DISTRICT OF COLUMBIA**
529 14th Street NW, Suite 722
Washington, D.C. 20045
(202) 457-0800
ashah@acludc.org
smichelman@acludc.org

Kathryn Huddleston (Tex. Bar No. 24121679)[**++]
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
915 15th Street NW, 7th Floor
Washington, D.C. 20005
(212) 549-2500
khuddleston@aclu.org

*s/ Sirine Shebaya*
Sirine Shebaya (D.C. Bar No. 1019748)
Yulie Landan (Cal. Bar No. 348958)[*+]
Bridget Pranzatelli (D.C. Bar No. 90029726)
**NATIONAL IMMIGRATION PROJECT**
1763 Columbia Road NW, Suite 175
Washington, D.C. 20009
(213) 430-5521
sirine@niplg.org
yulie@nipnlg.org
bridget@nipnlg.org

Respectfully submitted,

*s/ Jehan A. Patterson*
Jehan A. Patterson (D.C. Bar No. 1012119)
Chris Kimmel (D.C. Bar No. 1047680)
Alexandra Widas (D.C. Bar No. 1645372)
Hassan Ahmad (D.C. Bar No. 1030682)
Sean Berman (D.C. Bar No. 90026899)
Austin Riddick (D.C. Bar No. 90018117)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, D.C. 20001
(202) 662-6000
jpatterson@cov.com
ckimmel@cov.com
awidas@cov.com
hahmad@cov.com
sberman@cov.com
ariddick@cov.com

Eva H. Lilienfeld (N.Y. Bar No. 6143085)[*]
Graham Glusman (N.Y. Bar No. 6099535)[*]
**COVINGTON & BURLING LLP**
30 Hudson Yards
New York, NY 10001
(212) 841-1000
elilienfeld@cov.com
gglusman@cov.com

*s/ Madeleine Gates*
Madeleine Gates (D.C. Bar No. 90024645)
**WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS**
700 14th Street NW, #400
Washington, D.C. 20005
(202) 319-1000
madeleine_gates@washlaw.org

*s/ Ama Frimpong*
Ama Frimpong (D.C. Bar No. 1602444)[*]
**CASA, INC.**
8151 15th Avenue
Hyattsville, MD 20783
(240) 485-8844
afrimpong@wearecasa.org

14

*Attorneys for Plaintiffs*

[*]*Admitted* pro hac vice.
[**]*Motion for Admission* pro hac vice *forthcoming.*

[+]*Not Admitted in D.C.; working remotely from N.Y. and admitted in Cal. only*
[++]*Not Admitted in D.C.; working remotely under supervision of D.C. Bar member, practice limited to federal courts in D.C., and admitted in Ariz. and Tex. only.*