# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JOSÉ ESCOBAR MOLINA, *et al.*, *individually and on behalf of all others similarly situated*, <br><br>         *Plaintiffs*, <br><br>     v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, <br><br>         *Defendants*. | Civil Action No. 25-3417 (BAH) |

## PLAINTIFFS' MOTION TO ENFORCE PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................. ii

TABLE OF AUTHORITIES ...................................................................................... iii

INTRODUCTION........................................................................................................ 1

BACKGROUND .......................................................................................................... 2

    A.    This Court's Order Preliminarily Enjoined Defendants' Unlawful Policy and Directed Defendants to Comply with Reporting Requirements. ..................... 2

    B.    Defendants' Actions and Documentation After the Order Demonstrate that Defendants Are Not in Substantial Compliance with the Order............................ 4

           1.    Defendants are continuing to enforce their policy of making warrantless civil immigration arrests without probable cause for escape risk........................................................................................... 5

           2.    Defendants are failing to comply with the Order's reporting requirements............................................................................... 12

    C.    Defendants Have Refused to Remedy These Compliance Issues and Ensure Compliance with the Order................................................................................. 15

LEGAL STANDARD ................................................................................................. 16

ARGUMENT............................................................................................................... 17

I.    Defendants Are Continuing to Enforce Their Policy of Making Warrantless Civil Immigration Arrests Without a Probable Cause Finding of Escape Risk......................... 18

II.    Defendants are Violating the Reporting Requirements of the Order............................... 23

III.    The Requested Relief in the Attached Proposed Order Is Necessary and Warranted to Ensure Compliance With the Court's Injunction......................................................... 24

CONCLUSION ........................................................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrego Garcia v. Noem*,
    No. 25-cv-00951 (D. Md. Apr. 11, 2025), ECF 61.................................................22

*Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the*
    *United States v. Rubio*,
    2026 WL 322996 (D.D.C. Feb. 6, 2026) .................................................17

*\*Barham v. Ramsey*,
    434 F.3d 565 (D.C. Cir. 2006) .................................................19, 23

*Brown v. Plata*,
    563 U.S. 493 (2011).................................................16

*Castañon Nava v. DHS*,
    No. 18-cv-03757 (N.D. Ill. Oct. 7, 2025), ECF 214 .................................................22

*Christian Sci. Reading Room Jointly Maintained v. City & Cnty. of San*
    *Francisco*,
    784 F.2d 1010 (9th Cir. 1986) .................................................17

*Citizens for Responsibility & Ethics in Washington v. United States Dep't of*
    *Justice*,
    846 F.3d 1235 (D.C. Cir. 2017).................................................16

*Cruz Santos v. Baker*,
    No. 25-cv-18959 (D.N.J. Jan. 27, 2026), ECF 24.................................................22

*D.V.D. v. DHS*,
    No. 25-cv-10676 (D. Mass. May 21, 2025), ECF 119.................................................22

*Deering Milliken, Inc. v. FTC*,
    647 F.2d 1124 (D.C. Cir. 1978).................................................17

*\*Escobar Molina v. DHS*,
    2025 WL 3465518 (D.D.C. Dec. 2, 2025).................................................*passim*

*\*Garcia Ramirez v. ICE*,
    2025 WL 3563183 (D.D.C. Dec. 12, 2025).................................................16, 24

*Heartland Reg'l Med. Ctr. v. Leavitt*,
    415 F.3d 24 (D.C. Cir. 2005).................................................16

*Int'l Ladies' Garment Workers' Union v. Donovan*,
  733 F.2d 920 (D.C. Cir. 1984) ................................................................16

*J.G.G. v. Trump*,
  No. 25-cv-00766 (D.D.C. Apr. 6, 2025), ECF 81 ..................................22

*J.O.P. v. DHS*,
  No. 19-cv-01944 (D. Md. May 28, 2025), ECF 287 ..............................22

*Kansas v. Nebraska*,
  574 U.S. 455 (2015) ..................................................................................24

*Mayweathers v. Newland*,
  258 F.3d 930 (9th Cir. 2001) ....................................................................24

*McClatchy Newspapers v. Central Valley Typographical Union No. 46*,
  686 F.2d 731 (9th Cir. 1982) ....................................................................24

*Melgar-Salmeron v. Bondi*,
  No. 23-7792 (2d Cir. June 24, 2025), ECF 49-1 ....................................22

*Moreta Duran v. Bondi*,
  25-cv-04816 (D. Minn. Jan. 25, 2026), ECF 11 ....................................22

*N.S. v. Dixon*,
  141 F.4th 279 (D.C. Cir. 2025) ................................................................25

*Nat'l L. Ctr. on Homelessness & Poverty v. U.S. Veterans Admin.*,
  98 F. Supp. 2d 25 (D.D.C. 2000) ............................................................16

*National TPS Alliance v. Noem*,
  25-cv-01766 (N.D. Cal. June 5, 2025) ....................................................22

*Neguse v. ICE*,
  No. 25-cv-02463 (D.D.C. Feb. 2, 2026), ECF 52 ..................................22

*Salazar v. District of Columbia*,
  236 F. Supp. 3d 411 (D.D.C. 2017) ........................................................16

*Select Specialty Hosp.-Denver, Inc. v. Becerra*,
  2021 WL 4262652 (D.D.C. Sept. 20, 2021) ............................................16

*Sequen v. Albarran*,
  2025 WL 3773755 (N.D. Cal. Dec. 31, 2025) ........................................17

*Soriano Neto v. Hyde*,
  No. 25-cv-00425 (D.R.I. Jan. 27, 2026), ECF 23 ..................................22

*Soto Jimenez v. Bondi*,
No. 26-cv-00957 (D. Minn. Feb. 18, 2026) ...................................................22

*Tobay Robles v. Noem*,
No. 26-cv-00107 (D. Minn. Jan. 28, 2026), ECF 10 ..................................22

*United States v. Cantu*,
519 F.2d 494 (7th Cir. 1975) ...................................................................18

*United States v. Jackson*,
415 F.3d 88 (D.C. Cir. 2005) ...................................................................20

*United States v. Mora*,
989 F.3d 794 (10th Cir. 2021) .................................................................23

*United States v. Westley*,
2023 WL 5377894 (6th Cir. Aug. 22, 2023)...........................................19

*Vasquez Perdomo v. Noem*,
No. 25-cv-05605 (C.D. Cal. Nov. 13, 2025), ECF 256 ...........................22

*Washington Metro. Area Transit Comm'n v. Reliable Limousine Serv., LLC*,
985 F. Supp. 2d 23 (D.D.C. 2013) .............................................16, 24, 26

**Statutes, Regulations, & Rules**

8 U.S.C. § 1357 ............................................................................... *passim*

8 C.F.R. § 287.5 ......................................................................................25

8 C.F.R. § 287.8 .................................................................................2, 18

Fed. R. Civ. P. 62 ....................................................................1, 16, 17, 24, 25

Local Civ. R. 7 ...................................................................................1, 3

Pursuant to this Court's inherent power to enforce its orders and Federal Rule of Civil Procedure 62(d), Plaintiffs José Escobar Molina, B.S.R., N.S., R.S.M., and CASA, Inc., respectfully move to enforce the Court's December 2, 2025, preliminary injunction.[1]

## INTRODUCTION

On December 2, 2025, this Court preliminarily enjoined Defendants and their agents from enforcing their policy or practice of making warrantless civil immigration arrests in the District of Columbia without a pre-arrest, individualized determination of probable cause that the person is likely to escape before a warrant can be obtained, as required by the Immigration and Nationality Act (INA) and its implementing regulations. ECF 67 ("Order") at 2. Undeterred by the Court's injunction, Defendants continue to enforce their unlawful policy and practice, carrying out warrantless immigration arrests without the required probable cause determinations. Defendants are also violating the Order's reporting requirements by failing to ensure that all documentation of warrantless arrests in the District include, among other things, the specific, particularized facts that supported the agent's pre-arrest probable cause to believe that the person was likely to escape.

