**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| JOSE ESCOBAR MOLINA, *individually and on behalf of all others similarly situated*,<br><br>　　　　*Plaintiffs*,<br><br>　　　v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>　　　　*Defendants*. | No. 1:25-cv-3417 |

**DECLARATION OF ADOLFO DOE**

I, Adolfo Doe, pursuant to 28 U.S.C. § 1746, declare as follows:

1. My name is Adolfo Doe. I am a 41-year-old Latino man. I have lived in the United States for more than 25 years, specifically in Washington D.C. I work as a waiter in a restaurant in Washington D.C. I have three U.S. citizen children who are all minors, and one of my children has autism, which requires that his mother and I provide him constant care and supervision.

2. Around nine in the morning on December 6, 2025, I was standing and waiting at the bus stop at Benning Road NE and 19 Street Northeast on my way to work. A black, unmarked SUV with New York license plates pulled up next to the bus stop, and three officers got out of the vehicle. The three male officers wore jackets that said ICE, and two of them were masked.

3. The three officers approached me, one stood in front of me and the other two by my side, and they began to question me. First, they asked me if I speak Spanish, whether I am from the United States, and where I was born. I responded that I do speak Spanish and am

1

from Mexico. The officers then asked me to see my identification, but I told them I did not have it with me. The officers also asked me my name, which made me think that they did not know who I was when they stopped me and did not have a warrant for my arrest.

4. The officers continued to question me at the bus stop, and I did not feel like I was free to go. They asked me if I had an open immigration case, and I answered that I was not sure because I had applied for a U-visa with the assistance of an attorney last year but did not know the status of my application. The officers asked me where I live and how long I had been in the United States, and I told them that I live in Washington D.C, where I have lived for about 25 years. The officers asked me for my phone, but I did not give it to them. They asked me where I was going to which I said I was going to work. The officers did not ask me where I work or for any other details about me or my family.

5. One of the officers scanned my face with a device the size of a cellphone, and I understood them to say there was no matching result in their system from the scan of my face. Again, this made me think that the officers did not know who I was when they stopped me. I asked the officers to see a warrant for my arrest, but the officers responded that they did not need one.

6. While the immigration officers questioned me, a group of about three to four people at the bus stop were watching and filming what was happening. One person called 911 and reported that ICE was harassing me.

7. The officers got back in their vehicle and drove away. I stayed at the bus stop so that I could continue my commute to work, thinking that I was in the clear and would not be arrested by ICE. About five minutes later, the ICE officers returned in the same vehicle. They exited the vehicle and without asking any more questions, arrested me by putting

me in handcuffs. I did not flee or resist, but the officers were forceful as they restrained me, pushing me around and kicking my legs.

8. As I was being handcuffed, I asked the Spanish-speaking ICE officer what crime I had committed that led to my arrest, and he responded that I am a criminal because I am in the country illegally. I responded that if I am deported to Mexico, I will invite the officer to my home to eat carne asada. One of the other officers who did not speak Spanish said in English, "Oh, you want to make me into carne asada?" Because I understand some English, I told the officer, no, that is not what I said, and the Spanish-speaking officer did not correct him. I insisted that the English-speaking officer misheard me and was incorrectly stating what I had said.

9. Others at the bus stop continued to watch as I was being arrested, and some yelled for the officers to leave me in peace.

10. After putting me in their SUV, the officers drove to a nearby police station. Here, they took my belongings, including my bag and phone, and searched me to make sure I was not carrying any weapons. They did not show me any documents while at the police station, and I do not remember if they asked me more questions. They moved my handcuffs so that I was restrained with my hands in front instead of behind my back, and they also put me in ankle shackles.

11. After being parked for about half an hour at the local police station, the officers drove me to the ICE office in Chantilly, Virginia where I spent about two days. There, the officers who processed me tried to force me to sign for voluntary departure. At the end of processing, I was given a document that said I would have an immigration court hearing.

12. Eventually, I was transferred to an ICE detention center and was first detained at a jail

called Riverside for about two weeks. I am now detained at Farmville, and I had my first court hearing before an immigration judge on January 6, 2026.

13. I have three children who depend on me, including my 16 year old U.S. citizen child who has autism. He needs frequent care and attention, for example, to ensure that he does not flee the home and get lost. I am very worried about him and all my children as I continue to be detained and I hope to reunite with them soon.

14. I am making this declaration under pseudonym because I am afraid of retaliation me and my family may face if my identity were to become public as a result of my participation in this lawsuit. I am afraid that my family or I will be retaliated against and harassed by members of the public on social media given recent reports about people harassing noncitizens online.

15. This declaration was read to me in full in Spanish on February 6, 2026 by Lily Hartmann. I completely understand the contents of this declaration.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 6, 2026.

#### CERTIFICATE OF INTERPRETATION

I, Lily Hartmann, certify that I am fluent in Spanish and English and that I read this declaration in its entirety to Adolfo Doe. Due to Adolfo Doe's detention, I have not been able to visit him in person or otherwise obtain his signature. I spoke with Adolfo Doe via telephone call on February 6, 2026, and read this declaration to Adolfo Doe word for word to confirm its accuracy. Adolfo Doe affirmed that it was accurate and authorized me to sign on his behalf.

February 6, 2026

_____
Lily Hartmann

_____
Date

4