**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| JOSE ESCOBAR MOLINA, *individually and on behalf of all others similarly situated,*<br><br>    *Plaintiffs,*<br><br>  v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.,*<br><br>    *Defendants.* | No. 1:25-cv-3417 |

**<u>DECLARATION OF ROLANDO DOE</u>**

I, Rolando Doe, pursuant to 28 U.S.C. § 1746, declare as follows:

1. My name is Rolando Doe. I am 18 years old and I am an indigenous Latino man. I entered the United States in 2018 as an unaccompanied minor, when I was 11 years old. The immigration officials put me in a shelter for kids and then sent me to live with my mother in Maryland. My mom had to give her address to the immigration officials and it's on my paperwork. I've been living with her in Prince George's County, Maryland since then and I went to school here. Now, I work for a remodeling company. Before my arrest by ICE in December 2025, I never had any interaction with law enforcement.

2. On December 10, 2025, around 8am, I was riding in a work truck with my coworkers on our way to a job. We were near the Petworth neighborhood in D.C. There were four of us in the car. One of my coworkers was driving and another was in the front passenger seat. I was in the backseat with the other coworker.

1

3. Suddenly cars came up behind, in front, and on the side of us. We pulled over. The officers told us to get out of the car or they would break the windows down, so we got out. At that moment, they asked us if we were citizens, what our names were, and how old we were. They also demanded our IDs. I didn't have an ID so I had nothing to give them. I said to them in English that I didn't want to respond to these questions for the security of myself and my coworkers. At no point did I say that I entered the U.S. illegally.

4. The officers said, "well, we are going to find that out" and then they handcuffed me and the others. They pushed us up against the car. They didn't show any of us a warrant. They didn't tell us why they had stopped us in the first place. They did not ask for my home address, the name of my employer, my family members in the U.S., or anything else about my connections to the community here.  Other than their earlier request for my ID, they also did not ask me for any documents related to my home address, employment, or family here.

5. Next they took us to Chantilly. At this point I was separated from my coworkers. ICE asked me if I had been in any gangs or if I had ever been arrested. I said no. They asked me about my immigration status. They pressured me to accept voluntary deportation. I chose to stay and fight for my case. They gave me a court date for January 13, but then it was moved to January 28.

6. After Chantilly, they sent me to Riverside jail in Virginia. Then they sent me to Farmville, also in Virginia. I am one of the youngest people here, especially in my dorm. My mom is very worried about me. She had to pay a lawyer a lot of money to help me. But I am still detained and I'm not sure how much longer I can tolerate being here. The food is really

bad. The guards treat us poorly. If you ask the guards for help with anything, they will often ignore us.

7. I am making this declaration under pseudonym because I am afraid of retaliation me and my family may face if my identity were to become public as a result of my participation in this lawsuit. I am only 18 years old, and I am afraid that me and my mother will be retaliated against and harassed by members of the public on social media given recent reports about people harassing noncitizens online.

8. This declaration was read to me in full in Spanish on February 10, 2026 by Ian Austin Rose. I completely understand the contents of this declaration.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 10, 2026.

**CERTIFICATE OF INTERPRETATION**

I, Ian Austin Rose, certify that I am fluent in Spanish and English and that I read this declaration in its entirety in Spanish to Rolando Doe. Due to his detention, I have not been able to visit him in person or otherwise obtain his signature. I spoke with Rolando by phone, documented his statement, and drafted this declaration accordingly. At 11 am on 2/10/2026, I read the declaration back to Rolando word for word to confirm its accuracy. Rolando affirmed that it was accurate and authorized me to sign on his behalf.

Ian Austin Rose

February 10, 2026