UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOSE ESCOBAR MOLINA et al.,

        Plaintiffs,

    v.

DEPARTMENT OF HOMELAND
SECURITY et al.,

        Defendants.

Civil Action No. 25-3417 (BAH)

**MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE THE
<u>PRELIMINARY INJUNCTION</u>**

## TABLE OF CONTENTS

Table of Contents ............................................................................................................. i

Background ..................................................................................................................... 1

Legal Standard .............................................................................................................. 3

    I.       Defendants Are Conducting Civil Immigration Arrests in Accordance with the INA and the Court's Order. ................................................................................. 3

    II.      Defendants Are Documenting Probable Cause and Escape Risk. ......................... 6

    III.     The Relief Plaintiffs Seek Would Amount to Judicial Micromanaging of Immigration Enforcement in Washington, DC. .................................................... 11

Conclusion .................................................................................................................... 17

Defendants, various government officials and agencies responsible for administering the Nation's immigration laws and programs, sued in their official capacities respectfully submit this memorandum in opposition to Plaintiffs' motion to enforce the preliminary injunction.  See Pl. Mot. (ECF No. 78).

## BACKGROUND

Plaintiffs Jose Escobar Molina, B.S.R., N.S., and R.S.M. are aliens living in Washington, DC who were arrested by immigration law enforcement agents in August 2025 but have since been released.  Plaintiff CASA, Inc. ("CASA"), an immigrant rights organization, alleges it has members similarly situated to the individual Plaintiffs.  Plaintiffs brought this lawsuit on September 25, 2025, alleging that immigration arrests that Defendants conducted in Washington, D.C. were unlawful under the Immigration Nationality Act ("INA"), *see* Compl. (citing 8 U.S.C. § 1357(a)(2)) and thus contrary to law under the APA, 5 U.S.C. § 706(2)(A)(C)(D).  Plaintiffs claimed that Defendants were acting pursuant to a policy and practice of making warrantless immigration arrests in Washington, D.C. without a pre-arrest determination of probable cause to believe that the person under arrest is in the United States in violation of the immigration laws and likely to escape before an arrest warrant can be obtained.  Compl. ¶¶ 77, 83 (ECF No. 1).  The following week, Plaintiffs moved to preliminarily enjoin this alleged policy.  Mot. for Prelim. Inj. (ECF No. 17).  Defendants opposed this motion.  Def. Opp'n to PI (ECF No. 50).  On December 2, 2025, the Court preliminarily enjoined:

> Defendants and their agents from enforcing their policy or practice of making warrantless civil immigration arrests in the District of Columbia without a pre-arrest individualized determination by the arresting agent of probable cause that the person being arrested is likely to escape before a warrant can be obtained, as required by 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii), which statute and regulation also require the same individualized determination of probable cause that the person being arrested is in the United States in violation of law or regulation regulating the admission, exclusion, expulsion or removal of aliens.

Order at 2 (ECF No. 67).

The Court also required any immigration agent who conducts a warrantless civil immigration arrest in the District of Columbia "to as soon as practicable, document the facts and circumstances surrounding the warrantless civil immigration arrest in narrative form," *id,* and that every thirty days "defendants shall release to plaintiffs' counsel the documentation describing defendants' and their agents' warrantless civil immigration arrests within this District, or if requested by plaintiffs' counsel concerning specific individual warrantless arrests, no later than seven days after the request." *Id.* at 3. Consistent with the Court's order, Defendants produced these documents on January 2 and February 2, 2026. Ex. 10, Weiss Decl. ¶ 3. Moreover, since the Court entered this order, the Department of Homeland Security issued guidance continuing to make clear that civil immigration arrests require probable cause of a violation of the immigration laws and risk that the person will not be at the scene or the encounter or another clearly identifiable location before a warrant can be obtained. Ex. 1, Memorandum: Civil Immigration Arrest Authority: Administrative Arrest Warrants and Warrantless Arrests, Todd Lyons, January 26, 2026 ("Lyons Memo").

Plaintiffs now contend that Defendants are in violation of the preliminary injunction order and seek an order enforcing and expanding the preliminary injunction to require Defendants to create written training materials based on this Court's Orders and Memorandum Opinion, train their immigration officers based on those training materials, and require agents to include additional information in their documentation. Prop. Order (ECF No. 78-36). As explained below, this relief is unwarranted because Defendants are making good faith efforts to comply with the Court's order, and the relief that Plaintiffs propose is overboard and would unnecessarily interfere with immigration enforcement in Washington, D.C.

