# Exhibit 1

*Office of the Director*

**U.S. Department of Homeland Security**
500 12th Street, SW
Washington, DC 20536



**U.S. Immigration and Customs Enforcement**

January 28, 2026

MEMORANDUM FOR:   All ICE Personnel

FROM:             Todd M. Lyons
                  Senior Official Performing the Duties of the Director

SUBJECT:          Civil Immigration Arrest Authority: Administrative Arrest
                  Warrants and Warrantless Arrests

---

On January 20, 2025, President Donald J. Trump issued Executive Order 14159, *Protecting the American People Against Invasion*, setting forth "the policy of the United States to faithfully execute the immigration laws against all inadmissible and removable aliens, particularly those aliens who threaten the safety or security of the American people."[1] Central to the enforcement of the immigration laws is the civil immigration arrest authority possessed by the U.S. Immigration and Customs Enforcement (ICE) immigration officers within both Enforcement and Removal Operations (ERO) and Homeland Security Investigations (HSI).

Civil administrative arrest warrants have been part of the immigration laws since as early as 1798, and their use has long been acknowledged by the federal courts.[2] Federal regulations expressly delegate to specified immigration officers[3] the authority to issue administrative warrants of arrest under the immigration laws, Forms I-200, *Warrant for Arrest of Alien* (Form I-200), and to ERO and HSI immigration officers the authority to execute warrants of arrest for immigration violations.[4] In addition, the Immigration and Nationality Act (INA) unequivocally authorizes an immigration officer to execute a warrantless arrest of: (1) any alien who in his presence or view is entering or attempting to enter the United States in violation of any law or regulation made in pursuance of law regulating the admission, exclusion, expulsion, or removal of aliens; or (2) if he has reason to believe[5] that the alien so arrested is in the United States in

---

[1] 90 Fed. Reg. 8443 (Jan. 29, 2025).

[2] *See, e.g., Abel v. United States*, 362 U.S. 217, 233 (1960).

[3] 8 C.F.R. § 287.5(e)(2).

[4] *Id.* § 287.5(e)(3).

[5] The federal courts have consistently equated the term "reason to believe" in this context as "probable cause." *E.g., Morales v. Chadbourne*, 793 F.3d 208, 216-17 (1st Cir. 2015) (equating reason to believe in INA § 287(a)(2), 8 U.S.C. § 1357(a)(2) with probable cause); *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010) ("Because the Fourth Amendment applies to arrests of illegal aliens, the term 'reason to believe' in § 1357(a)(2) means

FOR OFFICIAL USE ONLY

Civil Immigration Arrest Authority: Administrative Arrest Warrants and Warrantless Arrests
Page 2 of 5

violation of any such law or regulation **and** is likely to escape before a warrant can be obtained for his arrest.[6]

This memorandum serves as a reminder of this essential authority and provides guidance for the lawful and consistent exercise of warrantless arrest authority for civil violations of immigration laws.

**Civil Immigration Arrests Pursuant to an Administrative Warrant**

Only specified categories of supervisory immigration officers within ICE have been delegated the authority to issue Form I-200 for the arrest of an alien when there is probable cause to believe the alien is present in the United States in violation of the immigration laws or is otherwise removable from the United States.[7] As delineated in the regulations, within ICE, Forms I-200 may only be issued by supervisory detention and deportation officers, supervisory special agents, or their superiors.[8] Although ICE immigration officers also possess warrantless arrest authority for civil violations of the immigration laws, as discussed below, such authority is not without limits. Accordingly, ICE immigration officers are required to ensure civil immigration arrest warrants[9] are issued for all target aliens prior to conducting targeted arrest operations.

Despite this requirement, it is without a doubt that ICE immigration officers will encounter additional aliens present in violation of the immigration laws or otherwise removable during at-large operations. In that case, immigration officers must immediately determine whether an administrative warrant can be timely obtained. If an authorized supervisory immigration officer is present or otherwise accessible, he or she may immediately issue Form I-200 if probable cause of removability is established.[10] If no supervisor is available to issue an administrative warrant, or a supervisor cannot timely issue an administrative warrant, then the officer or agent must consider whether a warrantless immigration arrest is permissible.

---

constitutionally required probable cause."); *Tejeda–Mata v. INS*, 626 F.2d 721, 725 (9th Cir.1980) ("The phrase 'has reason to believe' [in § 1357] has been equated with the constitutional requirement of probable cause."); *United States v. Cantu*, 519 F.2d 494, 496 (7th Cir. 1975) ("The words [in § 1357] of the statute 'reason to believe' are properly taken to signify probable cause."); *Au Yi Lau v. INS*, 445 F.2d 217, 222 (D.C. Cir. 1971) (the "reason to believe" phrase in § 1357 "must be read in light of constitutional standards, so that 'reason to believe' must be considered the equivalent of probable cause.").

