**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOSÉ ESCOBAR MOLINA, *et al.*, *individually and on behalf of all others similarly situated*,<br><br>      *Plaintiffs*,<br><br>      v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>      *Defendants*. | Civil Action No. 25-3417 (BAH) |

<u>**PLAINTIFFS' REPLY IN SUPPORT OF
MOTION TO ENFORCE PRELIMINARY INJUNCTION**</u>

**TABLE OF CONTENTS**

TABLE OF CONTENTS..................................................................................................................ii

TABLE OF AUTHORITIES ........................................................................................................iii

INTRODUCTION ........................................................................................................................ 1

ARGUMENT................................................................................................................................ 1

I.      Defendants Are Continuing To Enforce Their Unlawful Policy. ...................................... 1

        A.      Defendants' actions and documentation show that they continue to enforce
                the policy this Court preliminarily enjoined. ........................................................ 2

        B.      Defendants' reliance on the Lyons Memo is misplaced. ....................................... 6

II.     Defendants Are Violating the Reporting Requirements of This Court's Order. ................ 8

III.    The Requested Relief Is Necessary and Appropriate. ...................................................... 11

CONCLUSION............................................................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AFL-CIO v. Dep't of Lab.*,
    349 F.R.D. 243 (D.D.C. 2025)................................................................................15

*Aguilar Gonzalez v. Mukasey*,
    534 F.3d 1204 (9th Cir. 2008) ..............................................................................5

*\*Barham v. Ramsey*,
    434 F.3d 565 (D.C. Cir. 2006) ..........................................................................3, 4

*Coal. on Homelessness v. City & Cnty. of San Francisco*,
    2024 WL 3669475 (N.D. Cal. Aug. 5, 2024) ......................................................14

*Cobell v. Norton*,
    240 F.3d 1081 (D.C. Cir. 2001)..........................................................................12

*Contreras v. United States*,
    672 F.2d 307 (2d Cir. 1982)................................................................................15

*\*Escobar Molina v. DHS*,
    __ F. Supp. 3d __, 2025 WL 3465518 (D.D.C. Dec. 2, 2025) ....................... *passim*

*Felzcerek v. I.N.S.*,
    75 F.3d 112 (2d Cir. 1996)....................................................................................5

*\*Frew ex rel. Frew v. Hawkins*,
    540 U.S. 431 (2004)........................................................................................12, 14

*\*Garcia Ramirez v. ICE*,
    2025 WL 3563183 (D.D.C. Dec. 12, 2025)..........................................................12

*Guzman-Aranda v. Sessions*,
    705 F. App'x 653 (9th Cir. 2017) .........................................................................5

*Heartland Reg'l Med. Ctr. v. Leavitt*,
    415 F.3d 24 (D.C. Cir. 2005)..........................................................................11, 12

*Hernandez v. Garland*
    52 F.4th 757 (9th Cir. 2022) ................................................................................5

*Khalil v. President*,
    164 F.4th 259 (3d Cir. 2026) ...............................................................................16

*Khalil v. President*,
    No. 25-2162 (3d Cir. Feb. 9, 2026), ECF 137 ........................................................16

*Kingdom v. Trump*,
   No. 25-cv-00691 (D.D.C. Feb. 19, 2026), ECF 124 ................................................................12

*Ligon v. City of New York*,
   925 F. Supp. 2d 478 (S.D.N.Y. 2013) ...................................................................................14

*Liser v. Smith*,
   254 F. Supp. 2d 89 (D.D.C. 2003) .......................................................................................10

*Nat'l L. Ctr. on Homelessness & Poverty v. U.S. Veterans Admin.*,
   98 F. Supp. 2d 25 (D.D.C. 2000) .........................................................................................12

*Noem v. Vasquez Perdomo*,
   146 S. Ct. 1 (2025) ...............................................................................................................13

*Risenhoover v. U.S. Dep't of State*,
   2020 WL 5416626 (D.D.C. Sept. 2, 2020) ...........................................................................16

*Risenhoover v. U.S. Dep't of State*,
   2020 WL 8773055 (D.C. Cir. Dec. 22, 2020) .......................................................................16

*Seattle Times Co. v. Rhinehart*,
   467 U.S. 20 (1984) ...............................................................................................................12

*United States v. Cantu*,
   519 F.2d 494 (7th Cir. 1975) .................................................................................................7

*United States v. Jackson*,
   415 F.3d 88 (D.C. Cir. 2005) .................................................................................................3

*United States v. Meza-Campos*,
   500 F.2d 33 (9th Cir. 1974) ...................................................................................................7

*United States v. Reyes-Oropesa*,
   596 F.2d 399 (9th Cir. 1979) ..............................................................................................7, 8

*Watkins v. Washington*,
   511 F.2d 404 (D.C. Cir. 1975) .............................................................................................12

**Statutes & Rules**

8 U.S.C. § 1357 ............................................................................................................................1

Fed. R. Civ. P. 62 ...............................................................................................................1, 11, 12

