**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JOSÉ ESCOBAR MOLINA, *et al.*, *individually and on behalf of all others similarly situated*,

        *Plaintiffs*,

        v.

U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,

        *Defendants*.

Civil Action No. 25-3417 (BAH)

**<u>PLAINTIFFS' MOTION FOR EXTRA-RECORD DISCOVERY</u>**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ........................................................................................................................... 1

ARGUMENT ................................................................................................................................. 3

I.      The Administrative Record Stifles Effective Judicial Review ........................................... 5

II.     The Court Should Order Extra-Record Discovery To Determine the Contours of the Precise Policy at Issue ...................................................................................................... 7

III.    Plaintiffs' Requested Discovery Is Necessary and Appropriate ...................................... 12

CONCLUSION ............................................................................................................................ 13

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AFL-CIO v. Dep't of Lab.*,
   349 F.R.D. 243 (D.D.C. 2025)................................................................................4, 11

*Air Transp. Ass'n of Am., Inc. v. Nat'l Mediation Bd.*,
   663 F.3d 476 (D.C. Cir. 2011)......................................................................................4

*All. for Retired Ams. v. Bessent*,
   2025 WL 1114350 (D.D.C. Mar. 20, 2025)...............................................................4

*Brune v. I.R.S.*,
   861 F.2d 1284 (D.C. Cir. 1988)..................................................................................13

*CASA, Inc. v. Noem*,
   2025 WL 3514378 (D. Md. Dec. 8, 2025)..................................................................5

*Cmty. Fed. Sav. & Loan Ass'n v. Fed. Home Loan Bank Bd.*,
   96 F.R.D. 619 (D.D.C. 1983).....................................................................................12

*Cmty. for Creative Non-Violence v. Lujan*,
   908 F.2d 992 (D.C. Cir. 1990)......................................................................................4

*Dep't of Com. v. New York*,
   588 U.S. 752 (2019)..................................................................................................3, 6

*\*Escobar Molina v. DHS*,
   2025 WL 3465518 (D.D.C. Dec. 2, 2025)...................................................... *passim*

*Hill Dermaceuticals v. FDA*,
   709 F.3d 44 (D.C. Cir. 2013).......................................................................................3

*\*Hisp. Affs. Project v. Acosta*,
   901 F.3d 378 (D.C. Cir. 2018)..................................................................................5, 7

*Manker v. Spencer*,
   2019 WL 5846828 (D. Conn. Nov. 7, 2019) ..............................................................5

*N.S. v. Dixon*,
   141 F.4th 279 (D.C. Cir. 2025)..................................................................................10

*New York v. McMahon*,
   25-cv-10601 (D. Mass. Feb. 11, 2026), ECF 202.............................................6, 8, 12

*New York v. U.S. Dep't of Com.*,
   339 F. Supp. 3d 144 (S.D.N.Y. 2018) ..................................................................................12

*Saratoga Dev. Corp. v. United States*,
   21 F.3d 445 (D.C. Cir. 1994) ................................................................................................4

*In re Subpoena Duces Tecum Served on Off. of Comptroller of Currency*,
   156 F.3d 1279 (D.C. Cir. 1998) ............................................................................................6

*United Farm Workers v. Noem*,
   2025 WL 1490131 (E.D. Cal. May 23, 2025) .......................................................................5

*\*Univ. of Cal. Student Ass'n v. McMahon*,
   2025 WL 1906548 (D.D.C. Mar. 18, 2025).............................................................4, 5, 7, 12

*\*Univ. of Colo. Health at Mem'l Hosp. v. Burwell*,
   151 F. Supp. 3d 1 (D.D.C. 2015) ....................................................................................3, 5, 7

**Statutes, Regulations & Rules**

5 U.S.C. § 706 .................................................................................................................................1

8 U.S.C. § 1357 .................................................................................................................1, 7, 9, 11

8 C.F.R. § 287.5 .............................................................................................................................10

8 C.F.R. § 287.8 ...............................................................................................................................1

