UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSE ESCOBAR MOLINA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DEPARTMENT OF HOMELAND SECURITY et al.,<br><br>Defendants. | Civil Action No. 25-3417 (BAH) |

**<u>MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR DISCOVERY</u>**

## TABLE OF CONTENTS

Table of Contents ........ i

Introduction ........ 1

Background ........ 1

Legal Standards ........ 2

Argument ........ 3

I. Plaintiffs Are Not Entitled to Extra-Record Discovery. ........ 3

II. Plaintiffs Have All Relevant Information Regarding Individual Arrests. ........ 10

III. An Order Supplementing the Administrative Record Would Be the Appropriate Method for Addressing Any Deficiency in the Record. ........ 12

Conclusion ........ 13

## INTRODUCTION

Plaintiffs Jose Escobar Molina, B.S.R., N.S., and R.S.M. are aliens living in Washington, D.C. who were arrested by immigration law enforcement agents in August 2025 but have since been released. Plaintiff CASA, Inc. ("CASA"), an immigrant rights organization, alleges it has members similarly situated to the individual Plaintiffs. Plaintiffs collectively bring claims under the Administrative Procedure Act ("APA") alleging their arrests that took place in August 2025 violated 8 U.S.C. § 1357(a)(2) and related regulations.

Consistent with the normal practice in APA litigation, Defendants produced an administrative record. Admin. Record Cert (ECF No. 76). But Plaintiffs seek extra-record discovery. As addressed more fully below, absent a showing of bad faith that has not been made here, Plaintiffs' claims are assessed based on the stated reasons reflected in the administrative record. Plaintiffs likewise cannot base their request for extra-record discovery on an alleged entitlement to further investigate whether Defendants' policies for conducting warrantless immigration arrests are consistent with the requirements of the Immigration Nationality Act. Ultimately, to the extent that Plaintiffs believe the Court should order Defendants to produce additional information, Plaintiffs should have moved to supplement the administrative record, not for discovery. Because Plaintiffs cannot establish any of the narrow exceptions for extra-record discovery, their motion should be denied.

## BACKGROUND

Plaintiffs claim that Defendants were acting pursuant to a policy and practice of making warrantless immigration arrests in Washington, D.C. without a pre-arrest determination of probable cause to believe that the person under arrest is in the United States in violation of the immigration laws and likely to escape before an arrest warrant can be obtained. Compl. ¶¶ 77, 83 (ECF No. 1). The following week, Plaintiffs moved to preliminarily enjoin this alleged policy.

Mot. for Prelim. Inj. (ECF No. 17). Defendants opposed this motion and argued that no such policy exists. Def. Opp'n to PI (ECF No. 50). On December 2, 2025, the Court entered a preliminary injunction. Order (ECF No. 67).

Defendants filed an answer to Plaintiff's complaint on January 9, 2026, ECF No. 71 and on February 19, 2026, served an administrative record. Admin. Record Cert. (ECF No. 76). The administrative record included all documents associated with the four Plaintiffs' arrests. *Id.* Plaintiffs now seek extra-record discovery. Pls. Mot for Disc (ECF No. 85)

## LEGAL STANDARDS

The APA directs courts to "review the whole record or those parts of it cited by a party" in making determinations about the propriety of an agency's decisions. 5 U.S.C. § 706. The Supreme Court has made clear that this means that a court must review "the full administrative record that was before the [agency] at the time [it] made [its] decision." *Citizens to Pres. Overton Park v. Volpe*, 401 U.S. 402, 420 (1971), *abrogated on other grounds* 430 U.S. 99 (1977). At the same time, "judicial review should be [of] the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam). Thus, the D.C. Circuit has made clear that "[i]t is 'black-letter administrative law that in an [APA] case, a reviewing court should have before it neither more nor less information than did the agency when it made its decision.'" *CTS Corp. v. EPA*, 759 F.3d 52, 64 (D.C. Cir. 2014) (*quoting Hill Dermaceuticals, Inc. v. FDA*, 709 F.3d 44, 47 (D.C. Cir. 2013)).

