**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JOSÉ ESCOBAR MOLINA, *et al.*, *individually
and on behalf of all others similarly situated*,

       *Plaintiffs*,

    v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, *et al.*,

       *Defendants*.

Civil Action No. 25-3417 (BAH)

**<u>REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR EXTRA-RECORD DISCOVERY</u>**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 2

I.     The Court Retains Full Jurisdiction to Permit Merits Discovery. ..................................... 2

II.    The Court Should Order Extra-Record Discovery For the Categories Identified by Plaintiffs. ........................................................................................................................ 4

        A.    Plaintiffs are entitled to discovery under well-established exceptions to the record rule. ................................................................................................... 4

        B.    The categories Plaintiffs identified are reasonable and appropriate for extra-record discovery in this case. ............................................................. 7

III.    Extra-Record Discovery, Rather than Supplementing the AR, Is the Appropriate Remedy. ...................................................................................................................... 11

CONCLUSION ................................................................................................................ 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AFL-CIO v. Dep't of Lab.*,
  2026 WL 879518 (D.D.C. Mar. 31, 2026)..........................................................................*passim*

*AFL-CIO v. Dep't of Lab.*,
  349 F.R.D. 243 (D.D.C. 2025)..................................................................................................5

*All. for Retired Ams. v. Bessent*,
  2025 WL 1114350 (D.D.C. Mar. 20, 2025)...............................................................................5

*All. for Retired Ams. v. Bessent*,
  2025 WL 1744729 (D.D.C. Mar. 13, 2025)...............................................................................4

*Alsaidi v. U.S. Dep't of State*,
  292 F. Supp. 3d 320 (D.D.C. 2018)...........................................................................................5

*Castañon Nava v. DHS*,
  806 F. Supp. 3d 823 (N.D. Ill. 2025) ........................................................................................9

*Chiayu Chang v. USCIS*,
  254 F. Supp. 3d 160 (D.D.C. 2017) ........................................................................................11

*City of Dania Beach v. FAA*,
  628 F.3d 581 (D.C. Cir. 2010).................................................................................................11

*Cmty. for Creative Non-Violence v. Lujan*,
  908 F.2d 992 (D.C. Cir. 1990)........................................................................................1, 6, 11

*Colbert v. Potter*,
  471 F.3d 158 (D.C. Cir. 2006)...................................................................................................4

*Dep't of Com. v. New York*,
  588 U.S. 752 (2019)...................................................................................................................6

*Escobar Molina v. DHS*,
  811 F. Supp. 3d 1 (D.D.C. 2025) ....................................................................................*passim*

*Free Speech v. FEC*,
  720 F.3d 788 (10th Cir. 2013) ..................................................................................................2

*FTC v. Assail, Inc.*,
  98 F. App'x 316 (5th Cir. 2004) ................................................................................................2

*Hisp. Affs. Project v. Acosta,*
  901 F.3d 378 (D.C. Cir. 2018) ................................................................................ *passim*

*Jack's Canoes & Kayaks, LLC v. Nat'l Park Serv.,*
  937 F. Supp. 2d 18 (D.D.C. 2013) ..................................................................................3

*James Madison Ltd. by Hecht v. Ludwig,*
  82 F.3d 1085, 1095 (D.C. Cir. 1996) ..............................................................................6

*Kilty v. Weyerhaeuser Co.,*
  758 F. App'x 530 (7th Cir. 2019) ....................................................................................2

*Ex parte Nat'l Enameling & Stamping Co.,*
  201 U.S. 156 (1906).........................................................................................................2

*New York v. McMahon,*
  2026 WL 622484 (D. Mass. Feb. 11, 2026) ..................................................................12

*Plotkin v. Pac. Tel. & Tel. Co.,*
  688 F.2d 1291 (9th Cir. 1982) .........................................................................................3

*Robertson v. Cartinhour,*
  2011 WL 13205761 (D.D.C. Feb. 25, 2011) ...................................................................3