Plaintiffs' counsel have investigated Defendants' compliance with the Order by reviewing the documentation Defendants have produced, meeting and conferring with Defendants' counsel regarding concerns that documentation raised about Defendants' compliance, and interviewing individuals arrested in this District in the last two months. Plaintiffs' counsel have engaged in good faith discussions with Defendants' counsel over the past month and a half but have been unable to satisfactorily resolve Defendants' substantial noncompliance. Plaintiffs accordingly move the Court to enforce its injunction and to issue the attached proposed order.

---

[1] Pursuant to Local Civil Rule 7(m), Plaintiffs' counsel conferred with Defendants' counsel about this motion, and Defendants' counsel stated that Defendants oppose the motion.

## BACKGROUND

**A.    This Court's Order Preliminarily Enjoined Defendants' Unlawful Policy and Directed Defendants to Comply with Reporting Requirements.**

This Court's December 2, 2025, Order set forth three requirements "consistent with [the contemporaneously issued] Memorandum Opinion." *Escobar Molina v. DHS*, 2025 WL 3465518, at *38 (D.D.C. Dec. 2, 2025).

First, it preliminarily enjoined "defendants and their agents … from enforcing their policy or practice of making warrantless civil immigration arrests in the District of Columbia without a pre-arrest individualized determination by the arresting agent of probable cause that the person being arrested is likely to escape before a warrant can be obtained, as required by 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii)." Order at 2. The Memorandum Opinion made clear that probable cause to believe that a person is likely to escape is separate from probable cause to believe that a person is in the United States unlawfully, and that pre-arrest probable cause as to *both* elements is necessary to satisfy the statute and regulation. *Escobar Molina*, 2025 WL 3465518, at *13–14 (rejecting Defendants' view that "being 'clear[ly] and undisputed[ly]' deportable alone may signal a likelihood of escape" (alterations in original)). This Court also specifically rejected Defendants' claim that "being 'stopped in a vehicle' may also signal a high likelihood of escape," finding unpersuasive the out-of-circuit district court's conclusion upon which Defendants relied that "an individual poses an escape risk simply by being a passenger in a vehicle, because he could flee on foot, without more." *Id.* at *13 n.20.

Second, the Order instructed Defendants to comply with reporting requirements, which include: (1) requiring "[a]ny defendant or their agent who conducts a warrantless civil immigration arrest in the District of Columbia" to, "as soon as practicable, document the facts and circumstances surrounding the warrantless civil immigration arrest in narrative form,"

(2) instructing that "[i]n describing the individualized assessment of escape risk in the documentation[,] … specific details as to the person being arrested must be provided such that the use of boilerplate language may be deemed indicative of noncompliance," and (3) ordering Defendants to "release to plaintiffs' counsel the documentation describing defendants' and their agents' warrantless civil immigration arrests within this District" within 30 days of the Order and every 30 days thereafter, or if requested by plaintiffs' counsel concerning specific warrantless arrests, within seven days of the request. Order at 2–3. The "facts that are required to be documented" include, among other things, "the location of the arrest and whether this location was a place of business, residence, vehicle, or public area"; "the [person's] ties to the community, if known at the time of arrest, including family, home, or employment"; and "the specific, particularized facts supporting the conclusion that the [person] was likely to escape before a warrant could be obtained." *Id.* at 3. The Order also required that the documentation "include the date and time of the arrest, and the date and time the agent completed the documentation." *Id.* This Court held that these reporting requirements would assist with ensuring compliance with the preliminary injunction and promote transparency. *Escobar Molina*, 2025 WL 3465518, at *37.

Third, in the event that Plaintiffs determine Defendants are in substantial noncompliance with the Order, the Court required that, in addition to complying with Local Civil Rule 7(m), the parties meet and confer within seven days of Plaintiffs' written notice to Defendants "identify[ing], with particularity, the basis of [Plaintiffs'] claim that defendants are not in substantial compliance" with specific provisions of the Order prior to Plaintiffs being able to seek the Court's intervention via a motion to enforce or a motion to initiate contempt proceedings. Order at 3–4.

On February 2, Defendants noticed an appeal of this Court's Order and Memorandum Opinion. ECF 73. Defendants have not moved to stay the preliminary injunction pending appeal.

**B.    Defendants' Actions and Documentation After the Order Demonstrate that Defendants Are Not in Substantial Compliance with the Order.**

Pursuant to the Order, Defendants have produced Form I-213s, a standard form entitled "Record of Deportable/Inadmissible Alien," for 33 warrantless civil immigration arrests that occurred in the District of Columbia after December 2, 2025.[2] In addition to the I-213s, on January 2, Defendants produced a chart entitled "CBP DC Safe and Beautiful Warrantless Immigration Arrests Ending Dec. 29, 2025," which contained summaries of, but not the I-213s or other documentation for, three arrests.[3] Defendants have not provided all documentation within the time required under the Order: Six of the arrests occurred in December and should have been included in the January 2nd production (30 days after the Order), but were not; instead, the six stragglers were produced at various times between January 14 and February 6. Plaintiffs' counsel had to specifically request three of these reports for individuals whose arrests Plaintiffs' counsel learned about independently of Defendants' documentation; absent Plaintiffs' affirmative requests, Defendants likely would not have produced these reports.

The I-213s contain a "Narrative" section that describes the immigration agent's encounter

---

[2] Defendants have produced 43 Form I-213s to date. Four of them were for arrests that occurred on or before December 2, prior to this Court's Order.  For seven others, the I-213s state that the arresting agents had an administrative warrant during the encounter. For one arrest, the class member's declaration confirms that he was in fact not served a warrant as his I-213 states he was. Declaration of Benito Lopez ("Benito Lopez Decl.") ¶ 5. Plaintiffs therefore count his arrest as an unlawful warrantless arrest in this motion. Of the six other I-213s that state that there was a warrant during the encounter, two contradict this point: one I-213 states that the individual was served a warrant but nonetheless includes a cursory note that the person was likely to escape before a warrant could be obtained (listing the same boilerplate factors discussed in this motion); the other I-213 states that the individual was served a warrant but also that the agent made a warrantless arrest. To err on the side of caution, Plaintiffs do not count these six I-213s as documentation for warrantless arrests in this motion. Plaintiffs reserve all rights to challenge the assertions in the I-213s that the arrests were made pursuant to a warrant.

[3] After Plaintiffs' counsel inquired, Defendants produced the I-213s for these arrests on January 14.

with the individual who was arrested. Many of the narratives contain a list of factors purportedly establishing probable cause as to escape risk in addition to the descriptions.

> 1. **Defendants are continuing to enforce their policy of making warrantless civil immigration arrests without probable cause for escape risk.**

Defendants' documentation pursuant to the Order reveals that Defendants are continuing to enforce their unlawful policy that this Court preliminarily enjoined. Defendants' continuation of the unlawful policy, in defiance of the Court's Order, is underscored by their recent, post-Order public statements regarding the standard for immigration arrests and by a memorandum issued by Defendant Todd Lyons, Senior Official Performing the Duties of the Director of ICE, to all ICE personnel on January 28, 2026 setting forth Defendants' legal interpretation of what probable cause for escape risk requires. Plaintiffs discuss these two categories of evidence—(a) Defendants' documentation and (b) Defendants' statements and memoranda—in turn.