**LEGAL STANDARDS**

When deciding a motion to enforce a preliminary injunction, a district court has "the authority to enforce the terms of its mandate." *Flaherty v. Pritzker*, 17 F. Supp. 3d 52, 55 (D.D.C. 2014) (cleaned up); *Int'l Ladies' Garment Workers' Union v. Donovan*, 733 F.2d 920, 922 (D.C. Cir. 1984). A court asked to enforce a prior order should grant the motion only when a "prevailing plaintiff demonstrates that a defendant has not complied with a judgment entered against it." *Heartland Hosp. v. Thompson*, 328 F. Supp. 2d 8, 11 (D.D.C. 2004). The overarching question is whether the plaintiff has "received all relief required" by the court's prior order. *Id.* "Success on a motion to enforce a judgment gets a plaintiff only 'the relief to which [the plaintiff] is entitled under [its] original action and the judgment entered therein.'" *Heartland Reg'l Med. Ctr. v. Leavitt*, 415 F.3d 24, 29 (D.C. Cir. 2005) (quoting *Watkins v. Washington*, 511 F.2d 404, 406 (D.C. Cir. 1975)).

**ARGUMENT**

I.    **Defendants Are Conducting Civil Immigration Arrests in Accordance with the INA and the Court's Order.**

Defendants are conducting civil immigration arrests in a manner permitted by the INA, as well as the Court's preliminary injunction order, which incorporates the requirements in the INA. Order at 2 (ECF No. 67). An immigration officer is permitted to arrest an alien in the United States without a warrant if the officer "has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2); *see also,* Ex. 1, Lyons Memo at 3 (reiterating the statutory requirements).

The process for obtaining a warrant for a civil immigration arrest is different from obtaining a warrant for a criminal arrest. An immigration officer can conduct a civil immigration

arrest "under the authority of Form I-200, Warrant of Arrest."  8 C.F.R. § 236.1(b)(1).  Although these are administrative warrants rather than judicial warrants, not all immigration officers can issue a Form I-200.  The authority to issue a Form I-200 is limited to certain ranks of immigration agents.  *Id.* § 287.5(e) (2-3).  Because only certain immigration officials are authorized to issue a Form I-200 Warrant, a lower-level immigration officer who encounters an alien without an authorized official nearby must wait until an authorized official assesses the situation and issues a warrant; only after that occurs can that lower-level officer make the arrest.  8 U.S.C. § 1357(a)(2) provides officers a tool to conduct an immigration arrest where an authorized official is not readily available to issue an I-200 Warrant, but the alien it likely to escape before that authorized official arrives.

To conduct an arrest without a warrant, the relevant inquiry is whether the alien is likely to escape from the officers before immigration officers can obtain a warrant.  *United States v. Santos-Portillo*, 2019 U.S. Dist. LEXIS 115509, at *10 (E.D.N.C. May 31, 2019) (the escape likelihood prong is met when "the agents had reason to believe that defendant was likely to escape before a warrant could be obtained"); *Moreno v. Napolitano*, 213 F. Supp. 3d 999, 1003 (N.D. Ill. 2016) ("ICE may detain an alien without a warrant, but only if ICE has "reason to believe" that the alien "is likely to escape before a warrant can be obtained for his arrest.").  Consistent with these principles, immigration officers have been instructed, since the Court issued its order, that likelihood of escape is established if an immigration officer determines that the alien "is unlikely to be located at the scene of the encounter or another clearly identifiable location once an administrative warrant is obtained."  Ex. 1, Lyons Memo at 3.  The escape risk embodied in 8 U.S.C. § 1357(a)(2) is met in circumstances where the lower-level officer has probable cause to believe the alien will escape from the scene where he or she encountered the officer or is unlikely

- 4 -

to be located at another clearly identifiable location before the authorized official has had the opportunity to issue a warrant. Ex. 1, Lyons Memo at 3.