[6] INA § 287(a)(2), 8 U.S.C. § 1357(a)(2).

[7] 8 C.F.R. § 287.5(e)(2).

[8] *Id.* § 287.5(e)(2)(xxiii), (xxiv), (xxxi)-(lii).

[9] Although this guidance addresses only Forms I-200, certain supervisory immigration officers within both ERO and HSI are also authorized to issue an administrative warrant, Form I-205, Warrant of Removal, for the arrest of an alien with a final order of removal. 8 C.F.R. § 241.2(a)(l). And all ICE special agents and deportation officers are authorized to execute Forms 1-205. *Id.* § 287.5(e)(3)(iii)-(v).

[10] Officers and agents are reminded that they are empowered to detain and conduct a brief investigative stop of any person that is reasonably suspected to be engaged in an offense against the laws of the United States or unlawfully present in the United States. 8 C.F.R. § 287.8(b)(2). Officers and agents may not detain aliens for the sole purpose of obtaining a Form I-200.

FOR OFFICIAL USE ONLY

### Warrantless Civil Immigration Arrests[11]

The immigration laws authorize immigration officers to effectuate civil immigration arrests without a warrant where there is probable cause to believe that: (1) the subject is a removable alien; **and** (2) the subject is "likely to escape" before a warrant for his arrest can be obtained.[12] These determinations must be made before a warrantless arrest is effectuated.[13]

The phrase "likely to escape" is not specifically defined in the statute or implementing regulations. The plain meaning of that phrase, which is reinforced by context, is that an alien is "likely to escape" if an immigration officer determines he or she is unlikely to be located at the scene of the encounter or another clearly identifiable location once an administrative warrant is obtained. The word escape indicates immediacy, and the plain meaning of the word is "to get away (as by flight)."[14] Whether an alien is likely to remain at the scene of the encounter is based on the totality of the circumstances known to the immigration officer <u>at the time of the encounter and prior to the arrest</u>. Possible factors include, but are not limited to:

1. The subject's behavior prior to and during the encounter (e.g., refusal to follow lawful commands, attempts to evade officers, or other suspicious behavior prior to the arrest);[15]

2. The subject's ability and means to promptly depart the scene of the encounter (e.g., the subject was encountered in a vehicle and continues to have control over the vehicle);[16]

3. The subject's age and health;

4. Possession of identity or work authorization documents that the immigration officer suspects are fraudulent;[17]

---

[11] Although this guidance addresses only civil immigration arrest authority, ICE immigration officers also possess authority to conduct certain warrantless criminal arrests under Title 8 of the U.S. Code, and the same "likely to escape" analysis applies to such arrests. INA § 287(a)(4)-(5), 8 U.S.C. § 1357(a)(4)-(5).

[12] INA § 287(a)(2), 8 U.S.C. § 1357(a)(2).

[13] *Id.*

[14] *Escape*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/escape (last visited Jan. 1, 2026).

[15] *See United States v. Meza-Campos*, 500 F.2d 33, 34 (9th Cir. 1974) (warrantless arrest was proper where alien appeared extremely nervous, looked around as if intending to run, and admitted alienage and that he had no immigration papers).

[16] *See United States v. Cantu*, 519 F.2d 494, 497 (7th Cir. 1975) (warrantless arrest was proper for alien in a moving car, who was highly mobile and possessed the capacity to change momentarily their location and direction).

[17] *See United States v. Reyes-Oropesa*, 596 F.2d 399, 400 (9th Cir. 1979) (warrantless arrest was proper when an alien working in a garage presented a forged resident card to immigration officers).

FOR OFFICIAL USE ONLY

Civil Immigration Arrest Authority: Administrative Arrest Warrants and Warrantless Arrests
Page 4 of 5

5. Presentation of unverifiable or suspected false information to the immigration officer;[18]

6. Whether the officer has probable cause to arrest the subject for improper entry by an alien, in violation of INA § 275, 8 U.S.C. § 1325, or reentry of a removed alien, in violation of INA § 276, 8 U.S.C. § 1326;[19] and

7. Whether the alien has complied with the legal requirements for registration under INA § 262, 8 U.S.C. § 1302, and notification of the Secretary of his or her address under INA § 265, 8 U.S.C. § 1305, including whether he or she is carrying on his or her person evidence of registration as required by INA § 264(e), 8 U.S.C. § 1304(e).