**INTRODUCTION**

Confronted with extensive evidence of ongoing violations of the Court's preliminary injunction, Defendants respond—belatedly[1]—with silence, evasion, and legal error.  In disputing Plaintiffs' arguments that Defendants are continuing to enforce the very policy this Court enjoined and are flouting court-ordered reporting requirements, Defendants rely on cherry-picked I-213s and the memorandum Defendant Todd Lyons promulgated after this Court's preliminary injunction, *see* ECF 78-1 (Third Widas Declaration), Ex. 10 ("Lyons Memo").  Neither saves them. The Lyons Memo rests on an interpretation of the escape risk requirement under 8 U.S.C. § 1357(a)(2) at odds with the statute and this Court's Order.  And Defendants' I-213 arguments fail for the same reason:  They are premised on a conception of the probable cause standard for escape risk this Court has already squarely rejected.

Defendants' arguments against Plaintiffs' requested relief fare no better.  This Court has authority under Federal Rule of Civil Procedure 62 and its inherent equitable powers to order the limited training and additional reporting Plaintiffs seek, and that relief is both reasonable and necessary to secure compliance with the Court's injunction.  Because Defendants continue to violate the Court's Order and have shown they will not correct course absent judicial intervention, the Court should grant Plaintiffs' motion to enforce and issue the requested relief.

**ARGUMENT**

I.    **Defendants Are Continuing To Enforce Their Unlawful Policy.**

Defendants continue to enforce the unlawful policy this Court preliminarily enjoined.  As described in Plaintiffs' motion, the Form I-213s, recent public statements by high-level DHS officials that agents do not use probable cause to make immigration arrests, and the Lyons Memo

---

[1] Defendants' opposition was filed nearly six hours after the deadline set by the Court.  *See* Feb. 20, 2026, Minute Order.

collectively demonstrate that Defendants' agents continue to make warrantless civil immigration arrests without a pre-arrest individualized determination of probable cause as to escape risk. This evidence shows that Defendants' agents are doing so by either failing to consider escape risk *at all* before arresting individuals without warrants, or by claiming to assess escape risk using factors that this Court has already held are inadequate to establish the requisite probable cause. ECF 78 ("Mot. to Enforce") at 5–12; *Escobar Molina v. DHS*, __ F. Supp. 3d __, 2025 WL 3465518, at *13–14 & n.20 (D.D.C. Dec. 2, 2025) (rejecting Defendants' arguments that being removable and being present in a vehicle suffice to establish probable cause for escape risk).

### A.      Defendants' actions and documentation show that they continue to enforce the policy this Court preliminarily enjoined.

Defendants fail to dispute, and so concede, certain core facts. They say nothing about most of the I-213s and class member declarations discussed in Plaintiffs' motion, including the detailed and illustrative example of Jose Argueta's arrest. Indeed, of the 26 I-213s Plaintiffs discuss in their motion, Defendants address only nine of them, and they cite only four others. In other words, Defendants ignore 17 of the I-213s on which Plaintiffs rely. Mot. to Enforce at 14–15.

Defendants do not dispute that nine of the I-213s lack any analysis of escape risk at all or that nearly every I-213 that discusses escape risk relies on one or more factors this Court and other courts have rejected as sufficient to establish probable cause—namely, the person being "[a]rrested at large, (not at their residence or place of business)," "encountered … while in vehicle," and/or not being in compliance with immigration laws. Mot. to Enforce at 5–6. Nor do Defendants provide any explanation regarding the I-213 statements that the person's ties to their community, *i.e.*, their home, family, and work, are "unknown" or "unverified." They do not provide any evidence to rebut class members' sworn accounts that they were arrested without being asked any questions about their ties to the community or personal circumstances, accounts that are consistent

2

with the declarations in support of Plaintiffs' motion for a preliminary injunction that this Court credited. *Escobar Molina*, 2025 WL 3465518, at *25 (noting that "in none of these arrests documented in their declarations did the agents ask any questions about the arrestees' personal circumstances[,] which courts have found to be relevant in the consideration of escape risk").

In addition, Defendants do not dispute that the arrest documentation "demonstrates that Defendants and their agents entirely ignored facts that would make it *unlikely* the person would escape before a warrant could be obtained." Mot. to Enforce at 8. As this Court observed, it is "self-evident" that the likelihood of escape is "lower when the individual has resided in the country for a lengthy period of time and has strong community ties." *Escobar Molina*, 2025 WL 3465518, at *13; *see also United States v. Jackson*, 415 F.3d 88, 95 (D.C. Cir. 2005) (government may not "elide" its burden "by ignoring … explanations" or facts that cut against probable cause).

Instead of addressing these points, Defendants misconceive the probable cause requirement for escape risk. As this Court held, "[w]hether a person is likely to escape before an administrative warrant can be obtained requires an individualized determination based on knowledge of facts 'particularized with respect to that person.'" *Escobar Molina*, 2025 WL 3465518, at *13 (quoting *Barham v. Ramsey*, 434 F.3d 565, 573 (D.C. Cir. 2006)). Removability, presence in a vehicle, and/or mere presence in public do not suffice to establish probable cause for escape risk. *See id.* at *13–14 & n.20.