Local Civil Rule 7(m) ......................................................................................................................3

iv

**INTRODUCTION**

After arresting numerous class members pursuant to an ongoing unlawful policy, Defendants produced an eleven-page administrative record ("AR") that does not demonstrate the policy and practice at issue, let alone explain its adoption, as the Administrative Procedure Act ("APA") requires.  Defendants' sparse AR does not merely leave the "contours of the precise policy" so uncertain as to frustrate meaningful judicial review.  *See Escobar Molina v. DHS*, 2025 WL 3465518, at *37 (D.D.C. Dec. 2, 2025) (quoting *Hisp. Affs. Project v. Acosta*, 901 F.3d 378, 388 (D.C. Cir. 2018)).  It contains essentially *nothing* that would aid this Court's review: one of the pages is a blank notes page, and the rest are arrest records and "intel" workups on just a subset of the individual Plaintiffs in this case.

As this Court and others in this District have recognized, discovery in a case like this— where the agency denies that the alleged policy even exists—is "especially" warranted.  *Id.* Plaintiffs are entitled to evidence relevant to their claims that Defendants are carrying out an unlawful policy and practice of making warrantless civil immigration arrests without probable cause in violation of the Immigration and Nationality Act ("INA") and its implementing regulations.  Extra-record discovery is necessary to allow Plaintiffs to fill the evidentiary chasm left by Defendants' AR and enable the Court's review of Defendants' unlawful policy and practice. The Court should grant Plaintiffs discovery and require Defendants to respond to Plaintiffs' discovery requests and sit for a limited number of depositions.

**BACKGROUND**

Plaintiffs filed suit on September 25, 2025, raising two claims for relief under 8 U.S.C. § 1357(a)(2), 8 C.F.R. § 287.8(c)(2), the *Accardi* doctrine, and the APA, 5 U.S.C. § 706, alleging that Defendants have a policy and practice of carrying out warrantless immigration arrests without an individualized determination of *both* an immigration law violation and escape risk in the District

1

of Columbia.  ECF 1.  Plaintiffs seek class certification, declaratory and injunctive relief, expungement, and fees.  On December 2, 2025, the Court preliminarily enjoined Defendants' policy and practice of making warrantless arrests without an individualized determination of probable cause as to escape risk and provisionally certified an Unassessed Escape Risk Class. *Escobar Molina*, 2025 WL 3465518, at *38–40.  The Court credited numerous declarations of arrested individuals and statements by high-ranking officials in the Defendant agencies to hold that, in making warrantless immigration arrests, Defendants have "systemic[ally] fail[ed] to apply the probable cause standard" required by immigration law.  *Id.* at *26–27.

As part of its order, the Court directed Defendants to document and produce to Plaintiffs detailed, arrest-specific narratives on an ongoing basis.  *Id.* at *39.  In so doing, the Court recognized that, even if these productions amounted to discovery, such document productions would be permissible because this case challenges a broad course of agency action that is "unlike the actions normally challenged in APA cases."  *See id.* at *37 (quotations omitted).  As detailed in Plaintiffs' pending Motion to Enforce, Defendants' productions confirm that they continue to apply their unlawful policy, which now violates not only the INA and its regulations, but also this Court's injunction.  *See* ECF 78 at 5–10.

On February 19, 2026, Defendants produced eleven pages that they contend constitute the AR.  For a policy and practice effectuating the Administration's signature priority, the AR is remarkably bare and non-responsive to Plaintiffs' allegations.  Defendant U.S. Immigration and Customs Enforcement ("ICE") produced three Form I-213s: two for the post-August 11, 2025, arrests of Plaintiffs N.S. and R.S.M., and one for the January 2025 arrest of Plaintiff B.S.R. (which predates the policy alleged here).  Defendant U.S. Customs and Border Protection ("CBP") produced "Intel Target" documents for Plaintiffs José Escobar Molina and B.S.R. that were last

2

updated on August 21, 2025, and February 6, 2025, respectively, and a blank "Notes" page.  The remaining Defendants produced no documents.  Defendants' certifications make clear that the AR consists only of information purportedly "considered" in making these individual arrests.  *See* ECF 76 (ICE certification) at 2; ECF 77 (CBP certification) at 2.