Defendants are charged with collecting those materials "that were before the agency at the time the decision was made." *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996) (quotation marks omitted). The administrative record produced by an agency "is entitled to a strong presumption of regularity." *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, Civ. No. 16-1534 (JEB), 2019 WL 2028709, at *2 (D.D.C. May 8, 2019), quoting *Sara Lee Corp. v. Am. Bakers*

*Ass'n*, 252 F.R.D. 31, 34 (D.D.C. 2008). "Thus, the Court's review is limited to the administrative record as compiled by the agency, save for 'certain narrow exceptions.'" *Open Soc'y Inst. v. U.S. Citizenship & Immigr. Servs.*, 573 F. Supp. 3d 294, 306 (D.D.C. 2021), *dismissed* No. 21-5251, 2022 WL 4002149 (D.C. Cir. Aug. 29, 2022) (citing *Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior*, 143 F. Supp. 2d 7, 11 (D.D.C. 2001)). Those "narrow exceptions," *id.*, encompass two circumstances – supplementing the record and extra-record evidence.

Discovery is generally not available in cases reviewing agency action. *Comm. Of 100 on the Fed. City v. Foxx,* 140 F. Supp. 3d 54, 59 (D.D.C. 2015) (*citing Air Transp. Ass'n of Am., Inc. v. Nat'l Mediation Bd.,* 663 F.3d 476, 487 (D.C. Cir. 2011)). A "strong showing of bad faith or improper behavior" is an exception to the general rule against the inquiry into the "mental processes of administrative decisionmakers." *Dep't of Commerce v. New York*, 588 U.S. 752, 781 (2019) (*citing Overton Park*, 401 U.S. at 420). That exception has been described as "narrow." *Id.* at 781; *see also Foxx*, 140 F. Supp. 3d at 59 ((*quoting Air Transp. Ass'n of Am., Inc. v. Nat'l Mediation Bd.*, No. 10-0804, 2010 U.S. Dist. LEXIS 144089, *4 (D.D.C. June 4, 2010)).

**ARGUMENT**

**I. <u>Plaintiffs Are Not Entitled to Extra-Record Discovery.</u>**

Plaintiffs' request for extra-record discovery fails. Entitlement to extra-record discovery requires that Plaintiffs make a "strong showing" of bad faith. *James Madison Limited by Hecht*, 82 F.3d at 1095. Although Plaintiffs may allege that Defendants acted in bad faith, conclusory assertions are insufficient. *Id.* (consultant's assertions that "it appeared" from the agency's conduct that the agency had a "predetermined agenda" amount to "conclusory statements" that "fall far short of the 'strong showing' of bad faith required to justify supplementing the record).

Notably, Plaintiffs do not directly contend that Defendants are acting in bad faith, rather, Plaintiffs argue they require discovery because the administrative record does not include

documents demonstrating the existence of a warrantless arrest policy. Pl. Mot. at 9. Plaintiffs claim that Defendants have an unlawful policy of conducting warrantless arrests without probable cause that the arrestee is in the United States in violation of the immigration laws and that the arrestee is likely to escape before a warrant can be obtained in violation of 8 U.S.C. 1357(a)(2). But Defendants are unable to produce documents reflecting such a policy because no such policy exists. Plaintiffs cannot base their request for extra-record discovery on speculation, or an alleged entitlement to investigate whether Defendants are implementing a non-existent policy on warrantless immigration arrests. *In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 156 F.3d 1279, 1279 (D.C. Cir. 1998); *see also Alsaidi v. U.S. Department of State*, 292 F. Supp. 3d 320, 328 (D.D.C. 2018) ("Plaintiff[s] cannot use the APA to justify a fishing expedition for evidence that defendants were motivated, not by their stated reason for [the challenged action], but by a [legally questionable] policy that plaintiff believes exists.").