*Soc'y for Animal Rts., Inc. v. Schlesinger,*
  512 F.2d 915 (D.C. Cir. 1975).....................................................................................2, 4

*United States v. Price,*
  688 F.2d 204 (3d Cir. 1982)............................................................................................2

*Webb v. GAF Corp.,*
  78 F.3d 53 (2d Cir. 1996).................................................................................................3

**Statutes and Rules**

8 U.S.C. § 1357...................................................................................................1, 8, 10

Fed. R. Civ. P. 12....................................................................................................5

Fed. R. Civ. P. 26..................................................................................................12

Fed. R. Civ. P. 30..................................................................................................12

**INTRODUCTION**

Defendants do not dispute that the eleven-page administrative record ("AR") is so sparse that it frustrates effective judicial review of their unlawful policy and practice. Rather than defend the AR on this ground, Defendants resort to deflection—invoking bases for discovery that Plaintiffs do not raise—and attempt to limit the proper scope of the AR by denying the existence of a policy this Court has already found to exist. The Administrative Procedure Act ("APA") requires Defendants to provide all documents and materials that were before the agency "at the time [the] challenged action was taken." *Cmty. for Creative Non-Violence v. Lujan*, 908 F.2d 992, 998 (D.C. Cir. 1990). The "challenged action" here is Defendants' unlawful *policy and practice* of making warrantless civil immigration arrests in this District without the probable cause findings required by 8 U.S.C. § 1357(a)(2), not the individual arrests of Plaintiffs José Escobar Molina, B.S.R., N.S., and R.S.M.—the only actions for which Defendants provided documents in the AR. Because Defendants concede that the AR does not contain materials that would enable judicial review of the challenged agency action, and that they "have no documents to add to the record," ECF 90 ("Opp.") at 13, extra-record discovery is necessary to fill the evidentiary gap.

That conclusion is reinforced by Defendants' own conduct in this litigation. This case has already featured extensive extra-record evidence, including declarations and documents produced by Defendants themselves. This is unsurprising because, as this Court recognized, Defendants' policy and practice is "unlike the [agency] actions normally challenged in APA cases, such as a promulgated regulation." *Escobar Molina v. DHS*, 811 F. Supp. 3d 1, 63 (D.D.C. 2025) (quotations omitted). For example, in opposition to this motion, Defendants rely on their own extra-record evidence to argue the meaning of arrest records contained in the AR, as well as the relevance of other public records outside the AR. Opp. at 6, 10–11. By their own admission, Defendants cannot explain their policy and practice with the AR alone, yet they attempt to avoid

discovery while introducing and relying on extra-record evidence that Plaintiffs contest.  In these circumstances, Plaintiffs are entitled to discovery to develop a record that enables effective judicial review.  Such relief is not extraordinary; it is routinely granted where, as here, the agency's obstinance in producing a proper AR leaves uncertain "the contours of the precise policy at issue." *Escobar Molina*, 811 F. Supp. 3d at 63 (quoting *Hisp. Affs. Project v. Acosta*, 901 F.3d 378, 388 (D.C. Cir. 2018)).  The Court should grant Plaintiffs' motion.

## ARGUMENT

### I.    The Court Retains Full Jurisdiction to Permit Merits Discovery.

At the hearing on Plaintiffs' motion to enforce the preliminary injunction, the Court asked whether Defendants' interlocutory appeal divests it of jurisdiction to order extra-record discovery. It does not.  Because Defendants' appeal concerns only an interlocutory order—the preliminary injunction—this Court retains full authority to order extra-record discovery in furtherance of proceeding to the merits of this case.