*a. Documentation.* Collectively, the I-213s demonstrate that Defendants are continuing to enforce their policy and practice of not making a pre-arrest individualized determination of probable cause as to escape risk when conducting warrantless civil immigration arrests. Nine of the I-213s do not contain any analysis of escape risk at all. *See, e.g.*, Valle Gutierrez I-213; Argueta Argueta I-213. The narratives in the I-213s that do address escape risk rely on a list of boilerplate factors, many of which are irrelevant to risk of escape, and that in some instances directly contradict information contained elsewhere in the I-213s. Indeed, Luis Neri Amado's I-213 falsely identifies him as the driver of a moped, whereas he was actually a passenger in a work truck. *Compare* Neri-Amado I-213, *with* Declaration of Luis Neri Amado ("Neri Amado Decl.") ¶ 2.

Nearly every I-213 that discusses escape risk states that the person was "[a]rrested at large, (not at their residence or place of business)" and/or "encountered by Immigration Officer while in vehicle," in many cases without specifying whether the person was driving the vehicle or was a

passenger. *See, e.g.*, Joshua Doe I-213 at 2 (listing as two factors relevant to escape risk that he "was [a]rrested at large" and "was encountered by Immigration Officer while in vehicle"); Benito Lopez I-213 at 2 (same); L.C. I-213 at 2 (listing as only two factors relevant to escape risk that he was "arrested at large" and "encountered by Immigration Officer while in mobile conveyance").

Another category of factors listed in the I-213s to purportedly demonstrate that the person was likely to escape relates to the person's compliance with immigration laws rather than escape risk. Various I-213s list the person's immigration status, such as that the person "entered the United States after evading inspection" or "never applied for lawful status," as reasons that the person was likely to escape before a warrant could be obtained. *E.g.*, Rolando Doe I-213; Espinoza Forsith I-213. At least 18 of the I-213s listed one or more of these factors as relevant to escape risk in an identical, boilerplate fashion. As this Court has already held, however, "conflating unlawful status and escape risk" runs afoul of the statute and the Supreme Court's "instruction that the likelihood-of-escape requirement be seriously applied" to limit officers' authority to conduct arrests without a warrant. *Escobar Molina*, 2025 WL 3465518, at *14. Moreover, in some instances, these allegations were not even accurate. *Compare* Rolando Doe I-213 (stating that he "entered the United States after evading inspection"), *with* Declaration of Rolando Doe ("Rolando Doe Decl.") ¶ 1 (describing that Rolando entered the United States as an unaccompanied minor at age 11 and that immigration authorities resettled him with his mother at an address known to authorities).[4]

By contrast, a category for which there is nearly no substance in Defendants'

---

[4] When unaccompanied children enter the U.S. through the southern border, they are placed in the custody of the Office of Refugee Resettlement (ORR) within the U.S. Department of Health and Human Services, which resettles them with a vetted sponsor in the United States. *See* U.S. Dep't of Health and Human Servs., *Unaccompanied Children Information*, at https://www.hhs.gov/programs/social-services/unaccompanied-children/index.html [https://perma.cc/TD6J-6WQT] (last accessed Feb. 19, 2026).

documentation is the person's ties to the community. The only mention in the I-213s of ties to the community of the person who was arrested, such as the person's family, home, and employment, is that these facts were "unknown" or "unverified." *E.g.*, W.L.R. I-213 at 2; E.D.V.V. I-213 at 2. At least nine of the I-213s identify one or more of these facts being "unknown" or "unverified"—often listed in a boilerplate fashion—as supporting escape risk. *E.g.*, W.L.R. I-213 at 2 ("home address, employment, and family ties were unknown or unverified"); E.D.V.V. I-213 at 2 (listing as separate factors "home address was unverified," "employment status was unverified," and "familial ties in the United States are unknown"). But nothing in the documentation explains what "unverified" or "unknown" means, including whether the arresting agent made any inquiry as to these factors, and if so, what that inquiry was. The I-213s do not describe the agents taking any steps to investigate individuals' home address, employment status, or family ties prior to making the arrests. Nor do the I-213s note any questions asked by the agents regarding these factors or the answers provided by the individuals who were arrested.

In contrast with Defendants' silence, the sworn testimony of those who were arrested confirm that there was no inquiry or investigation whatsoever into their ties to the community. For example, the I-213 for Rolando, who was stopped by agents while he was a passenger in a work truck on his way to a job with three coworkers, states that his "home address was unverified," "[e]mployment status was unverified," and "familial ties in the United States are unknown" as escape risk factors, *see* Rolando Doe I-213 at 2, but when he was arrested, the agents who arrested him did not ask about his address, family members, employment, or any other community ties, *see* Rolando Doe Decl. ¶ 4. The only questions the agents asked prior to arresting him and his co-workers were whether they were citizens and what their names and ages were. *Id.* ¶ 3. Other than demanding his identification, which Rolando could not provide as he did not have it with him, the

agents did not ask him for any documents related to his home address, employment, or family ties. *Id.* The same is true for individuals like Edwin Espinoza Forsith. Arresting agents pulled him off his moped, handcuffed him, and dragged him into a car before they bothered to ask him for his identification and other documentation, which he told them was in his moped. Declaration of Edwin Espinoza Forsith ("Espinoza Forsith Decl.") ¶¶ 2–4. None of the I-213 indicates that the arresting agents determined that the individuals being arrested *lacked* ties to the community, as would be necessary to rely on that as a fact contributing to probable cause for escape risk.

The documentation also demonstrates that Defendants and their agents entirely ignored facts that would make it *unlikely* the person would escape before a warrant could be obtained. For instance, Adolfo told the arresting officers in response to their questions that he had lived in the District of Columbia for 25 years, Declaration of Adolfo Doe ("Adolfo Doe Decl.") ¶ 4, but his long-standing ties to the city were not mentioned anywhere in his I-213, *see* Adolfo Doe I-213 at 2. Moreover, the arresting agents drove off in the middle of the interaction, then returned five minutes later and found Adolfo in the same place, continuing to wait for the bus to go to work. Adolfo Doe Decl. ¶ 7. Yet this fact was omitted entirely from his I-213 and absent from consideration by the arresting agents as relevant to Adolfo's escape risk.[5] *See* Adolfo Doe I-213 at 2. Likewise, Joshua was arrested while in a work van displaying the company logo and told the agents who arrested him that he was working and had children who live with him to support. Declaration of Joshua Doe ("Joshua Doe Decl.") ¶¶ 2, 7. Yet the narrative portion of his I-213

---

[5]Another one of Adolfo's escape risk factors listed in his I-213 appears to be entirely fabricated. The I-213 states that "[Adolfo] threatened to kill the Immigration Officer upon they enter [*sic*] Mexico." Adolfo Doe I-213 at 2. This is false. As Adolfo explains in his declaration, a non-Spanish-speaking agent seems to have misinterpreted as a threat an innocuous statement about the popular Mexican dish "carne asada" that Adolfo made in Spanish to another Spanish-speaking agent. Adolfo Doe Decl. ¶ 8.

states that he "was likely to escape before a warrant could be obtained" based solely on the facts that he was "[a]rrested at large, (not at their residence or place of business)" and "was encountered by Immigration Officer while in vehicle;" it did not make any mention of his employment or family ties. Joshua Doe I-213 at 2.