Importantly, 8 U.S.C. § 1357(a)(2) imposes no affirmative obligation on federal immigration agents to make the escape risk assessment in any particular manner. Given that an alien is free to leave at any point during a consensual encounter, immigration officers must make probable cause and escape risk assessments quickly and based on limited information. *United States v. Murillo-Gonzalez*, 524 F. Supp. 3d 1139, 1151 (D.N.M. 2021) (deferring "to the officer's on-the-scene judgments" and upholding an arrest under § 1357(a)(2)). "Because of the difficulty of making an on-the-spot determination as to the likelihood of escape without any opportunity to verify information provided or to conduct a full-scale interview, an [immigration] officer's determination will not be upset if there is any reasonable basis for it." *Contreras v. United States*, 672 F.2d 307, 308 (2d. Cir. 1982).

Consistent with the statute and the Court's order, Defendants' agents are considering likelihood of escape before conducting warrantless arrests. Pl. Mot. at 16. Indeed, the Department's most recent policy memorandum makes clear that arrests require probable cause of a violation and risk that the person will be gone or not at a clearly identifiable location if officers need to wait for a superior officer to issue a warrant. Ex. 1, Lyons Memo. Specifically, the memorandum reiterates longstanding Department policy that warrantless arrests require "probable cause to believe that: (1) the subject is a removable alien; and (2) the subject is 'likely to escape' before a warrant for his arrest can be obtained." *Id*. at 3. The memorandum reiterated that "these determinations must be made before a warrantless arrest is effectuated." *Id*.

Many of Plaintiffs' arguments claiming that Defendants are not considering the likelihood of escape in making these arrests are based on an overly narrow understanding of what constitutes

an escape risk under the INA.  The memorandum contains a non-exhaustive list of factors that agents can consider in assessing escape risk.  *Id*. at 3-4.  The list includes "the subject's behavior prior to and during the encounter," "the subject's ability and means to promptly depart the scene of the encounter," "possession of identity or work authorization documents that the immigration officer suspects are fraudulent," and "presentation of unverifiable or suspected false information to the immigration officer."  *Id*.  Plaintiffs dismiss this list as "seemingly encompass[ing] virtually anyone detained through a traffic stop or on the street."  Pl. Mot at 16.  But the Department did not invent these factors.  Rather, for most of possible escape risk factor listed, the memorandum cites a U.S. Court of Appeals case where the court held that the given factor was an appropriate factor to consider in assessing escape risk.  Ex. 1, Lyons Memo at 3-4 (citing *United States v. Meza-Campos*, 500 F.2d 33, 34 (9th Cir. 1974); *United States v. Cantu*, 519 F.2d494, 497 (7th Cir. 1975); *United States v. Reyes-Oropesa*, 596 F.2d 399,400 (9th Cir. 1979).  The Court ordered Defendants to "cease applying" a "policy of making arrests using a deficient standard under both the INA and well-settled constitutional principles[,]" "and instead to instruct their agents to arrest members of the plaintiff class in compliance with the law—i.e., only after establishing probable cause that they are likely to escape before a warrant can be obtained."  Mem. Op. at 84 (ECF No. 68).  Although Defendants deny ever making arrests under a "deficient standard," the Lyons Memo establishes that they are complying with the Court's order.

In sum, Defendants have instructed their agents to follow a policy that is consistent with the requirements of 8 U.S.C. § 1357(a)(2).  Defendants are complying with the preliminary injunction, and Plaintiffs' motion to enforce the injunction accordingly should be denied.

## II.    Defendants Are Documenting Probable Cause and Escape Risk.

The Department has instructed immigration agents to "clearly, succinctly, and contemporaneously document all factors that led to an immigration officer's determination that

the subject was likely to escape before a warrant could be obtained." Ex. 1, Lyons Memo at 5.

"This documentation must include both mitigating and aggravating factors and should only include

facts that the officers learned prior to the warrantless arrest." *Id.* This directive mirrors the Court's

order that any immigration officer who "conducts a warrantless civil immigration arrest in the

District of Columbia shall, as soon as practicable, document the facts and circumstances

surrounding the warrantless civil immigration arrest in narrative form." Order at 2 (ECF No. 67).

Plaintiffs identify I-213s that they characterize as "vague, repetitive, and lacking detail of

the specific encounter." Pl. Mot. at 18. As an initial matter, the fact that some of the narratives

are similar does not render the narratives non-compliant with the Court's order. The Court ordered

that "specific details as to the person being arrested must be provided such that the use of

boilerplate language *may be* deemed indicative of noncompliance." Order at 3 (ECF No. 67)

(emphasis added). The order does not state that using similar language to describe a similar

encounter constitutes noncompliance automatically. *Id.* The Department's instructions to its

agents mirrors the Court's order. Specifically, the Lyons Memo requires immigration officers to

assess "the likelihood of escape" "specific to each alien arrested," but also notes that "particular

factors may be common to multiple aliens arrested at the same time." Ex. 1, Lyons Memo at 5.