No single factor is determinative. The circumstances of an alien's failure to comply with the immigration laws of the United States or unwillingness to cooperate with an immigration officer's lawful authority to enforce those laws may support the conclusion that the alien is likely to escape before the officer can effectuate his or her arrest by obtaining a warrant. For example, an alien who admits to illegally crossing the border without inspection at a port of entry (or who otherwise never lawfully entered) is not only removable from the United States but has facilitated his or her unlawful presence in a surreptitious and criminal manner that demonstrates a wanton disregard for the laws of the United States. Having already committed a serious and deceitful federal offense, officers should closely consider whether the alien is likely to remain at the scene of the encounter while a warrant for his or her arrest is issued.

**Likelihood of Escape Compared with Risk of Flight**

Without explanation, and without any formal policy, ICE previously applied the phrase "likely to escape" as being the equivalent of "flight risk." This unreasoned position was incorrect. In fact, there are significant differences between the two standards in the immigration regulatory context and immigration officers should avoid conflating them. A flight risk analysis looks at whether an alien is likely to attend future immigration court hearings, appear before ERO as directed, surrender for removal, and comply with other immigration obligations.[20] Flight risk determinations are made <u>after</u> an alien's arrest, where the alien has already been identified, fingerprinted, interviewed, and may have had DNA collected. In these scenarios, an immigration officer has greater information at his or her disposal than prior to an at-large arrest, to determine the likelihood of an alien's compliance with release conditions and attendance at future immigration court hearings.

These factors are entirely absent during an at-large arrest. An immigration officer in the field must develop probable cause that the subject is an alien removable from the United States. Once

---

[18] See *United States v. Quintana*, 623 F.3d 1237, 1241 (8th Cir. 2010) (warrantless arrest was proper when an alien provided a name, date of birth and immigration status that could not be corroborated by the officer's records check).

[19] See *United States v. Puebla-Zamora*, 996 F.3d 535, 538 ("previous removal for illegal entry established probable cause that he may escape before a warrant could issue").

[20] 8 C.F.R. § 236.1(c)(3).

FOR OFFICIAL USE ONLY

FOR OFFICIAL USE ONLY

Civil Immigration Arrest Authority: Administrative Arrest Warrants and Warrantless Arrests
Page 5 of 5

established, the officer is empowered to effectuate an arrest and must determine whether the arrest may be made with or without a warrant. While the flight-risk analysis assesses whether an already identified and detained alien is likely to comply with future immigration obligations such as court appearances and appearances before ERO, the likelihood-of-escape analysis is narrowly focused on determining whether the person is likely to escape before the officer can practically obtain an administrative arrest warrant, while in the field. This on-the-spot determination as to the likelihood of escape is often made with limited information about the subject's identity, background, or place of residence and no corroboration of any self-serving statements made by the subject.

Therefore, when an immigration officer assesses whether an alien is likely to escape, he or she should consider the factors relevant to immediacy of obtaining and serving an arrest warrant on alien who may not yet have been subject to immigration enforcement, rather than factors relevant to whether an alien is likely to appear for immigration hearings and cooperate after having already been subject to immigration enforcement.

**Documentation Requirements**

Because the actions of ICE law enforcement personnel are often challenged months or years after the fact, it is important for officers and agents to clearly, succinctly, and contemporaneously document all factors that led to an immigration officer's determination that the subject was likely to escape before a warrant could be obtained. To this end, following a warrantless arrest, officers and agents shall document in the narrative section of the Form I-213, Record of Deportable/Inadmissible Alien, all factors considered in determining that the alien was likely to escape before a warrant could be obtained. Officers and agents should include both aggravating and mitigating factors and should include only the facts learned prior to the warrantless arrest. If an immigration officer encounters and arrests multiple collateral aliens, his or her analysis as to the likelihood of escape must be specific to <u>each</u> alien arrested. That one collateral alien is likely to escape does not necessarily mean another collateral alien is also likely to escape. Although the analysis must be conducted on an individualized basis, particular factors may be common to multiple aliens arrested at the same time.

Documentation should be completed during processing, as soon as practicable following the arrest.

**Conclusion**

Immigration officers are expected to ensure they obtain administrative warrants in advance of targeted enforcement operations. If warrantless arrests become necessary under the circumstances, immigration officers must effectuate such arrests in a manner consistent with the ICE policy and the law. Immigration officers must therefore conduct an analysis of an alien's likelihood of escape prior to effectuating a civil warrantless arrest and, as soon as practicable after the arrest, immigration officers must properly document all the likelihood of escape factors on Form I-213.

FOR OFFICIAL USE ONLY