The I-213s Defendants claim adequately analyze escape risk do not do so. Defendants observe that the I-213 narratives for C.P.C., J.P.C., and P.P.C. reflect that all three "were apprehended while they were sitting in the same vehicle, and, before making the arrest, officers were aware that the vehicle was associated with an address of individuals who were known to be in the United States unlawfully and that the vehicle was picking up individuals in an area known

3

to be a pick-up spot for day workers." ECF 82 ("Opp.") at 7–8. First, being present in a vehicle belonging to an individual allegedly "known to be in the United States unlawfully" and that was "picking up individuals in an area known as a pick-up spot for day workers," *id.*, does not establish probable cause for escape risk. Defendants make no effort to argue that they do so; and, as discussed, this Court has already held in this litigation that removability is not a basis for escape risk. Second, the I-213s demonstrate that the arresting agents failed to conduct any particularized inquiry as to the individuals' likelihood of escape. P.P.C.'s and J.P.C.'s I-213s rely on the same boilerplate factors—their immigration status and compliance with immigration laws; being "[a]rrested at large"; and their home, family ties, and employment being "unverified" or "unknown," ECF 78-34 (P.P.C. I-213) at 2; ECF 78-25 (J.P.C. I-213) at 2—and none of the three I-213s describes any attempt by the agents to discern facts relevant to their escape risk. This Court's Order requires "specific, particularized facts that supported the agent's pre-arrest probable cause." ECF 67 ("Order") at 2. "[T]he simple, dispositive fact here is that [Defendants] have proffered no facts capable of supporting the proposition that [the arresting agents] had reasonable, particularized grounds to believe every one of [passengers] arrested" was likely to escape before a warrant could be obtained. *Barham*, 434 F.3d at 574.

Rather than "contain[ing] an adequate escape risk analysis," Opp. at 8–9, the nine I-213s on which Defendants rely exemplify the *inadequacy* of that analysis. One report immediately undercuts its own escape risk analysis: The narrative section of A.V.J.'s I-213 states that record checks "revealed a criminal history in the United States," but later the I-213 states that he "has no [c]riminal history." ECF 82-2 at 3–4. Two other I-213s Defendants cite recount facts pertaining to the individuals' immigration status, facts that are plainly irrelevant to escape risk. Opp. at 9 (citing ECF 82-3 (J.P.C. I-213) at 3; ECF 82-4 (C.P.C. I-213) at 3); *Escobar Molina*, 2025 WL

4

3465518, at *13–14 & n.20.  Of the three I-213s Defendants cite alleging that the person attempted to flee, only one contains any description of the purported flight attempt at all.  ECF 82-5 (J.L.H. I-213) at 3.  The other two make no mention of an attempt to flee in the narrative description of the arrest, and for one of them, the individual submitted sworn testimony confirming that he made no such attempt, *see* ECF 78-4 (Declaration of Espinoza Forsith) ¶ 5.  That leaves Defendants with a total of four I-213s out of 33 with even arguable probable cause for escape risk.  Even if this Court were to credit those I-213s, a small minority of potentially lawful arrests out of all the warrantless civil immigration arrests does not demonstrate substantial compliance with this Court's Order, particularly in the face of the extensive countervailing evidence.

Rather than submit any evidence to contradict class members' declarations, Defendants insist that the unsworn I-213s are more reliable.  Opp. at 9–10.  This argument fails.  A "sworn declaration" rebutting or contradicting statements in an I-213, like the declarations submitted by class members here, "cast[s] doubt on the accuracy of the I-213."  *Guzman-Aranda v. Sessions*, 705 F. App'x 653, 653 (9th Cir. 2017); *see also Felzcerek v. I.N.S.*, 75 F.3d 112, 117 (2d Cir. 1996) (evidence that "contradict[s] or impeach[es] the statements in [an I-213]" may undermine its reliability); *cf. Aguilar Gonzalez v. Mukasey*, 534 F.3d 1204, 1207 (9th Cir. 2008) (quoting immigration judge decision explaining that "[w]hen information on authenticated immigration forms have incorrect or contradictory information, the Court cannot rely on them").  Moreover, in the case Defendants cite for the presumptive reliability of I-213s, *Hernandez v. Garland*, the plaintiff had not "offered any suggestion that the information in the Form I-213 is incorrect," 52 F.4th 757, 767 (9th Cir. 2022), whereas the declarations submitted here are sworn accounts from the individuals who were arrested that do exactly that.  Moreover, Defendants offer no explanation as to why all but one of the I-213s that list attempted flight as an escape risk factor contain no

description of the purported attempted flight.

Plaintiffs' submitted evidence, including I-213s and class member declarations, accordingly demonstrate that Defendants continue to enforce their unlawful policy.