On March 2, 2026, counsel for the parties conferred to discuss the AR and Plaintiffs' requests for discovery, pursuant to Local Civil Rule 7(m).  Counsel for Defendants confirmed that—except for the missing Form I-213s for Mr. Escobar Molina's and B.S.R.'s August 2025 arrests, which Defendants' counsel said will be produced to Plaintiffs to the extent they exist—the AR is final and complete.  Defendants further confirmed the AR only includes individual arrest records because, in their view, no warrantless immigration arrest policy exists and the only agency action in this case is Plaintiffs' individual arrests.  Plaintiffs expressed that they would move for discovery, as contemplated by the Court's scheduling order, Minute Order (Jan. 26, 2026).  Defendants have indicated that they oppose Plaintiffs' motion.

## ARGUMENT

In APA cases, "an agency must 'disclose the basis' of its action" to enable "meaningful judicial review." *Dep't of Com. v. New York*, 588 U.S. 752, 780 (2019) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 167–69 (1962)).  To do so, "[a]gencies bear the responsibility of compiling the administrative record, which must include all of the information that the agency considered either directly or indirectly." *Univ. of Colo. Health at Mem'l Hosp. v. Burwell*, 151 F. Supp. 3d 1, 12 (D.D.C. 2015) (quotations omitted).  A court is typically "limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record." *Dep't of Com.*, 588 U.S. at 780.  This "record rule" in APA cases ensures "a reviewing court . . . ha[s] before it neither more nor less information than did the agency when it made its decision." *Hill Dermaceuticals v. FDA*, 709 F.3d 44, 47 (D.C. Cir. 2013) (quoting *Walter O.*

3

*Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984)).

Where, as here, the agency fails to compile an administrative record consisting of all the documents considered by the agency, discovery is necessary to enable "effective judicial review" of the challenged agency action. *Saratoga Dev. Corp. v. United States*, 21 F.3d 445, 458 (D.C. Cir. 1994); *see also Cmty. for Creative Non-Violence v. Lujan*, 908 F.2d 992, 998 (D.C. Cir. 1990) (permitting extra-record discovery where "the record is so bare as to frustrate effective judicial review"); *Air Transp. Ass'n of Am., Inc. v. Nat'l Mediation Bd.*, 663 F.3d 476, 487–88 (D.C. Cir. 2011) (same, upon showing of "an incomplete record").

As this Court has recognized, discovery is "especially" appropriate where a thin record renders the plaintiffs and the court unable to "ascertain the contours of the precise policy at issue." *Escobar Molina*, 2025 WL 3465518, at *37 (citing *Hisp. Affs. Project*, 901 F.3d at 388).  In such cases, discovery "is not so much 'fact-finding' as it is 'filling in gaps . . . to determine what the agency actually did.'"  *AFL-CIO v. Dep't of Lab.*, 349 F.R.D. 243, 249 (D.D.C. 2025) (quoting *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1227 (D.C. Cir. 1993)); *see also Univ. of Cal. Student Ass'n v. McMahon*, 2025 WL 1906548, at *2 (D.D.C. Mar. 18, 2025) (finding discovery appropriate where AR "does not reveal whether the agency's challenged policy exists" (cleaned up)); *All. for Retired Ams. v. Bessent*, 2025 WL 1114350, at *3 (D.D.C. Mar. 20, 2025) (same, where "only the Defendants know the 'contours' of [the challenged] actions" (quoting *Venetian Casino Resort, L.L.C. v. E.E.O.C.*, 409 F.3d 359, 367 (D.C. Cir. 2005)).  That need is heightened where, as here, the plaintiffs challenge an agency's policy and practice, rather than a formally "promulgated regulation" typically reviewed under the APA. *Escobar Molina*, 2025 WL

4

3465518, at *37 (quoting *AFL-CIO*, 349 F.R.D. at 248).[1]

Because Defendants' AR fails even to attempt to delineate the contours of the challenged policy, it precludes meaningful judicial review of the agency's decision-making process. The Court should grant extra-record discovery.