The Lyons Memorandum (ECF No. 82-1) ("Lyons Memo") is the only nationwide guidance that outlines ICE's implementation of 8 U.S.C. § 1357(a)(2). And the Lyons Memo makes plain that, consistent with 8 U.S.C. § 1357(a)(2) an immigration officer can only arrest an alien without a warrant if the officer has probable cause that the alien so arrested is in the United States in violation of any immigration law or regulation and is likely to escape before a warrant can be obtained for his arrest. Lyons Memo at 1-2 (ECF No. 82-1 at 2-3). An administrative record "properly consists of the materials before the agency and no more nor less." *Ociana Inc., v. Ross*, 290 F. Supp. 3d 73, 78 (D.D.C. 2018). The Lyons Memo is not included in the administrative record because it was issued on January 28, 2026, five months after the arrests that are the subject of this lawsuit. Thus, agency decisionmakers would not have considered it when they took the actions at issue in this case. Defendants only filed the Lyons Memo in this case as evidence in

support of their Opposition to Plaintiffs' motion to enforce the preliminary injunction. See generally Def. Opp'n (ECF No. 82).

Even though the Lyons Memo did not exist at the time of the arrests that are the subject of this lawsuit, the memo reflects on its face that it did not create new policy. The memo states that it "serves as a reminder of this essential authority and provides guidance for the lawful and consistent exercise of warrantless arrest authority for civil violations of immigration laws." Lyons Memo. at 2 (ECF No. 82-1 at 3). Plaintiffs' arguments that they need discovery to discern the existence of some other policy prior to the Lyons Memo are unavailing. Pl. Mot. at 10. Plaintiffs quote from their complaint that Defendants have a warrantless arrest policy based on reasonable suspicion that is "widespread," "top down", and "ongoing." *Id.* (citing Compl. ¶¶ 19-24, 27). But the complaint is unverified and accordingly is not evidence of an incomplete administrative record. *Armenian Assembly of Am., Inc. v. Cafesjian*, 758 F.3d 265, 284 n.14 (D.C. Cir. 2014). The documents that Plaintiffs cite to support these assertions do not demonstrate the existence of a policy either. Specifically, Executive Order 14,333, Declaring a Crime Emergency in the District of Columbia (Aug. 11, 2025) does not mention immigration. And the only references that Attorney General Order No. 6372-2025, "Restoring Safety and Security to the District of Columbia" (Aug. 15, 2025) makes to immigration enforcement is the direction to the Mayor of the District of Columbia to provide "assistance with the enforcement of federal immigration law" and "assistance with locating, apprehending, and detaining aliens unlawfully present in the United States." The order does not specify any standards for assessing probable cause and escape risk when conducting warrantless civil immigration arrests.

Plaintiffs also rely on public statements from the Department's spokespeople and social media accounts to suggest that immigration officers have been instructed to make civil

immigration arrests based on reasonable suspicion. Pl. Mot at 19. But these statements do not reflect the training and instructions that are given to immigration officers, let alone Department policy. Immigration officers make arrests based on probable cause, not reasonable suspicion. 2d. Simon Decl. ¶ 5 (ECF No. 63-1); 2d. Blanchard Decl. ¶¶ 3, 7 (ECF No. 63-2). Even before the Lyons Memo, ICE trained its officers that before conducting warrantless immigration arrests, officers needed "to evaluate whether probable cause exists to arrest an alien and whether that alien is likely to escape before a warrant can be obtained." Simon Decl. ¶ 18 (ECF No. 50-1). Specifically, immigration "officers are taught that an arrest can only be made if the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, to believe, in the circumstances shown, that the alien is in the United States in violation of U.S. immigration laws." 2d. Simon Decl. ¶ 5 (ECF No. 63-2). Moreover, officers "are taught to consider the totality of the particular circumstances to determine whether an individual is likely to escape before a warrant can be obtained." *Id*. ¶ 6. ICE had even provided refresher training on the requirements of the Fourth Amendment and 8 U.S.C. § 1357 to Washington Field Office agents on August 13, 19, and 21, 2025, around the same time that the immigration enforcement surge in Washington, DC began. Simon Decl. ¶¶ 8, 18 (ECF No. 50-1). These trainings were two and a half hours long and provided by counsel from ICE's Office of the Principal Legal Advisor. 2d. Simon Decl. ¶ 4 (ECF No. 63-1)

Plaintiffs seek discovery on the existence of an arrest quota. Pl. Mot. at 13. But Defendants do not have a quota for civil immigration arrests in Washington, DC. Answer ¶ 19 (ECF No. 71). The materials that Plaintiffs cite as their basis for claiming the existence of an arrest quota do not, in fact, confirm Plaintiffs' theory. The Department of Homeland Security has denied, in court, the existence of any arrest quotas. Widas Decl. Ex. 4 (ECF. No. 17-1 at 29); see also Hearing Tr. at