It is well-settled that "in an appeal from an order granting or denying a preliminary injunction, a district court may nevertheless proceed to determine the action on the merits." *Free Speech v. FEC*, 720 F.3d 788, 791 (10th Cir. 2013) (quoting *United States v. Price*, 688 F.2d 204, 215 (3d Cir. 1982)); *Ex parte Nat'l Enameling & Stamping Co.*, 201 U.S. 156, 162 (1906) (holding that where an appeal concerns only an interlocutory order, "[t]he case, except for the hearing on the appeal from the interlocutory order, is to proceed in the lower court as though no such appeal had been taken, unless otherwise specially ordered"); *Soc'y for Animal Rts., Inc. v. Schlesinger*, 512 F.2d 915, 918 (D.C. Cir. 1975) ("We assume that the case will proceed forward expeditiously in the district court despite the pendency of the [§] 1292(a) appeal in this court.").[1]  In other words,

---

[1] *See also, e.g.*, *Kilty v. Weyerhaeuser Co.*, 758 F. App'x 530, 533 (7th Cir. 2019) ("[D]espite an (Cont'd …)

"an appeal from an interlocutory order does not divest the trial court of jurisdiction to continue with other phases of the case."  *Plotkin v. Pac. Tel. & Tel. Co.*, 688 F.2d 1291, 1293 (9th Cir. 1982); *see also Jack's Canoes & Kayaks, LLC v. Nat'l Park Serv.*, 937 F. Supp. 2d 18, 26 (D.D.C. 2013) ("Because an [interlocutory] appeal involving a preliminary injunction does not divest the district court with jurisdiction to proceed with a decision on the merits, absent a stay order issued by the Court of Appeals, the Court may proceed with the merits of . . . Defendants' motion to dismiss.").

Here, Defendants' interlocutory appeal challenges only this Court's grant of the preliminary injunction.  *See Escobar Molina v. DHS*, No. 26-5045 (D.C. Cir., Mar. 9, 2026), ECF 2162795 (Defendants' Statement of Issues identifying the only issue on appeal as "[w]hether the district court correctly determined that Plaintiffs established that they were entitled to an order preliminarily enjoining Defendants' alleged policy of conducting warrantless immigration arrests without probable cause and an escape risk assessment").  Such an interlocutory appeal, as discussed above, "d[oes] not divest [this Court] of jurisdiction to proceed with the merits of the case."  *Robertson v. Cartinhour*, 2011 WL 13205761, at *1 (D.D.C. Feb. 25, 2011).  Plaintiffs' motion for extra-record discovery, focused on advancing this case toward final judgment by creating a proper record for effective judicial review, has nothing to do with whether Plaintiffs were entitled to a preliminary injunction.  Indeed, the appellate court's review of the preliminary

---

interlocutory appeal, a district court can retain jurisdiction to decide the merits of a case."); *FTC v. Assail, Inc.*, 98 F. App'x 316, 317 (5th Cir. 2004) (per curiam) ("[I]t is settled that a district court has jurisdiction to proceed with the merits of the case and to grant a permanent injunction while an appeal of a preliminary injunction order is pending." (citing *Ry. Labor Executives' Ass'n v. City of Galveston*, 898 F.2d 481, 481 (5th Cir. 1990))); *Webb v. GAF Corp.*, 78 F.3d 53, 55 (2d Cir. 1996) (holding that district court "had jurisdiction to issue a permanent injunction" because "[a]lthough the filing of a notice of appeal ordinarily divests the district court of jurisdiction over issues decided in the order being appealed, jurisdiction is retained where, as here, the appeal is from an order granting or denying a preliminary injunction").

3

injunction is necessarily limited by the record before this Court at the time of its order, and neither evidence uncovered in discovery nor the AR would be relevant to the Court of Appeals' resolution of the interlocutory appeal. *See Colbert v. Potter*, 471 F.3d 158, 165 (D.C. Cir. 2006) (limiting evidence considered by the appellate court to that developed in the district court).

Far from encroaching on the D.C. Circuit's jurisdiction, permitting extra-record discovery simply ensures that this case "will proceed forward expeditiously in the district court" notwithstanding Defendants' interlocutory appeal. *Soc'y for Animal Rts., Inc.,* 512 F.2d at 918. Because the preliminary injunction appeal does not hinder this Court's authority to proceed to the merits, and the discovery sought does not implicate the appellate record, the Court retains full jurisdiction to permit merits discovery, including by granting Plaintiffs' motion.