Many of the I-213 narratives are also internally inconsistent, casting doubt on whether the escape risk analyses contained in the I-213s are genuine accounts of the arresting agents' pre-arrest assessments and undermining the trustworthiness of Defendants' documentation generally. For example, the description of E.J.D.B.'s arrest in his I-213 states that he "was encountered *on foot*," yet one of the enumerated factors that purportedly supported his risk of escape was that he "was encountered by Immigration Officer *while in vehicle*." E.J.D.B. I-213 at 2 (emphasis added). One of the escape risk factors listed in A.V.J.'s I-213 is "[r]ecord [c]hecks … revealed a criminal history in the United States," yet the "Criminal History" portion of the report states that he "has no [c]riminal history." A.V.J. I-213 at 2. B.A.A.G.'s I-213 states that he was likely to escape because he "was encountered by Immigration Officers while in vehicle," but just a few lines earlier in the report, the description of the arrest states that ICE encountered him after Park Police had already arrested him "for not having a valid driving permit and altered plates." B.A.A.G. I-213 at 2. C.H.R.T.'s I-213 contains two separate entries with inconsistent descriptions of his family history, with the first entry stating that "his parents are citizens and nationals of Tunisia," and the second entry stating that his father and mother are "citizen[s] and national[s] of Venezuela." C.H.R.T. I-213 at 2, 6.

Some reports allege an attempt to flee as an escape risk factor, but do not describe the purported attempt to flee at all. The escape risk factors listed for J.D.J.M. in his I-213 include that he allegedly "attempted to flee from immigration officers," but the description of the arrest just a

few lines earlier in the I-213 states that it was a "consensual encounter" and says nothing about his supposed flight. J.D.J.M. I-213 at 2; *see also* F.A.A.A. I-213 (listing flight as an escape risk factor, but no mention of an attempt to flee in the description of arrest); Espinoza Forsith I-213 (same). Mr. Espinoza Forsith's account of his arrest confirms that he in fact made no attempt to flee. Espinoza Forsith Decl. ¶ 5. He was arrested after four agents approached him from behind and pulled him off his moped while he was stopped at a red light. *Id.* ¶ 2. The agents pulled him to the ground, placed him in handcuffs, and dragged him into their car without saying anything to him; he had no opportunity to attempt escape even if he had wished to. *Id.*

*b. Defendants' post-Order public statements and memorandum.* Defendants' recent public statements—like those they made before the preliminary injunction—confirm that they continue to make, as a matter of policy and practice, warrantless arrests without a pre-arrest, individualized determination of probable cause for escape risk.  On at least nine occasions since the preliminary injunction, and as recently as January 31, DHS stated that "[l]aw enforcement uses 'reasonable suspicion' to make arrests, as allowed under the Fourth Amendment to the U.S. Constitution." Third Declaration of A. Widas ("Third Widas Decl."), Exs. 1 (Jan. 17 DHS post on X); 2 (Jan. 16 DHS post on X); 3 (same); 4 (Jan. 12 NPR article quoting DHS Assistant Secretary for Public Affairs Tricia McLaughlin); 5 (Jan. 16 NBC News article quoting Ms. McLaughlin); 6 (Jan. 17 Wall Street Journal article quoting Ms. McLaughlin); 7 (Jan. 18 Associated Press article quoting Ms. McLaughlin); 8 (Jan. 22 article from The Guardian quoting Ms. McLaughlin); 9 (Jan. 31 Daily Caller article quoting Ms. McLaughlin). These statements, which "were made repeatedly, and publicly, to reach a broad audience, which includes law enforcement officers under DHS's command," *Escobar Molina*, 2025 WL 3465518, at *24, contravene the plain text of this Court's Order, which Defendants were required to distribute within 72 hours of its issuance (and confirmed

that they did), *see* Order at 2, sending conflicting messages and likely producing confusion among Defendants' agents as to the proper standard for warrantless civil immigration arrests.

An internal memorandum issued by Defendant Lyons and addressed to "[a]ll ICE Personnel" on January 28, 2026, confirms that Defendants do not take the likelihood of escape prong of § 1357(a)(2) seriously. Third Widas Decl., Ex. 10. The memorandum acknowledges that § 1357(a)(2) requires "reason to believe"—which it correctly defines as probable cause—"that the alien so arrested is in the United States in violation of any such law or regulation **and** is likely to escape before a warrant can be obtained for his arrest." *Id.* (emphasis in original). But the memorandum goes on to enumerate "[p]ossible factors" relevant to escape risk, including, among other things, "[t]he subject's age and health," whether the person "was encountered in a vehicle and continues to have control over the vehicle;" "[p]ossession of identity or work authorization documents that the immigration officer *suspects* are fraudulent;" "[p]resentation of *unverifiable or suspected false* information to the immigration officer;" and "[w]hether the officer has probable cause to arrest the subject for improper entry by an alien … or reentry of a removed alien." *Id.* (emphases added). Indeed, the memorandum seemingly encompasses virtually anyone detained through a traffic stop or on the street. *Id.*

Importantly, missing from the enumerated list of factors in the memorandum is the person's ties to the community. Nowhere does the memorandum provide guidance on considering how long the person has lived in the United States, their family ties, or work history in making the probable cause determination as to escape risk. *See Escobar Molina*, 2025 WL 3465518 at *13 ("Courts have also made the self-evident finding that likelihood of escape is lower when the individual has resided in the country for a lengthy period of time and has strong community ties."); *id.* at *39 (ordering that Defendants document, as part of the likelihood of escape assessment, "the alien's

11

ties to the community, if known at the time of arrest, including family, home, or employment").

In statements made to the media following the release of the memorandum, Ms. McLaughlin doubled down on DHS's earlier public statements, stating that the memorandum is "nothing new" and reaffirming that "[l]aw enforcement uses 'reasonable suspicion' to make arrests, as allowed under the Fourth Amendment to the U.S. Constitution." Third Widas Decl., Ex. 9. As a former senior adviser at ICE told a media outlet, the memorandum provides "an extremely broad interpretation of the term 'escape,'" one that "would cover essentially anyone they want to arrest without a warrant, making the general premise of ever getting a warrant pointless." *Id.*, Ex. 11. The memorandum thus is further evidence that Defendants are violating this Court's injunction.

The memorandum is also internally inconsistent. It states in one part that agents "should closely consider whether the [person] is *likely to remain at the scene of the encounter* while a warrant for his or her arrest is issued," *Id.*, Ex. 10 (emphasis added), but earlier, it expressly defines "likely to escape" as whether "an immigration officer determines [the person] is unlikely to be located at the scene of the encounter *or another clearly identifiable location once an administrative warrant is obtained*." *Id.* (emphasis added).

Taken as a whole, Defendants' continuing public statements of incorrect standards for warrantless civil immigration arrests constitute instruction from the top rungs of DHS and ICE leadership that conflict with, and indeed violate, the Court's Order. These instructions are clearly reflected in the overwhelming majority of the post-Order warrantless civil immigration arrests that do not establish probable cause as to escape risk. In short, the evidence makes crystal clear that Defendants have chosen, as a matter of policy, not to comply with this Court's Order.

### 2. Defendants are failing to comply with the Order's reporting requirements.

The documentation Defendants have produced thus far also does not comply with the

reporting requirements set forth in the Court's Order.

The Order requires that "[a]ny defendant or their agent who conducts a warrantless civil immigration arrest in the District of Columbia shall … document the facts and circumstances surrounding the warrantless civil immigration arrest in narrative form," and requires Defendants to "release to plaintiffs' counsel the documentation describing defendants' and their agents' warrantless civil immigration arrests within this District." Order at 2–3. The Order also requires the documentation to include "specific, particularized facts that supported the agent's pre-arrest probable cause to believe that the person is likely to escape before a warrant can be obtained" and that "specific details as to the person arrested must be provided such that the use of boilerplate language may be deemed indicative of noncompliance." *Id.* at 3. The I-213s are vague, repetitive, and lack detail specific to the encounter. *See, e.g.*, C.P.C., J.P.C., and P.P.C. I-213s (three individuals arrested together whose narratives in their respective I-213s appear to be copy-and-pasted with little variation among them); L.R.P. and C.H.R.T. I-213s (two individuals arrested together whose narratives in their respective I-213s contain no individualized escape risk analysis); *compare* F.A.A.A I-213, *with* C.J.A.U. I-213 (narrative portions of both I-213s are nearly identical, but only F.A.A.A.'s I-213 contains any escape risk analysis).