Moreover, consistent with the Court's order, agents are required to complete documentation "as

soon as practicable following the arrest." *Compare* Ex. 1, Lyons Memo at 5, *with* Order at 2 (ECF

No. 67).

The I-213 narratives for C.P.C. (ECF No. 78-15), J.P.C. (ECF No. 78-25), and P.P.C. (ECF

No. 78-34) are similar. And that makes perfect sense because all three aliens were apprehended

while they were sitting in the same vehicle, and, before making the arrest, officers were aware that

the vehicle was associated with an address of individuals who were known to be in the United

States unlawfully and that the vehicle was picking up individuals in an area known to be a pick-up spot for day workers.  *See*, *e.g.*, P.P.C. I-213 (ECF No. 78-34).

Further undermining Plaintiffs' theory, L.R.P (ECF No. 78-28) and C.H.R.T. (ECF No. 78-14) do not have identical narratives even though they were apprehended in the same vehicle. L.R.P's I-213 explains that L.R.P. was in the front passenger seat and had overstayed his H-2A Visa.  *See* ECF No. 78-28 at 9.  The I-213 for C.H.R.T includes the additional information that he was in the back seat; the form also stated that C.H.R.T. had just attended immigration court, *see* ECF No. 78-14 at 2, and that offers conducted immigration checks and learned that he had been issued a final removal order.

Moreover, contrary to Plaintiffs' assertions, the escape risk analysis for Adolfo Doe, *see* ECF No. 78-12 at 2, is sufficient.  Before making the arrest, officers had information that Aldofo Doe had previously threatened to kill an immigration officer.  *Id.*  Even if this belief was based on a miscommunication, as Plaintiffs allege, the relevant escape risk inquiry is based on what the officers knew at the time of the arrest, not what has been discerned in hindsight.  *Murillo-Gonzalez*, 524 F. Supp. 3d at 1151; *cf.  Graham v. Connor*, 490 U.S. 386, 396 (1989) ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.").

Moreover, Plaintiffs ignore the many I-213s that contain an adequate escape risk analysis. For example, agents documented that they learned:

- prior to his arrest on December 4, 2025, E.A.G.R. had a prior criminal history in the United States.  Ex. 6, E.A.G.R., Form I-213

- prior to his arrest on December 10, 2025, A.V.J. had a prior criminal history in the United States.  Ex. 2, A.V.J.  Form I-213.

- prior to his arrest on December 18, 2025, J.P.C.'s name matched the name of someone who had previously been removed to Guatemala.  Ex. 3, J.P.C. Form I-213

- prior to his arrest on December 18, 2025, C.P.C. had a prior removal order dated August 8, 2017.  Ex. 4, C.P.C. Form I-213.

- prior to his arrest on December 20, 2025, J.L.H. ran from agents and hid in some nearby bushes.  Ex. 5, J.L.H. Form I-213.

- prior to his arrest on January 6, 2026, E.E.F. attempted to flee from immigration agents. Ex. 8, E.E.F. Form I-200.

- prior to his arrest on January 6, 2026, F.A.A.A. attempted to flee from immigration agents. Ex. 10, F.A.A.A. Form I-213.

- prior to his arrest on January 8, 2026, N.A.V.C. had an extensive criminal record in the United States and a prior removal order.  Ex. 7, N.A.V.C. Form I-213.

- prior to his arrest on January 17, 2026, E.C.D. had been driving with a suspended license and failed to provide a valid vehicle registration.  Ex. 9, E.C.D. Form I-200.

Understanding that more details may be helpful generally, these I-213s demonstrate by Defendants' compliance with the order.