**B.      Defendants' reliance on the Lyons Memo is misplaced.**

The Lyons Memo does not save Defendants.  First, regardless of the Memo, Defendants' actions and documentation prove that they are not complying with the Court's Order.  Second, the Memo is inconsistent with this Court's Order and accompanying Memorandum Opinion, as well as the applicable legal standard.  As a result, and as explained in Plaintiffs' motion, the Lyons Memo in fact bolsters what the I-213s, class member declarations, and public statements by DHS officials demonstrate:  Defendants are defying the Court's Order by continuing to enforce their unlawful policy and practice.

As an initial matter, Defendants make much of the fact that the Lyons Memo states that probable cause for likelihood of escape exists if the agent determines that the person "is unlikely to be located at the scene of the encounter or another clearly identifiable location once an administrative warrant is obtained."  Lyons Memo at 55.  However, Defendants fail to address the internal inconsistency in the memorandum that elsewhere instructs agents to "closely consider whether the [person] is likely to remain at the scene of the encounter," without regard to whether the person is likely to be found at another clearly identifiable location.  *Id.* at 56.

Next, Defendants assert that the Lyons Memo "establishes that they are complying with the Court's order" because it cites appellate authority for "most of [the] possible escape risk factor[s] listed."  Opp. at 6.  But those factors plainly apply to virtually anyone detained during a traffic stop or on the street—a point Defendants do not dispute.  The cases Defendants cite to justify their list of factors do not aid them, because in each case, the probable cause finding was supported by a confluence of many more specific facts; Defendants have merely cherry-picked the

6

most generic factors while ignoring the rest of the facts and analysis in these cases.  For instance, none of the I-213s relevant to Plaintiffs' motion to enforce involves an individual who "appeared … to be one whom the officer has previously observed in the custody of the Immigration Service," and whom the agent testified "was extremely nervous, was looking around to the left and right past [him], and … was looking for an opportunity to run," as in *United States v. Meza-Campos*, 500 F.2d 33, 34 (9th Cir. 1974) (per curiam).  Nor does *Meza-Campos* provide a guide to the Lyons Memo's broadly worded catchall of any "suspicious behavior" pre-arrest.  Lyons Memo at 55.

Likewise, *United States v. Cantu*, 519 F.2d 494 (7th Cir. 1975), bears virtually no resemblance to the factor in the Lyons Memo that "the subject was encountered in a vehicle and continues to have control over the vehicle."  Lyons Memo at 55.  In *Cantu*, "the likelihood of escape was a serious threat" in the context of an informant's tip that three people were driving undocumented individuals from the Texas-Mexico border to Illinois.  519 F.2d at 497.  From the time the agent received an informant's tip to the time of the arrests, the individuals arrested "were highly mobile" on a cross-country trip:  "Throughout the entire two-day period they were in a moving car," "[t]hey travelled a heavily-trafficked interstate highway system at high speeds and for a great distance," and "[f]rom one moment until the next their location was uncertain and their destination not entirely predictable." *Id.* at 497–98.  The facts in *Cantu* are also nothing like those in the I-213s Defendants produced, where the individuals who were arrested were in stopped, presumably parked, vehicles.  Indeed, at least one of the I-213s describes the encounter as "consensual."  ECF 78-27 (J.D.J.M. I-213) at 2.  There is no evidence that the individuals arrested attempted to drive away, and there certainly is no evidence that they were part of a cross-country smuggling odyssey.

And *United States v. Reyes-Oropesa*, 596 F.2d 399 (9th Cir. 1979), which Defendants cite

7

for the factor pertaining to possession of suspected fraudulent identity or work authorization documents, contains hardly any analysis and relies on the arresting agent's observation that the individual matched the description provided by an informant and was carrying a forged immigration document. *See id.* at 400. Again, there is no evidence of class members providing fraudulent identification or work authorization documents in any of the arrests at issue. Nor does this minimally reasoned (and out-of-circuit) decision involving confirmation of an informant's tip provide guidance as to escape risk in all cases involving documents "that the immigration officer *suspects* are fraudulent," as the Lyons Memo articulates. Lyons Memo at 55 (emphasis added).

Defendants' only response to the other piece of evidence on which Plaintiffs rely—high-ranking DHS officials' public statements regarding the applicable legal standard for immigration arrests made after this Court's Order—is that "to the extent that there are inconsistencies between the Lyons Memo and statements by Department spokespeople, agents are required to follow the Lyons Memo." Opp. at 11 (citing ECF 63-1 (Declaration of Joseph Simon) ¶ 5). That assertion provides little comfort: Because the Memo itself contravenes this Court's Order, the fact that agents are instructed to follow the Lyons Memo only bolsters Plaintiffs' argument that Defendants are not complying with the Order. Moreover, this Court noted the need for requirements to ensure compliance in light of similar statements and the confusion they cause before the preliminary injunction, and Defendants have continued to make such statements. *See Escobar Molina*, 2025 WL 3465518 at *37.