## I.    The Administrative Record Stifles Effective Judicial Review.

The AR—compiled and produced by only two of the agency Defendants—is tantamount to no AR at all. Rather than provide "all of the information that the agenc[ies] considered either directly or indirectly" to implement their policy and practice for warrantless arrests in the District, *Univ. of Colo. Health at Mem'l Hosp.*, 151 F. Supp. 3d at 12 (quotations omitted), Defendants have produced only a few isolated arrest records and no policy documents of any kind. Simply put, no court could divine *any* policy, let alone the "contours of the precise policy at issue," *Hisp. Affs. Project*, 901 F.3d at 388, from the AR's eleven pages about the individual Plaintiffs' arrests. In this way, the AR merely reiterates Defendants' baseless position that, notwithstanding public evidence to the contrary, the unlawful policy and practice does not exist at all—a contention the Court squarely rejected in granting preliminary injunctive relief. *See Escobar Molina*, 2025 WL 3465518, at *23 ("Finding that defendants have implemented such a policy and practice does not require a far leap of logic: defendants *themselves* have repeatedly emphasized an abandonment of the probable cause standard."); *Univ. of Cal. Student Ass'n*, 2025 WL 1906548, at *2 (granting

---

[1] *See also United Farm Workers v. Noem*, 2025 WL 1490131, at *6 (E.D. Cal. May 23, 2025) ("[Plaintiffs] challenge an agency's general course of conduct, and, as such, limited discovery outside the administrative record may be necessary."); *CASA, Inc. v. Noem*, 2025 WL 3514378, at *16 (D. Md. Dec. 8, 2025) ("Courts have permitted extra-record discovery on APA claims challenging such a policy or practice."); *Manker v. Spencer*, 2019 WL 5846828, at *19 (D. Conn. Nov. 7, 2019) ("Where a plaintiff challenges an agency's general course of conduct rather than a discrete adjudication, limited discovery outside of the administrative record may be necessary where the administrative record does not contain evidence of the challenged action." (quotations omitted)).

discovery where record did not reveal whether "challenged policy exist[ed]" (quoting *Hisp. Affs. Project*, 901 F.3d at 386 n.4)).

Courts have granted extra-record discovery even where agencies produced ARs far more robust than the one that Defendants have produced here. *See, e.g.*, Order at 13–17, *New York v. McMahon*, 25-cv-10601 (D. Mass. Feb. 11, 2026), ECF 202 (granting extra-record discovery where "[n]one of the[ agency's] goals" was reflected in an approximately 150-page AR consisting of internal emails, spreadsheets, and a memorandum); *Dep't of Com.*, 588 U.S. at 765 (reviewing record consisting of extra-record discovery where the AR was over *12,000 pages*). Without a proper AR for the Court to review, Plaintiffs are entitled to discovery "into the [agencies'] decisionmaking process in order to create such a record." *In re Subpoena Duces Tecum Served on Off. of Comptroller of Currency*, 156 F.3d 1279, 1280 (D.C. Cir. 1998) (citing *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971)).

As alleged in the Complaint and as the Court found in preliminary injunction proceedings, Defendants' unlawful policy and practice is widespread, ECF 1 ¶¶ 19, 24, top-down, *id.* ¶¶ 19–23, and ongoing, *id.* ¶ 27; ECF 78 (documenting ongoing unlawful arrests). *See also, e.g.*, *Escobar Molina*, 2025 WL 3465518, at *23 ("The challenged decision originates from the top[.]") (citing, *e.g.*, Exec. Order No. 14333, 90 Fed. Reg. 39301 (Aug. 11, 2025); ECF 17-1 ("Widas Decl."), Ex. 7 (Off. of Att'y Gen., Order No. 6372-2025, "Restoring Safety and Security to the District of Columbia" at 2 (Aug. 15, 2025))). Inexplicably, though, Defendants' AR contains nothing that prescribes or discusses the standards that Defendants' agents are to apply when carrying out warrantless civil immigration arrests in the District, *id.* at *23–25; explains the extent to which arrest quotas or goals drive Defendants' policy and practice, *id.* at *23; identifies all the agencies involved in Defendants' policy and practice, *id.* at *27 n.47; describes whether Defendants

6

abandoned prior U.S. Department of Homeland Security ("DHS") guidance for making warrantless civil immigration arrests, such as the Broadcast Statement of Policy, *id.* at \*26; or indicates whether Defendants provided (improper) training to effectuate their unlawful policy and practice, *id.* at \*25–26; among other types of documents one might expect from an AR related to the Administration's top policy priority.  Indeed, nearly half the pages Defendants produced relate to an individual arrest that occurred *more than six months* before the policy is alleged to have commenced, ECF 76-1; ECF 77-1, and cannot plausibly be considered "information that the agency considered either directly or indirectly" in implementing it.  *Univ. of Colo. Health at Mem'l Hosp.*, 151 F. Supp. 3d at 12 (quotations omitted).