68-69 (ECF No. 61). And the *Wall Street Journal* article that Plaintiffs cite for the premise that ICE has a 3,000 daily nationwide arrest quota is attributed to an anonymous ICE official and constitutes hearsay. Third Widas Decl. Ex.6 (ECF No. 78-1 at 27). And even if this alleged statement from an unnamed official was an accurate statement of Defendants' policy, which Defendants dispute, the existence of a nationwide arrest quota would have no relevance to this case because this arrest concerns warrantless civil immigration arrests in Washington, DC. The alleged 3,000 monthly arrest figure refers to nationwide arrests and does not distinguish between arrests with and without warrants. *Id.* Moreover, the article is dated January 17, 2026, more than one month after the Court entered the preliminary injunction in this case. *Id.*

Plaintiffs further attempt to question the precise nature of Defendants' policies by citing the Broadcast Statement of Policy (ECF No. 17-1 at 8). The Broadcast Statement of Policy was issued to immigration officers nationwide and included an explanation of the probable cause required under 8 U.S.C. § 1357(a)(2), among other requirements of the settlement agreement in *Castanon Nava v. Department of Homeland Security,* Civ. A. No. 18-3757 (N.D. Ill). But the Broadcast Statement of Policy was not an enforceable policy in Washington, D.C. The *Castanon Nava* settlement agreement was entered into between the Department and a class of those detained in ICE's Chicago Area of Responsibility, not Washington, D.C. Section II of the Agreement defines "class members" as "all current and future persons arrested without a warrant for a civil violation of U.S. immigration laws within the area of responsibility of the ICE Chicago Field Office." *See* Agreement at Dkt. *Castanon Nava*, Civ. A. No. 18-3757 (N.D. Ill) (ECF No. 155-1 at 4). Further, the Agreement states at IV.A.3. that "[t]he terms of the Broadcast shall be enforceable under this Agreement upon the receipt of training by all ICE Officers assigned to duty within the Chicago Area of Responsibility, as reflected below." *Id.* at 6. Defendants did not agree

to, and would not have agreed to, mandating a nationwide policy to cover a nationwide class as part of this regional agreement to settle a lawsuit in the Northern District of Illinois. But the fact that the Broadcast Statement of Policy was not enforceable nationwide does not suggest that Defendants had a policy of making warrantless arrests in violation of 8 U.S.C. § 1357(a)(2). Even when the Broadcast Statement of Policy was rescinded on June 11, 2025 (before it was reissued again on October 22, 2025 per court order), the recission made clear that probable cause is required for warrantless arrests under 8 U.S.C. § 1357(a)(2).

The two D.C. Circuit cases that Plaintiffs rely on to argue that discovery is proper to determine the scope of the alleged policy are inapplicable. *Venetian Casino Resort v. EEOC*, 409 F.3d 359, 360 (D.C. Cir. 2005), involved a challenge to an alleged Equal Employment Opportunity Commission policy "that permits the agency unilaterally to release privileged documents submitted to EEOC by a private party without first notifying the party." Although the Court remanded the case to the district court in part "to ascertain the contours of the precise policy at issue," the Court did not state that the district court needed to accomplish this by allowing the Plaintiff to take discovery. *Id.* at 367. In *Hispanic Affairs Project v. Acosta*, 901 F.3d 378, 388 (D.C. Cir. 2018), the Court stated, in dicta, that "the district court is free to exercise its discretion to permit further discovery," not that plaintiffs are entitled to extra-record discovery.