## II. The Court Should Order Extra-Record Discovery for the Categories Identified by Plaintiffs.

### A. Plaintiffs are entitled to discovery under well-established exceptions to the record rule.

Plaintiffs are entitled to discovery in this case to "ascertain the contours of the precise policy at issue." *Escobar Molina*, 811 F. Supp. 3d at 63 (quoting *Hisp. Affs. Project*, 901 F.3d at 388). Defendants principally contend that Plaintiffs are not entitled to extra-record discovery as to Defendants' unlawful policy because "no such policy exists." Opp. at 4. But Defendants cannot unilaterally decide the scope of Plaintiffs' claims (or related discovery) by declaring that the challenged policy is based on "nothing but [Plaintiffs'] own speculation." Opp. at 9; *see All. for Retired Ams. v. Bessent*, 2025 WL 1744729, at *2 (D.D.C. Mar. 13, 2025) (assessing the proper "scope of the administrative record for the action that Plaintiffs challenge" based on the allegations in the complaint); *AFL-CIO v. Dep't of Lab.*, 2026 WL 879518, at *14 (D.D.C. Mar. 31, 2026) ("[A]n agency [need not] concede the challenged policy exists . . . . To hold otherwise would allow agencies to immunize unlawful acts by refusing to document them or denying that they took

4

them.  Frustration of the APA cannot be that easy.”).

Moreover, Defendants’ position ignores that this Court has already found—based on extensive extra-record evidence, including dozens of declarations and public documents, and Defendants’ failure to rebut it—that Defendants “have consummated a decisionmaking process that resulted in the implementation of a new policy of conducting warrantless civil immigration arrests based on a lower standard than probable cause.”  *Escobar Molina*, 811 F. Supp. 3d at 43.  Discovery is necessary and appropriate here *not* to establish the existence of a policy, but to “ascertain the contours of the precise policy at issue” and enable meaningful review, which the AR does not permit.  *Id.* at 63 (quoting *Hisp. Affs. Project*, 901 F.3d at 388).  Accordingly, Defendants’ attempt to distinguish the cases cited by Plaintiffs, including *AFL-CIO* and *Alliance for Retired Americans*,[2] as not involving “uncertainty about the existence of a policy,” misses the point.  Opp. at 8–9.  And *Alsaidi*, a Rule 12(b)(6) motion to dismiss decision, is inapposite for the same reason: unlike there, Plaintiffs do not seek discovery to “prove the [challenged] policy in place.”  *Alsaidi v. U.S. Dep’t of State,* 292 F. Supp. 3d 320, 328 (D.D.C. 2018).  The *Alsaidi* plaintiff failed to plausibly allege an APA claim altogether, *id.*, whereas here, this Court has already found that Defendants’ policy exists and preliminarily enjoined it, *Escobar Molina*, 811 F. Supp. 3d at 43, 65.

Although Defendants claim they are entitled to a “presumption of administrative regularity,” Opp. at 9, no such deference is warranted because Defendants produced an AR lacking *any* documents “disclos[ing] the basis” of their unlawful arrest policy.  *Dep’t of Com. v. New York*,

---

[2] *AFL-CIO v. Dep’t of Lab.*, 349 F.R.D. 243 (D.D.C. 2025); *All. for Retired Ams. v. Bessent*, 2025 WL 1114350 (D.D.C. Mar. 20, 2025).

588 U.S. 752, 780 (2019).[3]  Because the barebones AR prevents effective review of Defendants' policy and practice, extra-record discovery is necessary to ascertain its "contours."  *Hisp. Affs. Project*, 901 F.3d at 388.  Courts in this Circuit regularly permit extra-record discovery where the AR is, as here, "so bare as to frustrate effective judicial review."  *See Cmty. for Creative Non-Violence*, 908 F.2d at 998; *see also* ECF 85 ("Mot.") at 4–5 (collecting cases).  Here, there is no doubt about the AR's inadequacy: it lacks any documents—including, *e.g.*, internal communications, memoranda, guidance documents, written or verbal instructions—about the policy Plaintiffs challenge and contains no documents whatsoever from Defendants U.S. Department of Justice and Drug Enforcement Agency.  Indeed, another court in this District recently issued an order compelling the agency defendant to respond to the plaintiffs' interrogatories where the agency "did not compile a traditional administrative record contemporaneous to their actions" and the court was "uncertain as to [the agency's] current policy."  *AFL-CIO*, 2026 WL 879518, at *23.