In addition, although the Order requires the documentation to include "the date and time of the arrest," Order at 3, a substantial number of the I-213s fail to include the time of the arrest. The I-213s include a section entitled "Apprehension Date" with a time stamp, but this time appears to be linked to the individual's processing at a facility after they are arrested, rather than the time the person was arrested. *See, e.g.*, Espinoza Forsith I-213 (narrative describes an arrest on "January 06, 2026," while the "Apprehension Date" is "2026-01-07 09:13:56.0" and the "Created Date" for the narrative is 01/07/2026 09:12 AM).

The arrest of Jose Argueta typifies Defendants' ongoing implementation of the enjoined policy and practice, as well as their failure to comply with the Order's reporting requirements. Mr. Argueta's I-213 narrative states that on December 6, 2025, Homeland Security Investigations (HSI) called their counterparts within ICE "to pick up" Mr. Argueta at the Metropolitan Police Department's (MPD) Fifth District station, and that "[d]uring the encounter it was determined through records check and statements from [Argueta] that he was illegally present without proper or valid documents" and thus was "placed under arrest and taken into custody." Argueta Argueta I-213. The I-213 contains no escape risk analysis at all. Moreover, it states only "December 6," without a specific time, *see id.*, whereas Mr. Argueta was likely arrested late at night on December 5. *See* Declaration of Jose Argueta ("Argueta Decl.") ¶ 3.

The circumstances of Mr. Argueta's arrest illustrate the procedural and substantive flaws in Defendants' analysis of escape risk. In November 2025, when Mr. Argueta's car was stolen, he reported it to the Maryland police. Argueta Decl. ¶ 2. Late at night on December 5, he received a call from someone claiming to be D.C. police telling him that his car had been found and that he needed to pick it up at the MPD station. *Id.* When Mr. Argueta arrived at the station, a group of officers wearing plain clothes with vests grabbed him and handcuffed him. *Id.* ¶ 5. The officers did not ask him any further questions, did not ask for or obtain his ID, and Mr. Argueta did not make any "statements" during the encounter to suggest that he was illegally present. *Id.* If Defendants' agents had attempted to obtain facts relevant to Mr. Argueta's escape risk as required under § 1357(a)(2) and this Court's Order, they likely would have learned that Mr. Argueta has lived in the United States for more than 20 years and has worked in the same Maryland restaurant for the last 12 years. *Id.* ¶ 1. Moreover, the fact that he was arrested at a police station to which he arrived voluntarily suggested he was not an escape risk. Finally, after Mr. Argueta was detained

for more than a month at multiple locations in horrific conditions, an immigration judge determined that he was neither a danger to the community nor a flight risk and released him on bond. *Id.* ¶¶ 8–11.

### C. Defendants Have Refused to Remedy These Compliance Issues and Ensure Compliance with the Order.

Pursuant to the meet-and-confer process required under the Order, Plaintiffs sent two letters to Defendants—one on January 12 detailing compliance issues in response to Defendants' January 2nd production of I-213s, and one on February 4, detailing compliance issues in response to Defendants' February 2nd production—in addition to email exchanges and a videoconference call between counsel for the parties on January 20.

Plaintiffs notified Defendants "of the specific alleged compliance issue[s]," "identify[ing], with particularity, the basis of the claim that defendants are not in substantial compliance with specific provisions of th[e] [Court's] Order." Order at 3–4. Specifically, Plaintiffs explained that the I-213s demonstrate that Defendants are continuing to enforce their policy and practice that this Court preliminarily enjoined by failing to include any analysis as to escape risk in many of the reports and by relying on boilerplate factors that are irrelevant to escape risk in others, such as the person merely existing in public (being "arrested at large") and their immigration status. Plaintiffs also identified Defendants' failure to comply with the reporting requirements of the Order, including, among other things, the failure to provide specific, particularized facts supporting probable cause for escape risk, using boilerplate language, failing to include the time of the arrest in the documentation, and Plaintiffs' concern that the January 2nd and February 2nd productions did not include all warrantless arrests that occurred in the 30-day period preceding the productions.

In response to these concerns, Defendants insist that they are complying with the Court's Order but have acknowledged some documentation deficiencies. Given Defendants' refusal to

remediate the compliance issues Plaintiffs identified over the course of a one-and-a-half-month period, Plaintiffs seek this Court's intervention.

## LEGAL STANDARD

"District Courts have the authority to enforce the terms of their mandates." *Select Specialty Hosp.-Denver, Inc. v. Becerra*, 2021 WL 4262652, at *7 (D.D.C. Sept. 20, 2021) (quoting *Salazar v. District of Columbia*, 236 F. Supp. 3d 411, 413 (D.D.C. 2017)). This Court's "exercise of its authority to enforce its judgments 'is particularly appropriate in a case … where an administrative agency plainly neglects the terms of a mandate, and the case then returns to the court—under the same docket number and involving the same parties—on a motion to enforce the original mandate.'" *Id.* (quoting *Int'l Ladies' Garment Workers' Union v. Donovan*, 733 F.2d 920, 922 (D.C. Cir. 1984)). "In determining compliance with an order, the Court is guided not only by the text of that order but also by its related opinions." *Garcia Ramirez v. ICE*, 2025 WL 3563183, at *7 (D.D.C. Dec. 12, 2025). Although a motion to enforce generally "allows a plaintiff only 'the relief to which the plaintiff is entitled under the original action and the judgment entered therein,'" *Select Specialty*, 2021 WL 4262652 at *7 (quoting *Heartland Reg'l Med. Ctr. v. Leavitt*, 415 F.3d 24, 29 (D.C. Cir. 2005)), "[i]t is well established that 'a court's powers to enforce its own injunction by issuing additional orders is broad,'" *Garcia Ramirez*, 2025 WL 3563183 at *17 (quoting *Nat'l L. Ctr. on Homelessness & Poverty v. U.S. Veterans Admin.*, 98 F. Supp. 2d 25, 26–27 (D.D.C. 2000)). *See also Citizens for Responsibility & Ethics in Washington v. United States Dep't of Justice*, 846 F.3d 1235, 1241–42 (D.C. Cir. 2017) ("Once invoked, the scope of a district court's equitable powers … is broad, for breadth and flexibility are inherent in equitable remedies." (quoting *Brown v. Plata*, 563 U.S. 493, 538 (2011))).