   To be sure, Plaintiffs attached declarations from some of the arrestees in the forms discussed above that appear to contradict statements in the forms.  But the Form I-213 reports are reliable because they were prepared contemporaneously to the stops and arrests, whereas the declarations Plaintiffs rely upon in their motion were prepared over a month later and for the purposes of litigation.  "Contemporaneous evidence, particularly written evidence, is commonly understood to be more reliable than later recollections because it reduces the risks of 'defective recollection or conscious fabrication.'"  *Sidibe v. Sutter Health*, 103 F.4th 675, 701 (9th Cir. 2024);

*see also United States v. Manfre*, 368 F.3d 832, 840 (8th Cir. 2004) (quoting *United States v. Blakey*, 607 F.2d 779, 785 (7th Cir. 1979)) ("substantial contemporaneity of event and statement minimizes unreliability due to [the declarant's] defective recollection or conscious fabrication."). Consequently, simply proffering declarations from some of the subjects of the reports does not clearly and convincingly overcome the I-213 reports and immigration officers' presumptive reliability. *Hernandez v. Garland,* 52 F.4th 757, 766 (9th Cir. 2022) ("Forms I-213 are entitled to a presumption of reliability . . . regardless of the purpose for which the form is used.").

Defendants have improved their documentation.  After producing the first group of I-213s on January 2, 2026, the Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations division ("ERO"), the custodian of the I-213s, had discussions to address deficiencies in the I-213 narratives.  Ex. 10, Weiss Decl. ¶ 3.  Notably, ICE's documentation improved in the I-213s released on February 2, 2026.  That release included eleven Forms I-213 but only three of them lacked an escape risk analysis.  *Id.*  Nonetheless, ICE has reviewed these I-213s and determined that additional measures will be adopted to ensure compliance with the Court's order.  *Id*. ¶ 4.  ICE is committed to increasing the quality of the narratives of the I-213s moving forward, and "any officers not adhering to this Court's Order will be counseled."  *Id*. ¶ 6. Additionally, although they have only made three warrantless immigration arrests since December 2, 2025, U.S. Customs and Border Protection "added fields to their arrest reports to require CBP Officers and Agents who make a civil immigration arrest to enter narrative text describing the 'Probable Cause for Immigration Violation,' select the 'Location of Arrest Type' – 'Business, Residence, Vehicle, Public Area, Other,' enter narrative text describing the 'Alien Ties to Community,' and enter narrative text describing 'Facts Supporting Likely Escape.'"  Ex. 11, Blanchard Decl. ¶ 3.  All CBP officers conducting civil immigration arrests in Washington, DC

hace been informed of these requirements. *Id*. While taking these steps does not concede that there have been any violations, they certainly demonstrate good faith efforts to ensure compliance with the Court's order and continued efforts to improve operations.

Accordingly, because Defendants are aware of their documentation obligations and are committed to fulfilling them, the Court should deny Plaintiffs' motion to enforce.

## III.  The Relief Plaintiffs Seek Would Amount to Judicial Micromanaging of Immigration Enforcement in Washington, DC.

Plaintiffs ask the Court to order Defendants to prepare written training materials based on this Court's Orders and accompanying opinions and use them to conduct trainings, as well as to impose additional reporting requirements, including requiring Defendants to produce, among other things, body-worn camera footage or any other video footage of warrantless arrests in this District. Pl. Mot at 29. First, the relief is unavailable because it would exceed the "the relief to which [the plaintiff] is entitled under [its] original action and the judgment entered therein." *Heartland Reg'l Med. Ctr.*, 415 F.3d at 29 (citation modified). Second, the requested relief is overbroad and unreasonable. *See Gulf Oil Corp. v. Brock,* 778 F.2d 834, (D.C. Cir. 1985) ("an injunction must be narrowly tailored to remedy the harm shown"). Defendants already provide periodic two-and-a-half-hour-long refresher trainings on arrests, which includes training on the Fourth Amendment and 8 U.S.C. § 1357. Simon Decl. ¶ 4 (ECF No. 63-1); Blanchard Decl. ¶¶ 6-7 (ECF No. 63-2). Moreover, as Defendants explained, they are already instructing immigration officers on the requirements to establish probable cause and escape risk. *See generally* Ex. 1, Lyons Memo. Immigration officers are required to conduct themselves in accordance with guidance from their agency's director, not statements from Department communications staff. In other words, to the extent that there are inconsistencies between the Lyons Memo and statements by Department spokespeople, agents are required to follow the Lyons Memo. *See also* Simon Decl. ¶ 5 (ECF No.

63-1) ("based upon their training, ERO officers make arrests based upon probable cause, not upon the reasonable suspicion standard for conducting investigative stops").