## II.      Defendants Are Violating the Reporting Requirements of This Court's Order.

Defendants are violating the reporting requirements set forth in this Court's Order by failing to include in the arrest documentation the "specific, particularized facts that supported the agent's pre-arrest probable cause" that are not "boilerplate," as well as the time the arrest was made. Order at 2–3.

8

Nearly every I-213 that discusses escape risk at all relies on an almost identical set of factors. These include that the person was "arrested at large" (in public), encountered while in a vehicle, "entered the United States after evading inspection," and/or that their home address, family ties, and employment were "unknown" or "unverified." But they contain no specific, particularized facts or explanation to demonstrate why any of these factors, even if present, purportedly led the arresting agent to believe that the person was likely to escape before a warrant could be obtained. Again, most of these factors (all but immigration status) would sweep in essentially any person encountered in public about whom DHS did not have prior information—gutting the escape risk prong of the statute and rendering it contrary to the statute's plain meaning. And, as this Court has explained, immigration status is relevant to the removability prong rather than escape risk. *Escobar Molina*, 2025 WL 3465518 at \*14. Permitting Defendants to double-count it would rob the escape risk prong of independent meaning.

Defendants rely on the truism that "the fact that some of the narratives are similar does not render the narratives non-compliant with the Court's order," Opp. at 7, but that does not address the deficiencies Plaintiffs identify. As explained above with respect to the I-213 narratives for C.P.C., J.P.C., and P.P.C., it is not the mere fact that "some of the narratives are similar," but that their similarity—and in some cases, identicality—demonstrates that the arresting agents failed to make any particularized probable cause assessment of escape risk.

The other examples on which Defendants rely to contend that they are complying with the Order's reporting requirements are even less persuasive. With respect to L.R.P. and C.H.R.T., Defendants point to trivial and irrelevant differences between the I-213s, Opp. at 8, while conceding the relevant fact that neither I-213 narrative contains an "individualized escape risk analysis," Mot. to Enforce at 13. Defendants' doubling down on the false accusation in Adolfo

9

Doe's I-213 that he purportedly "threatened to kill an immigration officer" is unsupported by the evidence. Opp. at 8. Adolfo's declaration makes clear that he did no such thing, ECF 78-2 (Declaration of Adolfo Doe) ¶ 8, and Defendants have presented no sworn testimony to the contrary. Although "an objectively reasonable mistake of fact can legally support a determination of probable cause, a mistake that is the product of the government's willful ignorance, investigative negligence, or is otherwise unreasonable, cannot." *Liser v. Smith*, 254 F. Supp. 2d 89, 97 (D.D.C. 2003). The alleged mistake here is not objectively reasonable: Defendants have not provided any evidence that the non-Spanish-speaking agent who misinterpreted Adolofo's innocuous statement made any attempt to clarify what he meant or what the Spanish-speaking agent heard. Instead, the evidence shows that to the extent this was a mistake, it is a product of Defendants' and their agents' willful ignorance and investigative negligence.

In making promises of future improvement, Defendants implicitly concede that they are not complying with the Order's reporting requirements, Opp. at 10–11, and in any event, those promises ring hollow. Erik Weiss' declaration states that "[o]n January 28, 2026, ICE ERO implemented a plan moving forward for an Assistant Field Office Director to make a weekly pull of the warrantless arrests in the Washington D.C. [area of responsibility]," which would purportedly "allow[] the review for completeness with the requirements set forth in the Court Order in each I-213 narrative, and if necessary, … make[] available contemporaneous counseling with an officer who submitted a less than a complete I-213 narrative." ECF 82-10 (Declaration of Erik Weiss ("Weiss Decl.")) ¶ 4. Neither his declaration nor Kenneth Blanchard's declaration explains what is meant by "completeness," what type of "counseling" the agent who prepared the I-213 will receive, whether the agent who made the arrest but did not prepare the I-213—as is the case for most of the I-213s—will receive any "counseling," and how, if at all, Defendants will

10

ensure that any subsequent amendments made to the I-213 are accurate rather than post-hoc fabrications.  Importantly, missing from Defendants' promises of future improvement are any details or information as to how Defendants intend to ensure that the I-213s moving forward contain "specific, particularized facts that supported the agent's pre-arrest probable cause to believe that the person is likely to escape." Order at 2.  Given Defendants' clear disagreement with the core deficiencies and violations Plaintiffs have evidenced, it is highly unlikely that their promised future improvements will bring Defendants into compliance.[2]

## III.    The Requested Relief Is Necessary and Appropriate.

The relief Plaintiffs request—an order requiring Defendants to prepare training materials consistent with this Court's orders and decisions and use them to conduct trainings as well as further reporting requirements—is consistent with this Court's broad equitable authority to enforce its orders and with Federal Rule of Civil Procedure 62(d).  Mot. to Enforce at 16–17 (collecting cases).  Defendants fail to address either of these sources of authority in their unavailing arguments against Plaintiffs' reasonable, tailored requested relief.