## II.  The Court Should Order Extra-Record Discovery To Determine the Contours of the Precise Policy at Issue.

Although the Court had "no doubt" that Defendants' unlawful policy had been "consummated" in practice, *Escobar Molina*, 2025 WL 3465518, at \*22 (quotations omitted), the AR contains no documents reflecting that policy.  Extra-record discovery is therefore required to clarify the "contours of the precise policy at issue" and enable effective judicial review, *Hisp. Affs. Project*, 901 F.3d at 388, particularly in light of Defendants' continued insistence that the challenged policy does not even exist, *see Univ. of Cal. Student Ass'n*, 2025 WL 1906548, at \*2.

For example, extra-record discovery will clarify the standard Defendants and their agents intend to apply when making warrantless civil immigration arrests, even as Plaintiffs' and class members' declarations and Defendants' I-213s continue to demonstrate consistent non-compliance with § 1357(a)(2) in practice.  Although the Broadcast Statement of Policy, which expressly requires probable cause for both prongs of § 1357(a)(2), was ostensibly "in effect" for some time covering this litigation, the "exact status of the Broadcast remains unclear." *Escobar Molina*, 2025 WL 3465518, at \*26.  And there is more reason to doubt its continued vitality today than there was

when the Court ruled in December, now that Defendant Todd Lyons, Senior Official Performing the Duties of the Director of ICE, has issued a memorandum that directly contradicts the Broadcast. *Compare* Widas Decl., Ex. 1 (Broadcast Statement of Policy, Appendix A (finalized Nov. 23, 2021)) (listing, among other factors for escape risk, "ties to the community (such as a family, home, or employment) or lack thereof"), *with* ECF 78-1 ("Third Widas Decl."), Ex. 10 ("Lyons Memo") (dated Jan. 28, 2026 and omitting, *e.g.*, community ties as a relevant factor for escape risk). Given Defendants' reliance on the Broadcast in this litigation as evidence of a policy requiring probable cause, *see* ECF 50 ("Defs. PI Opp.") at 23, extra-record discovery is needed to understand exactly what role it has played in Defendants' policy and practice of warrantless arrests in the District, and to what extent the Lyons Memo or the principles therein superseded it (and if so, when). *See* Third Widas Decl., Ex. 9 (then-Assistant Secretary for Public Affairs Tricia McLaughlin describing the Lyons Memo as "nothing new" and reiterating that DHS uses "reasonable suspicion" to make arrests). *Compare also* ECF 82 at 5 (Defendants characterizing Lyons Memo as "reiterat[ing] longstanding Department policy"), *with* Lyons Memo at 4 (repudiating policy on escape risk prong that "ICE previously applied").

Extra-record discovery on this issue is particularly necessary here, where Defendants' and their agents' public statements contravene their litigation position. *See* Order at 16, *New York v. McMahon*, No. 25-cv-10601 (D. Mass. Feb. 11, 2026), ECF 202 (granting extra-record discovery in part due to the AR's "inconsisten[cy] with public statements"). Throughout the past six months, former DHS Assistant Secretary Tricia McLaughlin, Chief Border Patrol Agent Gregory Bovino, and DHS's official X account have emphasized that DHS uses "reasonable suspicion" to make civil immigration arrests. *See* Widas Decl., Ex. 19; ECF 34-1 ("Second Widas Decl."), Ex. 2; Third Widas Decl., Ex. 4. At a hearing on Plaintiffs' preliminary injunction motion, Defendants'

counsel disavowed this position, claiming that Ms. McLaughlin and Mr. Bovino were mere "communications people in the government." ECF 61 at 60:5–6. But this "remarkable assertion" about these "high-ranking officials" appears to imply "that the individuals behind these statements are ignorant or incompetent, or both." *Escobar Molina*, 2025 WL 3465518, at \*24. Defendants' post-preliminary injunction statements reiterating their lawless position numerous times only amplify this confusion. Third Widas Decl., Exs. 1–9. Because Defendants are "unable to keep their policies straight between the high-ranking DHS officials, DHS counsel, and other levels of management," *Escobar Molina*, 2025 WL 3465518, at \*37, discovery is needed to resolve the inconsistencies between Defendants' public statements and litigation position.