Equally distinguishable are the recent district court opinions that Plaintiffs rely on to argue that extra-record discovery is proper in circumstances where the agency denies the policy at issue exists. *AFL-CIO v. DOL*, 349 F.R.D. 243, 248 (D.D.C. 2025), involved a challenge to an agency's policy of granting U.S. DOGE Service ("USDS") employees' access to information systems. In that case, the agency did not dispute having such a policy but disputed that the policy was a new policy because "USDS employees are in fact employees of the defendant agencies and thus the

agencies' choices to give them access to information systems are . . . merely standard agency decisions to give employees access to [those] systems." *Id.* at 249 (cleaned up). In other words, the dispute turned on whether the USDS employees properly accessed the systems, not whether the Agency had a policy of allowing them to access the systems. *Id*. at 248-49. Similarly, in *All. for Retired Ams. v. Bessent*, Civ. A. No. 25-0313 (CKK), 2025 U.S. Dist. LEXIS 71832, at *9 (D.D.C. Mar. 20, 2025), the Court allowed some discovery because the Court "requires an adequate record of exactly what actions Defendants took to grant new access to USDS personnel," to "evaluate the reasonableness and lawfulness of Defendants' decision to take those actions." The Court's reason for ordering discovery was not because of any uncertainty about the existence of a policy. *Id.* Here, in contrast, the parties dispute whether Defendants have the disputed policy to begin with and Plaintiffs have offered nothing but their own speculation as the basis for their position. Finally, *Univ. of Cal. Student Ass'n v. McMahon*, Civ. A. No. 25-354 (RDM), 2025 U.S. Dist. LEXIS 132740, at *1-2 (D.D.C. Mar. 18, 2025), is inapplicable because the plaintiffs had sought discovery before the agency had produced an administrative record, and notably, the Court denied their request for discovery.

Crucially, D.C. Circuit law presumes the record has been properly designated and only will go beyond the record in "exceptional cases." *See, e.g., Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019) ("'the designation of the Administrative Record . . . is entitled to a presumption of administrative regularity"); *Pac. Shores Subdivision,* 448 F. Supp. 2d at 5 (the "agency is entitled to a strong presumption of regularity that it properly designated the administrative record."); *Franks v. Salazar*, 751 F. Supp. 2d 62, 66 (D.D.C. 2010) ("When reviewing an agency decision, a court will go beyond the agency's record only in exceptional cases.") *(citing Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985)). "Obtaining even limited discovery

requires a party to 'make 'a significant showing—variously described as a strong, substantial, or prima facie showing—that it will find material in the agency's possession indicative of bad faith or an incomplete record.'" *Alsaidi*, 292 F. Supp. 3d at 328 (*quoting Chiayu Chang v. U.S. Citizenship & Immigration Servs.,* 254 F. Supp. 3d 160, 161 (D.D.C. 2017)). Because Plaintiffs have not made a showing of bad faith or an incomplete record and instead seek to embark on a fishing expedition in hopes of confirming their speculation, their motion should be denied. There is no legally-recognized basis for the Court to allow Plaintiffs to search for evidence of a policy that does not exist. *Alsaidi,* 292 F. Supp. 3d at 328 ("Plaintiff cannot use the APA to justify a fishing expedition for evidence that defendants were motivated, . . . by a policy that plaintiff believes exists.").

**II. <u>Plaintiffs Have All Relevant Information Regarding Individual Arrests.</u>**

Plaintiffs claim they do not have complete information about their own arrests. Pl. Mot at 15. But this information is in the administrative record.[1] The administrative record confirms prior declaration testimony from Acting Deputy Executive Assistant Commissioner Kenneth Blanchard, see Blanchard Decl. (ECF No. 50-2), that the arrests of Plaintiffs Jose Escobar Molina and B.S.R. were targeted arrests. CBP AR 001-03. CBP identified Escobar Molina and B.S.R. as targets for arrest while conducting research into law enforcement databases. 2d. Blanchard Decl. ¶¶ 3, 7 (ECF No. 63-2). CBP produced the "intel target" records for both Escobar Molina and B.S.R. as part of the administrative record. *Id.* CBP targeted Escobar Molina for arrest because CBP learned through research into law enforcement databases that Escobar Molina's Temporary Protected Status had expired and that in 2019, he had been charged with simple assault. CBP AR 001;

[1] Defendants will provide Plaintiffs an unredacted version of the administrative record after the partes reach an agreement on a stipulated protective order. The parties' negotiations on the protective order are ongoing.

Blanchard Decl. ¶ 7 (ECF No. 50-2); 2d. Blanchard Decl. ¶ 9 (ECF No. 63-2). According to the "intel target" record, Escobar Molina's Temporary Protected Status had expired on March 9, 2025. CBP AR 001. CBP targeted B.S.R. for arrest because, according to the "intel target" record, BSR had overstayed a B-2 visa. CBP AR 002-03; Blanchard Decl. ¶ 8 (ECF No. 50-2.