Notably, Defendants do not even dispute the basis for extra-record discovery that Plaintiffs actually rely on (that the AR prevents effective judicial review).  Instead, they focus on Plaintiffs' failure to show "bad faith"—*i.e.*, an independent and distinct ground for extra-record discovery in this Circuit and one on which Plaintiffs have not relied.  *See* Opp. at 3–4 (addressing "bad faith" as a reason for discovery but ignoring frustration of effective judicial review); *Cmty. for Creative Non-Violence*, 908 F.2d at 997.  In fact, the case on which Defendants rely, *James Madison Ltd. by Hecht v. Ludwig*, recognizes that bad faith is neither necessary, nor the only basis, for obtaining extra-record discovery.  *See* 82 F.3d 1085, 1095 (D.C. Cir. 1996) (noting discovery is proper

---

[3] In addition, to the extent they exist, Defendants have still not explained why they have not produced the I-213s for Mr. Escobar Molina's and B.S.R's August 2025 arrests.

"where the agency failed to explain administrative action [so] as to frustrate effective judicial review" (cleaned up)).

  **B.**  **The categories Plaintiffs identified are reasonable and appropriate for extra-record discovery in this case.**

  Plaintiffs' motion sets out discrete categories of evidence needed to "ascertain the contours of the precise policy at issue," including evidence with respect to the Lyons Memo, the Broadcast Statement of Policy, Defendants' professed use of "reasonable suspicion" to make immigration arrests, immigration arrest quotas/goals, officer training on warrantless immigration arrests, and information about ongoing immigration arrests in the District.  Far from seeking to undertake a "fishing expedition," Opp. at 10, Plaintiffs base their tailored requests on evidence this Court has already relied upon, much of which Defendants themselves introduced or originated.  *See* Mot. at 7–12 (citing Defendants' declarations, public documents, and statements from Defendants' agents on these topics).[4]

  Defendants seek to diminish the import of the evidence cited by Plaintiffs—all of which is outside the AR—but those arguments underscore the need for the requested discovery.  Indeed, Defendants' opposition is replete with premature merits arguments on the relevance and meaning of extra-record evidence related to the nature of the alleged policy and practice.  *See* Opp. at 4–8, 10–12.  But to enable effective judicial review on the merits, Plaintiffs must have the opportunity to further develop the details of the challenged policy and practice and contest Defendants' framing of extra-record evidence.  *Cf. AFL-CIO*, 349 F.R.D. at 250–52 (noting that the agency may not

---

[4] Defendants also mischaracterize Plaintiffs' motion by implying that it only cited to the complaint in support of the claim that Defendants' policy is top-down and widespread.  Opp. at 5.  Although Plaintiffs use the complaint to show the nature of their allegations (and thereby the scope of a proper AR), Defendants ignore Plaintiffs' reliance on the Court's own conclusions about the nature of the policy on this point.  Mot. at 6 (citing *Escobar Molina*, 2025 WL 3465518, at *23).

"submit evidence that addresses critical factual issues . . . without permitting plaintiffs to explore those factual issues through very limited discovery," and ordering depositions, interrogatories, and document requests).