Moreover, under Federal Rule of Civil Procedure 62(d), while a preliminary injunction appeal is pending, "the court may suspend, modify, restore, or grant an injunction on terms for

bond or other terms that secure the opposing party's rights." *See also Washington Metro. Area Transit Comm'n v. Reliable Limousine Serv., LLC*, 985 F. Supp. 2d 23, 29 (D.D.C. 2013) ("[T]he Court has jurisdiction to modify or clarify its … Order on appeal to preserve the status quo or otherwise supervise compliance."); *Christian Sci. Reading Room Jointly Maintained v. City & Cnty. of San Francisco*, 784 F.2d 1010, 1017 (9th Cir.), *amended*, 792 F.2d 124 (9th Cir. 1986) (Rule 62 "codifies the inherent power of a court to preserve the status quo where, in its sound discretion, the court deems the circumstances so justify, and specifically authorizes the district court to modify, if necessary, the terms of the injunction being appealed from" (cleaned up)); *Sequen v. Albarran*, 2025 WL 3773755, at *3 n.2 (N.D. Cal. Dec. 31, 2025) ("[T]he Court notes that it retains jurisdiction to clarify and enforce the preliminary injunction and to modify it pending appeal as needed to preserve the status quo."). Accordingly, Defendants' appeal of this Court's preliminary injunction poses no obstacle to the relief Plaintiffs seek here. "Although a district court is generally without jurisdiction to alter a judgment of its own while an appeal therefrom is ongoing, the judgment itself remains operative unless stayed and the district court retains its powers to enforce its unstayed judgment throughout the pend[e]ncy of the appeal." *Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Rubio*, 2026 WL 322996, at *4 (D.D.C. Feb. 6, 2026) (cleaned up) (quoting *Deering Milliken, Inc. v. FTC*, 647 F.2d 1124, 1129 (D.C. Cir. 1978)). "Because the injunction has not been stayed, this court retains jurisdiction to resolve Plaintiffs' Motion to Enforce." *Id.*; *see also* Fed. R. Civ. P. 62(c)(1).

## ARGUMENT

Defendants are defying this Court's Order. They continue to enforce their policy and practice of making warrantless civil immigration arrests in D.C. without an individualized determination of probable cause as required by 8 U.S.C. § 1357(a)(2). Defendants are also violating the Order by failing to include specific, particularized facts that supported the arresting

agents' pre-arrest probable cause to believe that the person was likely to escape in the documentation and failing to include the time of the arrest in all documentation.

## I.    Defendants Are Continuing to Enforce Their Policy of Making Warrantless Civil Immigration Arrests Without a Probable Cause Finding of Escape Risk.

This Court's Order was clear: It preliminarily enjoined Defendants and their agents from "enforcing their policy or practice of making warrantless civil immigration arrests in the District of Columbia without a pre-arrest individualized determination by the arresting agent of probable cause that the person being arrested is likely to escape before a warrant can be obtained, as required by 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii)." Order at 2. In issuing the preliminary injunction, this Court held that Plaintiffs "established a substantial likelihood of an unlawful policy and practice by defendants of conducting warrantless civil immigration arrests without probable cause" that was "supported, *inter alia*, by defendants' own official public statements that they apply a 'reasonable suspicion' standard to conduct warrantless arrests, as well as roughly forty examples detailed in plaintiffs' declarations of arrests conducted without any questions as to escape risk." *Escobar Molina*, 2025 WL 3465518, at *26.

Despite the Court's Order, remarkably little has changed: The 33 I-213s, class members' accounts of their arrests, DHS officials' recent public statements that they use the "reasonable suspicion" standard for arrests, and the January 28 Lyons memorandum collectively demonstrate that Defendants, as a matter of policy and practice, are not treating the likelihood of escape prong of § 1357(a)(2) as a "statutory limitation" that "is always seriously applied." *United States v. Cantu*, 519 F.2d 494, 496–97 (7th Cir. 1975). A substantial number of the I-213s do not analyze escape risk at all. Of the remainder, the vast majority rely on some combination of the person being encountered while in public ("arrested at large"), being encountered while in a vehicle (without specifying whether the person was driving or a passenger and whether the engine was turned off

when agents approached, etc.), the person's immigration status and compliance with immigration laws, and the person's ties to the community—including their home, family ties, and work—being "unverified" or "unknown" as sufficient to find that the person was likely to escape before a warrant could be obtained. *See, e.g.*, W.L.R. I-213 at 2; Rolando Doe I-213 at 2; A.R.G. I-213 at 2; Joshua Doe I-213 at 2; Adolfo Doe I-213 at 2; Neri Amado I-213 at 2.

This Court, however, has already rejected the sufficiency of these factors to establish probable cause for escape risk. The Court rejected Defendants' contention that being "deportable alone may signal a likelihood of escape," agreeing with the Fourth Circuit's analysis that "conflating unlawful status and escape risk 'is contrary to the statute itself'" and holding that "such a conflation as defendants suggest would run counter to the Supreme Court's instruction that the likelihood-of-escape requirement be seriously applied to cabin 'officers [to a] more limited authority' where 'no federal warrant has been issued.'" *Escobar Molina*, 2025 WL 3465518, at *14. It also found unpersuasive Defendants' argument that "an individual poses an escape risk simply by being a passenger in a vehicle." *Id.* at *13 n.20. Defendants' systemic reliance on factors such as being encountered in public and being in a vehicle to support a determination that the person was likely to escape before a warrant could be obtained "is far too broad of an interpretation of probable cause." *United States v. Westley*, 2023 WL 5377894, at *7 (6th Cir. Aug. 22, 2023). Indeed, Defendants' policy and practice of relying on being in public, being in a vehicle, and immigration law violations—a combination that Defendants found sufficient to establish probable cause in most of the I-213s—to determine that the person was likely to escape is no different from the mass arrests of all individuals "who happened to inhabit [Pershing Park]" during the 2002 World Bank demonstration, which the D.C. Circuit held were devoid of any "particularized probable cause." *Barham v. Ramsey*, 434 F.3d 565, 573–74 (D.C. Cir. 2006).

Moreover, in none of the arrests "did the agents ask any questions about the arrestees' personal circumstances—such as the person's residence, length of stay in the United States, family members, work history, or anything else about the person's community ties." *Escobar Molina*, 2025 WL 3465518 at *25. Multiple sworn declarations submitted by those who were arrested confirm that, just like before the preliminary injunction was issued, no inquiry or investigation as to their home, family, work, or other ties to the community was conducted by the arresting agents prior to making the arrests. *See, e.g.*, Declaration of Harvey Valle Gutierrez ("Valle Gutierrez Decl.") ¶ 5; Benito Lopez Decl. ¶ 5.

Defendants' continued enforcement of their policy that this Court preliminarily enjoined also contravenes well-settled principles governing the probable cause standard. Although "the existence of probable cause does not depend on the elimination of all innocent explanations for a situation," "the existence of countervailing probabilities" is not "irrelevant." *United States v. Jackson*, 415 F.3d 88, 94 (D.C. Cir. 2005). As the D.C. Circuit has explained, "[w]ere that the law, then the government's burden would be considerably eased." *Id.* Instead, "[t]he Fourth Amendment requires a different analysis," one that "places a heavy burden on the government" and does not permit agents "to elide that burden by ignoring … explanations" or facts that cut against a person's likelihood of escape. *Id.* at 95. As in *Jackson*, where the government was "ignoring the explanations indicating authorized use [of a car] and instead hastily asserting that there was a fair probability that Jackson was an unauthorized user of the car," *id.*, here, Defendants are failing to make any inquiry or obtain any facts that show that a person is unlikely to escape before a warrant can be obtained. Instead, they impermissibly treat a poor-fit, boilerplate list of factors such as the person being in public, being in a vehicle, and their alleged violation of immigration laws as sufficient to establish escape risk. *See Escobar Molina*, 2025 WL 3465518,

at *13 ("Courts have also made the self-evident finding that the likelihood of escape is lower when the individual has resided in the country for a lengthy period of time and has strong community ties.") (collecting cases). Indeed, it is clear from the I-213s and the Lyons memorandum that Defendants are impermissibly cherry-picking facts and using them as a one-way ratchet—only ever construing likelihood of escape as more likely, never less. This is the opposite of the sort of objective, particularized, totality-of-the-circumstances analysis probable cause demands.