Indeed, Plaintiffs' request for additional training goes beyond simply ordering Defendants to conduct trainings. They seek to review the training materials, object to the training materials, litigate their objections to the materials before the Court, and observe the trainings for themselves. Prop. Order at 3-4 (ECF No. 78-36). These obligations would impose substantial harm on the Government by usurping authority over enforcement of our Nation's immigration laws, which the Constitution and federal statutes commit to the Executive Branch. *Perdomo v. Noem*, 146 S. Ct. 1, 4 (2025) (Kavanaugh, J. concurring). By seeking to involve the Court and Plaintiffs' counsel themselves in monitoring the Department's training program, Plaintiffs would be interfering with the Executive Branch's ability to implement a major enforcement priority and effectuate the immigration laws Congress enacted. Such encroachment weighs in favor of the denial of the injunctive relief. *Perdomo*, 146 S. Ct. at *6, (Kavanaugh, J., concurring) ("we now likewise must decline to step outside our constitutionally assigned role to improperly restrict reasonable Executive Branch enforcement of the immigration laws"). It is axiomatic that "[t]he Judiciary does not set immigration policy or decide enforcement priorities," but instead merely "ensure[s], in justiciable cases, that the Executive Branch acts within the confines of the Constitution and federal statutes." *Id.* at 5-6. As explained above, Defendants are acting within these parameters.

Moreover, Plaintiffs and Defendants may have reasonable disagreements on what factors are sufficient to establish probable cause and escape risk, but if such intervention is allowed, Plaintiffs may well object to the Department's proposed training materials on the grounds that the materials do not convey the factors necessary to establish probable cause and escape risk in the precise manner that Plaintiffs may prefer. Paving the way for such disputes could keep

immigration enforcement agencies entangled in constant litigation, disrupt operations, deter recruitment, and chill the ardor of current agents. *Id.* at 4 ("[A]fter-the-fact judicial second-guessing and contempt proceedings will inevitably chill lawful immigration enforcement efforts."). Ultimately, Plaintiffs' proposed modifications to the injunction improperly extend beyond what is necessary, and this Court should not interfere with the Executive Branch's comprehensive immigration enforcement decisions. Notably, despite the many cases around the nation challenging the Government's immigration enforcement operations, Plaintiffs cite no cases where a Court ordered such broad relief at the preliminary injunction stage.

The additional documentation requirements that Plaintiffs seek are also unreasonable. Immigration officers are already required to "document in the narrative section of the Form I-213" "all factors considered in determining that the alien was likely to escape before a warrant could be obtained." Ex. 1, Lyons Memo at 5. In documenting their escape risk assessment, officers "should include both aggravating and mitigating factors." *Id.* Thus, Plaintiffs' proposal that the Court require that "Defendants' documentation contain specific details and facts regarding what inquiry or investigation was conducted—including the specific questions asked, if any—regarding a person's family, home, employment, or any other aspects of their ties to the community prior to arresting that person, and the results of the inquiry or investigation," Pl. Mot. at 31, is redundant and therefore unnecessary. Plaintiffs' proposed order also fails to consider that an immigration officer must make "an on-the-spot determination as to the likelihood of escape without any opportunity to verify information provided or to conduct a full-scale interview." *Contreras*, 672 F.2d at 308. Plaintiffs' suggestion that the Court order immigration officers to ask specific questions regarding an alien's family, home, employment, or any other aspects of his or her ties to the community prior to arresting that person would not work in practice. Pl. Mot at 31. In most

- 13 -

circumstances an alien can run from immigration officers at any moment and immigration officers may not have sufficient time to explore all of these questions, especially when interacting with an alien who is not forthcoming in response to officers' questions.

Plaintiffs also seek body-worn camera footage of the arrests.  Pl. Mot at 31.  But ordering Defendants to produce body worn camera footage would subject the Government to ongoing and rolling discovery obligations.  Tellingly, Plaintiffs brought their claims under the Administrative Procedure Act ("APA"), and Section 706 of the APA encompasses "Congress's judgment that the civil discovery rules are incompatible with the APA, and their application to federal agencies would likely hinder the workings of another branch of government."  *Univ. of Cal. Student Ass'n v. McMahon*, Civ. A. No. 25-354 (RDM), 2025 U.S. Dist. LEXIS 132740, at *5 (D.D.C. Mar. 18, 2025).  The Court already has ordered Defendants to make rolling productions of the I-213s, which is unusual in an APA case.  Ordering more discovery would simply compound this irregularity and unreasonably impose further burdens that are both inappropriate under the APA and that could inhibit enforcement efforts.