*First*, Defendants contend that Plaintiffs' requested relief is "unavailable because it would exceed the 'the relief to which [the plaintiff] is entitled under [its] original action and the judgment entered therein.'" Opp. at 11 (quoting *Heartland Reg'l Med. Ctr. v. Leavitt*, 415 F.3d 24, 29 (D.C. Cir. 2005)).  The plaintiffs in *Heartland Regional Medical Center* and other cases that state this principle, however, sought *substantive* remedies where the judgments granted only *procedural*

---

[2] Defendants' counsel represented that there were no warrantless arrests in the District between January 28, 2026, and March 2, 2026, and that, accordingly, Defendants will not be providing any further arrest documentation today pursuant to ¶ 3 of the Order.  *See also* Opp. at 14; Weiss Decl. ¶ 5 (claiming no warrantless arrests occurred in the District due to "significant snowfall"). Plaintiffs reserve the right to inquire into whether there were immigration arrests in the District during this period, and the facts underlying any such arrests, to ensure Defendants have not undertaken to insulate arrests from Plaintiffs or the Court's Order.

remedies. 415 F.3d at 29 (in Medicaid case, rejecting plaintiff hospital's request for a substantive status change and compensatory reimbursement when judgment required only that agency reconsider on remand its approach to designations); *Watkins v. Washington*, 511 F.2d 404, 406 (D.C. Cir. 1975) (in employment discrimination case, rejecting plaintiff's request for retroactive promotion and back pay when judgment did not require such relief and he received all the relief to which he was entitled). Here, unlike in these cases, Plaintiffs' requested relief comes squarely within the scope of their "original action and the judgment entered therein." *Heartland Reg'l Med. Ctr.*, 415 F.3d at 29.

Importantly, Defendants ignore the "well established" principle that "a court's powers to enforce its own injunction by issuing additional orders is broad." *Garcia Ramirez v. ICE*, 2025 WL 3563183, at *17 (D.D.C. Dec. 12, 2025) (quoting *Nat'l L. Ctr. on Homelessness & Poverty v. U.S. Veterans Admin.*, 98 F. Supp. 2d 25, 26–27 (D.D.C. 2000)); *see also Cobell v. Norton*, 240 F.3d 1081, 1108 (D.C. Cir. 2001) ("[T]he district court has substantial ability to order that relief which is necessary to cure the appellants' legal transgressions[.]"); Order at 2, *Kingdom v. Trump*, No. 25-cv-00691 (D.D.C. Feb. 19, 2026), ECF 124 ("This Court also has the inherent power to issue further enforcement orders to effectuate the purpose of an injunction or other prior orders." (citing, *inter alia*, *Frew ex rel. Frew v. Hawkins,* 540 U.S. 431, 440 (2004); *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35 (1984))). In addition, Rule 62(d) permits this Court to "modify … an injunction" while an appeal of the injunction is pending, and Defendants do not contend that Plaintiffs' requested relief falls outside the scope of this Court's modification power under that rule. *See generally* Opp. at 11–16.

*Second*, Defendants argue that "the requested relief is overbroad and unreasonable." *Id.* at 11. Defendants start with a self-contradicting assertion: they state that they "already provide

12

periodic … refresher trainings" and are "already instructing immigration officers on the requirements to establish probable cause and escape risk," *id.*, yet contend that modifying the training and instruction to conform with the proper legal standard and this Court's Order would be unreasonable and unduly burdensome. Defendants speculate that Plaintiffs may "object to the Department's proposed training materials on the grounds that the materials do not convey the factors necessary to establish probable cause and escape risk in the precise manner that Plaintiffs may prefer," and "such disputes could keep immigration enforcement agencies entangled in constant litigation." Opp. at 12–13. Defendants do not explain how "constant litigation" follows from Plaintiffs' proposed order setting forth a procedure that permits the parties to brief objections to Defendants' proposed training materials *once*, and includes a timeline to meet and confer that "will promote efficient administration and enforcement of the injunction and will be included in the order of the Court." *Escobar Molina*, 2025 WL 3465518, at *37 n.53; ECF 78-36 ("Proposed Order") at 3. Defendants further fail to connect a single review process over training to "disrupt[ion of] operations" or anything to do with "recruitment" or "the ardor of current agents." Opp. at 13. Training, and updates and revisions thereto, are an ordinary part of immigration enforcement, as Defendants' own submissions set forth. Moreover, oversight of Defendants' training would not be necessary had Defendants implemented this Court's Order to begin with.

Defendants' argument that the proposed training requirements violate the separation of powers and encroach upon the Executive Branch's authority similarly fails. The only authority Defendants invoke in support of their position is a single Justice's non-binding concurrence in *Noem v. Vasquez Perdomo*, 146 S. Ct. 1 (2025); "[t]he [Supreme] Court majority merely issued a one-paragraph order granting a stay without any explanation for its holding," and "[b]luntly put, why the Court ruled as it did remains unclear—and without reasoning, this order cannot even be

considered as persuasive." *Escobar Molina*, 2025 WL 3465518, at *17.