Further muddying Defendants' policy, public reporting indicates that senior administration officials have set unrealistic immigration arrest quotas—which Defendants have dismissed as mere "goals"—even though these quotas are irreconcilable with the requirements of § 1357(a)(2). Widas Decl., Ex. 4; Third Widas Decl., Ex. 6 (Wall Street Journal article reporting "[ICE] officers here and elsewhere are under pressure from daily arrest quotas that leadership has set at 3,000 a day across the country"). Indeed, nearly a month after the Court entered the preliminary injunction in this case, Defendants identified "100 Million Deportations" as an apparent goal in a social media post. *See* Declaration of A. Widas ("Fourth Widas Decl."), Ex. 1 (Dec. 31, 2025, X post from official DHS account containing image of artwork with text overlaid, "America After 100 Million Deportations," and caption, "The peace of a nation no longer besieged by the third world."). Yet Defendants continue to "deny that DHS . . . ha[s] a policy or practice of arrest quotas." ECF 71 ("Answer") ¶ 19. Extra-record discovery, including, for example, internal communications among Defendants and their agents and sworn testimony, is required to resolve this inconsistency.

Plaintiffs' extra-record discovery requests will also unveil whether Defendants' agents

9

received requisite training to make civil immigration arrests, and if they did, the standard on which they were trained. In their failed attempt to rebut Plaintiffs' claims that they maintain an unlawful policy and practice, Defendants themselves proffered evidence that *some* of their agents previously received training on probable cause, ECF 63-1 ("Supp. Simon Decl.") ¶¶ 6–8 (discussing trainings in March 2024 and February 2025); ECF 63-2 ("Supp. Blanchard Decl.") ¶ 6 (discussing June 2025 training), which this Court dismissed in concluding, "[a]ny training that the officers may have received under a prior policy [] has no bearing on the current policy and practice," *Escobar Molina*, 2025 WL 3465518, at *25. Moreover, Defendants concede that the record to date is "silent" on the training provided to agents outside of CBP and ICE. ECF 61 at 88:24–25. The Court expressed that this fact could be probative of the validity of civil immigration arrests in the District writ large, *see id.* at 28:21–29 (referring to *N.S. v. Dixon*, 141 F.4th 279, 286–87 (D.C. Cir. 2025)), because immigration officers are required under 8 C.F.R. § 287.5(e)(3) and § 287.5(c)(1) to "receive training before they can make civil immigration arrests," *Escobar Molina*, 2025 WL 3465518, at *26. Further, a former ICE lawyer and legal instructor recently testified before Congress that, in 2025, ICE eliminated a required examination for agents called "Determine [R]emovability," *i.e.*, a topic squarely at issue in this case, in addition to other extensive cuts to ICE officer training. Fourth Widas Decl., Ex. 2 ("ICE is teaching cadets to violate the Constitution and attempting to cloak it in secrecy by demanding I lie about it."); *contra id.*, Ex. 3 (DHS stating, "No training requirements have been removed."). *See also id.*, Ex. 4 (March 3, 2026, Washington Post article reporting that the "vast majority" of ICE training cuts occurred in August 2025). Given the absence of *any* record on training in the AR (notably, not even evidence to support the assertions in the supplemental declarations on which Defendants relied to oppose Plaintiffs' motion for a preliminary injunction), extra-record discovery on whether Defendants'

10

agents have received requisite training, and whether that training has effectuated Defendants' unlawful policy, is therefore appropriate. *Cf. AFL-CIO*, 349 F.R.D. at 249 (granting discovery to permit plaintiffs to rebut defendants' "reli[ance] on declarations taken after the alleged policies or decisions took effect" (emphasis removed)).