CBP did not encounter Escobar Molina and B.S.R. randomly. Rather, after learning about their immigration statuses in a law enforcement database CBP conducted additional research into these individuals' locations and relayed the information to the enforcement teams. 2d. Blanchard Decl. ¶ 10 (ECF No. 63-2). The enforcement team found Escobar Molina and B.S.R. at their respective residences. Escobar Molina Decl. ¶ 5 (ECF No. 17-2); B.S.R. Decl. ¶ 12 (ECF No. 17-3).

The AR also includes the I-213s for the arrests of N.S. and R.S.M on August 13, 2025 and August 26, 2025, respectively. ICE AR 004-08. This includes descriptions of the immigration officers' encounters with the Plaintiffs and what the officers observed about the Plaintiffs prior to their arrests. ICE AR 005 (N.S. Encounter); AR 007 (R.S.M. Encounter).

Finally, Plaintiffs suggest that they need discovery into ongoing immigration arrests in Washington, D.C., and the facts underlying any such arrests. Pl. Mot. at 16. But Defendants are already providing this information. In entering the preliminary injunction, the Court that "[w]ithin 30 days of this Order and every 30 days thereafter until this litigation is terminated or the Court rules otherwise, defendants shall release to plaintiffs' counsel the documentation describing defendants' and their agents' warrantless civil immigration arrests within this District." Order at 3 (ECF No. 67). Consistent with this order, Defendants have been making productions of I-213s associated with warrantless immigration arrests in Washington, D.C. every thirty days. Pl. Mot to Enforce (ECF No. 78 at 9) (detaining Defendants' I-213 productions). Thus, Plaintiffs already

have sufficient information about the warrantless immigration arrests that have occurred in Washington, D.C. since the Court entered the preliminary injunction. Because Plaintiffs are already receiving this information as a result of the preliminary injunction, formal discovery concerning arrests made since the preliminary injunction was entered is unnecessary.

## III. An Order Supplementing the Administrative Record Would Be the Appropriate Method for Addressing Any Deficiency in the Record.

Defendants maintain that the administrative record is complete but to the extent that Plaintiffs believe that the record is incomplete, their requests for additional information would more appropriately be brought through a motion to supplement the administrative record. Notably, Plaintiffs have disclaimed any interest in a motion to supplement. Hearing Tr. at 38 (ECF No. 88). Discovery is disfavored in APA cases because "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp*, 411 U.S. at 142. Section 706 of the APA reflects "Congress's judgment that the civil discovery rules are incompatible with the APA." *Univ. of Cal. Student Ass'n*, 2025 U.S. Dist. LEXIS 132740, at *5. Unlike the extra-record discovery that Plaintiffs seek, which would require Defendants to create new records through interrogatories, requests for admission, and depositions, see Pl. Proposed Order (ECF No. 85-2), a supplement to the administrative record would be limited to documents that the agency considered in taking the relevant actions but "deliberately or negligently" excluded from the record (if there were any such documents which Defendants dispute). *City of Dania Beach v. FAA*., 628 F.3d 581, 590 (D.C. Cir. 2010). Indeed, this Court has stated that discovery in an APA case "is not the norm" and that the Court could resolve whether the record is complete through a motion to supplement "rather than getting into depositions and interrogatories and requests for admission and all the other tools of civil discovery." Hearing Tr. at 41 (ECF No. 88).

To be clear, Defendants would oppose any motion to supplement the administrative record and maintain that they have no documents to add to the record. Defendants would accept the Court's invitation to present what "all their excuses are for not supplementing the record with documentation of policies in effect at the pertinent times underlying the Lyons memo, for example" and allow the Court to "make a determination of that." *Id.* Pursuant to normal practices in APA litigation, ordering a supplement of the administrative record would more appropriately address any deficiencies in the record than allowing discovery to the extent any such deficiencies are identified.

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' motion for discovery.

Dated: March 27, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: *<u>/s/ John J. Bardo</u>*
John J. Bardo, D.C. Bar #1655534
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-0828

*Attorneys for the United States of America*