For instance, Defendants point to the Lyons Memo as the "only nationwide guidance that outlines ICE's implementation of 8 U.S.C. § 1357(a)(2)." Opp. at 4. Although they correctly note that the Lyons Memo has no place in the AR because it was issued months after the policy challenged here was implemented, Defendants nevertheless argue that "it did not create new policy." *Id.* at 5. In other words, Defendants claim that no warrantless arrest policy existed prior to the issuance of the Lyons Memo, while simultaneously arguing that the Lyons Memo is nothing new. Even if Defendants could have it both ways, the Lyons Memo itself expressly repudiates the policy that "ICE previously applied" as to the escape risk prong. ECF 82-1 ("Lyons Memo") at 5. When prompted by the Court to explain what this "previous[]" policy was, Defendants could only offer that it was "past common practice that was never adopted as formal written ICE policy." ECF 86 at 1. The truth of this unsworn statement notwithstanding, extra-record discovery is necessary to show, for example, when and how the principles set out in the Lyons Memo were implemented in the District to repudiate Defendants' "past common practice."[5]

As to the Broadcast Statement of Policy, Defendants claim that it has no bearing on this litigation because ICE "would not have agreed to" its nationwide enforcement in *Castañon Nava v. Department of Homeland Security*, No. 1:18-cv-03757 (N.D. Ill. 2018), Opp. at 7–8, an

---

[5] As Plaintiffs explained in their supplemental brief in support of their motion to enforce the preliminary injunction, the Lyons Memo violates this Court's order. *See generally* ECF 91. To be clear, the discovery requested here is for the merits of Plaintiffs' claims, not for Defendants' non-compliance with the preliminary injunction. Plaintiffs' pending motion to enforce the preliminary injunction and Defendants' pending appeal of the preliminary injunction are therefore no bar to the resolution of this discovery motion. *See supra* I.

astonishing argument given that Defendants themselves asserted that the Broadcast Statement affects immigration enforcement in the District when they cited it *in this litigation* as evidence of a DHS policy requiring probable cause to make civil immigration arrests.   ECF 50 at 23. Moreover, the Broadcast Statement (and its June 2025 rescission by now-ICE Deputy Director Charles Wall) was issued nationwide to all ICE officers. *Castañon Nava v. DHS*, 806 F. Supp. 3d 823, 863 (N.D. Ill. 2025) (ordering ICE to re-issue Broadcast Statement "to all ICE officers nationwide").  Only extra-record discovery can clarify the extent to which the Broadcast Statement has been in effect in the District (if at all) since Defendants implemented their unlawful arrest policy.

Defendants also rely on extra-record declarations they submitted in opposition to Plaintiffs' preliminary injunction motion to distance themselves from repeated statements by the U.S. Department of Homeland Security, Tricia McLaughlin, and Gregory Bovino that Defendants use reasonable suspicion to make immigration arrests—at least thirteen such statements between September 2025 and February 2026[6]—by asserting that they do not reflect officer training or Defendants' policy. Opp. at 5–6.  Plaintiffs have had no opportunity to cross-examine Defendants' declarants, and the declarations are silent on the contents of officer training beyond a mere recitation of the statutory standard, on training for non-ICE officers, and on reported drastic cuts to ICE officer training beginning in 2025.   *See Escobar Molina*, 811 F. Supp. 3d at 48 ("[D]efendants' declarations discussing the training provided to some of its officers is 'virtually irrelevant[.]'"); ECF 85-1, Exs. 2–4.   Moreover, the Court has already rejected Defendants' baseless position that Ms. McLaughlin's and Mr. Bovino's statements are irrelevant because they are made "from the Department's spokespeople and social media accounts."  Opp. at 5; *Escobar*

---

[6] ECF 17-1, Exs. 17, 19; ECF 34-1, Exs. 1–2; ECF 78-1, Exs. 1–9.

*Molina*, 811 F. Supp. 3d at 46. Importantly, these post-complaint declarations are not part of the AR (nor should they be). Discovery is necessary to probe the effects of Defendants' statements in the District and to determine whether or not Defendants have provided their agents with the requisite training to make warrantless immigration arrests consistent with the statutory standard.