Defendants' substantial noncompliance with the Order is not premised on "individual mistaken or overzealous civil immigration arrests." *Escobar Molina*, 2025 WL 3465518, at *29. The throughline of the 33 I-213s Defendants have produced is clear: Collectively, they demonstrate a consistent pattern and practice of making warrantless civil immigration arrests in this District without a pre-arrest, individualized determination of probable cause as to escape risk. The repetition of the same irrelevant factors in numerous reports further shows that these insufficient bases for probable cause are not the product of a single officer's mistake. As a result, the I-213s and "circumstances behind individual arrests" are "part of a larger inquiry" presented by this motion "into whether the defendants [a]re continuing to apply a *policy* of making such arrests unlawfully, with individual arrests as evidence, rather than as individual violations themselves." *Id.* at *30. Here, the circumstances of the arrests demonstrate that Defendants are continuing to enforce their policy of making warrantless civil immigration arrests unlawfully. As before, Defendants' unlawful practice is traceable directly to DHS and ICE leadership: The recent public statements by high-ranking officials repeating the same, wrong legal standard for arrests as they did prior to the Order, in addition to the Lyons memorandum authorizing agents to make warrantless arrests under an impermissibly broad conception of probable cause for escape risk, "derive from an intentional policy and practice of conducting warrantless civil immigration arrests

without the requisite probable cause findings and reflect a purposeful attempt to conflate such *arrests* with civil immigration *stops*." *Id.* at *25. The only difference now is that Defendants' continued policy violates not only the statute and regulation, but also this Court's Order.

Defendants' noncompliance with court orders has become all too common, as courts across the country, including in this District, have recognized. *See, e.g.*, Third Widas Decl., Ex. 12 (article discussing hearing in *Ramirez Ovando v. Noem*, No. 25-cv-03183 (D. Colo. Feb. 18, 2026)); Minute Order, *Soto Jimenez v. Bondi*, No. 26-cv-00957 (D. Minn. Feb. 18, 2026) (imposing contempt sanctions); Order, *Neguse v. ICE*, No. 25-cv-02463 (D.D.C. Feb. 2, 2026), ECF 52 (Cobb, J.); Order at 2, *Tobay Robles v. Noem*, No. 26-cv-00107 (D. Minn. Jan. 28, 2026), ECF 10 (identifying "96 court orders that ICE has violated in 74 cases"); Order, *Cruz Santos v. Baker*, No. 25-cv-18959 (D.N.J. Jan. 27, 2026), ECF 24; Order, *Soriano Neto v. Hyde*, No. 25-cv-00425 (D.R.I. Jan. 27, 2026), ECF 23; Order at 3, *Moreta Duran v. Bondi*, 25-cv-04816 (D. Minn. Jan. 25, 2026), ECF 11 ("There has been an undeniable move by the Government in the past month to defy court orders or at least to stretch the legal process to the breaking point in an attempt to deny noncitizens their due process rights."); Order, *Vasquez Perdomo v. Noem*, No. 25-cv-05605 (C.D. Cal. Nov. 13, 2025), ECF 256; Mem. Op. & Order, *Castañon Nava v. DHS*, No. 18-cv-03757 (N.D. Ill. Oct. 7, 2025), ECF 214; Order at 2, *Melgar-Salmeron v. Bondi*, No. 23-7792 (2d Cir. June 24, 2025), ECF 49-1; Minute Order, *National TPS Alliance v. Noem*, 25-cv-01766 (N.D. Cal. June 5, 2025); Order, *J.O.P. v. DHS*, No. 19-cv-01944 (D. Md. May 28, 2025), ECF 287; Order, *D.V.D. v. DHS*, No. 25-cv-10676 (D. Mass. May 21, 2025), ECF 119; Order, *Abrego Garcia v. Noem*, No. 25-cv-00951 (D. Md. Apr. 11, 2025), ECF 61; Mem. Op., *J.G.G. v. Trump*, No. 25-cv-00766 (D.D.C. Apr. 6, 2025), ECF 81 (Boasberg, C.J.). So too has the government. *See, e.g.*, Declaration of Jordan Fox, *Kumar v. Soto*, No. 26-cv-00777, ECF 21-1 (D.N.J. Feb. 13, 2026)

(acknowledging more than 50 violations of court orders, including over 20 injunction violations); Tr. of Show Cause Hr'g at 30:18–21, *Pualasin Guaman v. Bondi*, No. 26-cv-00603 (D. Minn. Feb. 3, 2026) (admission by attorney for DHS that agency has not "compl[ied] with all the court orders … in the past or currently").

## II.    Defendants are Violating the Reporting Requirements of the Order.

Defendants are also violating the reporting requirements of the Order by, as detailed above, failing to include "specific, particularized facts that supported the agent's pre-arrest probable cause" and that are not "boilerplate," and failing to include the time the arrest was made, in the documentation. Order at 2–3.

The I-213s fail to include "specific, particularized facts that supported the agent's pre-arrest probable cause to believe that the person is likely to escape before a warrant can be obtained" and instead "use … boilerplate language." *Id.* at 2–3. Nearly every I-213 lists the same handful of factors—"arrested at large," "entered the United States after evading inspection," "was encountered by Immigration Officer while in vehicle," home address, family ties, and employment being "unverified" or "unknown"—without any particularized facts showing that the person who was being arrested was likely to escape before a warrant could be obtained. "[B]oilerplate statements" that are not "specific to [the individuals being arrested or their circumstances]" do not suffice for probable cause. *United States v. Mora*, 989 F.3d 794, 801 (10th Cir. 2021). The absence of facts particularized to the individuals in the I-213s contravenes not only the reporting requirements of the Order, but also the probable cause standard. *See Barham*, 434 F.3d at 573. If, as Defendants have claimed throughout this litigation, Defendants' agents were in fact conducting the required probable cause analysis during each warrantless arrest, the documentation ordered by the Court surely would memorialize these efforts. Instead, Defendants' failure to properly document these arrests further evidences that they are continuing to implement their unlawful

policy of not making individualized, pre-arrest probable cause determinations as to escape risk.

### III.    The Requested Relief in the Attached Proposed Order Is Necessary and Warranted to Ensure Compliance With the Court's Injunction.

Plaintiffs' requested relief in the attached proposed order aims to enforce—and ensure compliance with—the Court's preliminary injunction. The Court has "broad" equitable authority to secure compliance with its Order. *Garcia Ramirez*, 2025 WL 3563183 at *17; *see also Kansas v. Nebraska*, 574 U.S. 455, 456 (2015) ("When federal law is at issue and the public interest is involved, a federal court's equitable powers assume an even broader and more flexible character than when only a private controversy is at stake." (cleaned up)). In addition, this Court has the authority to "modify … an injunction" while an appeal of the injunction is pending. Fed. R. Civ. P. 62(d); *see also Washington Metro. Area Transit Comm'n*, 985 F. Supp. 2d at 29 ("The district court's power to modify an injunction to preserve the status quo necessarily includes the lesser power to clarify the injunction to supervise compliance.").

Plaintiffs seek two forms of relief: (1) to require Defendants to prepare written training materials based on this Court's Orders and accompanying opinions and use them to conduct trainings, and (2) additional reporting requirements, including requiring Defendants to produce, among other things, body-worn camera footage or any other video footage of warrantless arrests in this District.