Moreover, Defendants' continued work to improve their documentation militates against ordering Defendants to produce records beyond what they already are producing.  Since January 28, 2026, an Assistant Filed Office Director from ICE has been conducting a weekly review of the I-213s stemming from warrantless arrests in Washington, D.C.  Ex. 10, Weiss Decl. ¶ 4.  This allows senior ICE officials to ensure that the I-213s are in compliance with the Court's Order and allows for contemporaneous counseling of an officer who submitted a less than complete I-213 narrative.  *Id*.  Notably, no warrantless immigration arrests occurred in Washington, DC during the first two weeks of February.  *Id*. ¶ 5.  As Erik Weiss, the Acting Field Office Director in Washington, D.C. attests, "[m]oving forward, compliance with the Court Order for full and

complete I-213 narratives should be increased, any officers not adhering to this Court's Order will be counseled, and ICE ERO will continue to address and correct any substandard reporting requirements." *Id.* ¶ 6.

Finally, even if any of the class members were subject to a warrantless immigration arrest without probable cause and an individual escape risk determination, these class members have another avenue for relief. Specifically, they can challenge their arrests before the immigration court in removal proceedings and through a petition for review if they receive a final removal order. *See* 8 U.S.C.§ 1252(a)(5). "Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final [removal] order." 8 U.S.C. § 1252(b)(9). This includes challenges to a "decision to detain [an alien] in the first place." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018). An arrest is the first step in removal proceedings, and an alien in removal proceedings can move to suppress evidence of their removability due to Fourth Amendment or regulatory violations and even can move to terminate proceedings due to such violations. *Sanchez v. Sessions*, 904 F.3d 643, 653-54 (9th Cir. 2017) (alleged race-based stop by Coast Guard challenged in removal proceedings; citing *Rajah v. Mukasey*, 544 F.3d 427, 446-47 (2d Cir. 2008)); *Leal-Burboa v. Garland*, No. 21-70279, 2022 WL 17547799 (9th Cir. 2022) (alleged race-based stop challenged in removal proceedings); *Oliva-Ramos v. Att'y Gen.*, 694 F.3d 259, 274 (3d. Cir. 2012) (seeking suppression of evidence in removal proceedings based on allegations that agents "failed to obtain proper consent to enter the apartment, that they arrested [the petitioner] without a warrant and without probable cause, and that they seized him without reasonable suspicion"). An alien subject to a warrantless arrest in violation of 8 U.S.C. 1357(a)(2)

can move to terminate the removal proceedings against him or her by arguing that the arrest that culminated in the removal proceedings was unlawful.

Defendants are mindful that the Court previously rejected their § 1252(g) arguments because the plaintiffs in the cited cases were not arrested with the "immediate anticipation of commence removal proceedings[.]" Mem. Op. at 50 (ECF No. 68). In light of an intervening, significant legal ruling, Defendants respectfully suggest the Court should now revisit that conclusion, which goes to the Court's jurisdiction. Specifically, the Third Circuit in *Khalil v. President, United States*, 164 F.4th 259, 281 (3d Cir. 2026), confirmed that determining whether a challenge to allegedly unlawful government conduct is barred by § 1252(b)(9) depends on whether the challenge "raises legal questions that a [Petition for Review] court can meaningfully review later on[.]" Here, Plaintiffs and other class members can challenge their arrests through a Petition for Review, and thus these individuals "will have to wait to seek relief" through a Petition for Review. *Khalil*, 164 F.4th at 281.

Accordingly, because the relief Plaintiffs request is overbroad and would enmesh the Court and Plaintiffs in supervision of immigration enforcement in Washington, D.C., the Court should deny Plaintiffs' motion to enforce.

*    *    *

- 16 -

**CONCLUSION**

For these reasons, Plaintiffs' motion to enforce should be denied.

Dated: February 27, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney


By: _____/s/ John J. Bardo_____
      JOHN J. BARDO, D.C. Bar #1655534
      Assistant United States Attorney
      601 D Street, NW
      Washington, DC 20530
      (202) 252-2539

      *Attorneys for the United States of America*