In any event, the proposed training requirements do not violate separation of powers. If a court can order a change to agency operations to comply with the law, it stands to reason that it has the lesser power to order training to implement that change where the agency reveals it cannot or will not do so; after all, "federal courts are not reduced to issuing injunctions … and hoping for compliance." *Frew*, 540 U.S. at 440 (internal quotation marks omitted). Nor is ordering training an unusual remedy. On a motion to enforce a preliminary injunction, one court ordered "additional training" of government employees "to ensure [d]efendants follow the preliminary injunction," requiring the parties to "meet and confer on a joint proposal regarding the appropriate contents of future training[,] … attendance, and frequency of such training" and "on how to document [such] training … going forward, including the periodic submission of sworn declaration(s) describing training … to the court." *Coal. on Homelessness v. City & Cnty. of San Francisco*, 2024 WL 3669475, at *7 (N.D. Cal. Aug. 5, 2024); *see also Ligon v. City of New York*, 925 F. Supp. 2d 478, 544–45 (S.D.N.Y. 2013) (on preliminary injunction, requiring revision of training materials and programs and requiring certain groups of officers to attend training).

Plaintiffs' proposed additional reporting requirements are also reasonable and warranted. Defendants contend that Plaintiffs' proposal that arrest "documentation contain specific details and facts regarding what inquiry or investigation was conducted—including the specific questions asked, if any—regarding a person's family, home, employment, or any other aspects of their ties to the community prior to arresting that person, and the results of the inquiry or investigation," Proposed Order at 4–5, "is redundant and therefore unnecessary" due to the documentation requirements set forth in the Lyons Memo, Opp. at 13. But the Lyons Memo does not require Defendants to include "the specific questions asked, if any" regarding a person's ties to the

14

community.  Indeed, the Lyons Memo does not mention including specific questions in post-arrest documentation or anything about ties to the community at all.  Defendants contend that immigration agents "must make 'an on-the-spot determination as to the likelihood of escape without any opportunity to verify information provided or to conduct a full-scale interview'" and asking questions about a person's community ties "would not work in practice," *id.* (quoting *Contreras v. United States*, 672 F.2d 307, 308 (2d Cir. 1982)), but this position contradicts ICE's own Broadcast Statement of Policy, which specifically identifies "ties to the community (such as a family, home, or employment) or lack thereof" as relevant to escape risk, among other factors.  ECF 17-1 (First Widas Declaration), Ex. 1 at 8–9 (emphasis omitted).  Defendants surmise that an individual "can run from immigration officers at any moment," Opp. at 14, but that is true in nearly any encounter.

In addition, this Court has already rejected Defendants' reasons for resisting the requested body-worn camera footage.  Defendants object, as they did to the reporting requirements issued in this Court's Order, that "ordering Defendants to produce body worn camera footage would subject the Government to ongoing and rolling discovery obligations," where Plaintiffs' claims are under the Administrative Procedure Act ("APA").  Opp. at 14.  As this Court has already held, however, "[t]hese concerns do not outweigh the benefits of the proposed reporting requirements" because "this reporting is not aimed at assisting plaintiffs in proving their underlying APA case, but rather at ensuring compliance with the court-ordered preliminary injunction," and even if such body-worn camera footage could be used in in later stages of the case, "courts may allow discovery in APA cases when '[t]he agency action challenged … is unlike the actions normally challenged in APA cases, such as a promulgated regulation.'"  *Escobar Molina*, 2025 WL 3465518, at *37 (quoting *AFL-CIO v. Dep't of Lab.*, 349 F.R.D. 243, 248 (D.D.C. 2025)).  Furthermore,

15

Defendants' unspecific promises of future improvement, as discussed above, are insufficient to ensure Defendants will comply not only with the Order's reporting requirements but also the substance of the preliminary injunction.

*Third*, Defendants renew jurisdictional arguments grounded in the INA that this Court has already rejected. The idea that class members "can challenge their arrests before the immigration court in removal proceedings and through a petition for review if they receive a final removal order," Opp. at 15, is not the same as being able "to challenge the arrest itself as an unlawful seizure under the INA and the U.S. Constitution." *Escobar Molina*, 2025 WL 3465518, at \*20. The split decision in *Khalil v. President*, 164 F.4th 259 (3d Cir. 2026), not binding on this Court, does not provide any basis for this Court to reconsider its earlier ruling.[3]  Unlike in *Khalil*, which concerned a direct individual challenge to both removal and detention pending removal, 164 F.4th at 273, Plaintiffs challenge neither removal proceedings nor detention. Instead, Plaintiffs challenge Defendants' policy and practice of making warrantless civil immigration arrests without the required probable cause—and one of the Plaintiffs, Escobar Molina, is not in removal proceedings at all. Nothing in the out-of-circuit and inapposite *Khalil* decision provides any reason for this Court to reconsider its earlier rejection of Defendants' jurisdictional arguments.