Finally, questions about the scope of Defendants' policy remain because of Defendants' own contentions about arrests in the District. For example, Defendants have contended, based on declarations of Acting Deputy Executive Assistant Commissioner Kenneth Blanchard Jr., that Mr. Escobar Molina and B.S.R. were arrested not pursuant to any unlawful policy, but rather that they were "specifically targeted" based on "Agency records." *See* ECF 50-2 ("Blanchard Decl.") ¶¶ 7–8; Supp. Blanchard Decl. ¶¶ 8-10; Defs. PI Opp. at 27 (citing Blanchard Decl.). Mr. Blanchard's declarations fail to explain when the arresting officers learned of any information about either Mr. Escobar Molina or B.S.R. prior to making an arrest, even after the Court suggested evidence would be helpful on this point due to the "questions raised" by the first Blanchard declaration. ECF 61 at 57:11-17. The supplemental declaration states that "CBP law enforcement personnel who arrested Mr. Molina and BSR intended to arrest them before encountering them based on information in law enforcement records." Supp. Blanchard Decl. ¶ 8. Extra-record discovery would clarify whether Defendants have provided these full "law enforcement records" to Plaintiffs and fill the gap in Mr. Blanchard's declaration as to whether the arresting agents' "inten[t] to arrest" was based upon the requisite probable cause determination "before encountering them." *Id.* Discovery on ongoing immigration arrests in the District, and the facts underlying any such arrests, may also be necessary to ascertain the nature of Defendants' policy and practice, including any steps that might have been taken after the preliminary injunction to circumvent the requirements of § 1357(a)(2), or this Court's preliminary injunction order. *See, e.g.*, ECF 82-10

11

("Weiss Decl.") ¶ 5 (declaration of ICE Deputy Field Office Director Erik Weiss asserting that no warrantless arrests in the District occurred in the first half of February 2026 due to "significant snowfall").

In sum, given that "the contours of the precise policy" at issue remain unclear, the Court should grant Plaintiffs' request for extra-record discovery.

### III.    Plaintiffs' Requested Discovery Is Necessary and Appropriate.

In light of Defendants' facially deficient AR, Plaintiffs seek to utilize the discovery tools typically available under the Federal Rules of Civil Procedure to clarify Defendants' policy. While document discovery, including policy documents and relevant internal communications, will help effectuate judicial review, it is unlikely to adequately clarify Defendants' policy alone, as evidenced by the AR and Defendants' failure to marshal any probative documentary evidence in response to the preliminary injunction motion. For that reason, interrogatories, requests for production and for admission, and depositions are necessary to create a record upon which the Court can assess Defendants' actions. This case targets a range of policy-and-practice conduct that will be clarified only through answers to written questions, document productions, and oral examinations. *See Cmty. Fed. Sav. & Loan Ass'n v. Fed. Home Loan Bank Bd.*, 96 F.R.D. 619, 621 (D.D.C. 1983) (stating, where the AR is inadequate, that the deposition of an agency official is appropriate where "the official has relevant first-hand personal knowledge of matters material to the decision which are not a part of the administrative record and not available from some other source"); *New York v. U.S. Dep't of Com.*, 339 F. Supp. 3d 144, 147 (S.D.N.Y. 2018) (noting "substantial discovery" granted "beyond the administrative record" and citing joint status report (No. 18-cv-02921 (S.D.N.Y. Sept. 6, 2018), ECF 305) outlining numerous depositions and interrogatories), *stay denied in part sub nom. In re Dep't of Com.*, 586 U.S. 956, 956–57 (2018) (staying only deposition of Secretary of Commerce); Order at 17, *McMahon*, No. 25-cv-10601 (D.

Mass. Feb. 11, 2026), ECF 202 (granting APA discovery requests, including Rule 30(b)(6) deposition).