Defendants also claim that no discovery is needed because Plaintiffs have not yet proven whether arrest quotas drive unlawful arrests in the District. Opp. at 6–7. But that is precisely why Plaintiffs *are* entitled to discovery: to rebut Defendants' unsworn (and extra-record) answer to the complaint and assertions that publicly reported arrest quotas "have no relevance" because they are nationwide—rather than only in the District—and include arrests both with and without warrants—rather than only without warrants. Even setting aside that such an arrest quota would obviously include warrantless arrests in the District and therefore would be probative of the contours of Defendants' policy, Plaintiffs are entitled to discovery on, for example, whether Defendants utilize arrest quotas, goals, bonuses, or other incentives in the District to carry out Defendants' unlawful policy.

Finally, Defendants assert that extra-record discovery into ongoing immigration arrests in the District is unnecessary because they are providing Plaintiffs with Form I-213s under the preliminary injunction order already and the AR provides documents on Plaintiffs' arrests. Opp at 11. Plaintiffs maintain that they would be entitled to these highly relevant documents with or without a preliminary injunction in place to understand, for example, how agents document the requisite probable cause analysis and whether Defendants shifted their arrest tactics to avoid making the probable cause determination under § 1357(a)(2) altogether. Further, Defendants' reliance on their own extra-record declarations to explain that Plaintiffs' arrests were targeted and not conducted pursuant to the policy about which Plaintiffs seek discovery, Opp. at 10–11, only

demonstrates the extent to which the AR itself frustrates meaningful judicial review. Plaintiffs must have the opportunity to contest this extra-record evidence through discovery.

For these reasons, extra-record discovery to "ascertain the contours of the precise policy at issue" is warranted. *Hisp. Affs. Project*, 901 F.3d at 388**.**

## III. Extra-Record Discovery, Rather than Supplementing the AR, Is the Appropriate Remedy.

During the hearing on Plaintiffs' motion to enforce the preliminary injunction, the Court queried whether Plaintiffs' discovery motion ought instead to be a motion to supplement the record. Although the standard for supplementing the AR overlaps with the standard for extra-record discovery, the latter is the appropriate remedy here because Defendants have already asserted that there are "no documents to add to the record." Opp. at 13. Limiting Plaintiffs to this null set of supplemental documents would be ineffectual at enabling meaningful judicial review.

Like extra-record discovery, an order to supplement the record is appropriate "if the agency failed to explain administrative action so as to frustrate judicial review." *City of Dania Beach v. FAA*, 628 F.3d 581, 590 (D.C. Cir. 2010) (quotations omitted); *Cmty. for Creative Non-Violence*, 908 F.2d at 998 (extra-record discovery permitted for frustration of effective judicial review). Indeed, some courts have used these terms interchangeably. *See Chiayu Chang v. USCIS*, 254 F. Supp. 3d 160, 161 (D.D.C. 2017) (describing standards for "[d]iscovery or supplementation of the administrative record" together). Plaintiffs moved for extra-record discovery in lieu of moving to supplement the record in good-faith reliance on Defendants' counsel's representation that there were no additional documents to add to the AR. Defendants have repeated that assertion in their opposition, stating that there are "no documents to add to the record." Opp. at 13. Accordingly, extra-record discovery is a more appropriate path than supplementation, particularly because Defendants have made no attempt to dispute that the AR frustrates effective judicial review.

11

Defendants contend that Plaintiffs' requested extra-record discovery "would require Defendants to create new records through interrogatories, requests for admission, and depositions." Opp. at 12. To be clear, however, Plaintiffs' limited request to utilize select discovery tools, including interrogatories, requests for admission, and depositions, would only "require Defendants to create new records" to the extent such discovery requests are relevant and proportional. Fed. R. Civ. P. 26(b)(1); *see, e.g.*, *New York v. McMahon*, 2026 WL 622484, at *8 (D. Mass. Feb. 11, 2026) (granting Rule 30(b)(6) deposition and interrogatories); *AFL-CIO*, 2026 WL 879518, at *23 (ordering response to interrogatories); *AFL-CIO*, 349 F.R.D. at 250–51 (ordering interrogatories and four depositions). Again, this case has already featured extensive records beyond the AR, including declarations submitted by Defendants. To the extent Defendants speculate that certain discovery requests may be unduly burdensome, those disputes can be resolved cooperatively between the parties through conferral.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion and order Defendants to engage in extra-record discovery.