*First*, requiring Defendants to prepare training materials consistent with this Court's orders and decisions and to provide training to their agents using these materials enforces this Court's Order, preserves the status quo, and would not be unduly burdensome on Defendants. Requiring Defendants to prepare and provide training consistent with this Court's orders would not "materially alter the status of the case on appeal." *Mayweathers v. Newland*, 258 F.3d 930, 935 (9th Cir. 2001) (quoting *McClatchy Newspapers v. Central Valley Typographical Union No. 46*,

686 F.2d 731, 734 (9th Cir. 1982)). Indeed, such training would preserve the status quo as it would serve to effect and ensure compliance with this Court's Order and Memorandum Opinion. The Order required Defendants to "transmit a copy of this Order to defendants' officers, employees, agents, and contractors who have responsibilities related to the subject matter of this Order," Order at 2, so that Defendants' agents would be aware of what the Order required of them. Although Defendants did so, they negated the transmission by continuing to make public and internal statements that contradict the Court's explication of the law. "[G]iven the blatant misstatements about the INA's requirements for such arrests repeatedly espoused by DHS high-ranking officials" after the Court's Order, s*ee Escobar Molina*, 2025 WL 3465518, at *37, and the evidence demonstrating that Defendants are systemically failing to apply the correct legal standard to make warrantless civil immigration arrests, the requested training requirements are necessary.

Moreover, as this Court acknowledged, "[t]he D.C. Circuit has been clear that INA regulations, *see* 8 C.F.R. § 287.5(e)(3) and § 287.5(c)(1), require immigration officers to receive training before they can make civil immigration arrests, and that when this authority is delegated to other federal agents, they too must undergo the required training prior to making civil immigration arrests." *Id.* at *26 (citing *N.S. v. Dixon*, 141 F.4th 279, 286–87 (D.C. Cir. 2025)). Plaintiffs' requested relief therefore is not novel; indeed, it is already required under Defendants' own regulations. In addition, Plaintiffs' proposal minimizes the burdens on the Court and avoids judicial micromanagement. The built-in meet-and-confer process and briefing schedule will allow the parties to informally resolve or narrow their points of disagreement, if any, regarding the training materials Defendants plan to use, before bringing objections to the Court.

*Second*, the proposed additional reporting requirements are likewise within the scope of this Court's Rule 62 authority and are not unduly burdensome on Defendants. Plaintiffs propose

that this Court require that Defendants' documentation "contain specific details and facts regarding what inquiry or investigation was conducted—including the specific questions asked, if any—regarding a person's family, home, employment, or any other aspects of their ties to the community prior to arresting that person, and the results of the inquiry or investigation," that it "state whether it was completed by the arresting agent, and if not, exactly how the agent who prepared the documentation received the information from the agent(s) who made the arrest," and that it "identify the time of the arrest." These—like the original reporting requirements ordered by this Court—are "not unduly burdensome given that defendants' counsel conceded at trial that agents making immigration arrests 'already fill out' a form for each arrest that 'should' include the facts giving rise to probable cause to make the arrest." *Escobar Molina*, 2025 WL 3465518, at *37. The requested remedy of providing all body-worn camera footage or any other video footage that is in Defendants' or their agents' possession similarly is not unduly burdensome on Defendants, as it is footage they already have. *See, e.g.,* Espinoza Forsith I-213 (listing names of arresting officers and noting that "Body Worn Camara [*sic*] footage may exist for this event"). Such footage would assist Plaintiffs and the Court in "supervis[ing] compliance," *Washington Metro. Area Transit Comm'n*, 985 F. Supp. 2d at 29, given the inconsistencies within the I-213s and between the I-213s and class members' declarations. *See also Escobar Molina*, 2025 WL 3465518, at *19 n.24 ("[T]hese holes in the factual record, where defendants hold the pertinent backup evidence—should such evidence exist—are actually probative in assessing the reliability and accuracy, or lack thereof, of other representations by defendants about their actions more broadly.").

On the other side of the ledger, these additional reporting requirements will "support the public interest and the administrability of the preliminary injunction order given the substantial ambiguities in the record about who is making these civil immigration arrests, whether these

officers have the required training to do so, and on what basis these officers are making such arrests." *Id.* at *37. These additional reporting requirements, like those ordered already, are "aimed … at ensuring compliance with the court-ordered preliminary injunction" and further the public interest by promoting "[t]ransparency during these arrests," *id.* at *37, which Defendants' substantial noncompliance with the existing reporting requirements is obscuring.

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' motion to enforce.

February 19, 2025

s/ Adina Appelbaum
Adina Appelbaum (D.C. Bar No. 1026331)
Ian Austin Rose (Md. Bar No. 2112140043)
Samantha Hsieh (Va. Bar No. 90800)*
**AMICA CENTER FOR IMMIGRANT RIGHTS**
1025 Connecticut Avenue NW, Suite 701
Washington, D.C. 20036
(202) 331-3320
adina@amicacenter.org
austin.rose@amicacenter.org
sam@amicacenter.org

s/ Aditi Shah
Aditi Shah (D.C. Bar No. 90033136)
Scott Michelman (D.C. Bar No. 1006945)
**AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF THE DISTRICT OF COLUMBIA**
529 14th Street NW, Suite 722
Washington, D.C. 20045
(202) 457-0800
ashah@acludc.org
smichelman@acludc.org

Kathryn Huddleston (Tex. Bar No. 24121679)**++
**AMERICAN CIVIL LIBERTIES UNION
FOUNDATION**
915 15th Street NW, 7th Floor
Washington, D.C. 20005
(212) 549-2500
khuddleston@aclu.org

s/ Sirine Shebaya
Sirine Shebaya (D.C. Bar No. 1019748)
Yulie Landan (Cal. Bar No. 348958)*+
Bridget Pranzatelli (D.C. Bar No. 90029726)
**NATIONAL IMMIGRATION PROJECT**
1763 Columbia Road NW, Suite 175
Washington, D.C. 20009
(213) 430-5521
sirine@niplg.org
yulie@nipnlg.org
bridget@nipnlg.org

Respectfully submitted,

s/ Jehan A. Patterson
Jehan A. Patterson (D.C. Bar No. 1012119)
Chris Kimmel (D.C. Bar No. 1047680)
Alexandra Widas (D.C. Bar No. 1645372)
Hassan Ahmad (D.C. Bar No. 1030682)
Sean Berman (D.C. Bar No. 90026899)
Austin Riddick (D.C. Bar No. 90018117)
Alexis Gorfine (D.C. Bar No. 90039553)***
Marcus Ransom (D.C. Bar No. 90039599)***
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, D.C. 20001
(202) 662-6000
jpatterson@cov.com
ckimmel@cov.com
awidas@cov.com
hahmad@cov.com
sberman@cov.com
ariddick@cov.com
agorfine@cov.com
mransom@cov.com

Eva H. Lilienfeld (N.Y. Bar No. 6143085)*
Graham Glusman (N.Y. Bar No. 6099535)*
**COVINGTON & BURLING LLP**
30 Hudson Yards
New York, NY 10001
(212) 841-1000
elilienfeld@cov.com
gglusman@cov.com

s/ Madeleine Gates
Madeleine Gates (D.C. Bar No. 90024645)
**WASHINGTON LAWYERS' COMMITTEE FOR
CIVIL RIGHTS AND URBAN AFFAIRS**
700 14th Street NW, #400
Washington, D.C. 20005
(202) 319-1000
madeleine_gates@washlaw.org

s/ Ama Frimpong
Ama Frimpong (D.C. Bar No. 1602444)*
Shana Khader (D.C. Bar No. 90011926)

**CASA, Inc.**
8151 15th Avenue
Hyattsville, MD 20783
(240) 485-8844
afrimpong@wearecasa.org
skhader@wearecasa.org
*Attorneys for Plaintiffs*

[*]*Admitted* pro hac vice.
[**]*Motion for Admission* pro hac vice
*forthcoming.*
[***]*Petition for Admission forthcoming.*

[+]*Not Admitted in D.C.; working remotely
from N.Y. and admitted in Cal. only*
[++]*Not Admitted in D.C.; working remotely
under supervision of D.C. Bar member,
practice limited to federal courts in D.C.,
and admitted in Ariz. and Tex. only.*