More fundamentally, reconsideration based on an out-of-circuit decision is unwarranted because, as this Court has explained, Defendants' jurisdictional-bar arguments are foreclosed by binding precedent. *Escobar Molina*, 2025 WL 3465518 at \*19; *see Risenhoover v. U.S. Dep't of State*, 2020 WL 5416626, at \*1 (D.D.C. Sept. 2, 2020) ("The law is well-settled that motions for reconsideration are discretionary and need not be granted unless the district court finds that there

---

[3] The plaintiff-appellee in *Khalil* has represented that he will file a petition for rehearing *en banc*, which is due on March 31, 2026. *See* Order, *Khalil v. President*, No. 25-2162 (3d Cir. Feb. 9, 2026), ECF 137.

is an intervening change of *controlling* law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." (emphasis added) (cleaned up)), *aff'd*, 2020 WL 8773055 (D.C. Cir. Dec. 22, 2020).

## CONCLUSION

For the foregoing reasons and those in Plaintiffs' opening motion, the Court should grant Plaintiffs' motion to enforce.

March 4, 2026

Respectfully submitted,

*s/ Adina Appelbaum*
Adina Appelbaum (D.C. Bar No. 1026331)
Ian Austin Rose (Md. Bar No. 2112140043)
Samantha Hsieh (Va. Bar No. 90800)[*]
**AMICA CENTER FOR IMMIGRANT RIGHTS**
1025 Connecticut Avenue NW, Suite 701
Washington, D.C. 20036
(202) 331-3320
adina@amicacenter.org
austin.rose@amicacenter.org
sam@amicacenter.org

*s/ Aditi Shah*
Aditi Shah (D.C. Bar No. 90033136)
Scott Michelman (D.C. Bar No. 1006945)
**AMERICAN CIVIL LIBERTIES UNION**
**FOUNDATION OF THE DISTRICT OF COLUMBIA**
529 14th Street NW, Suite 722
Washington, D.C. 20045
(202) 457-0800
ashah@acludc.org
smichelman@acludc.org

Kathryn Huddleston (Tex. Bar No. 24121679)[**++]
**AMERICAN CIVIL LIBERTIES UNION**
**FOUNDATION**
915 15th Street NW, 7th Floor
Washington, D.C. 20005
(212) 549-2500
khuddleston@aclu.org

*s/ Sirine Shebaya*
Sirine Shebaya (D.C. Bar No. 1019748)
Yulie Landan (Cal. Bar No. 348958)[*+]
Bridget Pranzatelli (D.C. Bar No. 90029726)
**NATIONAL IMMIGRATION PROJECT**
1763 Columbia Road NW, Suite 175
Washington, D.C. 20009
(213) 430-5521
sirine@niplg.org
yulie@nipnlg.org
bridget@nipnlg.org

*s/ Jehan A. Patterson*
Jehan A. Patterson (D.C. Bar No. 1012119)
Chris Kimmel (D.C. Bar No. 1047680)
Alexandra Widas (D.C. Bar No. 1645372)
Hassan Ahmad (D.C. Bar No. 1030682)
Sean Berman (D.C. Bar No. 90026899)
Austin Riddick (D.C. Bar No. 90018117)
Alexis Gorfine (D.C. Bar No. 90039553)[***]
Marcus Ransom (D.C. Bar No. 90039599)[***]
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, D.C. 20001
(202) 662-6000
jpatterson@cov.com
ckimmel@cov.com
awidas@cov.com
hahmad@cov.com
sberman@cov.com
ariddick@cov.com
agorfine@cov.com
mransom@cov.com

Eva H. Lilienfeld (N.Y. Bar No. 6143085)[*]
Graham Glusman (N.Y. Bar No. 6099535)[*]
**COVINGTON & BURLING LLP**
30 Hudson Yards
New York, NY 10001
(212) 841-1000
elilienfeld@cov.com
gglusman@cov.com

*s/ Madeleine Gates*
Madeleine Gates (D.C. Bar No. 90024645)
**WASHINGTON LAWYERS' COMMITTEE FOR**
**CIVIL RIGHTS AND URBAN AFFAIRS**
700 14th Street NW, #400
Washington, D.C. 20005
(202) 319-1000
madeleine_gates@washlaw.org

*s/ Ama Frimpong*
Ama Frimpong (D.C. Bar No. 1602444)[*]

18

Shana Khader (D.C. Bar No. 90011926)
**CASA, INC.**
8151 15th Avenue
Hyattsville, MD 20783
(240) 485-8844
afrimpong@wearecasa.org
skhader@wearecasa.org
*Attorneys for Plaintiffs*

[*]*Admitted* pro hac vice.
[**]*Motion for Admission* pro hac vice
*forthcoming.*
[***]*Petition for Admission forthcoming.*

[+]*Not Admitted in D.C.; working remotely
from N.Y. and admitted in Cal. only*
[++]*Not Admitted in D.C.; working remotely
under supervision of D.C. Bar member,
practice limited to federal courts in D.C.,
and admitted in Ariz. and Tex. only.*

19