Plaintiffs thus request that the Court order Defendants to respond to requests for production and requests for admission, answer a limited set of ten interrogatories, and sit for five depositions—*i.e.*, a targeted request sufficient to clarify the "contours of the precise policy" at issue but still limited in comparison to the discovery typically afforded under the Federal Rules. *See Brune v. I.R.S.*, 861 F.2d 1284, 1288 (D.C. Cir. 1988) ("The district court has broad discretion in its handling of discovery." (cleaned up)).  As set out in the attached proposed order, Plaintiffs further request that the parties jointly propose a schedule for Plaintiffs to conduct discovery following entry of the Court's order.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion and order Defendants to engage in extra-record discovery by responding to Plaintiffs' discovery requests and by sitting for a limited number of depositions.

March 5, 2026

Respectfully submitted,

s/ *Adina Appelbaum*
Adina Appelbaum (D.C. Bar No. 1026331)
Ian Austin Rose (Md. Bar No. 2112140043)
Samantha Hsieh (Va. Bar No. 90800)[*]
**AMICA CENTER FOR IMMIGRANT RIGHTS**
1025 Connecticut Avenue NW, Suite 701
Washington, D.C. 20036
(202) 331-3320
adina@amicacenter.org
austin.rose@amicacenter.org
sam@amicacenter.org

s/ *Aditi Shah*
Aditi Shah (D.C. Bar No. 90033136)
Scott Michelman (D.C. Bar No. 1006945)
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF THE DISTRICT OF COLUMBIA**
529 14th Street NW, Suite 722
Washington, D.C. 20045
(202) 457-0800
ashah@acludc.org
smichelman@acludc.org

Kathryn Huddleston (Tex. Bar No. 24121679)[**++]
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
915 15th Street NW, 7th Floor
Washington, D.C. 20005
(212) 549-2500
khuddleston@aclu.org

s/ *Sirine Shebaya*
Sirine Shebaya (D.C. Bar No. 1019748)
Yulie Landan (Cal. Bar No. 348958)[*+]
Bridget Pranzatelli (D.C. Bar No. 90029726)
**NATIONAL IMMIGRATION PROJECT**
1763 Columbia Road NW, Suite 175
Washington, D.C. 20009
(213) 430-5521
sirine@niplg.org
yulie@nipnlg.org
bridget@nipnlg.org

s/ *Jehan A. Patterson*
Jehan A. Patterson (D.C. Bar No. 1012119)
Chris Kimmel (D.C. Bar No. 1047680)
Alexandra Widas (D.C. Bar No. 1645372)
Hassan Ahmad (D.C. Bar No. 1030682)
Sean Berman (D.C. Bar No. 90026899)
Austin Riddick (D.C. Bar No. 90018117)
Alexis Gorfine (D.C. Bar No. 90039553)[***]
Marcus Ransom (D.C. Bar No. 90039599)[***]
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, D.C. 20001
(202) 662-6000
jpatterson@cov.com
ckimmel@cov.com
awidas@cov.com
hahmad@cov.com
sberman@cov.com
ariddick@cov.com
agorfine@cov.com
mransom@cov.com

Eva H. Lilienfeld (N.Y. Bar No. 6143085)[*]
Graham Glusman (N.Y. Bar No. 6099535)[*]
**COVINGTON & BURLING LLP**
30 Hudson Yards
New York, NY 10001
(212) 841-1000
elilienfeld@cov.com
gglusman@cov.com

s/ *Madeleine Gates*
Madeleine Gates (D.C. Bar No. 90024645)
**WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS**
700 14th Street NW, #400
Washington, D.C. 20005
(202) 319-1000
madeleine_gates@washlaw.org

s/ *Ama Frimpong*
Ama Frimpong (D.C. Bar No. 1602444)[*]
Shana Khader (D.C. Bar No. 90011926)

14

**CASA, Inc.**
8151 15th Avenue
Hyattsville, MD 20783
(240) 485-8844
afrimpong@wearecasa.org
skhader@wearecasa.org
*Attorneys for Plaintiffs*

[*]*Admitted* pro hac vice.
[**]*Motion for Admission* pro hac vice *forthcoming.*
[***]*Petition for Admission forthcoming.*

[+]*Not Admitted in D.C.; working remotely from N.Y. and admitted in Cal. only*
[++]*Not Admitted in D.C.; working remotely under supervision of D.C. Bar member, practice limited to federal courts in D.C., and admitted in Ariz. and Tex. only.*

15