April 3, 2026

*s/ Adina Appelbaum*
Adina Appelbaum (D.C. Bar No. 1026331)
Ian Austin Rose (Md. Bar No. 2112140043)
Samantha Hsieh (Va. Bar No. 90800)[*]
**AMICA CENTER FOR IMMIGRANT RIGHTS**
1025 Connecticut Avenue NW, Suite 701
Washington, D.C. 20036
(202) 331-3320
adina@amicacenter.org
austin.rose@amicacenter.org
sam@amicacenter.org

*s/ Aditi Shah*
Aditi Shah (D.C. Bar No. 90033136)
Scott Michelman (D.C. Bar No. 1006945)
**AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF THE DISTRICT OF COLUMBIA**
529 14th Street NW, Suite 722
Washington, D.C. 20045
(202) 457-0800
ashah@acludc.org
smichelman@acludc.org

Kathryn Huddleston (Tex. Bar No. 24121679)[**++]
**AMERICAN CIVIL LIBERTIES UNION
FOUNDATION**
915 15th Street NW, 7th Floor
Washington, D.C. 20005
(212) 549-2500
khuddleston@aclu.org

*s/ Sirine Shebaya*
Sirine Shebaya (D.C. Bar No. 1019748)
Yulie Landan (Cal. Bar No. 348958)[*+]
Bridget Pranzatelli (D.C. Bar No. 90029726)
**NATIONAL IMMIGRATION PROJECT**
1763 Columbia Road NW, Suite 175
Washington, D.C. 20009
(213) 430-5521
sirine@niplg.org
yulie@nipnlg.org
bridget@nipnlg.org

Respectfully submitted,

*s/ Jehan A. Patterson*
Jehan A. Patterson (D.C. Bar No. 1012119)
Chris Kimmel (D.C. Bar No. 1047680)
Alexandra Widas (D.C. Bar No. 1645372)
Hassan Ahmad (D.C. Bar No. 1030682)
Sean Berman (D.C. Bar No. 90026899)
Austin Riddick (D.C. Bar No. 90018117)
Alexis Gorfine (D.C. Bar No. 90039553)[***]
Marcus Ransom (D.C. Bar No. 90039599)[***]
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, D.C. 20001
(202) 662-6000
jpatterson@cov.com
ckimmel@cov.com
awidas@cov.com
hahmad@cov.com
sberman@cov.com
ariddick@cov.com
agorfine@cov.com
mransom@cov.com

Eva H. Lilienfeld (N.Y. Bar No. 6143085)[*]
Graham Glusman (N.Y. Bar No. 6099535)[*]
**COVINGTON & BURLING LLP**
30 Hudson Yards
New York, NY 10001
(212) 841-1000
elilienfeld@cov.com
gglusman@cov.com

*s/ Madeleine Gates*
Madeleine Gates (D.C. Bar No. 90024645)
**WASHINGTON LAWYERS' COMMITTEE FOR
CIVIL RIGHTS AND URBAN AFFAIRS**
700 14th Street NW, #400
Washington, D.C. 20005
(202) 319-1000
madeleine_gates@washlaw.org

*s/ Ama Frimpong*
Ama Frimpong (D.C. Bar No. 1602444)[*]
Shana Khader (D.C. Bar No. 90011926)

13

**CASA, INC.**
8151 15th Avenue
Hyattsville, MD 20783
(240) 485-8844
afrimpong@wearecasa.org
skhader@wearecasa.org
*Attorneys for Plaintiffs*

[*]*Admitted* pro hac vice.
[**]*Motion for Admission* pro hac vice
*forthcoming.*
[***]*Petition for Admission pending.*

[+]*Not Admitted in D.C.; working remotely
from N.Y. and admitted in Cal. only*
[++]*Not Admitted in D.C.; working remotely
under supervision of D.C. Bar member,
practice limited to federal courts in D.C.,
and admitted in Ariz. and Tex. only.*

14